(U)

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Filed with the Classified
Information Security Officer
CISO _MMcPherson_
Date __8/5/2013__

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| | ) | Case No. cr-04-385 |
| v. | ) | |
| | ) | Hon. Leonie M. Brinkema |
| ALI AL-TIMIMI | ) | |
| | ) | |

## DEFENDANT DR. ALI AL-TIMIMI'S REBUTTAL TO GOVERNMENT'S RESPONSE TO MOTION TO COMPEL DISCOVERY RELATED TO ANWAR AL-AULAQI

The government, in its response to Dr. al-Timimi's Motion to Compel Discovery Related to Anwar al-Aulaqi, essentially declares that this Court has no authority to compel it to produce discovery whenever the government has decided that it doesn't have to provide it.[1] This Court has already rejected this position during this remand, (*See, e.g.,* Dkt. No. 271 (granting in part Dr. al-Timimi's discovery requests)), and Dr. al-Timimi respectfully asks that it do so again.

The most striking aspect of the government's response, however, is what is *not* stated. The Defense has identified specific acts of withholding of information, as well as likely misrepresentations to the Court and the jury. This includes very troubling evidence related to the actions and trial testimony of Special Agent Wade Ammerman, a figure at the heart of the investigation of Dr. al-Timimi. These specific allegations are not met with a single denial from the government, but rather a claim that the government has unilateral and unchecked authority to

---

[1] This motion, which was filed weeks ago, is based exclusively on unclassified and declassified information, and included one exhibit that was given to the defense as an unclassified document by National Archives and Records Administration (NARA) staff. The filing, however, remains sealed, despite the fact that it discusses facts already in the public domain after release by the government. As noted in the Memorandum, these include statements by officials like Agent Ammerman to the media on the subject of al-Aulaqi.

307

withhold information it deems immaterial. Although the government is facially wrong about that standard, it leaves unanswered the alleged misconduct and misrepresentations that are not countenanced by any rule. While Special Agent Ammerman and other government officials have spoken with the media before about this matter, they have now elected to remain silent, and that silence is truly deafening.

I.     **The Government Has Mischaracterized the Scope of Dr. al-Timimi's Request**

As a preliminary matter, the government, as it has done throughout this matter, has mischaracterized the scope of the defense's discovery request. Dr. al-Timimi's request is not limited to establishing that Anwar al-Aulaqi was himself an informant, as is obvious from even a cursory reading of the motion. The motion and accompanying memorandum detail how Special Agent Ammerman reportedly facilitated the entry of al-Aulaqi into the country in October 2002, and, by extension, his sudden visit to the home of Dr. al-Timimi that same month. It further details how recently acquired evidence indicates the presence of a government "asset" during al-Aulaqi's October 2002 movements.[2]

What is clear is that a government asset was never revealed to the Defense, and any involvement in or knowledge of the meeting by a government asset would constitute core discovery material, regardless of whether the asset was al-Aulaqi himself, government witness Nabil Gharbieh, or anyone else. The motion also details how this new information calls into question representations made by the government about undisclosed surveillance evidence, as well as the statements made by Ammerman in both an earlier affidavit and at trial.

---

[2]     As noted in Dr. al-Timimi's Memorandum in Support of his Motion to Compel Discovery (Dkt. 301 at 16), and attached as Exhibit "I" to that same pleading, one of the documents revealed last month includes an FBI memorandum from October 22, 2002 with the subject line "Anwar Nasser Aulaqi" and "Synopsis: Asset reporting." The identity of the "asset" is not clear.

Additionally, in its response, the government implies that Dr. al-Timimi is seeking only recordings of his October 2002 encounter with al-Aulaqi. Again, this simply ignores the express language of the motion and memorandum. (*See* Dkt. 301 at 20). In his memorandum, Dr. al-Timimi makes clear he is looking for all information related to al-Aulaqi visits to the United States from 2001 to 2003 that reference Dr. al-Timimi, the witnesses and alleged co-conspirators in this case, or the dar al-Arqam Center. Thus, this sought-after evidence concerns not only the visit of al-Aulaqi to the al-Timimi house, but the testimony of key witnesses like Gharbieh and Ammerman, as well as other individuals associated with the "Virginia Jihad" at the al-Timimi trial.

