Filed with Classified Information Security Officer
CISO  Mlotc
Date 8/22/2013
UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES ) | |
| ) | Case No. cr-04-385 |
| v. ) | |
| ) | Hon. Leonie M. Brinkema |
| ALI AL-TIMIMI ) | |

### DEFENDANT DR. ALI AL-TIMIMI'S REBUTTAL TO GOVERNMENT RESPONSE TO MOTION TO COMPEL DISCOVERY RELATED TO ABU KHALID

On August 2, 2013, Defendant Dr. Ali al-Timimi filed a Motion to Compel Discovery Related to Abu Khalid.[1]  *Dkt. No.* 306. The Government's Response to Motion re: Discovery ("Gov't Resp.") (1) mischaracterizes the scope of Dr. al-Timimi's discovery request, (2) states that it provided the defense pre-trial discovery related to Abu Khalid, a representation that is squarely at odds with its representations to the Court during pre-trial hearings and the trial itself, (3) attempts to minimize the importance of highly prejudicial testimony that this Court explicitly deemed "critical" to the government's case, and (4) ignores the controlling legal standards under which it is obliged to produce the requested information. *Dkt. No.* 308. Notably, the government does not deny that it knew the identity of Abu Khalid before trial. What remains is a continuation of the government's position that it has no duty to actively seek or disclose such evidence to the defense under Federal Rule of Criminal Procedure 16 and *Brady v Maryland* and

---

[1] Although the accompanying memorandum contained no classified material, it remains "under review" and outside the public docket, as does Dr. al-Timimi's earlier motion to compel discovery related to Anwar al-Aulaqi. The Defense has previously objected to the over-classification of material in this case, including filings that are based on and exclusively cite public documents. The result is that government counsel is responding on the public docket to arguments of the Defense that are left under seal. In the meantime, public officials have been publicly discussing the underlying cases and allegations in the press for years.

311

its progeny Thus, the response of the government only magnifies the concerns over not simply its past but its current representations on discovery to the Court regarding its duty of disclosure.

I. THE GOVERNMENT MISCHARACTERIZES THE SCOPE OF DR. AL-TIMIMI'S DISCOVERY REQUEST.

As has become common in its responses to Dr. al-Timimi's motions to compel discovery, the government miscasts the scope of the motion in purposely narrow terms. In his most recent motion, Dr. al-Timimi in fact seeks the disclosure of a variety of material evidence related to Abu Khalid that was withheld from the defense. The government, however, states that the motion "seeks evidence to establish that the government failed to produce before his trial in 2005 information in the governments [sic] possession that would have enabled him to locate and speak with Ajmal Khan." Gov't Resp. at 1. Although it is true that the failure to confirm the identity of Abu Khalid materially affected such inquiries by the defense, the impact on Dr. al-Timimi's trial was far greater than just that aspect of discovery. This includes the use of this evidence to probe the veracity and memory of witnesses, including the government's expert witness.

Dr. al-Timimi's motion and supporting memorandum detail how the defense repeatedly asked for the government both to confirm the identity of and supply other relevant information, including travel information, regarding Abu Khalid. The defense detailed how withheld information on Abu Khalid, including the very travel documents that had been sought by Dr. al-Timimi, was publicly disclosed only a few months after Dr. al-Timimi's trial. Thus, the government's argument concerning the scope of the defense's discovery request is inaccurate and attempts to downplay the impact of the withholding. The motion specifically seeks standard discovery for a person who was not only the subject of questioning of witnesses but also raised in closing arguments by the prosecution. Federal discovery related to such core individuals is not confined to information needed to reach them, but encompasses information on that

individual's activities and associations. Accordingly, the defense motion included statements, surveillance, and investigatory reports that should have been produced before trial to allow the defense to question witnesses, form lines of inquiry, and seek additional discovery and information on the activities of this individual. These are all detailed in the original motion and supporting memorandum.

