UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Filed with the Classified
Information Security Officer
CISO ᴍᴇᴇᴛᴇʀ
Date 9/14/2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **Case No. cr-04-385** |
| **v.** | ) | |
| | ) | **Hon. Leonie M. Brinkema** |
| **ALI AL-TIMIMI** | ) | |
| | ) | **UNDER SEAL** |

### DEFENDANT DR. ALI AL-TIMIMI'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY OF ANY CLASSIFIED EVIDENCE GATHERED PURSUANT TO THE PRESIDENT'S SURVEILLANCE PROGRAM AND "OTHER INTELLIGENCE ACTIVITIES"

Defendant Dr. Ali al-Timimi respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland* and its progeny, to compel the government to produce all material classified evidence captured pursuant to the President's Surveillance Program ("PSP"), a collection of intelligence activities authorized by President George W. Bush in the weeks following the terrorist attacks of September 11, 2001. Earlier this week, the Defense filed an unclassified motion seeking any material evidence from PSP or previously undisclosed programs. This motion is intended to address the very limited references and disclosures made to the Defense in classified filings. While the Defense again objects to the continued classification of these filings and does not see why this filing should be treated as classified, it has filed the motion in the SCIF due to references to the classified filings of the government. It is worth noting again, however, that the government has yet to show the Defense a single document following the remand of this case, including documents that were withheld

from the trial counsel involving such key figures as Dr. Suliman Al-Buthe. [1] The Defense filed a series of prior motions addressing the need for disclosures and objecting to both the narrow scope of the government's search as well as its over-classification of filings. As far as cleared Defense Counsel can determine, the government has chosen not to respond to prior motions filed in the SCIF.

In 2006, the Court of Appeals for the Fourth Circuit remanded this case before this Court because of public reports about the Terrorist Surveillance Program ("TSP"), a sweeping surveillance program conducted at the behest of President Bush beginning in 2001. Subsequent to the last hearing in this remand, the Inspectors General of various intelligence agencies published a report (Unclassified Report on the President's Surveillance Program, or "PSP Report")[2] that revealed not only a broader warrantless surveillance program, but one that raised substantial concerns within the Justice Department over its constitutionality as well as violations of federal discovery orders in national security cases. The report also refers to "other intelligence activities," that may not have been treated as part of PSP or other previously named programs. These concerns were raised specifically with reference to cases occurring during the period of the al-Timimi investigation and prosecution and, in addition, a 2012 FOIA request by Defense Counsel indicates that the government may possess PSP-related documents that discuss Dr. al-Timimi.

---

[1]      The government has insisted on describing these documents without explaining why counsel should not read the full text of the material. The only document produced was an unclassified affidavit of Adel Tahir. See Government's Supplemental Report Regarding The Search For Five Categories of Discoverable Materials (Docket #280).

[2]      The PSP report is unclassified and has been filed as Exhibit A in the earlier Motion To Compel Discovery of Evidence Gathered Pursuant To The President's Surveillance Program And Other Intelligence Programs.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

In prior classified filings, the government has made reference to the TSP, which it now publicly acknowledges is a smaller program than the PSP. This was obviously known at the time of the remand but not disclosed to counsel. It is not clear whether prior searches of relevant information including the PSP or other intelligence programs. It is also not clear if some of the evidence relied upon by the investigators in this case came from such previously undisclosed programs. Given the history of this remand, and in light of the above information, the defense now asks this Court to establish that the government has not limited its searches for undisclosed evidence to any particular agencies or programs, and, in particular that its efforts have included searching all components of the President's Surveillance Program or other similar programs that may have been operative from 2001 to 2004. In addition, given the government admission that violations of federal discovery rules as well as federal law may have occurred vis-à-vis the PSP, the Defense seeks confirmation of what information derived from TSP, PSP, or other programs was used by investigators. Such information would have allow the Defense to challenge evidence used at trial that was the product originally of unlawful surveillance programs.

