IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:04cr385 |
| | ) | |
| ALI AL-TIMIMI | ) | |

GOVERNMENT'S RESPONSE TO DISCOVERY MOTION RE: FISA

Defendant Timimi moves for discovery involving evidence captured pursuant to the Foreign Intelligence Surveillance Act ("FISA"). The motion should be denied because Timimi was provided with the relevant FISA intercepts in 2004.

I. All Of the FISA Intercepts in Question Were Provided to Timimi in 2004

Timimi seeks an order directing the United States to provide to his counsel all FISA surveillance that was used in the investigation of Timimi and his co-conspirators in the "Virginia Jihad" conspiracy. No order is necessary now because all such FISA intercepts were provided to Timimi's counsel in 2004.

Timimi's receipt of the FISA intercepts of his own phone calls is documented by a letter to his counsel from December 28, 2004:

> You have received the cds with the telephone calls and emails that were captured under the FISA surveillance over Timimi. Of these calls, eight have been declassified. They include four calls to same number about the Space Shuttle article, on 1/31/03 and 2/1/03 (including one call consisting of Timimi reading the article to his listener), one call that was an exhibit at the last trial, with Hammad and Royer calling Timimi; one call that was consensually-monitored, from Kwon to Timimi, for which you already have the transcript in the *Brady* scan materials, and one call with Royer about a press conference.

*Discovery Letter #8*, at Paragraph 2, attached as Exhibit D to Timimi's Motion to Compel Discovery of Undisclosed Material Intercept Evidence Captured Pursuant to Foreign Intelligence Surveillance Act (hereinafter "Timimi's FISA Motion").

Timimi's receipt of the FISA intercepts of the phone calls made by the co-conspirators is documented by a letter to his counsel on November 12, 2004:

> You requested what I understand to be prior statements and fruits of FISA warrants with respect to any of Al-Timimi's co-conspirators. I expect to have available for you next week cd-roms containing **all** of the phone conversations and e-mails captured pursuant to FISA or other authority for Royer, Khan, Hammad, Caliph, Hamdi, Chapman, Kwon, Hasan, Surratt, and Aatique. Such of this information that was derived from FISA likely will still be in classified form so that you will have to obtain it from Christine Gunning. . . .

*Discovery Letter #3*, at Paragraph 4, attached as Exhibit C to Timimi's FISA Motion (emphasis added).

Moreover, although this information was initially provided in classified form in November 2004, it also was made available to Timimi the next month in declassified form. As written to Timimi's counsel on December 28, 2004:

> I am ready to provide you cd-roms containing emails and phone calls of other conspirators in this case, which emails and phone calls were captured by FISA. I do not believe that they contain exculpatory evidence in addition to that which you already have obtained (*i.e.*, exhibits introduced in the last trial including self-serving statements by Royer and Hammad). You may find them useful because they may contain previous statements of potential witnesses. They have been declassified. That being said, they *were* captured by FISA, and I am authorized to give them to you only for use in connection with this trial. Accordingly, I will provide them to you if you represent to me that you will not make copies of them (or allow copies of them to be made) except for use in connection with this trial, and that at the end of the trial you will return the original cd-roms and all copies that may have been made from them.

> If you agree with these terms, I can provide to you 11 cd-roms containing materials involving Masaud Khan; four cd-roms containing materials involving Aatique, one cd-rom containing materials involving Chapman, six cd-roms containing materials involving Royer, and 11 cd-roms containing materials involving Hamdi.

*Discovery Letter #8*, at Paragraph 1, attached as Exhibit D to Timimi's FISA Motion (emphasis in original).

II. The Intelligence Investigation of Timimi Pre-Dated 2003

Timimi claims that the government has insisted that its investigation and surveillance of Timimi began only in 2003. That claim should be given short shrift. At trial in 2005, Timimi did not even cross-examine Special Agent Ammerman on his testimony that the investigation began in February 2003, because it was apparent at the time that SA Ammerman was referring to the *criminal* investigation rather than an *intelligence* investigation. After all, Timimi received in pre-trial discovery SA Ammerman's affidavit in support of the application that was used to support the search of his residence in February 2003 - - and that affidavit detailed information that was provided to the FBI about Timimi by confidential informants in 2002. *See Affidavit in Support of Applications for Search and Seizure Warrants,* attached as Exhibit J to Timimi's motion for discovery regarding Anwar Awlaki.

Further, as SA Wyman testified at Timimi's trial, the FBI first interviewed Timimi in September 2001 about the 9/11 attacks. Transcript of Testimony, April 12, 2005, at p. 1583, 1709-11. Indeed, as the government established through Government Exhibit 10H1a at trial, Timimi commented in an internet chat session in October 2001 that his brother was harassed by the FBI because of his relationship to Timimi. In short, all parties knew before Timimi's trial that an investigation of Timimi pre-dated February 2003.

III. The Existence of an Intelligence Investigation Does Not Imply the Existence of FISA Intercepts

At trial, the parties stipulated that Timimi was subjected to court-authorized electronic surveillance for a significant portion of 2003. *See* Exhibit A to Timimi's FISA Motion. Timimi now claims that the government must possess FISA intercepts that were captured before 2003 but previously withheld, essentially based on indications that he and his co-conspirators were identified in intelligence investigations that pre-dated 2003. Indeed, he claims that the entire criminal prosecution arose from FISA-derived evidence. This claim is based on a fundamental misunderstanding of the nature of intelligence investigations, and the relationship between intelligence investigations and FISA intercepts.

Timimi's argument is premised on his failure to understand that FISA intercepts are the product of a technique that is not used in all intelligence investigations; as a result, he conflates intelligence investigations with investigations that use FISA as an investigative technique. This equation of intelligence investigations with investigations that use FISA as an investigative technique is simply false.

While it is certainly true that FISA intercepts are obtained in *some* intelligence investigations, it is also true that FISA intercepts are not obtained in *all* intelligence investigations. Similarly, while it certainly is true that *some* intelligence investigations include the use of FISA intercepts, it is also true that not all do. After all, FISA intercepts are obtained on the basis of a FISA warrant - - but that FISA warrant is only issued by the FISA Court on the basis of an affidavit setting forth probable cause to believe that the target of the electronic surveillance is a foreign power or an agent of a foreign power, and that each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a

foreign power or an agent of a foreign power. 50 U.S.C. § 1805. Such probable cause, however, does not burst into being fully-formed out of nothing; it no more self-generates in a sufficient quantity to obtain a FISA warrant in an intelligence investigation than it does to obtain a search warrant in a traditional criminal case.

Instead, probable cause for a FISA warrant is developed in a manner similar to the way that probable cause for a search warrant is developed in a typical criminal investigation. After all, FISA surveillance is but one investigative technique among a myriad of others available in intelligence investigations, including physical surveillance, trash covers, subpoenas, and confidential human sources. *See, e.g.,* the FBI's *Domestic Investigations and Operations Guide*, available in redacted form in the public realm, at http://www.aclu.org/files/pdfs/email-content-foia/FBI% 20docs/June%202012% 20FBI%20DIOG.pdf, at Section 18-7 (page 18-153) (identifying numerous investigative techniques available during intelligence investigations *other* than FISA surveillance).[1]

Many criminal investigations never find probable cause sufficient to obtain a warrant - - and the same is true in many intelligence investigations. Similarly, many criminal investigations are resolved without a warrant ever being obtained - - and the same is true in many intelligence investigations. Accordingly, even intelligence investigations that trigger criminal investigations

[1] The version of the *Domestic Investigations and Operations Guide* cited above is the one currently in effect, and did not exist during the Timimi investigation. Its identification of investigative techniques that are available during intelligence investigations *other* than FISA surveillance, however, is also generally descriptive of techniques that were available during the Timimi investigation. *See*, *e.g.*, what appears to be a redacted version of the Attorney General Guidelines for FBI Foreign Intelligence Collection and Foreign Counterintelligence Investigation, signed by Attorney General Reno in 1995, found at http://www.fas.org/irp/agency/doj/fbi/terrorismintel2.pdf.

need not ever have obtained FISA intercepts, and the evidence in such criminal cases need not be FISA-derived. Just as all criminal investigations do not include wiretaps or even search warrants, all intelligence investigations do not, either. Thus, it simply is a non-sequitur to conclude that FISA intercepts must exist from before 2003 because Timimi and some of his conspirators were identified in intelligence investigations before that date.

IV. The "4G" Series of Exhibits *Was* Captured By FISA, and *Was* Provided to Timimi Pre-trial

Timimi asserts that the "4G" series of exhibits seized from Seifullah Chapman's email account proves that the government obtained FISA intercepts that were not disclosed to Timimi in pre-trial discovery. Despite his assertion, however, the emails seized from Chapman's email account by FISA were, in fact, supplied to Timimi in pre-trial discovery. Moreover, he was notified at least twice that they were captured by FISA. *See Discovery Letter #3*, attached as Exhibit C to Timimi's FISA Motion ("I expect to have available for you next week cd-roms containing all of the phone conversations and e-mails captured pursuant to FISA or other authority for Royer . . . Chapman . . . and Aatique"); and *Discovery Letter #8*, attached as Exhibit D to Timimi's FISA Motion ("I am ready to provide you cd-roms containing emails and phone calls of other conspirators in this case, which emails and phone calls were captured by FISA . . . If you agree with these terms, I can provide to you . . . one cd-rom containing materials involving Chapman . . . . ").

Timimi bases his argument, in part, on the contrast between Government Exhibit 4G5 from the *Khan* bench trial, marked as "FISA Derived," and Government Exhibits 4G4 and 4G7 from Timimi's jury trial, which were not so marked, even though they all came from Chapman's email account. The difference results from two facts. First, many of Chapman's emails were

captured both by the FISA and also by a criminal search warrant that was subsequently executed on Chapman's email account.[2] Second, Timimi had a jury trial, but *Khan* was a bench trial.

Timimi's confusion regarding the 4G series of exhibits may result from his failure to recognize that, at the *Khan* bench trial, it was not necessary to redact classification markings from declassified documents. Clean copies of emails from that same account were used in Timimi's trial; the fact that email exhibits may have been "FISA-derived" (even though they were also obtained through a criminal search warrant) was irrelevant to the jury. Moreover - - as noted above - - the fact that the emails in question were derived from a FISA was disclosed in open Court and, in any event, to Timimi's counsel.

Respectfully submitted,

Kathleen M. Kahoe
Acting United States Attorney

By: /s/

Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

[2] *See* Transcript of the *Khan* trial*,* February 19, 2004, at p. 2069-70, attached as Exhibit K to Timimi's FISA Motion (Special Agent Wyman explaining that the Chapman emails were captured by a FISA); Transcript of the *Khan* trial, February 9, 2004, at p. 190-92, attached as Exhibit I to Timimi's FISA Motion (government counsel explaining that the emails were obtained by search warrant after they were first obtained through a FISA).

CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2013, I electronically filed the foregoing GOVERNMENT'S RESPONSE TO DISCOVERY MOTION RE: FISA with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Manu Krishnan
Bryan Cave LLP
1155 F Street, N.W., Suite 700
Washington, D.C. 20004
manu.krishnan@bryancave.com

/s/

Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov