Case 1:04-cr-00385-LMB   Document 328   Filed 09/26/13   Page 1 of 16 PageID# 1614

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Filed with Classified
Information Security Officer
CISO _____
Date ___9__|_26_|_2013_

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | Case No. cr-04-385 |
| v. | ) | |
| | ) | Hon. Leonie M. Brinkema |
| ALI AL-TIMIMI | ) | |
| | ) | |

## DEFENDANT DR. ALI AL-TIMIMI'S REBUTTAL TO THE GOVERNMENT'S RESPONSE TO MOTION TO COMPEL DISCOVERY CAPTURED PURSUANT TO FOREIGN INTELLIGENCE SURVEILLANCE ACT

In its reply to Dr. al-Timimi's recently filed Motion to Compel Discovery Captured Pursuant to the Foreign Intelligence Surveillance Act, the government contends (1) that it has never represented that its investigation and surveillance of Dr. al-Timimi began only in 2003; (2) that it provided all of the requested FISA discovery to Dr. al-Timimi in 2004; (3) that the existence of pre-2003 intelligence investigations against alleged co-conspirators does not necessarily imply the existence of FISA intercepts, and (4) that knowledge that certain evidence used against Dr. al-Timimi at trial was FISA-derived was immaterial to the defense. Because these arguments are either demonstrably untrue or irrelevant to the motion, Dr. al-Timimi's discovery request should be granted.

## I. THE GOVERNMENT HAS REPRESENTED THROUGHOUT THIS CASE THAT ITS INVESTIGATION AND SURVEILLANCE OF DR. AL-TIMIMI BEGAN IN 2003

In its response, the government asks the Court to give "short shrift" to the notion that the "government has insisted that its investigation and surveillance of Timimi began only in 2003." *Dkt. No. 322 at 3.* In doing so, the government not only turns on its head its repeated position during this case, but in fact asks the Court to discount its own words. *See Dkt. No. 220, Hr'g Tr.*

Case 1:04-cr-00385-LMB    Document 328    Filed 09/26/13    Page 2 of 16 PageID# 1615

38:9-11, Jan. 16, 2007 (Court stating that "the government insists that there was no material investigation of Timimi until 2003").[1]

Before the trial, defense counsel repeatedly raised the absence of pre-2003 investigation material, including the absence of pre-2003 FISA material. *See, e.g., Dkt. No. 145, Hr'g Tr.* 9:14-19, Jan. 28, 2005 (objecting to the absence of such evidence). The fact that such evidence was requested and denied by the government led to the critical stipulation between the parties that "the defendant was subject to court-authorized electronic surveillance for a significant portion of 2003." *Dkt. No. 154, Trial Tr. Vol. 7* at 1769:3-18 (Apr. 13, 2005). The stipulation reflected the clear understanding that Dr. al-Timimi was not subject to court-authorized electronic surveillance before 2003. Reaffirming this understanding, FBI Special Agent Ammerman earlier testified that his investigation of Dr. al-Timimi began only in February 2003. *Dkt. No. 152, Trial Tr. Vol. 5* at 1337:6 (Apr. 11, 2005).

After the remand of this case, current counsel also repeatedly raised the issue of pre-2003 investigations and the implausibility of the government's representation that Dr. al-Timimi was not the subject of FISA or other investigations before 2003. *See Dkt. No. 183, Hr'g Tr.* at 25, July 21, 2006 (defense counsel objecting to the "mysterious[]" absence of surveillance in the record after 9-11); *Dkt. No. 220, Hr'g Tr.* at 25-26, 32-36, Jan. 16, 2007 (objecting to the

---

[1]     It is important to note that the government does not directly respond to multiple 9/11 Commission "Memoranda for the Record" (MFRs) in which FBI personnel acknowledge that evidence from *pre-2003* intelligence investigations and FISA surveillance were reviewed by AUSAs following the fall of "the Wall." As previously discussed, the MFR of FBI WFO Counsel Duncan Wainwright reveals that the prosecution of the so-called Virginia Jihad conspiracy was one of only a few criminal cases that resulted from this effort. Obviously, such pre-2003 evidence constituted presumptively material evidence for the defendant proclaimed to be the leader of the conspiracy. *See Dkt. No. 156, Trial Tr. Vol. 9* at 2274:24-2275:2 (Apr. 18, 2005) (implying to jury that Dr. al-Timimi was "ringleader" of group of local men traveling abroad to engage in violent jihad). Such FISA surveillance represents core discoverable material and should have been disclosed to Dr. al-Timimi prior to his trial.

~~continued denial of any material surveillance before 2003); *Dkt. No. 254* at 9 ("The government~~ is suggesting that it does not have a single captured conversation for an almost seventeen month period between 9-11 and February 1, 2003 - not to mention surveillance before 9-11.").

This issue was also raised with the filing of a letter from Dr. al-Timimi's former trial counsel, Edward MacMahon. In 2006, MacMahon wrote to inform this Court that, during the course of representing another client, he had come across discovery in the SCIF indicating that Dr. al-Timimi had been the subject of a government investigation prior to 9/11. Exhibit A. In that same letter, he clearly expressed that he had not previously been made aware of any such investigation, and described to the Court the importance of this knowledge to Dr. al-Timimi's defense at trial. *Id.* Most importantly, he also stated explicitly that the existence of any related surveillance, pursuant to FISA or otherwise, would have meant Stipulation 60 *was false or grossly misleading*. In a declaration attached to this rebuttal, Mr. MacMahon reiterates these and other concerns regarding discovery in this case. *See* Exhibit B. Mr. MacMahon states unequivocally that the government's contention that "all such FISA intercepts were provided to al-Timimi's former lead counsel in 2004" is "untrue because I was never given pre-2003 material identified as having been FISA derived, nor told that such FISA material existed at all." *Id.* at ¶6. He further states that "the representation that 'all parties knew before al-Timimi's trial that an investigation of al-Timimi pre-dated February 2003' is demonstrably untrue and directly contradicts what I was told by Mr. Kromberg before trial. No such information was ever disclosed, and it would have been helpful to the defense had it been disclosed."[2] *Id.* at ¶9.

---

[2]     In his declaration, Mr. MacMahon also supports Dr. al-Timimi's other recent motions to compel discovery and confirms that he was not provided with critical discovery and information regarding Anwar al-Aulaqi and Abu Khalid. *Exhibit B* at ¶17. ("We were also never informed of surveillance on Aulaqi during this period or the involvement of a government 'asset' who could either have been Aulaqi himself or another person known to the defense. Mr. Kromberg

~~Following MacMahon's letter, this Court was sufficiently concerned about the existence~~ of pre-2003 surveillance that it subsequently ordered the government to search the National Archives and Records Administration's 9/11 Commission records for evidence of such an investigation. *Dkt. No. 210.* In January 2007, the Court stated during a hearing that it understood the government's contention to be that there was no material investigation of Dr. al-Timimi until 2003. *See Dkt. No. 220, Hr'g Tr.* 38:9-11, Jan. 16, 2007. The government, even though it immediately attempted to clarify another of its representations, never suggested that the Court's understanding was somehow wrong or inaccurate. *Id.* at 38:14-17.[3]

## II.  THE GOVERNMENT HAS CONCEALED THE EXISTENCE OF PRE-2003 FISA SURVEILLANCE IN THIS CASE

A review of the unclassified discovery provided to the defense in this case confirms that (1) consistent with the government's previous representations throughout this case, none of the FISA-related material given to the defense pre-dated 2003; and (2) the government unequivocally represented that pre-2003 e-mails from co-conspirator e-mail accounts, which it now admits were captured under FISA, were *not* FISA-derived. As described in Dr. al-Timimi's recent memorandum, among these e-mails was exhibit 4G7, a June 2001 e-mail introduced at trial, over defense objections, as having been sent by Dr. al-Timimi.

---

never disclosed anything of the governments role in allowing Aulaqi into the U.S., including dropping warrants and waiving visa requirements.").

[3]    The government had a strikingly similar response to Dr. al-Timimi's recent motion regarding the withholding of evidence related to Abu Khalid. When the defense argued that the government knew the identity of Abu Khalid at trial, the government did not deny knowing the identity, despite pre-trial and trial hearings where the lack of identification was raised by the defense. Instead, the government tried to point to two pages of discovery where two individuals gave their view of the true identity of this figure. The government simply dismisses appearances before the Court where it participated in the discussion regarding the lack of such knowledge. *See Dkt. No. 318* at 3-6.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

4

~~Notably, the government does not deny that it possessed pre-2003 FISA surveillance that~~ to this day has not been disclosed, let alone supplied, to the defense. There remains no record on the actual scope of such withheld material from prior FISA searches or investigations. The defense's motion does not simply raise the concealment of the FISA origins of evidence in the case, but also the failure to disclose what appears to be a significant amount of pre-2003 FISA evidence that captured communications of Dr. al-Timimi and his alleged co-conspirators.

The government now admits that it does indeed have pre-2003 surveillance on Dr. al-Timimi, but has not even produced a standard index of such intercepts or investigation records. Other trials, for example, reference material under the 3G series, 5G series, and 9G series that were not disclosed to the defense in this case, including what may be FISA-generated material.[4] These documents from other trials also include material with FISA markings and include the communications of alleged co-conspirators regarding clearly material subjects like contacting LET. Now that the government admits, contrary to its prior representations, that Dr. al-Timimi was part of pre-2003 FISA investigation, it should produce an index on such material as well as confirmation of the FISA origins of evidence previously given to the Court or the defense.

---

[4]    The review of files from prior cases shows confusion in communications with Mr. Kromberg as to the origin of some documents. In the case of Benkahla, for example, there is 2004 correspondence indicating that some of the 9G series contained FISA material. Mr. Kromberg later in 2006, however, referred to this same CD as "Yahoo searches." That production led to the discussion memorialized in the Shapiro note. Mr. Shapiro stated that he was told by Mr. Kromberg that FISA surveillance occurred after Benkahla's arrest in 2003. See Exhibit C. To the extent that the government confirmed and supplied pre-2003 FISA material in that and other cases, it decided not to do so in this case, according to prior counsel. If the Shapiro memorandum is accurate, then the government later stressed that a Yahoo search alone was done before the Benkahla's arrest. Either way, the record of such material should be clearly established for each of these "G Series" as well as other material evidence held by the government. Absent such an index, the Court's review would be based solely on incomplete and anecdotal accounts.

Case 1:04-cr-00385-LMB   Document 328   Filed 09/26/13   Page 6 of 16 PageID# 1818

**A.** ~~Pre-2003 E-mails Captured Pursuant to FISA Were Represented to the~~ Defense as "non-FISA derived"

The government in its response confirms for the first time that 4G7 and other pre-2003 e-mails in the 4G series were in fact FISA-derived. *Dkt. No. 322* at 6. Although it attempts to cast this fact as an obvious one that it has freely and openly disclosed, its prior representations depict an attempt to conceal both this specific fact and the general existence of pre-2003 FISA surveillance. The government makes reference to material turned over to the defense in a series of CDs. The defense recently obtained those CDs, which the government confirms in its filing are not classified. *Id.* at 2.

Exhibit 4G7 and other pre-2003 e-mails obtained by the government from the e-mail address seifchapman@yahoo.com[5] were provided to the defense in November 2004, and were accompanied by Discovery Letter #4. The letter describes the provision of the following:

> Cd-roms entitled *"Copy Tkneisler Yahoo Court Order asad Ibn muhammad ismail royer seif chapman Groups"* [and another CD] which between them contain an electronic copy of all **the non-FISA derived e-mails** of which we are aware that may constitute relevant written statements of your client or those of co-conspirators in this case.

Exhibit D, Discovery Letter # 4 at p. 2, ¶6(e) (emphasis added).

Current defense counsel has examined the above-referenced CD and confirmed that at least some of the 4G series of exhibits, without markings indicating they were originally FISA-derived, were included.[6] A custodial declaration has been attached to this filing on the contents of that CD (as well as other discovery-related CDs). *See* Exhibit E at ¶13. A reasonable conclusion from reading Discovery Letter #4 is that the government wanted Dr. al-Timimi to

---

[5]    This CD-ROM also included e-mails from the e-mail addresses ismailroyer@yahoo.co and masadibnmohammed@yahoo.co.

[6]    The e-mails on this CD are provided in text files that are very difficult to read. Defense counsel has, however, viewed what clearly appears to be the e-mail contained in 4G7.

~~believe that these e-mails had not been captured under FISA. In light of these direct~~

representations to Dr. al-Timimi's counsel, the Court should now not permit the government to

rely on fleeting statements in another trial as proof that the origins of the 4G series were

disclosed in "open court." *Dkt. No. 322* at 7 n.2).

The duty under Rule 16, *Brady*, and other discovery rules is not for the government to

adequately produce evidence in some other case, but *this* case.[7] In the Ninth Circuit case of

*United States v. Shaffer*, the Court granted a new trial following the failure of the government to

disclose material impeachment evidence. 789 F.2d 682, 691 (9th Cir. 1986). The Court explicitly

rejected the government's contention that, because the material in question was disclosed to a co-

defendant, it had been effectively disclosed to the defendant:

> The government also makes the unsupported assertion that,
> because the tapes were disclosed to Shaffer's co-defendant, they
> were effectively disclosed to Shaffer. However, because the trial
> strategies of co-defendants often conflict (*i.e.,* each may seek to
> place liability solely on the other), we do not think it prudent to
> allow the government to satisfy its due process requirements to
> each of several defendants by merely giving exculpatory evidence
> to one defendant.

*Id. at* 690.[8]

---

[7]    Moreover, the prosecution has the duty to correct misrepresentations or false factual propositions that result from its statements or witnesses. *See, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959), aff'd *by Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (stressing that due process was violated "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."); *Napue,* 360 U.S. at 270 ("A lie is a lie, no matter what its subject, and . . . the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth . . . That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.").

[8]    This case is equally useful in considering the similar arguments raised with regard to withheld evidence raised by the defense recently in motions related to Anwar Aulaqi and Abu Khalid.  Those motion include explanations of how such evidence could have been used for impeachment purposes as well as for its direct value to establishing innocence.

Case 1:04-cr-00385-LMB   Document 326   Filed 09/26/13   Page 8 of 16 PageID# 1621

The government's representations to the Court are also directly contradicted by the

attached declaration of former counsel MacMahon, who states that:

> [T]he government claims that former defense counsel was notified that the 4G series of exhibits was FISA derived. That is also untrue. The government denied to me that such evidence existed, and the documents we were given in the 4G series lacked any FISA markings. Had such documents indicated a pre-2003 FISA source, we would have immediately informed the Court of the contradiction in representations made by the government and the need for additional discovery. Instead, the FISA markings were apparently deleted by the prosecutor without the blessing of the Court, and this allowed the Government's denials of pre-2003 FISA material to go unchallenged at any level. I know of no CIPA hearings in which the "scrubbing" of emails was approved under CIPA. Had this been disclosed, the existence of such evidence would have prompted more questions. I had no knowledge of any contemporaneous FISA of any of the "Virginia Jihad" defendants before 2003.

Exhibit B at ¶11.

In addition to questioning former counsel in this case, the defense has reached out to prior

counsel in other cases and found similar conflicts with the current representations made by the

government. For example, the government suggests that it confirmed pre-2003 FISA

surveillance in prior litigation. In response, defense counsel contacted Mr. Jonathan Shapiro,

who represented alleged co-conspirator Sabri Benkahla with Mr. John Keats, and who was also

counsel in the sentencing and appeal of the Khan case. Shapiro's files contain a memorandum to

the file by Shapiro that was written on March 28, 2006, after a conversation with Mr. Kromberg

on the subject of FISA evidence. The note, which is attached with Mr. Shapiro's declaration to

this filing, states in full:

> The search of the yahoo was done first, by regular search warrant[]. This was before Benkahla's arrest. Then, the FISA search was done, because there was concern that he was continuing to act with foreign powers. He was on bond and on the street. All the e-mails that will be used are the same ones entered into evidence previously. They are more than just the Allison and the other e-

mail but there was no big deal made about them the last time and
they were all stapled together and Gordon didn't want to un=staple
[sic] them.

The Urdu translator is there simply to translate the LET posters if
necessary.

They got the computer from the Saudi's.  There was no search
warrant for it.  Gordon says, that since he was granted immunity,
there was not [sic] reason not to be able to ask anything they
wanted.  He never considered the fact that there might be a fourth
amendment violation.

I told him what motions we are filing and told him I would e-mail
them to him as soon as I could.

Exhibit C.

Benkahla was arrested in Saudi Arabia in mid-2003. *See United States v. Benkahla*, 437 F.
Supp. 2d 541, 556 (E.D. Va. 2006).  Thus, the representation by Mr. Kromberg was clearly
understood to mean that the Yahoo! search was not related to any FISA surveillance, and that
any FISA surveillance did not occur until after Benkahla's arrest in that time period.  Notably,
the note contained the same distinction drawn between pre- and post-2003 investigation.  The
note shows a pattern of misleading representations that appear calculated to discourage inquiries
into pre-2003 discovery.

**B.    No Pre-Trial Discovery Explicitly Identified as "FISA- derived" Pre-Dates
2003**

The government in its response states in a conclusory fashion that "all such FISA
intercepts were provided to Timimi's counsel in 2004."  A review of the discovery letters and
accompanying CDs establishes that this is incorrect.

In Discovery Letter #3, the government stated its intention to provide FISA-related
discovery to Dr. al-Timimi.  *See* Discovery Letter #3, attached as Exhibit C to  Memorandum in
Support of Dkt No. 312.  As noted by the defense in its earlier memorandum, there is no
indication in the discovery letters that any of this FISA discovery, either related to Dr. al-Timimi

~~or alleged co-conspirators, pre-dated 2003.  In Discovery Letter #4, the government clarified its~~

position and stated that it was unable to obtain "use authority" to provide this FISA-related

discovery, and thus could not provide it at that stage.  Exhibit D at 1.  AUSA Kromberg also

claimed to defense counsel that "there is little information involved that I expect that you would

find particularly relevant."  *Id.*  As noted above, Discovery Letter #4 also misleadingly

referenced the provision of e-mails captured from Seifullah Chapman's e-mail account as "non-

FISA derived."  *Id.* at 2.

Nonetheless, in December 2004, the government did provide to the defense more than 30

CD-ROMs that, according to Discovery Letter #8, contained "emails and phone calls of other

conspirators in this case, which emails and phone calls were captured by FISA."[9]  Discovery

Letter #8, attached as Exhibit D to Memorandum in Support of Dkt. No. 312.  Current defense

counsel, after obtaining the CDs from trial counsel subsequent to the filing of the recent motion,

has examined the CDs,[10] and can confirm (1) that they contain files related to intercepted phone

conversations, not e-mails and (2) that *none of the phone calls pre-date 2003.  See* Declaration of

Custodian of Records, attached as Exhibit E.

Current defense counsel's review of the available unclassified discovery is entirely

consistent with trial counsel's objections to the Court pre-trial:[11]  The universe of acknowledged

[9]    According to the letter, these CD-ROMs comprise "11 cd-roms containing materials involving Masaud Khan; four cd-roms containing materials involving [Mohammed] Aatique, one cd-rom containing materials involving [Seifullah] Chapman, six cd-roms containing materials involving Royer, and 11 cd-roms containing materials involving Hamdi." (*See* Discovery Letter #8, attached as Exhibit D to Memorandum in Support of Dkt. No. 312)

[10]   Defense counsel was unable to locate the one CD-ROM apparently containing materials from Seifullah Chapman.

[11]   As noted *supra* and in earlier motions, defense counsel has been unable to obtain a definitive index of classified discovery provided to Dr. al-Timimi in the SCIF, and has been unable to locate one of the above CD-ROMs that, according to Discovery Letter #8, apparently contains FISA-related discovery on Seifullah Chapman.  The government should not be able to

Case 1:04-cr-00385-LMB   Document 328   Filed 09/26/13   Page 11 of 16 PageID# 1624

~~FISA intercepts provided in discovery covered an inexplicably narrow window of time,~~ considering the multiple years encompassed by the indictment against Dr. al-Timimi:

> [T]he universe of conversations only covers a specific period of time of approximately a year. It is not a universe that encompasses all the conversations from September 11 of 2001 until near the date of this indictment. So in addition to it being a needle in a haystack, there may be other haystacks that we have not been given access to.

*Dkt. No. 145, Hr'g Tr.* 9:14-19, Jan. 28, 2005.

## III. THE GOVERNMENT DOES NOT DENY THAT IT DEVELOPED THE "VIRGINIA JIHAD" PROSECUTION THROUGH THE EXAMINATION PRE-2003 FISA INTERCEPTS

In its response, the government devotes a great deal of time to explaining that the mere fact that the Virginia Jihad prosecution may have been based in part on pre-2003 intelligence investigation material, a fact made clear by a 9/11 Commission Memorandum for the Record by FBI WFO Counsel Duncan Wainwright, does not establish that pre-2003 FISA surveillance was used to develop the case against the alleged co-conspirators. Dr. al-Timimi notes as a threshold matter that the government does not deny that it may have examined and used pre-2003 FISA surveillance; it simply argues that Dr. al-Timimi's motion alone fails to definitively establish that fact.[12]

As discussed in the defense's memorandum, a Special Agent for the FBI's Washington Field Office explicitly stated that, following the fall of "the Wall," prosecutors from the Eastern District of Virginia examined "all information" in earlier 199 files, "including the FISA information 'all the way back to pre-PATRIOT Act cases.'" Moreover, in an August 2003 9/11 Commission Memorandum for the Record, a Supervisory Special Agent for the FBI Washington

---

satisfy its burden in this remand with unsupported conclusory statements, particularly given the confirmation of specific material evidence withheld from the defense in the most recent motions.

[12]   It is important to stress again that the defense still has not been provided  a single FISA document from before 2003.

~~Field Office told interviewers that "199s resulted in FISAs," which were carried out "behind the~~ scenes." *9/11 Commission Memorandum for the Record*, Interview of Supervisory Special Agent Alina Bloom, WFO, FBI at 4 (Aug. 4, 2003) (Exhibit F).

Most importantly, however, the government's distinction is irrelevant to Dr. al-Timimi's discovery request, because the government itself acknowledges that there was at least one pre-9/11 FISA on at least one of the alleged Virginia Jihad co-conspirators, the fruits of which were used offensively against the conspirators at trial. Moreover, even if the Virginia Jihad prosecution was based on *non-FISA* 199 intelligence investigation material, it still calls into question Special Agent Ammerman's strong implication in his 2003 affidavit that he suddenly heard about Dr. al-Timimi out of the blue on November 19, 2002, following a tip from a confidential informant.[13]

What is particularly astonishing is the government's suggestion that it was the fault of prior counsel not to press Ammerman further on his testimony that the investigation of Dr. al-Timimi began in 2003. *Dkt. No. 322* at 3. The defense was relying on the express assurances from the prosecution that there was no pre-2003 FISA evidence, assurances that later formed the basis for the Stipulation of the parties discussed earlier. This argument is made even more problematic by the suggestion of the government that, when asked about prior investigations or surveillance of Dr. al-Timimi, Ammerman was only referring to criminal as opposed to intelligence investigations. *Id.* Such a distinction would allow the government to continually hide great amounts of surveillance in criminal cases. The examination dealt with the surveillance of Dr. al-Timimi, and what it found or failed to find. If Ammerman used this

---

[13]     As has been noted to the Court, (Dkt. No. 301), Special Agent Ammerman's involvement in the October 2002 movements of Anwar al-Aulaqi casts into further doubt the assertions in the affidavit.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

~~distinction to conceal pre-2003 surveillance, it would constitute knowingly misleading testimony~~

– the very type of misleading testimony routinely used by the Justice Department as the basis for perjury and 18 U.S.C 1001 prosecutions.

The distinction drawn between criminal and intelligence investigations is equally questionable given the decision of the Justice Department to bring down the "wall" that previously existed between such investigations. As discussed above, the Justice Department pushed for the use of FISA intelligence evidence by federal prosecutors – destroying this distinction. Yet, after breaking down that wall (and specifically in the investigation of the Virginia Jihad), the government wants to still claim the distinction to withhold evidence and testimony on the use of such evidence. The government cannot have it both ways. It decided to mix intelligence and criminal investigations. As a result, the full record of that evidence had to be disclosed to the defense, particularly in an examination regarding the start of surveillance of the defendant.

## IV.  KNOWLEDGE OF PRE-2003 FISAs RELATING TO DR. AL-TIMIMI WAS CRITICAL TO HIS DEFENSE

Finally, the government in its response claims tersely that the fact that an exhibit used offensively against Dr. al-Timimi at trial was in fact FISA-derived "was irrelevant to the jury," and ignores the obvious criticality of this fact to the defense.

The origin or source of evidence is essential to the defense in establishing the basis for any challenges or motions to compel before a trial. It is also vital in the examination of witnesses like Ammerman. Ironically, in expressing disbelief as to the relevance of such information, the government also expresses surprise that Ammerman was not examined on information that the defense was never given.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

13

~~The government also ignores the statement of the former lead counsel in this case, when~~

he wrote to this Court in 2006:

> I believe that this information is important and would have been
> helpful to me in trying al-Timimi's case. As the Court may recall,
> the Government stipulated…to the nature and extent, including the
> precise duration, of the surveillance of al-Timimi by the United
> States. I argued to the jury that the lack of other incriminating
> evidence derived from such extensive surveillance meant the [sic]
> al-Timimi's statements to the FBI in which he claimed innocence
> were more credible that [sic] the words of the government's own
> witnesses who are now free. Had I known that there was
> additional surveillance that did not produce any incriminating
> evidence against a man with no prior criminal record, I could have
> used that fact as well in the case.

Exhibit A at 1-2.

The Fourth Circuit remanded this case before this Court because it was concerned about
the existence of undisclosed material surveillance on Dr. al-Timimi. The Court should not
countenance any suggestions that the core purpose of this remand is somehow irrelevant.
Moreover, the Court cannot adopt the view of the prosecution, that the existence and use of such
FISA evidence is immaterial to a criminal defense. Such a view would make discovery little
more than a discretionary exercise for the prosecution in determining what evidence it is willing
to face at trial.

## V.    CONCLUSION

For the foregoing reasons, and for reasons articulated in the supporting Memorandum, Dr. al-Timimi respectfully asks for the Court to grant his Motion to Compel Discovery Related to the Foreign Intelligence Surveillance Act.

Dated: September 26, 2013

Respectfully submitted,

Dr. Ali al-Timimi, by Counsel:

_____
Vishant Manu Krishnan (VSB # 82308)

Jonathan Turley (*pro hac vice,* lead counsel)
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001 (phone)
(202) 994-9811 (facsimile)

Vishant Manu Krishnan (VSB # 82308)
Bryan Cave LLP
1155 F Street, NW, Suite 700
Washington, D.C. 20004
(202) 508-6000 (phone)
(202) 508-6200 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2013, the foregoing was given to the court security official in compliance with prior court orders for filing and delivery to both the Court and opposing counsel.

Vishant Manu Krishnan (VSB # 82308)
*Counsel for Dr. Ali al-Timimi*