

THE GEORGE
WASHINGTON
UNIVERSITY
LAW SCHOOL
WASHINGTON DC

JONATHAN TURLEY

J.B. AND MAURICE C. SHAPIRO PROFESSOR
OF PUBLIC INTEREST LAW

September 14, 2007

**Via Facsimile Transmission and U.S. Mail**
Gordon D. Kromberg, Esquire
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Street
Alexandria, VA 22314

    Re:    **United States v. Al-Timimi, Crim. No. 1:04-385**

Dear Mr. Kromberg:

    In compliance with the Court's order of August 24, 2007, I am sending a list of individuals and organizations that are material to the case of Dr. Ali Al-Timimi. As discussed before Judge Brinkema, this list has been narrowed to individuals and organizations clearly material to the case of Dr. Al-Timimi. We are seeking confirmation of whether any government agency has investigatory or surveillance material that was not disclosed to the defense involving each of these individuals or organizations. As you know, there have been a number of previously undisclosed intelligence operations revealed in the last two years, including but not limited to the National Security Agency's (NSA) domestic surveillance program.

    The information sought by the defense falls within the scope of Fed. R. Crim. P. 16 and <u>Brady v. Maryland</u> and its progeny. This information includes surveillance and documentary records as well as any reports, notes, grand jury transcripts, summaries, photographs, documents, statements, tapes, electronic communications (including emails, email headings, and instant messages), or other tangible evidence in the possession of the United States government, including such material received from foreign or non-government sources. The material sought may be stored in audio, electronic, video, photographic or written format. If the government refuses to turn over any material on the basis of either materiality objections or privilege claims, we ask that you confirm the possession of the withheld evidence and give a summary description so that we may address the matter with the

court.

These requests obviously involve all interceptions or records of statements made by Dr. Al-Timimi. As the Court stressed on December 3, 2004( Docket Number 144), such statements have great probative value "because the statements of the defendant are important windows into that person's intent." The Court went on to reaffirm that "the intent of the defendant is going to be a critical factor in this case, and obviously statements that a defendant makes are a very significant piece of evidence as to intent." We are seeking any communications made to these individuals by Dr. Al-Timimi or any such statements or positions related to Dr. Al-Timimi that they have referenced in their own communications. These include all of the subjects discussed at trial, including but not limited to Dr. Al-Timimi's views on peace, *jihad*, *hijra*, Al Queda, Osame Bin Laden, the 9-11 attacks, the work of Dar al-Arqam, Mullah Omar, the Taliban, terrorism, Afghanistan, accused terrorists, Solimon Al-Buthe, Zacharias Moussaoui, lashkar-e-Taiba or LET, Kashmir, Dr. Safar Al-Hawali, Muslims dealing with the West or the American government, conferences discussing terrorism or 9-11, the Virginia Jihad Network, the paintball defendants, and charities like Al-Haramain and the Islamic Assembly of North America. The defense should have a complete record of any material that relates to Dr. Al-Timimi in the possession of the government from prior terrorism investigations.

We are seeking the aforementioned material as it relates to any of the following categories. We have supplied a brief description of the individual or organization to assist you in your inquiry. We would be happy to supply additional information if needed to complete your search of government records and files.

1. **Dr. Ali Al-Timimi.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. This includes but is not limited to any communications involving Ali Asad Chandia, Seifullah Chapman, Randall "Ismail" Royer, Hammad Abdur-Raheem. Ibrahim al-Hamdi, Masoud Kahn, Yong Ki Kwon, Khwaja Hasan, Nabil Gharibieh, or the other alleged members of the Virginia Jihad or paintball conspiracy or their underlying activities. Dr. Al-Timimi made dozens of calls that discussed 9-11 and how Muslims should react to that tragedy as well as other relevant subjects. Many of these were calls with an international component from Bosnia, Saudi Arabia, Australia, England and other countries.

2. **Dr. Safar Al-Hawali.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. This includes, but is not limited to any material that references Dr. Al-Timimi, Ali Asad Chandia, Seifullah Chapman, Randall "Ismail" Royer, Hammad Abdur-Raheem. Ibraham al-Hamdi, Masoud Kahn, Yong Ki Kwon, Khwaja Hasan, Nabil Gharibieh, or the other alleged members of the Virginia Jihad or paintball conspiracy or their underlying activities. These calls were made to Mecca, Saudi Arabia in 2001 and 2002. These communications include, but are not limited to, the following examples:

   a. Communications discussing Dr. Al-Timimi's meeting on September 18, 2001 with Dr. Jaafar Idris and Yusuf Idris.
   b. Communications on September 19, 2001, including but not limited to a call that occurred only 23 minutes before Dr. Al-Timimi's first call to Kwon and 1-2 hours prior to Dr. Al-Timimi's lunch with Kwon and Hasan prior to their departure.
   c. Communications with Dr. Al-Timimi on how Muslims should respond to 9-11 and the need for *hijra* (migration).
   d. Conversation in March 2002, during which Dr. Al-Timimi and Dr. Al-Hawali discussed assisting Moussaoui in his defense and the moral dilemma of helping an accused terrorist.
   e. Communications in October 2002, including but not limited to a telephone call between Dr. Al-Timimi and Dr. Al-Hawali tin which they discussed reaching out to President Bush and Congress to try to bridge the divide between the Western and Islamic worlds, particularly to avoid war in Iraq. Osama Bin Laden and the need for international conferences were also discussed during this call. There was an initial call to Nihad Awad to reach Dr. Al-Hawali to set up this call.

3. **Mr. Soliman Al-Buthe** (Riyadh, Saudi Arabia). Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. This includes, but is not limited to any material that references Dr. Al-Timimi, Ali Asad Chandia, Seifullah Chapman, Hammad Abdur-Raheem, Randall "Ismail" Royer, Ibraham al-Hamdi, Masoud Kahn, Yong Ki Kwon, Khwaja Hasan, Nabil Gharibieh, or the other alleged members of the Virginia Jihad or paintball conspiracy or their underlying activities. These calls were made to Mecca, Saudi Arabia in 2001 and 2003. We believe that there were at least 100 such calls in 2002 alone as well as hundreds of emails and facsimile

transmissions. These communications include, but are not limited to, the following examples:

    a.    Communications in 2002 discussing papers created with Dr. Al-Timimi's direction or supervision dealing with the United States and its relationship to the Muslim world. These include communications referencing papers by Mr. Amir Butler of Australia, Mr. Ismail and Dr. Bassem Khafagi (who was referenced in the search warrant and interviewed by the FBI).

    b.    Communications discussing Dr. Al-Timimi's assistance of Hasan and Chandia.

    c.    Communications regarding Dr. Al-Timimi's work on white papers entitled "How Can We Co-Exist" and "What are we Fighting For?," including drafts sent by facsimile transmission of these papers.

    d.    Communications between Dr. Al-Timimi and Dr. Al-Buthe in the Fall 2002 regarding discussions with Congress, international conferences to address attacks on Muslims, and the Iraq War.

    e.    Communications in 2003 and 2004 addressing the Shuttle disaster and reaching out to Congress and the American people.

    f.    Communications relating to U.S. evangelical attacks on Islam as well as discussion of charities like Al-Haramain and coordinating efforts with Dr. Al-Hawali and Dr. Idris.

4.    **Paintballers/Virginia Jihad**. Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. This includes, but is not limited to any material that references Dr. Al-Timimi, individuals associated with the "paintballers" or "Virginia Jihad" including, **Ali Asad Chandia, Seifullah Chapman, Randall "Ismail" Royer, Hammad Abdur-Raheem. Ibrahim al-Hamdi, Masoud Kahn, Yong Ki Kwon, Khwaja Hasan, Nabil Gharibieh** or the other members of the Virginia Jihad. These calls include, but are not limited to, the following examples:

    a.    Communications relating to their paintball activities.
    b.    Communications relating to traveling abroad after 9-11.
    c.    Communications relating to Dr. Jaafar Idris or Mr. Yusuf Idris.
    d.    Communications by Royer to LET in September 2001.
    e.    Communications of the aforementioned individuals from Pakistan or to Pakistan from September 2001 to March 2002.

    f.      Communications from Hasan while in the United States to Kwon in Pakistan and Korea.

5. **Yusuf Idris and Jaafar Idris.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. Of particular importance are any communications before or after the dinner with Kwon in September 2001. The calls to Yosuf and Jaafar Idris were matters raised before and at the trial of Dr. Al-Timimi. These material issues include, but are not limited to, discussions of 9-11, Dar Al-Arqam, Kwon, Hassan, Nabil Gharibieh, Royer, Al-Hawali, Al-Buthe, the Virginia Jihad allegations, Muslims traveling abroad after 9-11, and Muslim response to 9-11.

6. **Ammar Ammonette.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. As associate of Dr. al-Hawali, these calls were made to Saudi Arabia from 2001 to 2003. These communications include e-mails that may have originated from or were directed to the following e-mail addresses: amar_colo@hotmail.com or ammarcolo@hotmail.com). These communications include discussions of subjects ranging from Dr. Al-Timimi's work in the United States to Bin Laden to the Muslim response to 9-11, and communications to both President Bush and Congress.

Ammar Ammonette performed a coordinating role vis-à-vis Dr. Al-Hawali and Dr. Al-Timimi. However, some of these calls are just between Dr. Al-Timimi and Mr. Ammonette.

7. **Anwar Al-AuLaqi.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. AuLaqi met with Dr. Al-Timimi at his house in October 2002 to discuss his reaction to 9-11, the congressional letter, and other individuals later associated with his trial. Telephone calls were made to Dar Al-Arqam and to Dr. Al-Timimi's home. We also ask for any reports or notes generated in connection with AuLaqi's visit to Dr. Al-Timimi's home in October 2002 when he was accompanied by Nabil Gharbieh and Rubeel Iqbal.

8. **Bassem Khafagi.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. Khafagi and Al-Timimi discussed his views of 9-11 and other issues relevant to his trial.

9.  **Adel Tahir.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. Adel Tahir specifically spoke with Dr. Al-Timimi between 9-11 and the dinner with Kwon. The FBI prepared at least one 302 on his involvement. There were multiple calls between Dr. Al-Timimi and Tahir in September 2001, including repeated calls on September 13th.

10. **Mohammad Al-Kahtami.** Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. Dr. Al-Timimi spoke with Kahtami before and after 9-11 on issues related to his trial.

11. **Counsel** communications. Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators. At least one telephone call involving Ashraf Nubani and Royer was intercepted by the government. Other counsel included Martin MacMahon, Alan Yamamoto, and Edward MacMahon.

12. **Center for Islamic Information and Education** also know as **Dar al-Arqam** in Falls Church, Virginia. Any of the previously defined material that references or involves Dr. Al-Timimi or the underlying alleged conspiracy or conspirators.

13.
If any of these individuals, organizations, references or terms are unclear, I hope that you will not hesitate to contact me.

Thank you for your assistance in this matter.

Sincerely,

Jonathan Turley
Counsel to Dr. Ali Al-Timimi

cc: William E. Olson, Esq.
Kate Seikaly, Esq.