```
                  UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                      ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:04cr385
                              .
        vs.                   .      Alexandria, Virginia
                              .      October 4, 2013
ALI AL-TIMIMI,                .      11:00 a.m.
                              .
              Defendant.      .
                              .
.   .   .   .   .   .   .   .   .   .

                    TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE LEONIE M. BRINKEMA
               UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | GORDON D. KROMBERG, AUSA |
| | United States Attorney's Office |
| | 2100 Jamieson Avenue |
| | Alexandria, VA 22314 |
| | and |
| | JOHN T. GIBBS, ESQ. |
| | Counterterrorism Section |
| | Criminal Division |
| | United States Department of Justice |
| | 601 D Street, N.W. |
| | Washington, D.C. 20004 |
| | |
| FOR THE DEFENDANT: | JONATHAN TURLEY, ESQ. |
| | The George Washington University Law School |
| | 2000 H Street, N.W. |
| | Washington, D.C. 20052 |
| | and |
| | V. MANU KRISHNAN, ESQ. |
| | Bryan Cave LLP |
| | 1155 F Street, N.W. |
| | Washington, D.C. 20004 |
| | |
| ALSO PRESENT: | SA SARAH LINDEN |

```
                     (Pages 1 - 30)

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

2

1   OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                    U.S. District Court, Fifth Floor
2                                   401 Courthouse Square
                                    Alexandria, VA 22314
3                                   (703)299-8595

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              P R O C E E D I N G S

 2                   (Defendant present.)

 3          THE CLERK:  Criminal Case 04-385, United States of

 4   America v. Ali Al-Timimi.  Would counsel please note their

 5   appearances for the record.

 6          MR. KROMBERG:  Good morning, Your Honor.  Gordon

 7   Kromberg for the United States.  With me at counsel table is

 8   John Gibbs, my cocounsel on the trial, and standing in as the

 9   case agent, FBI Special Agent Sarah Linden, whose testimony you

10   heard in this case in 2007 involving the National -- search at

11   the National Archives.

12          THE COURT:  Good morning.

13          MR. TURLEY:  Good morning, Your Honor.  Jonathan

14   Turley representing the defendant, who is with me at table,

15   Dr. Ali Al-Timimi.  With me is our new local counsel, Manu

16   Krishnan, who is also at the law firm of Bryan Cave.

17          THE COURT:  All right.  Well, we have on the docket

18   today several motions.  One of the problems we have in this

19   case right now is that there's been some real difficulty in how

20   things have been filed, and I just want you to know that I'm

21   going to be meeting with our court information security

22   officers, and we are going to probably re-docket a fair number

23   of items.

24          Things that were filed initially under seal because

25   they had not yet been cleared, many of them are now completely
```

1    public.  Others, I believe, are public with some redactions,

2    and we need to get the docket in shape.  So you may find

3    pleading numbers changing, and so I alert you to watch the

4    docket as it, as it shifts.

5           All right, I've had a chance to go through these

6    motions, and the one motion, Mr. Kromberg, that I don't think

7    I've got an adequate response to, all the other ones I think

8    the government fully answered to my satisfaction, is the motion

9    No., docket No. 300 to compel discovery related to Anwar

10   al-Aulaqi.

11          As I understand it, what the defense is trying to get

12   is information about the meeting that Mr. Aulaqi had with

13   Dr. Timimi at which Mr. Gharbieh was also present.  Is that

14   correct?

15          MR. TURLEY:  Yes, Your Honor.

16          THE COURT:  All right.  Now, didn't Gharbieh testify

17   at your trial -- at the trial?

18          MR. KROMBERG:  He was the first witness, Judge.

19          THE COURT:  He testified in both trials.  I know

20   he -- I remember he testified clearly in the *Royer* case.

21          MR. KROMBERG:  That's when the lights went out in the

22   middle of his testimony.  But no, he was -- I believe he was

23   the first witness --

24          THE COURT:  The first witness.

25          MR. KROMBERG:  -- the first cooperator witness in the

1    *Timimi* case.

2           He might have been the first witness altogether.

3           THE COURT:  All right.  So, Mr. Turley, why was

4    Mr. Gharbieh not asked the kinds of questions you're trying to

5    get out by asking the government for further evidence about

6    Mr. Aulaqi?

7           MR. TURLEY:  Your Honor, we have submitted a

8    declaration from the former lead trial counsel, Mr. MacMahon,

9    who states that he was never given any information that has

10   come out since quite recently about the involvement of the

11   Department of Justice not only in bringing Aulaqi into the

12   country but specifically the involvement of Mr. Ammerman.

13          THE COURT:  But that's beside the point.  My point is

14   your concern, as I understand it, is that that meeting could be

15   critical to your defense because you believe that there may

16   have been a discussion in which your client objected to

17   Aulaqi's request that he help recruit people to take up arms

18   against the United States in essence.  Isn't that really what

19   you're saying?

20          MR. TURLEY:  Yes, Your Honor.  What occurred is that

21   Mr. Aulaqi suddenly came to Dr. Al-Timimi's house and

22   encouraged him to recruit and to -- he actually raised issues

23   of possible terrorist acts, and Dr. Al-Timimi said consistently

24   throughout, "I told him that I would not do that."

25          THE COURT:  Well, was Gharbieh present at that

1     meeting?

2            MR. TURLEY:  Our understanding is that this

3     conversation might have occurred in Arabic, and Mr. Gharbieh

4     does not speak that language.  The -- he left -- and this is

5     what Mr. Al-Timimi made clear, is that he left at the critical

6     moment when that conversation began.  So he was not a witness

7     necessarily to what was said, and even if he was there, he

8     might not have understood it.

9            But what Mr. MacMahon has said is that, you know,

10     much of what he did at trial was based on assurances that he

11     received from the prosecutors, and they said they didn't have

12     information on that meeting, that it was a dry hole.

13            THE COURT:  But unless -- I'm sorry, but unless that

14     meeting had been surreptitiously tape-recorded, that is, either

15     Gharbieh or Aulaqi was wearing a wire, how else would you have

16     access to what that meeting was about?

17            MR. TURLEY:  Your Honor, we believe that that

18     information should have been turned over for a number of

19     reasons.

20            THE COURT:  No, no, no.  I'm asking you, what, so

21     that they didn't have a wire?  You're trying to find out what

22     went on at that meeting.  Either Gharbieh was present and was

23     wearing a wire, in which case you would have a transcript

24     available of an in Arabic possibly conversation, or Aulaqi was

25     cooperating at that point and he was wearing a wire, but

7

1    there's none of that in this -- there's no evidence of that.

2         MR. TURLEY:  Your Honor, what we have in terms of

3    recent evidence is an indication that there was a government

4    asset involved during that period, the specific period of the

5    meeting directly connected to Anwar Aulaqi.  It was never

6    revealed that the government had that, had an asset involved

7    with Aulaqi during that time.  That asset still has not been

8    disclosed to counsel in either classified or unclassified fora.

9         We believe that clearly should have been revealed,

10   and we have no idea who that asset is.  We don't know if it's

11   Aulaqi, we don't know if it's Gharbieh, we don't know if it's

12   someone else, but we do know that there is a report that makes

13   reference to an asset in Aulaqi during that time that we've

14   never seen.

15        And what Mr. MacMahon says in his declaration is that

16   none of that was revealed to him any more than the Abu Khalid

17   or the pre-2003 FISA, and that had a material impact on his

18   inquiries before trial.  It also had a material impact on his

19   questioning at trial.

20        THE COURT:  All right.  Mr. Kromberg, do you want to

21   respond to that?

22        MR. KROMBERG:  I don't understand what Mr. Turley

23   just talked about, so there's no response I can --

24        THE COURT:  I'm sorry?

25        MR. KROMBERG:  I don't understand what he just said.

8

1          THE COURT:  Well, you need to try to understand what
2     he said.
3          MR. KROMBERG:  He's suggesting that the government
4     had an asset in to Mr. Aulaqi?  Assuming that were true, what
5     does that have to do with whether we know what happened at a
6     private meeting between Timimi and Aulaqi?
7          Mr. Turley has no right to know whether there was an
8     asset in to Aulaqi at that time.  He has no right to know
9     whether Aulaqi was a government asset at that time, but you
10    asked me eight years ago whether we had a recording of what
11    happened, and I said no.  We still don't.
12         I don't know what happened at that meeting, and we
13    don't -- and he doesn't get to find out the status of the
14    government's coverage of Aulaqi other than to know that the
15    government has no recording of the meeting between Aulaqi and
16    Timimi.
17         I'd also note that Gharbieh wasn't a government
18    cooperator at that time.  His house was searched the same day
19    Timimi's house was searched in February 2003, and he decided to
20    cooperate after that point, and that's when we learned that
21    there had been a meeting between Aulaqi and Timimi, but he
22    wasn't a cooperator before that time, and we didn't, we didn't
23    know about it at the time it happened.
24         THE COURT:  All right.
25         MR. TURLEY:  Your Honor, may I be heard in response?

9

1          THE COURT:  Yes, yes.

2          MR. TURLEY:  Thank you, Your Honor.  First of all,

3    I'm a little surprised -- I guess we're both surprised with

4    each other into what we're arguing, but I'm surprised to hear

5    that the government can have an asset that may have been

6    involved in a critical meeting with the defendant, have

7    pretrial inquiries as to evidence as to that meeting, and not

8    disclose that there was an asset.

9          Mr. Kromberg says, "I just don't know.  I don't know

10   who was the asset.  For all we know, Aulaqi's the asset."

11          What if Aulaqi was an asset?  The government

12   specifically told defense counsel that there was no evidence

13   that they had on this.  If the government engineered the

14   meeting, if the government's asset engineered the meeting, that

15   obviously is quite relevant, but we also want to note Ammerman

16   testified as to his, when he first became aware of Ali

17   Al-Timimi.

18          That testimony stands in direct contradiction to much

19   of the new evidence that we had found, and had we known his

20   role with Aulaqi, that evidence also would have been material

21   to his testimony.  We would have been able to impeach him on

22   that.

23          And I just want to also note, Your Honor, in terms of

24   government's responses, I assume Your Honor is referring to the

25   public motions as to the government's response.  The government

1   response on Aulaqi says virtually nothing about the factual

2   statements or representations in Aulaqi, but I just want to

3   note that the government as far as I know has not responded to

4   at least five or six motions in the SCIF, and I've never been

5   in a case where we just file motions and the government just

6   leaves it up to the Court to respond.  Those motions have been

7   pending for years, and the government just has never responded

8   to them, so we have no response at all.

9          THE COURT:  Well, which ones are those?  Just give us

10  the numbers.  We will see, because there are no gavels showing.

11         MR. TURLEY:  Your Honor, I -- the record that I have

12  in the SCIF shows no response on the classified motions from

13  2008 that I could find.  These include docket 265, 273, 277,

14  and 287.

15         And I believe that the two -- of the two classified

16  filings done recently, the government chose to respond to one

17  of them in a public filing by making reference to an ex parte

18  letter, and I do not believe they responded to the other, but

19  at least five of these motions from my records have had no

20  response at all from the government.

21         THE COURT:  Mr. Kromberg?

22         MR. KROMBERG:  Judge, I'm sorry, but you should give

23  very short shrift to that.  265, defendant's motion for a

24  finding of materiality regarding his intercepted communications

25  with an individual that we talked about at length in 2008, and

1 as this Court said in 2008, "I will say at this point so far

2 what this Court has seen -- and I recognize, Mr. Turley, you're

3 at a disadvantage because you haven't seen it all -- I don't

4 think there has been anything that the government has revealed

5 to this Court that would be of such a nature as to have made a

6 material difference to the outcome of your case.  In the end,

7 it's got to be the final thing the Court looks at.  I will say

8 at this point I haven't seen it."

9     Back in 2007, you said on January 24, 2007, in an

10 order, you wrote that the in camera pleadings, 48, 66, 185, and

11 200, establish either that the defendant has not been the

12 subject of any investigations other than the one which resulted

13 in this trial or that any other investigations in which he was

14 a subject or during which he was referenced contained no

15 information that would constitute *Brady* material or which was

16 required to be produced under the discovery orders entered in

17 this case.

18     He makes the same motion again and again and again.

19 We've answered them.  I think -- as far as I can tell, he's

20 made the same motion three times just since July.  We only

21 answer them once, and he says, well, we haven't answered each

22 motion.  Every -- I divide them up into Aulaqi, Ajmal Khan,

23 FISA, presidential surveillance, I think there was one more,

24 but I tried to respond to each group of motions even if I

25 didn't file one that's classified merely because remember,

1      Judge, the reason his are filed with the court security officer

2      is because in 2008, we filed an ex parte TS pleading, and the

3      Court encouraged us to file it under CIPA to make redactions so

4      that he could see it.

5           We did that, and then it turned up in the newspaper.

6      After it turned up in the newspaper, he was directed to file

7      everything in this case through the court security officer.

8      That's why there are so many classified pleadings at this time

9      even though at this point, as you can tell from what we're

10     talking about, we're not talking generally about classified

11     materials.

12          THE COURT:  All right.

13          MR. TURLEY:  First of all, Your Honor, I would like

14     to incorporate Mr. Kromberg's argument in our own response.

15     What he just read to you was not a ruling on any motion.  It

16     was an observation of the Court.  It was obviously that.

17          The way that at least I've practiced in the past is

18     you file a motion, the government files a response.  As usual,

19     Mr. Kromberg just blithely names one and says the rest of them

20     are repetitive.  That's not how my understanding of this works.

21     You are supposed to respond on the record so we can keep the

22     record.

23          I'm also very surprised to hear Mr. Kromberg quoting

24     from the Court in terms of previous investigations.  One of our

25     motions, of course, deals with the FISA business, and I believe

1    he's quoting from the same, same hearing.  Mr. Kromberg stood

2    here in our last go-round and said that he didn't have any

3    pre-2003 evidence, and this Court stated it was your

4    understanding, as it was the record, that there wasn't pre-2003

5    investigations, but more importantly, Mr. Kromberg says now,

6    "Well, except for these pre-2003 investigations," and says, "I

7    actually did reveal that to counsel."

8            We have a respected defense attorney in this

9    jurisdiction saying that is absolutely untrue.  We have a

10   second defense attorney who repeats basically the same type of

11   representation in his case from Mr. Kromberg, but more

12   importantly, we have Mr. Kromberg.  We have a letter from

13   Mr. Kromberg on November 19, 2004, in terms of the material he

14   now says is FISA, telling counsel then all of this is non-FISA

15   derived.

16           And then quite recently, he made reference to some

17   CDs and said, "You know, I really -- I know before we talked

18   about pre-2003, but now I'm saying that we did reveal 2003."

19           And so we went to former counsel, who, of course,

20   gave us his declaration, we went through all the files, and we

21   believe we found the CDs that Mr. Kromberg was referring to.

22   There's actually two sets of CDs.  One of them is composed of

23   30-something telephone intercepts that are clearly identified

24   as FISA by Mr. Kromberg.

25           None of those, as we put in a custodial affidavit,

1   none of those is pre-2003.  None of them involve any e-mails,

2   but then we have the second CD, and on that CD, we have

3   material that is referenced in that letter, November 19, 2004,

4   where Mr. Kromberg expressly says this is non-FISA derived.

5           That happens to include the 4G series and includes

6   4G7, which is the very document that we opposed being

7   introduced at trial that Mr. Kromberg introduced, and now

8   Mr. Kromberg says, "Oh, well, of course that was FISA derived,"

9   when he told the defense it was not.

10          We see the same pattern with Abu Khalid, and yet

11  Mr. Kromberg continually comes in here and expresses disbelief

12  of where the confusion comes from, and when I read the

13  transcript from 2008, it's like a different Mr. Kromberg.

14          THE COURT:  Mr. Kromberg, do you want to respond?

15          MR. KROMBERG:  I know that Mr. Turley has worked very

16  hard to reconstruct what happened years ago, but he hasn't

17  worked hard enough.  In his materials, he included government

18  discovery letter No. 8 but not discovery letter No. 9, which

19  I'll pass up to the Court, which says, "Here are the e-mails

20  and phone calls that I can now provide to you that were

21  collected by FISA, "and in Mr. Turley's materials, he has the

22  e-mail from me to Mr. MacMahon asking if he received them, and

23  Mr. MacMahon said, "I don't know.  I'll have to count them.  I

24  gave them to my client this morning."  That was January 5,

25  2005.

1          The reason that happened that way, first we gave

2     materials to him unclassified that we got from the search

3     warrant.  Then we gave him the materials classified that we got

4     from the FISA, because we didn't have use authority until the

5     end of December 2004 to give him the classified ones.

6          So when we had the FISA in 2003 that had these

7     e-mails, we had to replicate that because we didn't have use

8     authority.  We went with a criminal search warrant back to

9     Yahoo!, got the same things, and we didn't need use authority

10    for that anymore.  So we gave that to him first.

11         The next month, well, six weeks later, we gave him

12    the FISA ones.  He says he doesn't find them.  Well, I have the

13    message from MacMahon that Mr. MacMahon says he got them.

14         We've talked about this multiple times in open court,

15    once, once in the first trial and once in the second trial, and

16    those materials are, are before you now.

17         The -- and the next fundamental misunderstanding --

18    so the first misunderstanding is from the first set of

19    pleadings is, oh, well, if there was an intelligence

20    investigation pre-2003, that means there must have been FISA

21    pre-2003.

22         So we explained just because there's an intelligence

23    investigation doesn't mean that investigation was using the

24    tool of a FISA intercept or FISA search.

25         Well, now Mr. Turley comes back, "Okay.  Well, I

1    understand that, but you have FISA collection from 2001 in

2    these Chapman e-mails."

3            Well, that's because he misunderstands that a FISA

4    search of an e-mail account will take whatever is in that

5    e-mail account in 2003, when it was executed, and that includes

6    e-mails from 2001.  So yes, we did obtain through FISA evidence

7    from 2001, but the FISA was executed in 2003.

8            Mr. Turley's motion, oh, we didn't turn over to him

9    information about Ajmal Khan, well, except for the 302s from

10   Kwon and Hasan, the two main witnesses in the case who

11   identified Ajmal Khan as Abu Khalid with a johninformation

12   e-mail address.  But for that, we didn't tell him that we knew

13   Ajmal Khan was Abu Khalid.

14           Well, okay.  And, "All right.  Well, maybe you buried

15   it in there.  We weren't looking at those Kwon and Hasan 302s."

16           Mr. MacMahon cross-examined Kwon about that 302.  I

17   don't -- I mean, in some sense, it's understandable that

18   Mr. Turley doesn't know this, because you'd have to really go

19   over the record with a fine-toothed comb to see where

20   Mr. MacMahon asks Hasan about the 302, excuse me, asked Kwon

21   about the 302, but it's there.

22           I could go on, but each one of these allegations

23   about things that weren't turned over, were turned over, it

24   turns out they were turned over.

25           THE COURT:  All right.

1          MR. TURLEY:  Your Honor, I have to disagree with my

2    esteemed colleague.  On the letter No. 9 referenced in the

3    document from January 3, 2005, we believe that that refers to

4    that first set of FISA, those 30-something FISA-generated 2003

5    and later telephone intercepts.

6          What's, what's disconcerting here is obviously we

7    have very clear contradictions in the factual record.  We have

8    Mr. MacMahon saying quite clearly, "I kept asking for pre-2003

9    and was told there was no pre-2003."

10          But we also have hearings before this Court in which

11    you yourself expressed your view that there was not any

12    significant pre-2003 FISA interceptions.  That is also what

13    Mr. MacMahon understood.

14          This letter that is being referred to, we believe, is

15    that first CD, not the second one with the 4G series in it.

16          But as for the statement about Abu Khalid, we've

17    already argued this, and I don't see how this is even a close

18    question.  If the government -- the government does not deny

19    that it knew the identity of Abu Khalid.

20          THE COURT:  But they're also saying you got access to

21    that through the 302s that were given pretrial to defense

22    counsel, that you had Kwon's statement and Hasan's statement.

23    Plus, the government also argues, I think quite wisely, that

24    even if you had gotten the name, I mean, you had the name, but

25    with the name, what you were going to do with it, that man was,

1    I don't know whether he was in custody at that point or not,

2    but he was facing and, I guess, has been convicted in England

3    of certain charges, and the odds of him sitting down and

4    talking to you-all would have been -- you're a defense

5    attorney -- highly unlikely.

6           So No. 1, from this record, I'm satisfied that

7    defense counsel had the information; No. 2, it wouldn't have

8    done you any good because it was highly unlikely he was ever

9    going to talk to you; and No. 3, what he said might have made

10   it even worse because the evidence about his interaction with

11   those two coconspirators was pretty straightforward,

12   well-documented, and I don't see how that would have been in

13   any respect exculpatory.

14          MR. TURLEY:  Your Honor, where I would respectfully

15   disagree is that we do not believe that having two documents

16   from third parties giving their view of who the identity is is

17   the same as the government confirming the identity of Abu

18   Khalid, and this is why:

19          The record as it stood was actually in confusion.  A

20   year before, in the *Khan* trial, the government clearly stated

21   that Abu Khalid was an individual named Pal Singh; and the

22   government's own expert at that time said that in his

23   expertise, that was true; it was Pal Singh.

24          And so the official record, including Your Honor's

25   own statement about the identity of who Abu Khalid, said it was

1    a totally different person.  If the defense was going to assume

2    anything, it would likely be that it was Pal Singh, who was

3    acquitted in the English proceedings in terms of the terrorism

4    charges, but then the government is saying, "Well, I can't

5    imagine where the confusion is coming from.  We've cited to the

6    record, where we've had hearings with Mr. MacMahon saying, 'I

7    don't know who this is.  I don't know where this e-mail is

8    coming from.  How can we introduce it at trial?'"

9         Mr. Kromberg sat through those hearings.  He didn't

10   stand up and say, "Oh, well, you're mistaken.  We actually did

11   identify Abu Khalid."

12        Through the entire trial, he never said that they

13   understood who Abu Khalid was, and in fact, it was different

14   from what the government previously identified at the behest of

15   the government testimony, that it was an entirely different

16   person.

17        I would find it strange that, that a prosecutor can

18   go through these hearings where the identity of a key party is

19   raised, defense counsel says, "I don't know who this is," and

20   to say, "Well, we had no obligation to give you that

21   information. "

22        But my other point is that in addition to speaking

23   with the real Abu Khalid, we would have been able to seek

24   things like travel records, and in fact, those travel records

25   were introduced at another trial.  Why?  Because his identity

1   was, was confirmed by the government at a different trial.

2          THE COURT:  But how would those travel records have

3   helped you?

4          MR. TURLEY:  Well, the reason they would help is that

5   we understand that Abu Khalid came in in March 2003, and during

6   that period, Mr. Al-Timimi was under FISA, was under

7   investigation, and he had been searched.

8          We -- had we known the movements of Abu Khalid, we

9   could have pressed this point of here's this guy, this

10  mysterious figure who's trying to obtain remote-operated

11  aircraft technology, something that is clearly going to be

12  prejudicial with the jury and is being introduced at trial, and

13  we would have been able to say, "Well, we know who this guy is,

14  and here's his travel records," and we would have been able to

15  press the government witnesses.

16         Here he is a few miles away from Al-Timimi.  Here he

17  is in the country.  Was there any calls made during that

18  period?  Was there any context?  These are standard examination

19  questions.  They're also the type of basis that allows us to

20  make -- ask questions pretrial, but Mr. Kromberg denied that to

21  us by going -- first of all, having a record that says it's an

22  entirely different person, and then sitting through hearings

23  with you, where he doesn't say, "We actually know who Abu

24  Khalid is," who by the way they then turn around and identify

25  the real Abu Khalid.

1          Now, that may be discovery for the purposes of the

2     government.  It's not discovery as I understand it.

3          I will note that, you know, the Abu Khalid matter was

4     not only raised at trial over the objections of the defense,

5     this was an issue that was heavily contested by Mr. MacMahon,

6     but when we had, I believe, a motion 29 proceeding to try to --

7     a motion to try to knock out some of the counts, and who is it

8     the government references?  Abu Khalid.

9          So here's this integral part of the trial and the

10    posttrial, and Mr. Kromberg is sitting on his identification,

11    just leaving it uncertain as to who he is.  That clearly had a

12    material impact on us.  It also once again had a material

13    impact on the government witnesses.

14         We have direct contradictions in this new evidence to

15    what people like Mr. Ammerman testified on the stand, direct

16    contradictions, and this is the type of information that would

17    have allowed a cross-examination with knowledge of Agent

18    Ammerman.

19         THE COURT:  All right.  Mr. Kromberg, do you want to

20    add anything to that?

21         MR. KROMBERG:  I'm curious on what the direct

22    contradiction with Agent Ammerman -- with Special Agent Wade

23    Ammerman, who's one of the finest agents and most respected in

24    the country, and I'd be surprised to find out what the direct

25    contradiction that Mr. Turley has identified, and you'd think

1    in the mounds of pleadings, he would have identified it by now.

2            THE COURT:  All right, let's move on to the next

3    motion.

4            MR. TURLEY:  Should I answer that, Your Honor?

5            THE COURT:  No, I don't need to hear any more on it.

6            In terms of the FISA evidence, I think Mr. Kromberg

7    today for the first time has made it crystal clear why there

8    does appear to be this discrepancy between 2003 and 2001

9    because he has just said that a FISA warrant in 2003 for e-mail

10   could among other things pull in 2002, 2001, whatever is in

11   that e-mail box, if I understand you correctly, Mr. Kromberg.

12           MR. KROMBERG:  In fact, it's very -- okay.  I don't

13   know if I should -- I don't know how much I can say, but the

14   results tend to be similar to what happens when you do a

15   criminal search warrant of an e-mail account.

16           THE COURT:  In other words, it's thorough.  Whatever

17   is there gets picked up.

18           MR. KROMBERG:  Correct.

19           THE COURT:  All right.  And that would clearly

20   explain the discrepancy -- or not the discrepancy but the way

21   in which these dates seem to at first blush be inconsistent.

22           MR. TURLEY:  Your Honor, we don't believe it explains

23   it for the following reason:  First of all, this indicates that

24   there was FISA captures in 2001.

25           THE COURT:  No, no.  It indicates that there are FISA

1  captures in 2003 of 2001 information.  That's what it

2  indicates.

3          MR. TURLEY:  Well, I'm working, obviously, in the

4  blind because we have not been able to see the type of

5  supporting evidence for that, but the most important thing is

6  that we have representations before trial that there was not

7  pre-2003 FISAs.

8          Now, the government here is making --

9          THE COURT:  Well, that -- wait a minute.  There's

10  nothing inconsistent with what Mr. Kromberg has just said.

11  Listen to what he said.  He said that a FISA warrant in 2003,

12  issued in 2003 would capture whatever was in that e-mail box.

13          Now, I would assume if it was a brand new e-mail box

14  that was opened in 2003, right, there wouldn't be any 2002 or

15  2001 messages picked up that way.  I'm assuming therefore that

16  this mailbox had been in place or this e-mail address had been

17  used for some period of time, and evidently, whatever was there

18  was picked up.

19          MR. TURLEY:  Your Honor, where we disagree is that

20  first of all, we've put into the record various sources that

21  indicate 2001 FISA on the Virginia Jihad, and we included in

22  that the Wainwright MFR in 2003 that said that once this wall

23  went down between the FISA collection in terms of intelligence

24  and the criminal side in terms of prosecutions, that the

25  Virginia Jihad investigation came out of that, and this is a

1    reference to 2002 in terms of that wall coming down.

2            We also have a second MFR that specifically says that

3    when that wall came down, the Eastern District of Virginia U.S.

4    Attorney's Office was specifically noted as going to look at

5    that FISA material.  So we know that there's FISA material

6    before 2003 and these MFRs we just recently learned of.  So you

7    have these MFRs citing, yeah, a wall came down.  The Eastern

8    District of Virginia U.S. Attorney's Office went there and

9    looked at the FISA material.  We have statements that that's

10   what prompted the Virginia Jihad, which the government is

11   claiming was headed by Dr. Al-Timimi, and that would not fit

12   the narrative expressed by Mr. Kromberg, and we also have the

13   previous objection to that letter in terms of what that is

14   referring to, but the other thing that I want to note, Your

15   Honor, is that we don't have any record at all in terms of

16   where or what of this evidence was used.

17           What we do have is testimony from Mr. -- from Special

18   Agent Ammerman saying, "You know, I first looked into

19   Dr. Al-Timimi because of a confidential informant call in 2003,

20   and I went to the Internet and looked up his name," and now we

21   find out that there was this pre-2003 FISA material that was

22   reviewed by the Eastern District of Virginia U.S. Attorney's

23   Office, we know now that Ammerman was involved with Aulaqi, who

24   happened to just go to Al-Timimi's house, that was pre-2003,

25   and what stands in contradiction is this account by Ammerman of

1  how he learned of Al-Timimi.

2          So we have this complete contradiction coming out of

3  the Department of Justice.  You've got some agents saying this

4  Virginia Jihad investigation was the result of the wall coming

5  down and the Eastern District of Virginia prosecutors going to

6  see that.

7          Now, I don't know if Mr. Kromberg was one of those

8  prosecutors, but I would be surprised because when we were here

9  before you last time, Mr. Kromberg said, "Look, I can't be

10  expected to know programs that I don't know of, evidence that

11  I've not been, had not been disclosed to me."

12          So I don't know who from the Eastern District of

13  Virginia saw that evidence, but it couldn't possibly be

14  Mr. Kromberg, but the fact is that's referring to FISA

15  material.

16          THE COURT:  Well, you're not sure about that.  There

17  are other ways -- as Mr. Kromberg pointed out in one of his

18  responses, there are other ways of getting intelligence besides

19  FISA.

20          MR. TURLEY:  There are, Your Honor, but the problem

21  is we don't know.  I mean, we can't -- we have no record.  The

22  government has chosen not to disclose a single document to

23  cleared counsel.  It has not produced any actual document of

24  evidence in terms of material that was not disclosed before.

25  We have no record because the government won't give us a

1    record, and I don't understand.

2           This is rather old material.  We, we have

3    Mr. Ammerman giving media interviews on this case, and yet the

4    government continues to classify as much as they can, to say

5    that they're not going to give defense counsel these documents.

6           We don't know, and I think that it's incumbent to

7    create that record in light of the new material that we found,

8    material evidence, and I will simply note without getting into

9    the SCIF stuff, the motions in the SCIF include material

10   evidence that was withheld.

11          THE COURT:  All right.  Well, these have been

12   extensively briefed.  I'm going to look with care -- obviously,

13   I'm not going to try to speak a decision today because I don't

14   want to bump into anything that may be considered classified.

15          Mr. Kromberg, I -- you are satisfied that you've

16   responded to everything?

17          MR. KROMBERG:  I believe I've responded to every

18   topic.  I'm not sure whether I've responded -- there were

19   multiple motions that I was getting partly because of docketing

20   issues --

21          THE COURT:  Right.

22          MR. KROMBERG:  -- that I would get them and I'd go,

23   is this the same one I already got?

24          THE COURT:  Because there are some duplicative

25   motions.

1        MR. KROMBERG:  Right.  I thought I responded to every

2    topic.  If there's a topic I haven't responded to, I'll be

3    happy to do so.

4        THE COURT:  All right.  We will also have to go back

5    through, we're actually going to try to audit the file this

6    afternoon, and if we find that there hasn't been in our view an

7    adequate response from the government, we'll direct you to fill

8    it out, all right?

9        But other than that, you'll need to wait for our

10   decision, and as you know, Mr. Kromberg, part of the logistical

11   problem for the Court has been the limitation that's even been

12   put on the Court's resources in terms of handling this matter.

13   I have finally figured out a way, having been back through the

14   pleadings that only I can see, how to handle that.

15       MR. KROMBERG:  I'm glad to hear that, Judge.

16       THE COURT:  Yeah.

17       MR. KROMBERG:  We've tried -- I've tried in writing

18   the TS pleadings that your clerks are cleared for, to refer to

19   one particular sentence of one particular pleading or maybe two

20   different pleadings, but I think it's a very, very limited task

21   that -- and I think the Court's point has been made over the

22   last years, and I think that it would be -- it's time to --

23       THE COURT:  It's time, I agree.  I will let you know,

24   and you can go back and audit your stuff to tell me if I'm

25   wrong on this, but I think the most seminal and most pivotal

1  piece of evidence in the record is something which defense

2  counsel can't see because my clerks can't even see it, is 185.

3          MR. KROMBERG:  Absolutely.

4          THE COURT:  All right.

5          MR. KROMBERG:  And, Judge, there's one sentence, I

6  believe, in 185 that is the most seminal part in that.

7          THE COURT:  Well, but that, that is -- essentially,

8  that portion of my opinion is probably just going to say for

9  the reasons in 185, whatever my ruling is.  I can't do more

10 than that, and so -- and I'm doing it that way because my

11 resources have been restrained in that respect.

12         But I will say for the public record that 185 does

13 satisfy me significantly on all -- almost all of these issues.

14 So unless I find that there's still something that's missing,

15 I'll resolve this matter on what's been filed to date, and

16 that's how it is.  That's how it is.

17         MR. TURLEY:  I understand, Your Honor.  I just want

18 to voice our objection that we've made before, that we don't

19 see why these ex parte communications need to be barred

20 entirely from cleared counsel.

21         THE COURT:  Look, if a judge's law clerk can't get

22 access -- and Mr. Kromberg, as I recall, didn't have access, I

23 think, until 2008 -- there's no way in which private counsel is

24 going to get it.  That is the way it is.

25         If I ran the world, it might be different, but I

1    don't run the world.  I have to work within the rules that are

2    given to me, but I will tell you that for what it's worth,

3    because I know one of your discomforts is the concept that the

4    government -- that the prosecution would be the sole arbiter of

5    what is discoverable or not discoverable.  At least in this

6    case, you've got an Article III judge looking at it, you'll

7    have a Court of Appeals looking at it, so there'll be another

8    entity with no stake in the case looking at the material, and

9    that's all I can tell you.

10          But there are things that this Court will have seen

11   that you will not have seen that will certainly feed into the

12   decision.

13          MR. TURLEY:  Your Honor, just two small points, and I

14   hate -- I'm sorry to delay you further:  One is at one point,

15   you had stated your intention to require the government to

16   certify all of the representations that have been made as to

17   the record.

18          THE COURT:  I think that's been done adequately.  If

19   people are filing declarations under the penalty of perjury,

20   that's sufficient certification.

21          MR. TURLEY:  Okay.  And, Your Honor, regardless of

22   how you may rule on these motions, our final motion is likely

23   to be a formal motion for a new trial.  We've already actually

24   asked for and we've been talking about a new trial, but to

25   complete the record, we would like to bring all of this

30

1    material into a motion for a new trial.

2              THE COURT:  I think I'm not sure I'm going to permit

3    that.  I thought you already had filed one.

4              MR. TURLEY:  Well, we have, but this is mainly for

5    the convenience of the Court and potentially the Court of

6    Appeals to bring in this most recent evidence that we've

7    discovered, which we find very troubling.

8              THE COURT:  Well, we'll face that when we face it.

9    There've been enough motions filed in this case.  We need to

10   get this case back down to Richmond, which I hope will be

11   fairly soon, all right?

12             All right, if there's nothing further, we'll recess

13   court for the day.

14             MR. KROMBERG:  Thank you.

15             MR. TURLEY:  Thank you, Your Honor.

16                            (Which were all the proceedings

17                             had at this time.)

18

19                   CERTIFICATE OF THE REPORTER

20        I certify that the foregoing is a correct transcript of

21   the record of proceedings in the above-entitled matter.

22

23

24                          _____
                                      /s/
                            Anneliese J. Thomson
25