```
                                                                    1

                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                         ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:04cr385
                              .
     vs.                      .      Alexandria, Virginia
                              .      March 23, 2005
ALI AL-TIMIMI,                .      10:30 a.m.
                              .
            Defendant.        .
                              .
. . . . . . . . . . .

                         TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE LEONIE M. BRINKEMA
                     UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:           GORDON D. KROMBERG, AUSA
                              United States Attorney's Office
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                                and
                              JOHN T. GIBBS, ESQ.
                              Counterterrorism Section
                              Criminal Division
                              United States Department of
                              Justice
                              601 D Street, N.W.
                              Washington, D.C. 200




FOR THE DEFENDANT:            EDWARD B. MAC MAHON, JR., ESQ.
                              107 East Washington Street
                              P.O. Box 903
                              Middleburg, VA 20118
                                and
                              ALAN H. YAMAMOTO, ESQ.
                              643 S. Washington Street
                              Alexandria, VA 22314



ALSO PRESENT:                 SA JOHN WYMAN

                         (Pages 1 - 19)

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

| | | |
|---|---|---|
| 1 | OFFICIAL COURT REPORTER: | ANNELIESE J. THOMSON, RDR, CRR |
| 2 | | U.S. District Court, Fifth Floor |
| | | 401 Courthouse Square |
| 3 | | Alexandria, VA 22314 |
| | | (703)299-8595 |

3

1                    P R O C E E D I N G S
2                       (Defendant present.)
3          THE COURT: All right, for the record, Mr. Timimi has
4    entered the courtroom. Good morning.
5          THE DEFENDANT: Good morning.
6          THE COURT: All right, we have some housekeeping
7    matters that I want to take care of. First of all, I hope
8    you-all did get the Court's revised jury questionnaire. There
9    were two typos that actually were caught by us. There's one on
10   page 3 in question 18(b), after the word "languages," the word
11   "newspaper" was left off, so we're going to add that; and then
12   on page 10, question 44, the last -- or second-to-last sentence
13   should say "have you seen" rather than "have you see." Those
14   are the two typos that we picked up.
15         Are there any typographical or substantive issues
16   that either side wants to raise with the questionnaire?
17   Mr. Kromberg?
18         MR. KROMBERG: No, Your Honor.
19         THE COURT: So the government is satisfied with the
20   questionnaire?
21         MR. KROMBERG: Yes, Your Honor.
22         THE COURT: All right, how about from the defense?
23         MR. YAMAMOTO: Your Honor --
24         THE COURT: Yes, Mr. Yamamoto?
25         MR. YAMAMOTO: Your Honor, on page --

4

1        THE COURT:  We now have the microphone.  Do you mind?
2   It makes it easier.
3        MR. YAMAMOTO:  Your Honor, on page 12 --
4        THE COURT:  Yes, sir.
5        MR. YAMAMOTO:  -- in the -- in question 46, on the
6   right-hand column, it -- the second name down should be
7   M-a-m-d-o-u-h.
8        THE COURT:  Wait a minute.  M-a-m --
9        MR. YAMAMOTO:  -- d-o-u-h.
10       THE COURT:  -- d-o-u-h.
11   So the first name is misspelled?
12       MR. YAMAMOTO:  Yes.
13       THE COURT:  "Mohamed" is spelled correctly for that
14  particular person?
15       MR. YAMAMOTO:  Yes.
16       THE COURT:  Okay.  We'll make that correction.
17       MR. YAMAMOTO:  Pardon?
18       THE COURT:  We'll make that correction.
19       MR. YAMAMOTO:  Thank you.  And we had four questions
20  that the Court took out that we would ask the Court to
21  reconsider putting it back in.
22       THE COURT:  All right, I don't think these four
23  questions are critical.  I think we've probed more than
24  sufficiently into the background of these people.  I'll allow
25  you to have this -- I'm not aware of any case law that requires

5

1  the Court to probe into these particular topics.
2           MR. YAMAMOTO: I don't believe there is, Your Honor.
3  We just felt that it would be helpful for the parties to make
4  an intelligent decision into exercising its preempts and trying
5  to delve into the individuals' --
6           THE COURT: I think the individuals' value systems
7  and orientations will be adequately elicited from many of the
8  other questions, for example, if they have family members who
9  are currently serving in the Armed Forces, that sort of thing.
10 So I think this is adequately covered.
11          You've made -- for the record, I will reject that
12 request.
13          MR. YAMAMOTO: Thank you, Your Honor.
14          THE COURT: And we'll have this made part of the
15 record so it's clear what was not given.
16          But other than those four questions, you're all
17 satisfied with the questionnaire?
18          MR. YAMAMOTO: Yes, Your Honor.
19          THE COURT: All right. Now, just a few things. We
20 are going to on Monday morning at 10:00 meet in Courtroom 900.
21 That's Judge Ellis's courtroom. It's just as big as Judge
22 Cacheris's, but we don't have any rescheduling that has to be
23 done, all right?
24          Again, as I said earlier, what we will do -- and by
25 the way, did the defense have any spectators on behalf of the

6

1  defendant who you wanted present in the courtroom?
2           MR. YAMAMOTO: No, Your Honor.
3           MR. MAC MAHON: Judge, I'm sorry, Your Honor, his
4  mother may want to come.
5           THE COURT: All right.
6           MR. MAC MAHON: It shouldn't be more than one, one
7  chair.
8           THE COURT: I'll make sure that we have one or two
9  spots. We'll work with the marshals on that for -- but again,
10 the courtroom is going to be very tight in terms of space.
11          And will the government need any additional people
12 here for the morning? No?
13          MR. KROMBERG: No, Your Honor.
14          THE COURT: All right, that's fine.
15          There will be a seat for your mother then. That's
16 the only person who might be coming for the defense?
17                      (Defendant nodding head.)
18          THE COURT: All right. Other than that individual, I
19 have indicated because I don't want the jurors scrunched,
20 because they're going to have to stay in the courtroom to fill
21 out the questionnaires, there may be one pool reporter from the
22 media in the back. That's all I'm permitting in. That's
23 adequate public access to the courtroom.
24          And once I go off the bench and you-all leave, then
25 the only people who will stay in the courtroom are going to be

1   court staff and the jurors, so at that point, the defendant's
2   mother and the media person would have to leave, okay?  And the
3   courtroom would basically be sealed at that point.
4             MR. KROMBERG:  Yes.
5             THE COURT:  I'm told because I was able to shorten
6   the questionnaire, there's a chance that you'll have the
7   filled-out questionnaires as early as early Tuesday morning, so
8   you're going to get them quickly to work with, and then just to
9   go over again how I want to proceed, I would expect we will
10  spend most of Tuesday, all of us individually, looking at the
11  questionnaires, and those jurors who obviously, I mean, cannot
12  sit, doing what I normally do, I'll probably get to you late
13  Tuesday night or first thing Wednesday morning my
14  recommendation as to who I would strike for cause, and 90
15  percent of the time, I have found counsel agree with that.
16            You'll also with an exchange of paper be able to
17  indicate to me whom you want excused for cause, and where
18  there's an overlap, as both of you have agreed, I'm not going
19  to second-guess you on that, those jurors would also be excused
20  just on paper.
21            Then that group that is left, what I'm going to have
22  Ms. Travers do is randomly pull numbers, and we will give you
23  those jurors ahead of time.  So by the end of Wednesday, you'll
24  know that we're going to call in this group of jurors in the
25  morning, this group of jurors in the afternoon.

1    Mr. Yamamoto, you remember how we did this in the
2    *Wills* case, so it's exactly the same procedure. So you'll know
3    ahead of time.
4        Now, what we're going to do is because you're getting
5    far more information about these jurors than you would normally
6    have in this court, we will have a very short maximum of ten
7    minutes and hopefully less than that individual voir dire. The
8    group of 20 jurors that are brought in will be kept in the jury
9    room. We'll bring each individual juror in separately. The
10   person will be under oath in the witness box.
11       I will ask the oral voir dire, which means that
12   you-all need to submit to me questions. If there are two or
13   three uniform questions you want me to ask everybody, I will be
14   glad to do that. You can also tailor specific questions to
15   that juror based upon the answers that you've seen in the
16   questionnaire. I will with each juror give you a chance to
17   come up to the bench if there's something additional you want
18   the Court to put to that juror.
19       After, though, we finish those questions, then I'll
20   excuse the juror for a second, and you're going to right then
21   and there discuss with me whether you want the juror stricken
22   for cause or not, and if the juror is not stricken for cause,
23   then he or she goes into the hopper for the, for the final
24   pool, which, as I said, I'm looking for a number of 40.
25       Once we have 40, there's more than enough jurors from

1   whom to exercise your peremptories, and that -- I'm assuming --
2   get that number again -- if I didn't tell you, by assuming if
3   you used all your strikes, and you-all, the defense have 11,
4   the government has 7, that's a total of 18 peremptories, and
5   we're seating a jury of 14, so that's a total of 32 bodies, and
6   that will actually give you some extras in the pool, all right?
7   So that's how we're going to proceed.
8              And again, my goal is to try to start the individual
9   voir dire on Thursday, continue it partway into Friday.  I have
10  a docket that morning, and you-all may have court as well.  And
11  that way, hopefully, we'll have a good portion of the pool
12  established before Monday.  I don't think we'll be able to open
13  the case on Monday, but it's likely we could on Tuesday.  I
14  just don't know how many we're going to -- how many jurors
15  we're going to lose, okay?
16             Now, are there any other questions about the jury
17  questionnaire or how we're going to conduct voir dire?  The
18  other thing you should know is I'm going to do the voir dire --
19  well, we're going to conduct the trial in Courtroom 700.
20  Because I want the jurors and I'm sure you both also want the
21  jurors to freely give us their answers, I'm going to have any
22  public who wants to attend the voir dire in the courtroom
23  across the hall so that the courtroom in which the juror is
24  appearing is only going to have the trial participants.
25             And I'm assuming there's no objection to proceeding

10

1   that way.  Is there any?  Now is the time to say if there is.
2           MR. YAMAMOTO:  No, Your Honor.
3           MR. KROMBERG:  No, Your Honor.
4           THE COURT:  All right.  Now, that raises then, it's a
5   nice segue into the government's motion, the second motion that
6   was filed yesterday, to use an innominate jury.  You know, it's
7   interesting, I would have thought the defense would be
8   interested in that, because I, frankly, think that the greater
9   pressure on these jurors from having their names known would be
10  the pressure about whether they are going to feel comfortable
11  acquitting the defendant since they have to, you know -- we all
12  know these are charged times, and the allegations in the
13  indictment are serious, and I would have thought the defense
14  would agree with the government in that respect that you would
15  want jurors who don't have to worry about being known in the
16  community for having acquitted the defendant.
17          So do you want a moment more to think about that?
18  Because --
19          MR. YAMAMOTO:  No, Your Honor.
20          THE COURT:  All right.
21          MR. YAMAMOTO:  We don't object to the government's
22  motion for --
23          THE COURT:  Oh, all right.
24          MR. YAMAMOTO:  We didn't file anything because we got
25  it late --

11

1     THE COURT: All right.

2     MR. YAMAMOTO: -- but because the government

3 indicates its reason is the reason that the Court is giving,

4 that it's because of the publicity the jury may get, not

5 because of the jury's safety --

6     THE COURT: Right.

7     MR. YAMAMOTO: -- we have no objection to that being

8 done.

9     THE COURT: All right, then what we're going to do is

10 you will get the names of -- this is not an anonymous jury.

11 You will have the jurors' names. Now, obviously, the defendant

12 and counsel cannot in any way discuss the names of those jurors

13 publicly, all right, but among yourselves, you're free to talk

14 about them, all right?

15     What we will do then is when the jury pool comes

16 in -- and, Ms. Travers, you tell me if this is not how we're

17 going to do it -- we will give each juror a juror number that

18 is going to correlate with the juror questionnaire, all right?

19 And when they come in, so that you can match a person with a

20 number, you know, we will call them by their number, all right?

21     MR. YAMAMOTO: Didn't we try to do this and something

22 got screwed up somewhere along the line?

23     THE COURT: One time. What happened was in the

24 transcript, the names appeared. In the *Wills* case, we had a

25 little bit of an issue with that, yeah. All right? But if

12

1   we're just calling them: All right, ma'am or sir, and I'll
2   have to be very good when I do my voir dire not to address them
3   by name, but that's how I think we should do it.
4           If anyone has any other ideas about how to do it, but
5   I think the easiest thing is just to say: Juror No. 1, just
6   stand up and say "here" or "present" and sit down. Juror
7   No. 2 -- now, I can if you want me to but both sides have to
8   agree explain to the jury that, you know, we're going to call
9   you by your number not because we're concerned about any
10  threats, but we just don't want the media or anybody trying to
11  bother you, and so that's why we're not putting your names out
12  publicly. If you're comfortable with my telling them that,
13  I'll be glad to do so.
14          MR. KROMBERG: Yes.
15          MR. YAMAMOTO: I think that's important to tell them,
16  Your Honor.
17          THE COURT: All right. I have requested -- and I
18  think the marshals are comfortable with this -- that the
19  magnetometer not be up for the jury selection portion of the
20  case. I first of all don't think we'll have that much public,
21  but secondly, I don't want the jurors -- and again, if you get
22  concerned about this, maybe we can fashion something to tell
23  them -- but I don't want the jurors to get worried. Especially
24  after the situation in Atlanta, we don't want jurors to be, you
25  know, freaked out about having to be in a courthouse.

13

1          I could tell the jury that from time to time, they
2  may see security in the building.  There are several other
3  cases that are going on, and they're not to, you know, draw any
4  inferences from that.  If you want me to do that, I would be
5  glad to do that, because some of the MS-13 case may be going on
6  while this trial is in progress, and so there may be a visual
7  presence of SWAT people, there may be other things, and I
8  wouldn't want the jury to think that's because of this case.
9          MR. YAMAMOTO:  I --
10         THE COURT:  So if you both -- if both sides can think
11 of some cautionary instructions or some statements you'd like
12 me to make to the jury, I would be most happy with joint
13 proposals from you-all, but think about that, all right?
14         MR. YAMAMOTO:  All right, Your Honor.
15         THE COURT:  All right.  Now, along the same lines, I
16 would be more comfortable -- my plan Monday morning is to
17 welcome the jury, take attendance by calling their number,
18 explain to them why we're using their number, and then, as you
19 know, when I impanel a jury, I always give the jury a little
20 overview as to what's involved in the case, and I began doing
21 that the other day and then decided I think I'd rather have
22 you-all jointly, because you did a good job on the
23 questionnaire, craft what you would find comfortable as a very
24 brief Court's introduction of the issues in the case to the
25 jury.

1               In particular, I was concerned about as I tried to
2    fashion the defendant -- I mean, we could just say the
3    defendant denies his guilt, but I also don't mind giving the
4    jury a little preview, you know, the defendant will be arguing
5    that he was exercising his First Amendment rights to petition
6    and to speech and perhaps to religion and blah, blah, blah.
7               Anyway, see if you-all can work out a brief -- and
8    you know I like it to be brief -- joint statement.  Remember
9    that we have introduced some of the issues in this case through
10   the questionnaire, so it might give more context to the
11   questionnaire so that they have a little overview of the case,
12   all right?
13              I would need that by midday -- or mid-morning Friday,
14   so it gives me enough time if I wanted to make a few changes,
15   and then I'm going to try to give it back to you so there are
16   no surprises Monday morning, okay?
17              All right, exhibits.  My understanding -- we're going
18   to be in Courtroom 700 for various reasons, one of which was to
19   avoid the MS-13 case on the same floor, but also because I
20   understand that much, if not all, of the government's
21   presentation of evidence is going to be through the electronic
22   system, correct?
23              MR. KROMBERG:  That's correct.
24              THE COURT:  All right.  Now, is the defense also
25   presenting all of its evidence electronically?

15

1 MR. MAC MAHON: We're going to try to, Your Honor. I
2 think we have -- once we get some of the electronic information
3 from the government -- we haven't gotten a CD-Rom from them
4 yet. I think we're dealing with generally the universe of
5 documents that was used in the last case.
6 THE COURT: All right.
7 MR. MAC MAHON: We need a bunch of them for exhibits,
8 and if we could get them electronically, it would be very
9 helpful.
10 THE COURT: All right. Now, that's all well and good
11 for how you present the case to the jury, but we are still not
12 an electronic courthouse, and I don't want any problem or issue
13 for the purposes of an appellate record with the exhibits that
14 are in evidence. Also, the jury has to be able to get the
15 exhibits to work with. So I think we're going to need to
16 require for both sides that at the same time you're presenting
17 the exhibit electronically, there is one hard copy of the
18 exhibit that's going into the record in this case.
19 Now, I don't know, my concern about simply pulling a
20 document from the *Royer* case and then resubmitting it here is I
21 would think there may be stickers with a different case number
22 or something on those documents.
23 MR. KROMBERG: Judge, they definitely have a
24 different case number, but we're using the same exhibit number,
25 so there shouldn't be confusion about Exhibit 1B3. There's

1 only one 1B3 in either case.

2 THE COURT: But are you making a new copy of it that 3 we're going to have in this case?

4 MR. KROMBERG: Yes. We're going to have two loose 5 leaf binders of the government's exhibits which will contain 6 every exhibit. The only issue about exhibits from the last 7 case is sometimes the original, the passport, for example, 8 Mr. Royer's passport is already filed in the existing case, and 9 it may not be as much of an issue as I thought it was going to 10 be because I think Ms. Travers is working with our office so 11 that we can scan the original passport from the last case so 12 that will be what's on display, and we will have a copy of it 13 in the case file here, but we will have one copy of every -- 14 either the original or copy of every exhibit in this case's 15 binders.

16 THE COURT: Fine. And the same would apply to the 17 defense, obviously.

18 MR. MAC MAHON: Yes.

19 THE COURT: All right. So I'm only going to -- all 20 right, that should be fine.

21 Unless you-all have anything you want to raise with 22 me, that's the game plan. Now, you know, there obviously could 23 be something that slows us down a little bit with the jury 24 selection; I hope not.

25 All right, we apparently have -- just so you know,

17

1  when the jury was summonsed, we sent out 250 summonses.  With
2  the summons was an indication simply of the time that we
3  thought the trial would run, and we got back -- whatever number
4  of responses we've gotten back, those who said they could not
5  sit for that period of time have been already winnowed out.
6        There are now 115 names that we are aware of people
7  for whom -- the last question on the questionnaire may be
8  redundant, but I've learned in this business sometimes you have
9  to ask it twice, but it looks as though we have 115 people who
10 at least have the time available for this case.  There may be,
11 obviously, other issues.  But I found in the last case we did,
12 we lost a lot of people just on the time issue, and that would
13 apparently not be a concern for this particular group, all
14 right?
15        So I think -- I'm optimistic that we will be able to
16 get a jury from this pool.  If not, then, you know, we have --
17 may have to go back to -- I mean, Judge Lee had trouble with
18 his MS-13 case, and it slowed things down.  He had to bring
19 another group in, and I'm hoping that doesn't happen here.  But
20 my goal is to be starting this trial hopefully on Tuesday,
21 which is, I guess, what, the 5th of April, all right?
22        Anything else that I need to address with you-all?
23        MR. MAC MAHON:  Can I just ask one question, Your
24 Honor, about the exhibits?  Mr. Gibbs kindly just told me that
25 they're due on Monday, a week from Monday.  If we're going to

18

1  scan these electronically, a couple extra days would be helpful
2  to us.  For example --
3           THE COURT:  Ms. Travers doesn't need them until the
4  morning of trial.
5           MR. MAC MAHON:  Oh, okay.
6           THE COURT:  All right?  And the trial -- there's no
7  way we would be beginning the evidence on the 4th.  It's just
8  not going to happen.  Maybe Tuesday the 5th, all right?  And,
9  you know, I mean, once we've got that pool and you've exercised
10 your peremptories, it's not going to be any different from any
11 other case.  I take, what, five minutes to give them my
12 standard instructions, we give them the notebooks, and we're
13 off and running.
14          And since we are talking about this right now, I
15 would assume 15-20 minutes is enough time for an opening
16 statement?
17          MR. KROMBERG:  I think that would be -- oh, go ahead.
18          MR. MAC MAHON:  I don't think so, Your Honor.  I
19 think it's going to take a little more time than that.  I've
20 been thinking about it and practicing, I think it's got to be
21 at least half an hour to get into some of these other issues,
22 because -- I think half an hour is what the defense wants.
23          THE COURT:  I think 20 minutes is plenty.  You don't
24 want to get into too much detail too early.  I don't think
25 those types of opening statements are at all effective, all

19

1 right? It's not to argue your case. I think 20 minutes per
2 side is enough, so I'll hold you both to that, all right?
3          Okay. Anything else? Anything from the government?
4          MR. KROMBERG: No, Your Honor.
5          MR. GIBBS: No, Your Honor, thank you.
6          THE COURT: All right. So you're going to work on --
7 the main thing I need from you-all is that hopefully agreed
8 joint statement. And remember, you're speaking now as the
9 Court, so don't editorialize. I want you to give me, you know,
10 a shot at a nice, clean, clear, straightforward overview of the
11 case so the jury has some orientation. If you muck it up, then
12 I won't use any of it and will have to do it all myself, all
13 right? Very good.
14          All right, we'll recess court for the day.
15                    (Which were all the proceedings
16                     had at this time.)
17
18              CERTIFICATE OF THE REPORTER
19    I certify that the foregoing is a correct transcript of
20 the record of proceedings in the above-entitled matter.
21
22
23                                        _____/s/_____
                                          Anneliese J. Thomson
24
25