# Exhibit E



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | Case No. cr-04-385 |
| v. | ) | |
| | ) | Hon. Leonie M. Brinkema |
| ALI AL-TIMIMI | ) | |
| | ) | |

## DECLARATION OF EDWARD B. MACMAHON, JR.

I, Edward B. MacMahon, Jr., declare under penalty of perjury under the laws of the
United States of America that the following is true and correct:

1. I am a member in good standing of the Virginia State Bar and the bar of this
   Court.

2. I was lead counsel for Dr. Ali al-Timimi at his criminal trial in the Eastern
   District of Virginia.

3. I have reviewed the filing styled "Government's Response To Discovery
   Motion Re: FISA" filed by the United States in this case. That pleading is
   signed by Assistant United States Attorney Gordon Kromberg, who also
   served as lead prosecutor during the trial of Dr. al-Timimi.

4. I have read the government's claim in the filing that it had disclosed the
   existence of material pre-2003 FISA intercepts to me as counsel during the
   trial. This is simply untrue.



5. Before the trial, my co-counsel Alan Yamamoto and I repeatedly asked for confirmation of such pre-2003 FISA material, and were repeatedly told that no such evidence existed.

6. The government at the outset of its recent filing states that "all such FISA intercepts were provided to al-Timimi's former lead counsel in 2004." I can state that this statement is untrue because I was never given pre-2003 material identified as having been FISA-derived, nor told that such FISA material existed at all.

7. I was particularly surprised to read the government's claim that the defense understood that Dr. Al-Timimi was the subject of a pre-2003 intelligence investigation. In fact, we were told the opposite. For example, the government states that "[a]t trial in 2005, al-Timimi did not even cross-examine Special Agent Ammerman on his testimony that the investigation began in February 2003, because it was apparent at the time that SA Ammerman was referring to the criminal investigation rather than an intelligence investigation." First, I was never told by Mr. Kromberg that there was an "intelligence investigation" of my client or anyone else. Second, in my experience, the government must disclose the existence of any material investigation upon request regardless of whether there is a criminal investigation or an intelligence investigation. In either circumstance, the United States is collecting information that can be discovered in a criminal trial. The only reason I did not question Special Agent Ammerman in this regard is because there was no evidence provided to the defense - in this case





or others as far as I know - to rebut that statement as required by law, not because I accepted his testimony based upon some alleged common understanding. Regardless, the government apparently knew that testimony was false when presented.

8. At trial, Special Agent Ammerman expressly testified that Dr. al-Timimi was not investigated until the year of 2003. This statement was consistent with pre-trial representations of the government that no FISA material existed before 2003.

9. Additionally, the representation that "all parties knew before al-Timimi's trial that an investigation of al-Timimi pre-dated February 2003" is demonstrably untrue and directly contradicts what I was told by Mr. Kromberg before trial. No such information was ever disclosed, and it would have been helpful to the defense had it been disclosed.

10. As the Court will recall, I wrote a letter to this Court in 2006 raising the fact that, during the course of representing Zacarias Moussaoui, I came across material in the National Archives indicating that al-Timimi had been the subject of a government investigation prior to 9/11. In that letter, I expressed that I had not previously been made aware of such an investigation, and described to the Court how this information would have been important to al-Timimi's defense at trial. I also stated explicitly that the existence of any related surveillance before 2003, pursuant to FISA or otherwise, would have meant Stipulation 60 was false or grossly misleading. That stipulation was drafted to capture the entirety of the Government's surveillance of Dr. al-

Timimi compared to the inculpatory evidence that the wiretaps yielded. Had I known of other surveillance, I would have never written the Court in 2006 or drafted a stipulation that turned out to be false.

11. Likewise, the Government claims that former defense counsel was notified that the 4G series of exhibits was FISA derived. That is also untrue. The government denied to me that such evidence existed, and the documents we were given in the 4G series lacked any FISA markings. Had such documents indicated a pre-2003 FISA source, we would have immediately informed the Court of the contradiction in representations made by the government and the need for additional discovery. Instead, the FISA markings were apparently deleted by the prosecutor without the blessing of the Court, and this allowed the Government's denials of pre-2003 FISA material to go unchallenged at any level. I know of no CIPA hearings in which the "scrubbing" of emails was approved under CIPA. Had this been disclosed, the existence of such evidence would have prompted more questions. I had no knowledge of any contemporaneous FISA of any of the "Virginia Jihad" defendants before 2003.

12. The 4G series was a major part of the defense's request for a new trial. At trial, I objected that the Government did not and would not identify the email source, let alone that Government Exhibit 4G7 was FISA derived. The record clearly shows my objection and the Government's response.

13. Finally, I was never given CDs containing pre-2003 FISA material involving Dr. al-Timimi. Had such evidence been given to the defense, we would have

raised it with the Court given our repeated demand for such evidence before trial. That information would also have necessarily been included in Stipulation 60 as described above.

14. I have reviewed my own files and found no reference to the production of any pre-2003 FISA materials. In my experience, the United States Attorneys office in the Eastern District identifies in writing the specific discovery that is provided. That includes discovery provided in the SCIF and otherwise. I have not seen any cover letter showing that pre-2003 FISA materials were ever provided.

15. I remain deeply concerned that additional key evidence in the defense of a case that led to a life sentence was withheld from the defense. I do not have access to the material shown to current lead (and cleared) counsel in the SCIF. I have, however, read limited filings that have been released to the public.

16. The defense has produced evidence regarding Anwar Aulaqi, Abu Khalid, and others that was not given to me at the time of trial, and that would have resulted in immediate demands for discovery and evidentiary hearings before the Court.

17. We were never told, for example, that the government, and specifically Special Agent Ammerman, was directly involved in bringing Aulaqi to the United States and then to the home of Dr. Al-Timimi in October 2002 – a meeting that was repeatedly raised with the government as *Brady*. Before trial, the defense repeatedly asked for information about Aulaqi since proof



that my client had rejected the request that he find young men for jihad was plainly *Brady*. We were stonewalled at every turn by the Government and only the media was later able to disclose Special Agent Ammerman's role in this event. We were also never informed of surveillance on Aulaqi during this period or the involvement of a government "asset" who could either have been Aulaqi himself or another person known to the defense. Mr. Kromberg never disclosed anything of the government's role in allowing Aulaqi into the U.S., including dropping warrants and waiving visa requirements. All of this information was requested and was discoverable under *Brady* and *Giglio*.

18. Likewise, the government repeatedly denied knowing the true identity of Abu Khalid before trial. This issue was the focus of defense objections, in part, because the government was relying for evidence upon actions attributed to a person entirely unknown to the defense as proof of serious crimes. Had the government confirmed Abu Khalid's true identity and provided the requested travel records and other discovery related to him, I would have used it to challenge the testimony regarding Abu Khalid both before, during and after the trial. I have read the government's claim that the defense was informed of Abu Khalid's true identity, and that is entirely untrue – as reflected in our objections to the Court, all of which were made in the presence of Mr. Kromberg.

19. Without the requested discovery, the defense was unable to fully challenge the highly prejudicial testimony regarding Abu Khalid and the attempt to secure unmanned aerial vehicle "drone" technology. This evidence was critical to



the conspiracy claims made by the United States and would have undermined

the quality of the Government's case.

20. I would be willing to testify before the Court about these matters so that the

Court may have a full and complete record before ruling on these issues.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on this day of 26 of September 2013.

Edward B. MacMahon, Jr.