# Exhibit F

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee* | ) | |
| | ) | No. 14-4451 |
| v. | ) | (1:04-cr-385-LMB) |
| | ) | |
| ALI AL-TIMIMI, | ) | |
| | ) | |
| *Defendant-Appellant* | ) | |
| | ) | |

## DECLARATION OF EDWARD B. MACMAHON, JR.

I, Edward B. MacMahon, Jr., declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  I am a member in good standing of the Virginia State Bar and the bar of this Court.

2.  I was lead counsel for Dr. Ali Al-Timimi at his criminal trial in the Eastern District of Virginia.

3.  I was contacted by lead defense counsel Professor Jonathan Turley after his receipt of the attached document hereinafter referred to as the Squad IT-3 document. Professor Turley asked me to review the document to determine if either the document or the information that

it contains were revealed to the defense, in any form, before the trial in this case.

4. I have reviewed the document and confirmed to Professor Turley that the document was never revealed to the defense and I was never informed of the existence or status of any of the investigations referenced in the document.

5. Before the trial, I had repeatedly sought discovery as to the existence of any investigations of Dr. Al-Timimi before early 2003. At trial, Special Agent Wayne Ammerman stated under oath that he was unfamiliar with Dr. Al-Timimi until he received an anonymous tip and that he began the investigation in early 2003. The defense believed that Dr. Al-Timimi was clearly subject to prior investigations and likely surveillance before that time but Assistant United States Attorney Gordon Kromberg repeatedly assured me and the Court that no such investigation occurred before early 2003.

6. During the remand of this case, I was also given the filing styled "Government's Response To Discovery Motion Re: FISA" filed by the United States in this case. That pleading is signed by AUSA Kromberg.

2

7. I have read the government's claim in the filing that it had disclosed the existence of material pre-2003 FISA intercepts to me as counsel during the trial. This is simply untrue and I informed the district court of that fact. I am not aware of any pre-2003 FISA intercepts that were produced in this case.

8. Before the trial, my co-counsel Alan Yamamoto and I repeatedly asked for confirmation the existence or non-existence of any pre-2003 FISA material, and were repeatedly told that no such evidence existed.

9. The government at the outset of its recent filing states that "all such FISA intercepts were provided to Al-Timimi's former lead counsel in 2004." I can state that this statement is untrue because I was never given any pre-2003 material identified as having been FISA-derived, nor told that such FISA material existed at all.

10. In my experience, the government must disclose the existence of any material investigation upon request regardless of whether there is a criminal investigation or an intelligence investigation. In either circumstance, the United States is collecting information that can be discovered in a criminal trial. The only reason I did not further question Special Agent Ammerman in this regard is because there

3

was no evidence provided to the defense - in this case or others as far as I know - to rebut that statement as required by law, not because I accepted his testimony based upon some alleged common understanding. I do not try cases based upon common understandings as the Government argues. Regardless, the Government apparently knew that testimony was false when presented at trial and has allowed it to stand.

11. At trial, Special Agent Ammerman expressly testified that Dr. Al-Timimi was not investigated until the year of 2003. This statement was consistent with pre-trial representations of the government that no FISA material existed before 2003. I was aware that the FBI had visited Dr. Al-Timimi soon after September 11, 2001, but that was part of the 9-11 investigation and had nothing to do – I was told by the Government – with the case that was later tried.

12. Additionally, the representation that "all parties knew before Al-Timimi's trial that an investigation of Al-Timimi pre-dated February 2003" is demonstrably untrue and directly contradicted what I was told by Mr. Kromberg before trial. No such information was ever disclosed, and it would have been helpful to the defense had it been disclosed.

4

13. Indeed, I wrote a letter to this Court in 2006 raising the fact that, during the course of representing Zacarias Moussaoui, I came across material in the National Archives indicating that Dr. Al-Timimi had been the subject of a government investigation prior to 9/11. In that letter, I expressed that I had not previously been made aware of such an investigation, and described to the Court how this information would have been important to Al-Timimi's defense at trial. I also stated explicitly that the existence of any related surveillance before 2003, pursuant to FISA or otherwise, would have meant Stipulation 60 was false or grossly misleading. That stipulation was drafted to capture the entirety of the Government's surveillance of Dr. Al-Timimi compared to the inculpatory evidence that the wiretaps yielded. Had I known of other surveillance, I would have never written the Court in 2006 or drafted a stipulation that turned out to be false.

14. The Squad IT-3 document confirms the very type of preexisting investigations that we repeatedly sought information about from the government and instead were told that there were no such investigations – consistent with the false sworn testimony of Special Agent Ammerman.

5

15. The Squad IT-3 document contains information that clearly should have been disclosed to the defense because it contradicts not only what I was told by AUSA Kromberg, but also the testimony of Special Agent Ammerman and the timeline representations made by the government at trial. This information would have rebutted the testimony, at least, of Special Agent Ammerman.

16. The reference in this material regarding Anwar Aulaqi in the same document as Ali Al-Timimi is equally disturbing. We were never told that the government, and specifically Special Agent Ammerman, was directly involved in bringing Aulaqi to the United States and then to the home of Dr. Al-Timimi in October 2002 – a meeting, and the circumstances surrounding same, that was repeatedly raised with the government in the context of *Brady*. Before trial, the defense repeatedly asked for information about Aulaqi since proof that my client had rejected the request that he find young men for jihad was plainly *Brady*. We were stonewalled at every turn by the Government and only the media was later able to discover and disclose Special Agent Ammerman's role in this event. We were also never informed of surveillance on Aulaqi during this period or the involvement of a government

6

"asset" who could either have been Aulaqi himself or another person known or unknown to the defense. Mr. Kromberg never disclosed anything of the government's role in allowing Aulaqi into the U.S., including dropping warrants and waiving visa requirements. All of this information was requested or was otherwise discoverable under *Brady* and *Giglio*.

17. I was also surprised recently to learn that, while the defense was seeking information of Aulaqi, Special Agent Ammerman was reportedly in e-mail contact with him. *See* http://www.foxnews.com/politics/2014/10/01/enemy-or-asset-fbi-documents-show-radical-cleric-awlaki-communicated-with/ This, according to the media, included communications during the Virginia Jihad trial that preceded the trial in this case. No one obviously informed the defense that this critical witness was in continuing contact with not just another witness, but an FBI Special Agent who testified as a case agent. Had I been informed of these events, I would have immediately filed motions and other requests to obtain all information about the Government's relationship with Aulaqi. Dropping charges and helping a witness gain entry into the United States is classic *Brady* and should have been disclosed.

18. The Squad IT-3 document shows not just investigations linking Dr. Al-Timimi and Aulaqi but also an investigation into their association with Al Qaeda which was the basis for the search on Al-Timimi home and a basis for the indictment. That information was also classic Brady.

19. The Squad IT-3 is precisely what we sought and were told did not exist before trial. It shows that Dr. Al-Timimi was under investigation before 2003 and that that investigation involved many of the same individuals and allegations that were present in the trial. The lack of proof of the facts underlying any of those investigations would have been helpful to the defense.

20. Had this document been shown to me, I would have demanded to see the underlying investigatory material and cross examined witnesses like Special Agent Ammerman on what now appears false testimony as well misrepresentations in the underlying affidavit and indictment in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _14th_ day of April 2015.

Edward B. MacMahon, Jr.

8