Filed with the Classified
Information Security Officer
CISO [signature]
Date 9/20/2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES ) | |
| ) | Case No. 04-cr-385 |
| v. ) | |
| ) | Hon. Leonie M. Brinkema |
| ALI AL-TIMIMI ) | |
| ) | UNDER SEAL |

## DEFENDANT DR. ALI AL-TIMIMI'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL CLASSIFIED DISCOVERY RELATED TO KHWAJA MAHMOOD HASAN

Defendant Dr. Ali al-Timimi respectfully moves this Court, by counsel and pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland* and its progeny, to compel the government to produce previously requested and unlawfully withheld classified evidence related to alleged co-conspirator Khwaja Mahmood Hasan. Telephone communications between Dr. al-Timimi and Hasan have long been a focus of this case and this remand. This includes, but is not limited to, an exculpatory phone call placed by Dr. al-Timimi to Hasan on or about September 19, 2001, in which he left a voicemail discouraging Hasan and alleged co-conspirator Yong Ki Kwon from traveling to Pakistan. On September 20, 2013, an unclassified motion based on public information was filed with the Court seeking this discovery. However, since the government referenced Hasan in prior classified filings, the defense is filing a separate motion in the SCIF to address the earlier classified discovery related to Hasan.[1]

---

[1] The defense has been instructed to place the "TS/SCI (SI)" headings and footers on this and the prior motion. The defense continues to contest the level of classification of these filings and has asked the Court in a pending motion to order the declassification of clearly unclassified material, including pure legal arguments.

1

Before his 2005 trial before this Court, Dr. al-Timimi sought from the government phone records related to Mahmood Hasan that would have definitively established that Hasan and Kwon received phone calls from al-Timimi. The government, however, provided Dr. al-Timimi with a temporally incomplete set of records. It also insisted that it possessed no phone records for Hasan for the period of September 2001, the month in which many of the events central to the case against Dr. al-Timimi took place, and the time period in which exculpatory phone calls were placed. In the absence of this critical discovery, Dr. al-Timimi was forced to elicit through witness testimony evidence about the phone calls and other related communications.

Hasan's central role in the allegations against Dr. al-Timimi has never been disputed by the government, and this Court during this remand has already ordered the government to search for undisclosed evidence related to Hasan. *Dkt. No. 271*. Since the last hearings in this case, defense counsel has uncovered evidence that shows that the government possessed a far greater body of evidence related to Hasan's phone records than had been represented to Dr. al-Timimi at the time of trial: namely, that the government prior to Dr. al-Timimi's trial had acquired Hasan's phone records through a grand jury subpoena and possibly through a National Security Letter (NSL).[2] Given the central importance of September 2001 in the case against Dr. al-Timimi, it is highly unlikely that the subpoena did not reach relevant phone records during this time period.

Because this evidence has a direct bearing on key communications that Dr. al-Timimi has insisted for nearly a decade would prove his innocence, Dr. al-Timimi now asks the Court to

---

[2] Current defense counsel has tried unsuccessfully to obtain a complete index of discovery given to Dr. al-Timimi's trial counsel for both classified and unclassified review. Requests were made to both government counsel and the court security officers. This filing is based on a review of the files of former defense counsel and the transcripts in this case.

2

compel the government to produce all undisclosed classified phone records and intercepted calls of Hasan related to Dr. al-Timimi and the Virginia Jihad investigation.

## I. FACTUAL BACKGROUND

Before trial, the defense repeatedly asked the government for telephone records for Hasan, in order to confirm the fact that Dr. al-Timimi had called Hasan and Kwon shortly before their departure for Pakistan and discouraged them from travelling. Furthermore, Dr. al-Timimi maintained that he had received calls from other individuals, who had themselves been in contact with Kwon and Hasan. *See, e.g., Dkt. No. 154, Trial Tr.*, Vol. 7 at 1857-1858 (Apr. 13, 2005). These calls offered the most direct refutation of the government's claim that Dr. al-Timimi encouraged these men to go to the Lashkar-e-Taiba ("LET") camp for training.

Throughout these pre-trial demands, the government insisted that it did not have a complete record of calls for Hasan, and provided to the defense only a partial disclosure that notably did not include the critical week during which the call from Dr. al-Timimi to Hasan was placed as well as other key calls. For example, in a March 25, 2004 e-mail to the government, defense counsel asked for relevant phone records from September 11-20, 2001, including requests linked to the completion of trial exhibits for the jury. *See* Exhibit B (E-mail from Ed MacMahon, trial counsel for Dr. al-Timimi, to Gordon Kromberg, Ass't United States Attorney, Mar. 25, 2004 09:47 a.m. EST, noting "I need Hasan's phone records so I can fill in all the blanks for the summary exhibit i [sic] am preparing"). This position was maintained during and after the trial. For example, in a July 11, 2005 email, Mr. Kromberg again stated that no such records existed. *See* Exhibit C (E-mail from Gordon Kromberg, Ass't United States Attorney, to Alan Yamamoto, assistant trial counsel for Dr. al-Timimi) ("We do not have any of Hasan's phone records for September 2001.").

In the absence of the critical phone records, the defense continued to pursue the missing telephone records in the questioning of witnesses at trial. Notably, Hasan himself testified at trial that he recalled the government showing him his telephone records during the investigation. *Dkt. No. 155, Trial Tr.*, Vol. 8 at 2125:20-21 (Apr. 14, 2005) ("I just remember showing them – they [sic] showing them one time. I don't know which records exactly."). This contradicted the testimony of FBI Special Agent Ammerman, who could recall specifically looking for such calls only in the two to three weeks before the trial. *Dkt. No. 153, Trial Tr.*, Vol. 6 at 1435:16-19 (Apr. 12, 2005) ("We intermittently looked at telephone records throughout the course of the case. The specific issue of telephone calls between Mr. Kwon and Mr. Timimi became an issue probably about two, maybe three weeks ago in terms of preparing a chart of this nature.").

While the defense sought to show that these calls were made through the examination of witnesses, it could not show the complete telephone records of calls – let alone the content of those calls, as part of the trial. Such records would have been used to corroborate Dr. al-Timimi's claim that Hasan had telephoned witness Yousuf Idris, and his father Jafar Idris, to set up a meeting at Borders Bookstore, where the elder Idris attempted to discourage Hasan and Kwon from departing for Pakistan. The records would also have supported Dr. al-Timimi's claim at trial that and that Yousuf Idris and Mohammad al-Qahtani also separately telephoned Hasan to dissuade him from traveling. *See, e.g., Dkt. No. 154, Trial Tr.*, Vol. 7 at 1868:23-1869:21; 1870:21-1871:5 (Apr. 13, 2005).

In the absence of the phone records, the defense was also stymied in its effort to impeach Hasan and Kwon about receiving calls from al-Timimi and others, as well as testimony of Special Agents Wyman and Ammerman with respect to their handling of the phone records.

While the jury was told that a call was made, the defense was left without direct evidence to show the jury that day and time of that call as well as direct evidence of these other calls.

After the remand, Hasan's communications were raised by the defense. The subsequent classified discovery related to Hasan came as a result of prior Court orders following the remand of the case by the United States Court of Appeals for the Fourth Circuit. The Court ordered the government to search for material related to Hasan's communications. Court Order (Oct. 23, 2008) (ordering additional search on discoverable material). Of particular interest were any phone records or intercepts for the period of September 11, 2001 to September 20, 2001.[3] On December 22, 2008, the government responded with the results of its search. It denied any undisclosed material evidence existed for such Hasan communication as well as other individuals specifically raised by the defense. On the matter of Hasan, the government stated in full the following:

> Timimi sought intercepts of a telephone call between Hasan and Jaafar Idris, sometime between September 17 and September 20, 2001. 
> Again, Paragraph 2 on the bottom of Page 2 of the March 5th Status Report provides additional information regarding the scope of the search for discoverable information at NSA.

Gov't Supplemental Report Reg. The Search For Five Categories of Discoverable Materials at 8-9 (Doc. #280). The defense has a pending motion on the narrow construction given by the government to its search for discoverable material. *See* Def.'s Mot. To Compel Discovery of Evidence Beyond The Narrow Scope of the Government's Prior Search of NSA Material (Doc.

---

[3] The defense was always cleared before trial and after the remand that it could not give a precise date for the calls without these telephone records or interceptions.

#270). While the government is under a continuing duty to reveal to the Court withheld material evidence in violation of prior orders or federal law, the defense was concerned with the limiting language used by the government. This concern was particularly high after that government admitted to ███████████████████████████████████████████

███████ (Doc. # 259) at 7 (acknowledging arguably material evidence withheld).

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

II. **POST-TRIAL EVIDENCE SUGGESTS THAT THE GOVERNMENT WITHHELD KEY EVIDENCE RELATED TO KHWAJA HASAN WHICH SHOULD BE DISCLOSED FULLY IN EITHER CLASSIFIED OR UNCLASSIFIED FORM.**

In the motion filed previously today, the defense laid out new evidence that suggests that the government may have a far greater body of evidence related to Hasan than it has previously represented. This includes Government Exhibit 9D8 from the trial of Sabri Benkahla[5], which took place after the trial of Dr. al-Timimi, the government introduced Government Exhibit 9D8.

---

[4] The government has made reference to "thousands" of FISA calls intercepted and disclosed to the defense. However, as noted above, current defense counsel has sought a list of such evidence previously disclosed in the SCIF from both the court security officers and from the prosecution. It has been told that neither a listing nor the original files could be located.

[5] *United States v. Sabri Benkahla*, E.D. Va. Case No. 1:06-cr-00009 (appeal to 4th Cir. dismissed), hereinafter referenced generally as the "Benkahla Trial" or "Benkahla Docket."

This document specifically references a grand jury subpoena for the Hasan telephone records. This document includes the following references:

Summary of Relevant Grand Jury Subpoenas Issued By Grand Juries 04-1 and 04-2

| 234 | 19 Apr 04 | Telephone Company | Telephone records relating to individuals in contact with Hasan | 04-1 |
| 575 | 23 Sep 04 | Telephone Company | Telephone records relating to individuals in contact with Timimi, Kwon, & Hasan | 04-1 |

*Unpublished Summary of Relevant Grand Jury Subpoenas Issued By Grand Juries 04-1 and 04-2*, on file with Benkahla Trial parties ("Benkahla Ex. 9D8"). As noted in the earlier motion, these requests appear to contradict testimony of government witnesses, particularly FBI agents who testified at the al-Timimi trial. The September 4, 2004 date of that request is notable since it is the day before al-Timimi's indictment. While the defense has not reviewed these records, it is reasonable to believe the subpoena would have included the call record sought by the defense before trial. In addition to the documents from *United States v. Benkahla*, public disclosures concerning the use of National Security Letters in the so-called "Virginia Jihad" prosecution make it highly unlikely the government does not possess relevant phone records related to Hasan.

After the remand of this case, Congressional hearings were held on the use of National Security Letters (NSLs) in prior terrorism investigations.[6] The unclassified testimony in these hearings makes repeated references to the Virginia Jihad investigations. In the 2008 hearings,

---

[6] Hearing on: The Inspector General's Independent Report on the FBI's Use of National Security Letters: Hearing Before H. Comm. on the Judiciary, 110th Cong. (Mar. 20, 2007) (statement of FBI General Counsel Valerie E. Caproni); Hearing on: H.R. 3189, the "National Security Letters Reform Act of 2007" before the Subcomm. on the Constitution, Civil Rights, and Civil Liberties (Apr. 15, 2008).

officials testified about the use of both NSLs and "link analysis" relating to the telephone calls of suspects:

> National security letters generally permit us to obtain the same sort of documents from third party businesses that prosecutors and agents obtain in a criminal investigation with grand jury subpoenas. National security letters have been instrumental in breaking up cells like the Lackawanna Six and the Northern Virginia Jihad, through the use of NSLs, the FBI has traced sources of terrorist funding, established telephone linkages that resulted in further investigations and arrests, and arrests of suspicious associates with deadly weapons and explosives. NSLs also allow the FBI to link terrorists together financially and pinpoint cells and operatives by following the money.[7]

The defense has searched the available records and can find no evidence of NSLs revealed to trial counsel. Indeed, the prior transcript references indicate that no such NSLs were revealed to the defense by government agents who presumably knew of their existence.

Further confirmation of the undisclosed NSLs can be found in April 2011 testimony on the PATRIOT Act Sunset extension.[8] Referencing earlier testimony by Valerie Caproni, General Counsel of the FBI, in 2007, the government again confirmed that NSLs were critical in the investigation of the "Virginia Jihad."

In conjunction with the earlier motion seeking undisclosed FISA information (which would include Hasan evidence), this undisclosed evidence is obviously material and, if withheld, would constitute a serious breach of both federal law and prior court orders. The evidence described above fits well within the scope of pre-trial discovery under *Brady* and other controlling

---

[7] Tr. of Hearing on H.R. 3189, the "National Security Letters Reform Act of 2007," Serial No. 110-96 at (Apr. 15, 2008), available at http://judiciary.house.gov/hearings/printers/110th/41795.PDF.

[8] *See* Sen. Rep. No. 112-13 (Apr. 5, 2011), available at http://www.gpo.gov/fdsys/pkg/CRPT-112srpt13/pdf/CRPT-112srpt13.pdf.

8

standards in criminal cases. Under the Fourth Circuit's application of *Brady v. Maryland* and its progeny, Due Process requires that the government disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). Of particular importance to this remand, the Supreme Court subsequently extended the *Brady* disclosure rule to material impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Fisher*, 711 F.3d 460, 471 (4th Cir. 2013). Dr. al-Timimi is clearly entitled to the requested evidence under the much more permissive standard of Rule 16(a)(1)(E)(i), which requires the government to make available any requested items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); *Caro*, 597 F.3d at 620-21 (agreeing that Rule 16 is "much broader" than *Brady*, and provides the "minimum amount of pretrial discovery granted in criminal cases"). "[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

This information was critical in not only allowing a review of the full record by the defense in preparing for trial, but also to completing trial exhibits and examining key witnesses. It was also evidence that was directly covered not only by pre-trial orders but post-remand orders in this case. As with the disclosure of exculpatory material, the government must first establish what evidence was withheld pre-trial, and cannot engage in post-trial rationalizations or use of hindsight to excuse violations of Rule 16. The evidence must be reviewed under the standard for disclosure that existed pre-trial. In this case, there is no question that this evidence, when requested pre-trial, would have "play[ed] an important role in uncovering admissible evidence,

aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (citation and internal quotation omitted).[9]

It is particularly important for the government to confirm not only whether it has the content of intercepted calls (the focus of its earlier classified status report) but phone records confirming the time and occurrence of calls. Such records were sought by the defense because they offered concrete confirmation of the account of Dr. al-Timimi and others as to efforts to reach and dissuade these men from going to Pakistan. Moreover, as noted in the earlier classified and unclassified motions on the President's Surveillance Program (PSP), there remains confusion on the scope of prior searches and the possible inclusion of this material under previously compartmentalized programs. Whatever may occur in this case, the record of known discoverable information should be confirmed. This should include the material itself being placed, if necessary, in the classified record. The government has not explained why cleared defense counsel should not be able to read the specific interceptions of individuals like Al-Buthe rather than rely on its obviously biased analysis that none of this evidence would have helped the defendant. With Hasan, the government should confirm whether it had the full phone records for September 2001 and produce those records with any intercepted communications.

---

[9] A latter question may arise as to whether "the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 F.3d at 621 (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975). That appellate standard for a violation of Rule 16 only occurs after the establishment of the body of evidence withheld by the government. *Id.* Moreover, when that secondary question is raised, it is done so through an adversarial process, and not by an opaque determination of the government.

REDACTED / CLEARED FOR PUBLIC RELEASE

## III. CONCLUSION

In light of the foregoing, the Defendant respectfully requests an order to compel the government to produce all undisclosed classified phone records and intercepted calls of Hasan related to Dr. al-Timimi and the Virginia Jihad investigation.

Dated: September 20, 2013

Respectfully submitted,
Dr. Ali al-Timimi, by Counsel:

*/s/ Jonathan Turley*

Jonathan Turley

Jonathan Turley (*pro hac vice*, lead counsel)
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001 (phone)
(202) 994-9811 (facsimile)

Vishant Manu Krishnan (VSB # 82308)
Bryan Cave LLP
1155 F Street, NW, Suite 700
Washington, D.C. 20004
(202) 508-6000 (phone)
(202) 508-6200 (facsimile)

REDACTED / CLEARED FOR PUBLIC RELEASE

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2013, the foregoing was given to the court security official in compliance with prior court orders for classified filings in the SCIF assigned to this case to be delivered to both the Court and to the below opposing counsel:

>Mr. Gordon Kromberg, Esq.
>Assistant United States Attorney
>2100 Jamieson Ave.
>Alexandria, Virginia 22314-5794
>(703) 299-3800 phone
>gordon.kromberg@usdoj.gov

Jonathan Turley
*Lead Counsel for Dr. Ali al-Timimi*

12