## II.   Dr. al-Timimi's Detailed Discovery Request is Neither "Speculative" Nor "Conclusory"

The government's assertion that the lengthy filing by Dr. al-Timimi is "speculative" or "conclusory" is rather bizarre, given the detailed allegations with dates, newly disclosed supporting documents, and references to trial testimony. In his Memorandum in Support of his Motion to Compel Discovery Related to Anwar al-Aulaqi (Dkt. 301), Dr. al-Timimi (1) described in detail his nine-year effort, dating back well before his trial, to obtain from the government material evidence about Anwar al-Aulaqi; (2) described with particularity the exculpatory nature of his October 2002 encounter with Anwar al-Aulaqi, in which he rejected the latter's entreaties to enlist young men for violent acts; (3) provided to the Court a startling and detailed document trail that shows that a lead investigator and key trial witness against Dr. al-Timimi directly facilitated Anwar al-Aulaqi's movements during the very same month al-Aulaqi had his encounter with Dr. al-Timimi; (4) demonstrated how this new information contradicts the government's representations to this Court, dating back to its affidavit for a search warrant on al-

Timimi's house in 2003, continuing throughout his trial in 2005, and throughout this remand. The government appears to treat anything short of the documents themselves as speculative.

The discovery laid out in the motion falls well within the scope of *Brady v. Maryland*, Federal Rule of Criminal Procedure 16, and, importantly, this Court's inherent authority to investigate misrepresentations made to it. *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) ("Under [its] inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, [and] conduct investigations as necessary to exercise the power"). Dr. al-Timimi's factual support for his motion includes, but is certainly not limited to, the results of Dr. al-Timimi's own search of the National Archives and Records Administration's 9/11 Commission-related database and an October 23, 2002 memorandum from the Washington Field Office of the FBI discussing both "Awlaki" and "Timimi." It is not clear what greater specificity could be required of a defendant.

While the government refuses to respond to these allegations (and the original motion remains "under review" for possible classification), Ammerman's extraordinary actions on behalf of al-Aulaqi continue to be debated in the public domain. According to a Fox News report, "[f]ormer FBI agents, familiar with al-Awlaki's re-entry in October 2002, say only two scenarios seem to explain what happened. The FBI was tracking the cleric for intelligence or the FBI was working with the cleric and saw him as a "friendly contact."[3] Under either of these

---

[3]     Catherine Herridge, *Mueller Grilled on FBI's Release of al-Awlaki in 2002*, FoxNews.com (March 8, 2012), http://www.foxnews.com/politics/2012/03/07/mueller-grilled-on-fbis-release-al-awlaki-in-2002/#ixzz2avOe5w4xUnder.

scenarios, Dr. al-Timimi had a statutory and constitutional right to be provided with evidence about the FBI's role in facilitating the October 2002 encounter. In addition, and as discussed in detail in his recent memorandum, either scenario would contradict representations made by the government to this Court, and would cast into serious doubt the notion that Dr. al-Timimi has been provided with all material evidence withheld at trial. *See, e.g.,* Trial Tr. 1337:6 (Apr. 11, 2005)(Special Agent Ammerman affirmatively testifying before this Court that the investigation of Dr. al-Timimi began in February 2003); *see also* Dkt. No. 220, Hr'g Tr. 38:9-11, (Jan. 16, 2007)) (Court stating that the government "insists that there was no material investigation of Timimi until 2003").

In its recitation of case law, the government ignores the unique nature of this remand and once again mischaracterizes the applicable legal standards. In addition to *Brady v. Maryland*, Dr. al-Timimi is making his request under the broader standards of Federal Rule of Criminal Procedure 16, which affords defense counsel a role in determining relevance, and which the Court has already stated is applicable in this remand:

> [W]ho determines what's relevant? I mean, again, that's why we have an adversary system. . . . The rule requires that the appropriate categories of information be turned over to defense counsel. Then they'll rummage through it. It may be in their eyes important to some theory of defense that, you know, you might not appreciate, I might not appreciate, but I thought that one of the pretty strong requirements of rule 16 . . .

(Dkt. No. 220, Hr'g Tr. 43:1-9 Jan. 16, 2007).

Indeed, earlier in the same hearing, this Court acknowledged the unique procedural posture of this remand and rejected the government's position on its obligations:

> MR. KROMBERG: Your Honor...[t]he issue is whether the defense has an entitlement to see -- to obtain discovery outside of rule 16 or *Brady* or *Giglio* or Jencks, What – under the government –

THE COURT: I understand. Mr. Kromberg, let me go to the quick on this thing. This is a very unusual case, because we've had a case where there was a trial, there was a conviction. The case was on appeal. The Fourth Circuit obviously was sufficiently concerned about some of the issues raised in the defendant's brief and perhaps some of the stuff that was in the media… that they remanded this case back.

*Id.* at 6:9-22.

Later on, the court stated:

These types of issues are very difficult for the Court to resolve, that is, whether something exists or doesn't exist or whether something is material or not material, because I don't represent the defendant, and I don't know exactly the full range of issues that the defense is going to possibly raise. I have a general idea. *But our legal system is based on the concept of advocacy in an adversarial system, where both sides are supposed to have sufficient information to be able to represent their clients adequately.*

*Id.* at 7:15-24 (emphasis added).

The cases relied on by the government are curious choices because they actually highlight what the government has failed to do in this case. In *Harris v. United States*, discussed by the government in its response, the defendant's *Brady* motion was denied in part because the government had provided the very "open file" discovery that the government in this case rejects. 9 F. Supp. 2d 246, 274-75 (S.D.N.Y. 1998) *aff'd*, 216 F.3d 1072 (2d Cir. 2000). Indeed, the Court found that "the probative evidence show[ed] that all the documents within the government's possession were made available to [the defendant's] trial counsel." *Id.* Moreover, in that case, the defendant demanded that the government prove a negative: that it did not withhold evidence from the open file produced for trial. *Id.* In this case, the government has for nine years rejected Dr. al-Timimi's requests for this specific material, and Dr. al-Timimi has come to the Court with a trove of publicly available documents demonstrating with specificity

the likelihood that material evidence was withheld. If Dr. al-Timimi's motion is "speculative,"

then it is difficult to imagine a motion to compel discovery that would not be.

In *United States v. Koubriti*, 336 F. Supp. 2d 676 (E.D. Mich. 2004), the Justice

Department was faced with similar allegations stemming from a case developed soon after the

September 11, 2001 terrorist attacks. In that case, a single document was found not to have been

disclosed, as opposed to the array of evidence now cited by the defense in this case. *Id.* at 678.

The court ordered a review of "all documents, both classified and non-classified, in the

Government's possession having any connection whatsoever with the case" to determine

"whether, in fact, the Defendants' fair trial, confrontation and/or due process rights had been

violated by either the intentional or inadvertent withholding of material exculpatory

information." *Id.* The court overturned the convictions of the affected men and ordered a new

trial. *Id.* at 683. Clearly, the government's current position of total discretion over evidence was

shared by the prosecutors in that case, but it was not a view shared by the Court or ultimately by

the Justice Department itself when the convictions were thrown out.[4] *See also United States v.*

*Kohring*, 637 F.3d 895 (9th Cir. 2011) (finding withholding of evidence in a high-profile

criminal case). Indeed, after incidents of information withholding occurring after the al-Timimi

trial, like the prosecution of Sen. Ted Stevens, the Justice Department pledged to change how

discovery would be handled in such cases. *See In re Special Proceedings*, 840 F. Supp. 2d 370,

375, 377 (D.D.C. 2012) ("The *Stevens* case has come not only to symbolize the dangers of an

overzealous prosecution and the risks inherent when the government does not abide by its

discovery obligations, … [but] it has also been credited with changing the way other courts,

prosecutors, and defense counsel approach discovery in criminal cases.").

---

[4]    *See* Chitra Ragavan, *Justice Department Seeks Dismissal of Terrorism Case*,
USNews.com (Aug. 1, 2004), http://www.usnews.com/usnews/news/articles/terrorism040831.htm.

The evidence related to Anwar al-Aulaqi touches on both the investigation and the trial of Dr. al-Timimi, including testimony from core witnesses like Ammerman and Gharbieh. It also concerns surveillance evidence that was repeatedly demanded by the defense pre-trial as well as after the remand in this case. This evidence is part of a comprehensive array of evidence that has been identified by the defense both in prior pending motions as well as the recent motions filed in this case. The government's filing offers nothing on the specific allegations of misconduct, but it does illuminate why such violations occurred in the case. The government's claim of unilateral power over such discovery should be rejected, again, by the Court.

For the foregoing reasons, and for reasons articulated in his Memorandum in Support of his Motion to Compel Discovery Related to Anwar al-Aulaqi, Dr. al-Timimi respectfully asks the Court to grant his Motion to Compel Discovery.

Dated: August 5, 2013

Respectfully submitted,

Dr. Ali al-Timimi
By Counsel

Jonathan Turley (*pro hac vice* lead counsel)
2000 H Street, N.W.
Washington, D.C. 20052
Phone No. (202) 994-7001
Facsimile No. (202) 994-9811
jturley@law.gwu.edu

Vishant Manu Krishnan, Bar No. 82308
BRYAN CAVE LLP
1155 F St NW
Washington, DC 20004
Phone: (202) 508-6000
Facsimile: (202) 508-6200
manu.krishnan@bryancave.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of August, 2013, the foregoing was given to the court security official in compliance with prior court orders for filing and for delivery to both the Court and to opposing counsel.

Vishant Manu Krishnan, Bar No. 82308
BRYAN CAVE LLP
1155 F St NW
Washington, DC 20004
Phone: (202) 508-6000
Facsimile: (202) 508-6200
manu.krishnan@bryancave.com
*Counsel for Dr. Al-Timimi*