## II. THE GOVERNMENT WRONGLY CLAIMS TO HAVE CONFIRMED THE IDENTITY OF ABU KHALID BEFORE TRIAL.

In its response, the government spins a narrative in which it not only clearly identified Abu Khalid as Ajmal Khan before trial, but fulfilled its obligation to provide the defense with all information related to Abu Khalid material to Dr. al-Timimi's defense. This narrative hinges on two pages among thousands of pages of discovery that convey the view of two individuals as to the identity of Abu Khalid. The government has no response as to the failure to turn over travel and other surveillance evidence related to Abu Khalid, nor does the government explain why it did not affirmatively identify Abu Khalid as Ajmal Khan.

Moreover, in making its claim, the government ignores exchanges that occurred on the record before the Court, including one at a hearing just three days before trial, when defense counsel noted the government had declined to provide it with evidence related to Abu Khalid:

> MR. MacMAHON: [P]roof that will show that the defendant met with Abu Khalid, the procurement agent for Lashkar-e-Taiba.
>
> I have sent Mr. Kromberg a letter asking for any information on Abu Khalid. I mean, I don't have to take it at face value that Abu Khalid is the procurement agent. And, of course, the evidence is he was driven to his house supposedly one day and stayed for a few minutes and left.
>
> So, I understand what the Court says about this involvement in this, but I should have some -- Is there Brady? Is there something on who Abu Khalid is? Do I have his passport? Do I have his visa? Do I have anything?

> Is it going to come forward and the Government says it and it's true? That's not fair to Dr. Al-Timimi in terms of defending the case.

See Dkt. No. 139, Hr'g Tr. 17:3-17, Apr. 1, 2005.

At the time, Mr. Kromberg stood before the Court and never stated that the government knew Abu Khalid's identity, or that the government had passport or visa information. The prosecution remained silent after the Court stated that it considered the Abu Khalid/unmanned aircraft evidence to be "critical" to the case, and when the Court stated that "I have no idea what the Government has got there." *Id.* at 17:18-19. Rather than admitting it knew Abu Khalid's identity and acknowledging that it possessed his passport and travel information, the government merely insisted that its evidence regarding Abu Khalid would have to remain circumstantial:

> MR. KROMBERG: I say to the Court now that the information linking Mr. Timimi to Abu Khalid is not strong evidence. It is that you have to draw inferences from it.
>
> But the evidence will be, and it is no surprise here, that one of the witnesses is going to say that he saw unindicted conspirator number two, Chandia, because his name is going to be mentioned on Monday, Chandia with Abu Khalid.
>
> And Chandia was— We have the information from last year's trial that Masaud Khan and Chapman were working for or getting things, unmanned aerial vehicle parts for Abu Khalid.
>
> And then we have Abu Khalid with Chandia, who the evidence will be also went to the Lashkar camp later than the other guys.
>
> And then we have Abu Khalid-- Excuse me. We have a witness saying that Mr. Timimi said that Chandia brought by a person matching the description generally of Abu Khalid to visit Timimi.
>
> And that's what it is. And it's not the strongest part of the case, but [sic] any means, but that's what it is.

*Id.* at 18:9-19:3.

The prosecution does not deny in its latest filing that it knew who Abu Khalid was at that time. Indeed, what is particularly notable about the April 1, 2005, hearing is that the defense specifically asked for information that the government not only had in its possession but produced in later trials. The defense noted in its filing that in *United States v. Chandia* the government disclosed a great deal of evidence that was denied to Dr. al-Timimi during pre-trial discovery, including:

    a. Copy of Mohammad Ajmal Khan's Pakistani passport issued on Mar. 7, 2002 (Gov't Ex. No. 104)

    b. Copy of Mohammad Ajmal Khan's U.K. passport issued on Nov. 8, 2002 (Gov't Ex. No. 103)

    c. Mohammad Ajmal Khan's I-94 U.S. entry form completed in Feb. 2002 (Gov't Ex. No. 37)

    d. Mohammad Ajmal Khan's I-94 U.S. entry form completed in Mar. 2003 (Gov't Ex. No. 38)

    e. Mohammad Ajmal Khan's Continental Airline records showing his arrival at Washington Dulles International Airport on Feb. 11, 2002 (Gov't Ex. No. 71)

    f. Mohammad Ajmal Khan's Continental Airline records showing his travel from Washington, D.C. to Denver, Colorado on Feb. 21, 2002 (Gov't Ex. No. 72)

    g. Mohammad Ajmal Khan's address book found at 11 Ransom Road, Coventry, U.K. (Gov't Ex. No. 106A)

*See* Final Admitted Exhibit List, *U.S. v. Chandia et al.*, No. 1:05-cr-00401-CMH (E.D.Va. 2006), ECF No. 201. Rather than discussing this production in another trial, the government simply dismisses the value of such evidence to the defense and never explains its silence in the April 2005 hearing when this specific evidence was referenced as having been sought by the defense.

Similarly, the government also ignores the discussion of Abu Khalid during Dr. al-Timimi's trial. On April 12, 2005, during the questioning of Special Agent Wade Ammerman, Dr. al-Timimi's trial counsel again brought to the Court's attention the fact that the government had not identified Abu Khalid or the person using the "johninformation" e-mail account, even though it sought to establish that the person was an agent for Lashkar-e-Taiba:

5

> Q. And did it concern you that Masaud Khan was corresponding with this johninformation individual about that topic?
> A. It did.
> Q. Why did that concern you?
> A. Johninformation is an LET member named Abu Khalid.
>
> MR. MAC MAHON: Your Honor, I object.
> MR. GIBBS: If he has knowledge of it, Judge.
> MR. MAC MAHON: Johninformation isn't here to testify, Your Honor. We've asked for information from the government on who they think this person is and have received absolutely nothing.

*See Trial Tr. Vol. 6* at 1442:16-1443:1, Apr. 12, 2005.

Again, the prosecution never said to the Court or counsel, as it now says in its response, that it "identified Abu Khalid to Timimi as Ajmal Khan in pre-trial discovery." Gov't Resp. at 1. Rather, it simply agreed to tailor its questioning and never contested the fact that it had given the defense no evidence on the identity of Abu Khalid. Cf. *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959), quoting *People v. Savvides*, 136 N.E.2d 853, 854-855 (1956) ("[The prosecutor] has the responsibility and duty to correct what he knows to be false and elicit the truth. . . . That the [prosecutor's] silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.").

It is clear from the above exchanges that the specific request for this information on Abu Khalid had not produced any discovery or disclosure from the government, and the government chose to stay silent about the full scope of material information in its possession.

III. **THE GOVERNMENT CANNOT MINIMIZE ITS OBLIGATION OF DISCLOSURE OF EVIDENCE IN A MATTER DEEMED "CRITICAL" BY THE COURT AND REPEATEDLY RAISED AT TRIAL BY PROSECUTORS.**

The government has previously been told by this Court of the need for the defense to be able to review evidence to determine its value and use:

> [W]ho determines what's relevant? I mean, again, that's why we have an adversary system. . . . The rule requires that the appropriate categories of information be turned over to defense counsel. Then they'll rummage through it. It may be in their eyes

> important to some theory of defense that, you know, you might not appreciate, I might not appreciate, but I thought that one of the pretty strong requirements of rule 16 . . .

*Dkt. No. 220, Hr'g Tr.* 43:1-9, Jan. 16, 2007. Despite such directions, the government in the prior motion adopted a sweeping argument of unilateral control and review over evidence. *See Gov't Resp.*. In this filing, the government attempts to excuse any failure to disclose evidence related to Abu Khalid by insisting that had it turned over such evidence, it would not have made any difference because the Abu Khalid evidence "was never a significant part of the case against Timimi." Gov't Resp. at 4. In doing so, it ignores the Court's earlier conclusion that the evidence was "critical" to the case. *See Dkt. No. 139, Hr'g Tr.* 16:22-17:1, Apr. 1, 2005. It also ignores the government's repeated references to Abu Khalid, including references during the closing argument by both prosecutors. The government does not deny presenting evidence that Dr. al-Timimi may have met with Abu Khalid or that Abu Khalid was involved in the effort to buy material for unmanned aircraft after the 9-11 attacks. However, in a statement that is as curious as it is convoluted, the government maintains that it "had hoped that the jurors would be led to infer that Abu Khalid was the individual that Chandia brought to Timimi's house, but the proof did not come in as expected and, as a result, the inference was not an obvious one to draw." Gov't Resp. at 6. In other words, the government tried but now claims to have failed to paint Dr. al-Timimi with the direct association. Of course, the government has no basis for determining how its suggested meeting with Abu Khalid was viewed by jurors, especially when the "inference' was connected to a highly alarming effort to acquire parts for unmanned aircraft in the aftermath of 9-11-- and just a few miles from the scene of the Pentagon attacks. Moreover, while not denying that it possessed more evidence on Ajmal Khan, the government notes that "[t]he defense did not probe this event on cross-examination." *Id.* at 6. As has been noted, the defense asked repeatedly for evidence on Abu Khalid, including his identification, but the

7

government did not produce such evidence. It is hard to "probe" such events when the defense is denied evidence to develop a line of questioning or rebuttal evidence.

While the government admits that it: (1) introduced the evidence on Abu Khalid, (2) referred to the alleged meeting with Dr. al-Timimi, and (3) repeatedly discussed the unmanned aircraft evidence, it notes that it did not actually mention Ajmal Khan in the closing argument. *See* Gov't Resp. at 7 ("The lack of focus on Ajmal Khan in the government's case was mirrored by the lack of focus on him during the closing arguments."). Abu Khalid was, however, mentioned in the closing argument by Mr. Gibbs, who reminded the jury of the repeated reference to Abu Khalid and the alleged effort to purchase an unmanned aerial vehicle:

> We are a long way from Purdue 1993 here, folks.
>
> Also in late 2002 and early into 2003, Masaud Khan is corresponding with Abu Khalid, johninformation, the individual from LET that he was assisting to purchase an unmanned aerial vehicle at a time when LET was designated as a foreign terrorist organization.

*Trial Tr. Vol. 9* at 2221:15-22, Apr. 18, 2005.

The government again strains credulity with a claim that it never meant to imply that Dr. al-Timimi was involved with or supported a conspiracy to acquire unmanned aircraft when it made repeated reference to the conspiracy at his trial. Gov't Resp. at 8 ("In the Timimi trial, the government never sought to portray the UAV as anything more than what it was – a way of flying an aircraft remotely.") The government was clearly not suggesting that Abu Khalid was a recreational aircraft aficionado or that there was nothing sinister about an effort to acquire "an airplane with a 10-12 foot wingspan using Global Positioning ("GPS") coordinates." Gov't Resp. at 8. This was evidence presented at the trial of Dr. al-Timimi and the jury necessarily would link the conspiracy to him, particularly with the government trying to establish a direct link with

8

Abu Khalid. The government knew that this evidence would hold a particular association and interest for a Northern Virginia jury sitting near the site of the Pentagon attacks. The government's argument is akin to presenting evidence of a large purchase of gasoline by a claimed associate of a defendant in an arson case but insisting that it was not suggesting that the gas was meant for anything other than a Sunday drive.

IV. **THE GOVERNMENT FAILS TO ADDRESS ITS FAILURE TO TURN OVER MATERIAL EVIDENCE UNDER CONTROLLING AUTHORITY.**

As noted above, the government does not contest that it knew the true identity of Abu Khalid and the user of the e-mail address johninformation@yahoo.co.uk. It also does not explain why, in spite of repeated specific requests from the defense, the government disclosed nothing or why, in hearings where the lack of discovery on Abu Khalid was discussed, the government essentially stayed silent. Finally, the government does not respond to the legal authority cited in the motion and supporting memorandum on its obvious duty to disclose such information in direct response to questions from the defense.

As stated in *United States v. Caro*, the government has a Constitutional obligation under *Brady v. Maryland* to disclose "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment." 597 F.3d 608, 619 (4th Cir. 2010); *see also United States v. Fisher*, 711 F.3d 460, 471 (4th Cir. 2013). The government also has an additional obligation under Rule 16(a)(1)(E)(i), one that it fails to address, which requires it to make available any requested items that are "material to preparing the defense." This includes evidence that could be used for "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

Curiously, the government implicitly acknowledges the failure on its part to turn over a

July 7, 2002 FBI memorandum that references Dr. al-Timimi and alleged co-conspirator Seifullah Chapman and long pre-dates the period represented to the Court as the start of the investigation of Dr. al-Timimi. For example, Special Agent Ammerman affirmatively testified before this Court that the investigation of Dr. al-Timimi began in February 2003. *Trial Tr. Vol. 5* at 1337:5-6, Apr. 11, 2005; *see also* Dkt. No. 220, *Hr'g Tr.* 38:9-11, Jan. 16, 2007 (Court states that "the government insists that there was no material investigation of Timimi until 2003"). The government offers not a single line explaining why this evidence was not turned over, and instead it speaks as if the evidence, which it obviously has read and continues to possess, could contain anything or nothing. As discussed in more detail below, this Court has discussed how Seifullah Chapman was tied to Abu Khalid and gave testimony on both Khan and Pal Singh, whom the government had initially identified as Abu Khalid. *United States v. Masoud Khan, et al.*, 309 F. Supp. 2d 789, 812 (E.D.Va. 2004). Indeed, Chapman was repeatedly referenced as the person who could contact Abu Khalid at the al-Timimi trial. *Trial Tr. Vol. 1* at 1065, Apr. 4, 2005 (discussing Chapman as a contact for Abu Khalid).

Moreover, the government fails to address the fact that the July 7, 2002 date is central to the requested discovery in this case because it was during roughly the same period that Seifullah Chapman said he hosted Pal Singh. *See Memorandum Opinion* at 40, *U.S. v. Khan, et. al.*, No. 1:03-cr-00296A-LMB (E.D. Va. 2004), ECF No. 472. Yet, the government insists in this filing that "[s]imply as a matter of logic and common sense, the existence of a memorandum mentioning Timimi and Chapman from an FBI office in Seattle in July 2002 does not establish that (1) the FBI's awareness of Timimi and Chapman was based on some sort of surveillance; (2) there was discoverable evidence about Ajmal Khan from this time [sic] particular time frame that was not disclosed; or (3) there was anything discoverable about Timimi or Chapman from that

time frame that was not disclosed." Gov't Resp. at 10. Under this logic, virtually none of the discovery given to the defense would have been produced. Indeed, the government seems to want the defense to produce the content of a document in order to seek its production in discovery.

Chapman was obviously a key figure in the alleged Virginia Jihad and this evidence involves both him and the defendant. Moreover, the date just happens to fall in the middle of dates that the government stated as critical in its investigation. In a June 24, 2004 interview by FBI Agents John Wyman and Wade Ammerman, about which Special Agent Wyman testified at trial, the government pressed Dr. al-Timimi about a meeting with Abu Khalid that took place "sometime between February 2002 and June 2002." *Trial Tr. Vol. 6* at 1650:19-20, Apr. 12, 2005. The date of the document also falls shortly after Abu Khalid was known to have visited the United States and shortly before (in late 2002) Abu Khalid sent communications regarding the unmanned aircraft. The government's insistence that it fails to see anything that would have required disclosure from such facts should only reaffirm the need for full disclosure of such evidence for the Court and defense counsel to review.

The government finally insists that any additional evidence that it might have disclosed would necessarily have harmed rather than helped Dr. al-Timimi. This is precisely what the Court warned the prosecution against when it said that our system requires the defense to be able to review and evaluate such evidence. *Dkt. No. 220, Hr'g Tr.* 42:25-43:10, Jan. 16, 2007. However, putting aside the right of the defense to such evidence, the government ignores any possible interpretation of events other than its own. For example, not long before the trial, the government insisted that Abu Khalid was Pal Singh, not Ajmal Khan. That creates a question as to who it actually was that was brought to Dr. al-Timimi's house. The government also ignores

the importance of such evidence in examining witnesses like Ammerman and Kohlmann on their prior evaluations of evidence and identification of key figures associated with LET. The government's changing of the identification of Abu Khalid between trials seriously undermined its credibility. Finally, evidence like Khan's travel records and passport (requested but not turned over the defense) would have allowed the very "probing" questioning that the government now cites in its own defense. The defense could have shown that this key individual met with various co-conspirators in this area but failed to call or meet with Dr. al-Timimi. Indeed, with such records and no contacts, the defense could have renewed its request to the Court to exclude this evidence or in the alternative shown the jury that the government had extensive evidence on Khan's movements and found not a single connection to the alleged conspiracy. The government itself admits that "the proof did not come in as expected and, as a result, the inference was not an obvious one to draw." Gov't Resp. at 6. This admittedly weak connection would have been made virtually non-existent by showing who Abu Khalid is and how his extensive contacts appeared to conspicuously exclude the man that the government insisted was the head of the so-called "Virginia Jihad." The government and the defense can obviously disagree on such issues, but as the Court noted it is not up to the government to determine what evidence it would find persuasive in refuting its theories.

Secondly, the government fails to address Dr. al-Timimi's point that, just eight months before the al-Timimi trial, it was claiming that Abu Khalid was not Mohammed Ajmal Khan, but Pal Singh. This understanding was incorporated into the Court's decision in the trial of *United States v. Masoud Khan, et al.*:

> Chapman [also] testified that Abu Khalid, who used the johninformation e-mail account, is the same person as Pal Singh, who uses the e-mail address of psingh@hotmail.com. Chapman's testimony that Abu Khalid and Pal Singh are the same person

> [was] buttressed by technical evidence that the government introduced through Evan Kohlmann ... The johninformation@yahoo.co.uk account was created in the summer of 2001 from an Internet connection at Coventry University in England, by someone using the alias "John Smith" ... Chapman shipped video equipment for a model airplane to Pal Singh in Coventry, England. ... Based on this evidence, and because Kwon encountered [Abu] Khalid in Pakistan and Chapman encountered Singh in the United States, [the Court] dr[e]w the inference that Singh routinely travels between Pakistan, the United Kingdom, and the United States.

*United States v. Masoud Khan, et al.*, 309 F. Supp. 2d 789, 812 (E.D. Va. 2004). The Pal Singh issue is significant because Pal Singh was fully acquitted of association with LET and terrorism-related activities.[2]

This record shows the government said different things in different trials to achieve different ends in the use of the mysterious figure of Abu Khalid. That record made it even more essential for disclosure to be made of the government's evidence under *Brady* and Rule 16 to allow the defense to probe the credibility of the claims of the government and the foundation for raising Abu Khalid at trial. The instant motion seeks to establish the record as to the scope and content of the undisclosed evidence related to Abu Khalid and his movements and associations. Only after such a review can the gravity of the government's failure to disclose this evidence be fully evaluated by the Court.

---

[2] *See Terror Supplier Gets Nine Years*, BBC News, Mar. 17, 2006, http://news.bbc.co.uk/2/hi/uk_news/england/coventry_warwickshire/4817432.stm; *Terror Charge Man Cleared*, Birmingham News (UK), Mar. 9, 2006, http://www.birminghampost.co.uk/news/local-news/terror-charge-man-cleared-3985446.

## VI. CONCLUSION

For the foregoing reasons, and for reasons articulated in the supporting Memorandum of Points and Authorities, Dr. al-Timimi respectfully asks for the Court to grant his Motion to Compel Discovery Related to Abu Khalid.

Dated: August 22, 2013

Respectfully submitted,

Dr. Ali al-Timimi, by Counsel:

_____
Vishant Manu Krishnan (VSB # 82308)

Jonathan Turley (*pro hac vice,* lead counsel)
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001 (phone)
(202) 994-9811 (facsimile)

Vishant Manu Krishnan (VSB # 82308)
Bryan Cave LLP
1155 F Street, NW, Suite 700
Washington, D.C. 20004
(202) 508-6000 (phone)
(202) 508-6200 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of August, 2013, the foregoing was given to the court security official in compliance with prior court orders for filing and delivery to both the Court and opposing counsel.

_____
Vishant Manu Krishnan (VSB # 82308)
*Counsel for Dr. Ali al-Timimi*

Case 1:04-cr-00385-LMB   Document 311   Filed 08/22/13   Page 15 of 15 PageID# 378

15