I.    **FACTUAL BACKGROUND**

The factual background in this case is fully laid out in the earlier motion seeking PSP evidence. In the prior classified motions,[3] the Defense objected to the government's clear restriction of its search to material in the possession of the NSA. Defendant Dr. Al-Timimi's Memorandum of Points and Authorities In Support of His Motion To Compel Discovery of

---

[3] In prior classified filings, the Defense moved in the SCIF for the government to conduct a broader search for withheld evidence in this case while objecting to the narrow construction given the Court's prior orders. See, e.g., Defendant Dr. Ali Al-Timimi's Memorandum of Points and Authorities In Support of His Motion To Compel Discovery of Undisclosed Surveillance Evidence (Docket #267); Defendant Dr. Al-Timimi's Memorandum of Points and Authorities In Support of His Motion To Compel Discovery of Evidence Beyond The Narrow Scope of the Government's Prior Search of NSA Material (Docket #270). These prior motions also included Defense requests for a finding of materiality of information that was previously withheld. See Defendant Dr. Ali Al-Timimi's Memorandum of Points and Authorities in Support of his Motion for a Finding of Materiality Regarding His Intercepted Communications With Dr. Al-Buthe (Docket # 266).

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Evidence Beyond The Narrow Scope of the Government's Prior Search of NSA Material (Docket #270).[4] In addition, the government makes repeated reference to the TSP as the focus of the Defense inquiries. *See, e.g.,* Government's Supplemental Report Regarding The Search For Five Categories of Discoverable Materials (Docket #280) at 5 ("Subsequently, undersigned counsel was cleared to review materials obtained by the NSA including materials, if any, pursuant to the TSP as publicly described by the President."). It is simply not clear if all agencies and programs were subject to the prior search or whether opposing counsel was given access to the full range of PSP and other intelligence program information. With the release of the PSP report, the government's references to TSP magnify the concerns expressed in the prior motions and prompted both this motion and the related motion filed for the public docket.

When the Court of Appeals for the Fourth Circuit remanded this case to this Court for additional proceedings after reports surfaced of previously undisclosed surveillance programs covering individuals material to the case against Dr. al-Timimi, there was no limitation to the TSP and the Defense was careful to stress that it was seeking discovery of any undisclosed surveillance information. The remand included, among other purposes, inquiry into whether previously undisclosed surveillance contained material evidence that the government had been obligated to produce pursuant to Rule 16 or *Brady v. Maryland* and its progeny. Dkt. No. 183, CIPA Hr'g Tr. at 31:9-14, July 21, 2006.

While motions have been pending on both classified and unclassified dockets in the case, the Defense continued to pursue publicly available information on the scope of prior undisclosed surveillance by the government. This included efforts by Defense Counsel, following the release of the unclassified PSP Report, to obtain documents under the PSP related to Dr. al-Timimi.

---

[4] The instant motion supplements this motion (#270) in light of the new information disclosed by the government.

One such Freedom of Information Act (FOIA) request was answered in 2012. In its FOIA letter, the Defense noted the public acknowledgement of the PSP program and asked for summaries and documents that "reference, discuss, mention, or list the name of Dr. Ali Al-Timimi." Exhibit B (Letter To Office of Inspector General). Defense counsel also cooperated with an investigation of the Inspector General's office into undisclosed surveillance programs and alleged false statements in the al-Timimi case.[5]

On June 5, 2012, the Office of the Inspector General wrote to the defense that there were documents that were responsive to its request, and that those documents had been reviewed. Exhibit C (Letter To P.J. Meitl).[6] The Inspector General, however, had determined that these documents must remain entirely classified. Thus, while the inquiry under the PSP had confirmed relevant documents, those documents remain undisclosed to this day.

## II.   RECENT DISCLOSURES ESTABLISH THAT THE PSP IS BROADER THAN THE TSP AND THAT THE JUSTICE DEPARTMENT FOUND THE PROGRAM RAISED SERIOUS PROBLEMS UNDER FEDERAL DISCOVERY RULES.

In the July 2009 PSP Report, the government disclosed the existence of a program that was far broader than just the Terrorist Surveillance Program, the program that was the subject of widespread media reports in 2005 before the remand in this case.

The PSP Report states that "the PSP expanded NSA's authority by allowing it to conduct electronic surveillance within the United States without an order from the [Foreign Intelligence Surveillance Court] when certain factual and legal standards were met," and explicitly states

---

[5]      The results of this IG investigation were not made publicly available and it is not clear if the al-Timimi case was referenced or relied upon in the classified review regarding potential discovery violations.[6]   Mr. Meitl was former local counsel in this case who is now a federal prosecutor with the United States Department of Justice.[8]      Former United States Attorney for the Eastern District of Virginia Chuck Rosenberg is expressly referenced in the PSP Report as part of the internal debate over the illegality of the PSP program. *Id.* at 27 n. 18.
[6]      Mr. Meitl was former local counsel in this case who is now a federal prosecutor with the United States Department of Justice.[8]   Former United States Attorney for the Eastern District of Virginia Chuck Rosenberg is expressly referenced in the PSP Report as part of the internal debate over the illegality of the PSP program. *Id.* at 27 n. 18.

Case 1:04-cr-00385-LMB   Document 320-1   Filed 09/16/13   Page 6 of 10 PageID# 1999

that the PSP was broader than the previously disclosed TSP program. PSP Report at 5.    It further notes that there exist other previously undisclosed intelligence programs that go beyond the disclosed PSP programs and are referred to in the PSP Report as "other intelligence activities." *Id.* at 6.    The government acknowledged that the PSP "was more aggressive than those traditionally under FISA." *Id.* at 16. Eventually, high-ranking officials at the Justice Department threatened to resign over the unlawful scope and basis for the program as well as the "over-secrecy" of the PSP. *Id.* at 27.

Significantly, the report details how this potentially unlawfully gathered material was distributed to FBI and U.S. Attorney's offices. *Id.* at 17. These concerns extend to the "other intelligence activities," which in 2004 were found to have been approved by the U.S. Attorney General based on false assumptions. *Id.* at 26 n. 17.

In mid-2004, critical changes were made to the PSP program to address the unlawful basis for the surveillance.[7] *Id.* at 29. The PSP Report confirms that officials saw the obvious danger of violating federal discovery rules with the collection and sharing of such surveillance material. Specifically, officials admitted that they foresaw that "such information might impact [FISA] process." *See id.* at 18 (DOJ officials admitting that they foresaw that PSP-derived information could impact the FISA process, and acknowledging that the "DOJ was aware as early as 2002 that information collected under the PSP could have implications for the DOJ's litigation responsibilities under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963)."[8] *Id.* at 18-19. The PSP Report expressly stated the need to "re-examine past cases to see whether potentially discoverable but undisclosed Rule 16 or *Brady* material was

---

[8]     Former United States Attorney for the Eastern District of Virginia Chuck Rosenberg is expressly referenced in the PSP Report as part of the internal debate over the illegality of the PSP program. *Id.* at 27 n. 18.

[8]     Former United States Attorney for the Eastern District of Virginia Chuck Rosenberg is expressly referenced in the PSP Report as part of the internal debate over the illegality of the PSP program. *Id.* at 27 n. 18.

collected under the PSP, and take appropriate steps to ensure that it has complied with its discovery obligations in such cases." *Id.* at 18.

Such admissions raise the question of whether unlawfully gathered material was used to target individuals like Dr. al-Timimi – information that would have been the subject of suppression motions. [9]  The most immediate question, however, remains the scope of such surveillance related to Dr. al-Timimi.  While it is not clear that the aforementioned review included a review of the evidence used in the al-Timimi investigation, it is clear, as detailed in Dr. al-Timimi's recently filed motion to compel discovery of undisclosed FISA Surveillance, that intelligence was made available to investigators and prosecutors at the Eastern District of Virginia, who were particularly eager to review intelligence files that became available at 9-11:

> Another important change after 9-11 was that Assistant United States Attorneys ("AUSAs") "can now review 'intell' files" for potential criminal violations and discuss those files with agents. *AUSAs from the Eastern District of Virginia came over to the WFO and reviewed "intell" files in late 2002 or early 2003. They reviewed all information in the files, including the FISA information "all the way back to pre-PATRIOT Act cases."* (emphasis added).

Memorandum for the Record, Interview of FBI Washington Field Office Special Agent, by 9/11 Commission (July 31, 2003), *see* Def. Motion To Compel Discovery Of Evidence Gathered Pursuant To The President's Surveillance Program (Exhibit B).

Whether information from the PSP (or "other intelligence activities") information was shared at that time, it is likely that these investigators and prosecutors were given access to PSP-derived material in this case.  Given the public acknowledgment of the flawed legal analysis for

---

[9]      The PSP program has been widely criticized as overtly unconstitutional. *See, e.g.,* Tracey Maclin, *The Bush Administration's Terrorist Surveillance Program and the Fourth Amendment's Warrant Requirement: Lessons from Justice Powell and the Keith Case,* 41 U.C. Davis L. Rev. 1259 (2007-2008); Jack Balkin, *The Constitution in the National Surveillance State,* 93 Minn. L. Rev. 1 (2008); Robert Bloom & William Dunn, *The Constitutional Infirmity of Warrantless NSA Surveillance: The Abuse of Presidential Power and the Injury to the Fourth Amendment,* 15 Wm. & Mary Bill Rts. J. 147 (2006-2007); *see also* http://balkin.blogspot.com/FISA.AUMF.ReplytoDOJ.pdf (citing the view of numerous constitutional experts).

Case 1:04-cr-00385-LMB   Document 320-1   Filed 09/16/13   Page 8 of 10 PageID# 1901

the PSP program, as well as the concerns for discovery rules, the relevance to this remand is obvious. This concern is magnified with the response of the Office of Inspector General to defense counsel, acknowledging that there exist documents that were responsive to the inquiry regarding Dr. al-Timimi, but declaring such documents to be classified. Since the government expressly limited its search and referenced TSP, the record should reflect whether the prior searches included all programs, including PSP, and whether any evidence from that program was reviewed by investigators or prosecutors in this case.

## III. THE GOVERNMENT SHOULD PRODUCE AND IDENTIFY ALL RELEVANT SURVEILLANCE UNDER THE PSP AND "OTHER INTELLIGENCE ACTIVITIES".

Under the Fourth Circuit's application of *Brady v. Maryland* and its progeny, Due Process requires that the government disclose "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). The Supreme Court subsequently extended the *Brady* disclosure rule to material impeachment evidence. *Giglio v. United States,* 405 U.S. 150, 154 (1972); *United States v. Fisher*, 711 F.3d 460, 471 (4th Cir. 2013). Likewise, Dr. al-Timimi is clearly entitled to the requested evidence under the much more permissive standard of Rule 16(a)(1)(E)(i), which requires the government to make available any requested items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); *Caro*, 597 F.3d at 620-21 (agreeing that Rule 16 is "much broader" than *Brady*, and provides the "minimum amount of pretrial discovery granted in criminal cases"). "[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

To the extent that material surveillance information was generated related to Dr. al-

Timimi, it should have been turned over regardless of whether it was part of the TSP, PSP, or "other intelligence activities." To the extent that such documents are deemed classified, it should be disclosed to cleared counsel. However, since PSP itself is no longer deemed classified, the Defense believes that the government should answer the earlier motion on the PSP as part of the public record.

IV. CONCLUSION

In light of the foregoing, Defendant Dr. al-Timimi respectfully requests that this Court order the government to confirm that the scope of its prior search (as detailed in prior classified filings) encompassed all federal agencies and all surveillance programs, including but not limited to the PSP. Additionally, Dr. al-Timimi asks the government to confirm what evidence from TSP, PSP, or other previously undisclosed intelligence activities were reviewed by investigators or prosecutors in the investigation of Dr. al-Timimi and the so-called "Virginia Jihad."

Dated: September 13, 2013

Respectfully submitted,
Dr. Ali al-Timimi, by Counsel:

Jonathan Turley (*pro hac vice*, lead counsel)
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001 (phone)

(202) 994-9811 (facsimile)

Vishant Manu Krishnan (VSB # 82308)
Bryan Cave LLP
1155 F Street, NW, Suite 700
Washington, D.C. 20004
(202) 508-6000 (phone)
(202) 508-6200 (facsimile)

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2013, the foregoing was given to the

court security official at the SCIF assigned to this case in compliance with prior court orders for

filing and delivery to both the Court and to opposing counsel.

Jonathan Turley

*Lead Counsel for Dr. Ali al-Timimi (pro hac
vice)*

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE