**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

—————————————————————
                                                    )
UNITED STATES OF AMERICA,              )
                                                    )
     *Plaintiff*,                              )
                                                    )
v.                                                  )          Case No. 1:04-cr-385 (LMB)
                                                    )
ALI AL-TIMIMI,                                )
                                                    )
     *Defendant*.                            )
—————————————————————)

**MEMORANDUM IN SUPPORT OF AL-TIMIMI'S RENEWED MOTION FOR**
**ACQUITTAL REGARDING COUNTS 7 AND 8 IN LIGHT OF INTERVENING**
**SUPREME COURT AUTHORITY**

     Pursuant to the Fourth Circuit's modified remand order of July 26, 2016 [Dkt. No. 431],

Defendant Dr. Ali Al-Timimi respectfully submits this memorandum in support of his renewed

motion for a judgment of acquittal on Counts 7 and 8 in light of the Supreme Court's intervening

opinion in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* Dkt. No. 432. For the reasons

detailed below, Al-Timimi respectfully requests that the Court grant his motion and adjust his

sentence accordingly.

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES..........................................................................................ii

INTRODUCTION ...........................................................................................................1

STATUTORY PROVISIONS ...........................................................................................2

BACKGROUND ............................................................................................................4

ARGUMENT ................................................................................................................7

I.      Al-Timimi's convictions under Counts 7 and 8 depend on § 924(c)'s residual clause........7

II.     § 924(c)'s residual clause is void for vagueness in light of *Johnson*. ..................................9

      A.      § 924(c)(3)(B) suffers from the same flaws that led the Supreme Court to strike down the residual clause of the ACCA....................................................10

      B.      The ACCA residual clause cannot be distinguished on the basis of its four enumerated offenses. ..................................................................................12

      C.      The ACCA residual clause cannot be distinguished as materially more narrow than § 924(c)(3)(B). ................................................................................15

      D.      The § 924(c)(3)(B) residual clause cannot be saved by abandoning its categorical "ordinary case" framework, which is mandated by both its text and the controlling case law of the Fourth Circuit........................................18

III.    Because § 924(c)(3)(B) is void for vagueness, Al-Timimi's convictions under Counts 7 and 8 should be vacated and his sentence adjusted accordingly. ......................21

IV.     Although the Supreme Court has recently granted certiorari to decide the constitutionality of § 16(b), a decision by this Court on the § 924(c)(3)(B) clause at issue here would serve the interests of justice and the courts............................22

CONCLUSION ..............................................................................................................23

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Begay v. United States*,
   553 U.S. 137 (2008) .......................................................................................... 16, 17

*Dimaya v. Lynch*,
   803 F.3d 1110 (9th Cir. 2015)............................................................... 6, 13, 14, 16

*Floyd v. Laws*,
   929 F.2d 1390 (9th Cir. 1991)............................................................................... 9

*Golicov v. Lynch*,
   No. 16-9530, 2016 U.S. App. LEXIS 17121 (10th Cir. Sep. 19, 2016) ........................... 13, 18

*In re Hubbard*,
   825 F.3d 225 (4th Cir. 2016)...................................... 6, 10, 12, 13, 14, 16, 17, 19, 22

*James v. United States*,
   550 U.S. 192 (2007) .......................................................................................... 11, 17

*Jimenez-Gonzalez v. Mukasey*,
   548 F.3d 557 (7th Cir. 2008)............................................................................... 16

*Johnson v. United States*,
   135 S. Ct. 2551 (2015) ......................... 1, 4, 5, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) .............................................................................................. 17, 19

*Lynch v. Dimaya*,
   2016 U.S. LEXIS 4461 (U.S. Sept. 29, 2016) (No. 15-1498)......................... 6, 13, 22

*Ortiz v. Lynch*,
   796 F.3d 932 (8th Cir. 2015)............................................................................... 16

*Shuti v. Lynch*,
   828 F.3d 440 (6th Cir. 2016)............................................................................... 13, 16, 18

*United States v. Aragon*,
   983 F.2d 1306 (4th Cir. 1993)............................................................................. 19

*United States v. Fuertes*,
   805 F.3d 485 (4th Cir. 2015)............................................................................... 7, 12, 19

*United States v. Gonzalez-Longoria*,
  No. 15-40041, 2016 U.S. App. LEXIS 14460 (5th Cir. Aug. 5, 2016) (en banc).............. 13, 16

*United States v. Hill*,
  No. 14-3872-cr, 2016 U.S. App. LEXIS 14118 (2d Cir. Aug. 3, 2016) ........................... 13, 16

*United States v. Mayer*,
  560 F.3d 948 (9th Cir. 2009)...................................................................................... 11

*United States v. McNeal*,
  818 F.3d 141 (4th Cir. 2016)...................................................................................... 19

*United States v. Naughton*,
  No. 13-4816, 2015 U.S. App. LEXIS 15592 (4th Cir. Sept. 2, 2015) ...................................... 12

*United States v. Prickett*,
  830 F.3d 760 (8th Cir. 2016)...................................................................................... 18

*United States v. Taylor*,
  814 F.3d 340 (6th Cir. 2016)...................................................................................... 13, 16

*United States v. Vivas-Ceja*,
  808 F.3d 719 (7th Cir. 2015)...................................................................................... 13, 16

*Welch v. United States*,
  136 S. Ct. 1257 (2015) ........................................................................................ 5, 13, 15

## STATUTES

18 U.S.C. § 16................................................................................................. 3, *passim*

18 U.S.C. § 924(c) .......................................................................................... 2, *passim*

18 U.S.C. § 924(c)(3)(B) .................................................................................. 2, *passim*

18 U.S.C. § 924(e) .......................................................................................... 2, *passim*

## OTHER AUTHORITIES

Brief for the United States of America,
  Johnson v. United States, 135 S. Ct. 2551 (2015) (No. 13-7120),
  2015 U.S. S. Ct. Briefs LEXIS 1110.......................................................................... 17

# INTRODUCTION

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court invalidated the "residual clause" portion of the "violent felony" definition found in the Armed Career Criminal Act (ACCA), concluding that both features of its two-part categorical methodology—its "ordinary case" inquiry and its "risk" inquiry—suffered from "hopeless indeterminacy" that rendered the clause unconstitutionally vague. *Id*. at 2557-58.

In this case, two of Defendant Al-Timimi's convictions—those under Counts 7 and 8 of the operative indictment—rely on the similarly worded residual clause found in 18 U.S.C. § 924(c)(3)(B). As detailed below, this clause uses an analogous two-part categorical methodology that combines an identical "ordinary case" inquiry with a near-identical "risk" inquiry.

Al-Timimi's direct appeal has not yet occurred, and while the Fourth Circuit has not yet decided the question of *Johnson*'s impact on § 924(c)(3)(B) for this jurisdiction, it issued a modified remand order on July 26, 2016 allowing Al-Timimi to argue the issue before this Court. Dkt. No. 431. Accordingly, the question presented by this motion is whether Al-Timimi's § 924(c) convictions under Counts 7 and 8 have been rendered unsustainable in light of the Supreme Court's intervening *Johnson* decision and should be set aside. For the reasons outlined below, the defense respectfully submits that the answer is yes.

## STATUTORY PROVISIONS

The § 924(e) Armed Career Criminal Act statute at issue in *Johnson* and the similarly worded § 924(c) statute at issue here are codified in parallel under Title 18, Section 924 of the United States Code; they are reproduced in relevant part below for convenience. Their respective "residual clauses" at issue in this motion are italicized in the text.

|  | ACCA, 18 U.S.C. § 924(e) [at issue in *Johnson*] | 18 U.S.C. § 924(c) [at issue in this case] |
|---|---|---|
| **Operative clauses**: | "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a *violent felony* or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)." 18 U.S.C. § 924(e)(1) (emphasis added). | "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any *crime of violence* or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime -- [receive a mandatory non-concurrent prison sentence ranging from 5 years to life according to an enumerated sentencing schedule]." 18 U.S.C. § 924(c)(1)(A) (emphasis added). |
| **Definitional clauses**: | "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that --<br><br>  (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or<br><br>  (ii)  is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*; . . . " 18 U.S.C. § 924(e)(2)(B) (emphasis added to reflect residual clause invalidated for vagueness in *Johnson*). | "For purposes of this subsection the term 'crime of violence' means an offense that is a felony and --<br><br>  (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or<br><br>  (B)  *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*." 18 U.S.C. § 924(c)(3) (emphasis added to reflect residual clause challenged on vagueness grounds in this case). |

A related statute—18 U.S.C. § 16—provides a default crime-of-violence definition for Title 18 that is functionally identical to § 924(c)(3). Though not directly at issue in this case, its identically worded residual clause is the subject of several related post-*Johnson* cases cited throughout this motion. It reads as follows:

> The term "crime of violence" means—
>
>   (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
>   *(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

18 U.S.C. § 16 (emphasis added to reflect residual clause).

## BACKGROUND

1.      At its core, this case centers on allegations that Dr. Ali Al-Timimi—a computational biologist employed in medical research and a prominent Muslim lecturer—made comments at a dinner shortly after 9/11 that the government claims helped to inspire certain men in attendance to go forward with a plan to travel to a camp in Pakistan called Lashkar-e-Taiba (LET), a group the United States would later designate as a terrorist organization. Under assorted theories of inchoate liability, Al-Timimi was charged with and convicted of ten felonies. *See* Dkt. Nos. 41 (superseding indictment) & 107 (verdict). In a result that the Court described as "very draconian," Dkt. No. 147 at 20, he received a mandatory lifetime prison sentence. *See* Dkt. No. 132 (judgment form).

2.      Although Al-Timimi's trial and sentencing occurred in 2005, his direct appeal has not yet occurred due to a series of complex post-trial remand proceedings concerning secret government surveillance programs. At present, his case is on remand before this Court pursuant to an August 4, 2015 order of the Fourth Circuit for additional proceedings concerning newly released evidence. *See* Dkt. No. 406 (current remand order). That issue—unrelated to the present motion—has been briefed separately, and is currently pending before this Court. *See* Dkt. Nos. 409-10, 416, & 430. While those papers were filed with this Court through a designated Classified Information Security Officer according to protocol, the CISO office has advised the defense that it may file the instant motion on the public docket.

3.      On July 26, 2016, the Fourth Circuit modified the current remand order to allow Al-Timimi to also challenge his § 924(c) convictions before this Court in light of the Supreme Court's intervening opinion in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* Dkt. No. 431. As noted above, *Johnson* invalidated the "residual clause" portion of the crime-of-violence

definition codified in the Armed Career Criminal Act at 18 U.S.C. § 924(e)(2)(B)(ii), after concluding that the "wide ranging" two-part inquiry it required courts to employ was incompatible with the Constitution's prohibition on vague criminal laws. 135 S. Ct. at 2557 & 2563. A subsequent Supreme Court opinion in *Welch v. United States*, 136 S. Ct. 1257 (2015) reaffirmed *Johnson*, holding that the decision constituted a new rule of constitutional law available for prisoners to assert retroactively on collateral review. *Id*. at 1265; *see also id*. at 1261-62 (summarizing *Johnson*'s reasoning).

4.      In this case, two of Al-Timimi's convictions—those under Counts 7 and 8 of the operative indictment—implicate the similarly worded residual clause codified at § 924(c)(3)(B). In short, these counts charged Al-Timimi as an accomplice to various illegal firearms activities that principals Kwon and Hasan engaged in at the LET camps they attended in Pakistan. *See* Dkt. No. 47 at 15 (superseding indictment). Both principals fired machine guns in training exercises there, for which each subsequently admitted guilt to discharging a machine gun in relation to a crime of violence in violation of § 924(c). *See* Dkt. No. 47 at 15 (superseding indictment); *see also United States v. Royer*, *et al.*, 1:03-cr-296-LMB (E.D. Va.), Dkt. Nos. 137 at ¶¶ 27, 33 (statement of facts by Kwon in support of plea agreement) & 127 at ¶¶ 6, 12 (statement of facts by Hasan in support of plea agreement). The government charged and convicted Al-Timimi as an accomplice to those crimes based on its broader allegation that his comments at the above-referenced dinner induced the principals to attend LET. *See* Dkt. No. 47 at 15. As explained in greater detail below, all of the alleged underlying "crimes of violence" rely on the residual clause of § 924(c)(3)(B). *See* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2317-20 (Jury Instruction 44, enumerating the government's proffered crimes of violence) (attached as Ex. B); *see also* Ex. A (statutory addendum listing and analyzing all § 924(c) crimes of violence proffered in Jury

Instruction 44).

5.      While the Supreme Court has not yet decided whether *Johnson*'s reasoning also requires invalidation of the similarly worded residual clause at issue here, a circuit split has developed among the courts of appeals. The Fourth Circuit has not yet resolved the question for this circuit, but has acknowledged the circuit split and the similarities between the respective residual clauses, and has accordingly authorized prisoners to argue the issue before the district courts in the form of successive habeas petitions. *See In re Hubbard*, 825 F.3d 225, 229-35 (4th Cir. 2016); *see also id*. at 232, n.4 ("We note that the circuits are divided as to whether § 16(b) and § 924(c)(3)(B) are unconstitutionally vague under *Johnson*."). On September 29, 2016, the Supreme Court granted a petition for certiorari in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), which presents the question of whether § 16(b) is unconstitutional in light of *Johnson*. *See Lynch v. Dimaya*, 2016 U.S. LEXIS 4461 (U.S. Sept. 29, 2016) (No. 15-1498). Although *Dimaya* does not directly involve the § 924(c)(3)(B) clause at issue here, § 16(b) is worded identically. The case is scheduled to be briefed later this term and decided next year.

6.      After Al-Timimi's trial, he filed and briefed Rule 29 motions for acquittal on all counts—including his § 924(c) convictions under Counts 7 and 8. *See* Dkt. Nos. 118, 125, & 126. The Court denied those motions from the bench in a sentencing hearing on July 13, 2005. *See* Dkt. No. 147 at 2-6. But because *Johnson* and *Welch* had not yet been decided, this Court had no opportunity to consider the constitutionality of the residual clause in rendering a final judgment. Al-Timimi therefore moved the Fourth Circuit for modification of the current remand order to allow for reconsideration of these acquittal motions in light of *Johnson*. *See* Fourth Circuit Case No. 14-4451, ECF No. 70. The Fourth Circuit granted the motion on July 26, 2016, and modified its remand order accordingly. Dkt. No. 431. This motion follows.

# ARGUMENT

Both of Al-Timimi's accomplice liability convictions under Counts 7 and 8 depend on § 924(c)(3)(B)'s "residual clause," which in turn relies on a two-part categorical framework that is materially indistinguishable from the ACCA scheme declared void for vagueness by the Supreme Court in *Johnson*. For all of the reasons outlined below, the defense respectfully submits that § 924(c)(3)(B) is no longer sustainable, and that Al-Timimi is therefore entitled to a judgment of acquittal with respect to his § 924(c) convictions under Counts 7 and 8.

## I.   Al-Timimi's convictions under Counts 7 and 8 depend on § 924(c)'s residual clause.

To make its § 924(c) accomplice liability case against Al-Timimi at trial, the government had the burden of proving not merely that principals Kwon and Hasan discharged firearms at LET camps, but that they did so "during and in relation to" at least one qualifying "crime of violence." As noted above, the statute defines this term in full as follows:

> (3)  For purposes of this subsection the term "crime of violence" means an offense that is a felony and--
>> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>> (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

18 U.S.C. § 924(c)(3). The emphasized catch-all language found in subsection (B) is commonly referred to as the definition's "residual clause"; its continued validity in light of *Johnson* is the subject of this motion. By contrast, subsection (A) is commonly referred to as its "force clause;" it is unaffected by *Johnson* or this motion. *See, e.g.*, *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

The government addressed this crime-of-violence element at trial through Jury

Instruction 44, which listed nine offenses that it alleged principals Kwon and Hasan could have been furthering when they discharged firearms in LET training exercises. *See* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2317-20 (Jury Instruction 44) (attached as Ex. B). In order to convict Al-Timimi as an accomplice, the instruction required the jury to find that the principals had furthered at least one of these nine offenses. *Id.* at 2319-20.

In this case, none of the offenses satisfy the "force clause" portion of the crime-of-violence definition because all nine can be committed without the "use, attempted use, or threatened use of force." *See* § 924(c)(3)(A). Instead, all nine depend on the catch-all language of the "residual clause," which additionally covers offenses that "by [their] nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See* § 924(c)(3)(B). Attached to this motion as Exhibit A is a statutory addendum that individually compares each of the nine offenses listed in Jury Instruction 44 against the crime-of-violence definition of § 924(c)(3), and further details each offense's reliance on the residual clause. *See* Ex. A.

The defense also notes that the record does not indicate which of the nine asserted crimes of violence the jury chose to support the conviction, as the jury issued only a general verdict and was not specifically polled on Jury Instruction 44. *See* Trial Tr., April 26, 2005 [Dkt. No. 161] at 2412 (attached as Ex. C). Because all nine appear to unambiguously rely upon the residual clause, the defense expects this question to be moot. But even assuming arguendo that the government could sustain *some* of the offenses under the force clause (a proposition that the defense submits is irreconcilable with its text), the lack of a special verdict makes it impossible to know whether those particular offenses were the basis for the jury's decision. Thus, any such selective attempts by the government to rely on the force clause for only some of the offenses

8

would depend on improper speculation about how the jury arrived at its decision behind the closed doors of the deliberation room. *See Floyd v. Laws*, 929 F.2d 1390, 1399 (9th Cir. 1991) ("[I]t is difficult for a reviewing court to divine what the intent of the jury might have been. In any event, the legal precedents cited here do not permit this court to indulge in speculation as to the jury's motives.")

## II.   § 924(c)'s residual clause is void for vagueness in light of *Johnson*.

In striking down the residual clause to the Armed Career Criminal Act, the Supreme Court began its opinion in *Johnson* by framing the legal inquiry as follows:

> Under the Armed Career Criminal Act of 1984, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a "violent felony," a term defined to include any felony that "*involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. §924(e)(2)(B). We must decide whether this part of the definition of a violent felony survives the Constitution's prohibition of vague criminal laws.

135 S. Ct. at 2551 (emphasis added). The Court found the answer to be no, concluding that this "residual clause" portion of the definition required courts to engage in a "wide-ranging" two-part inquiry that both failed to provide "fair notice to defendants" and "invite[d] arbitrary enforcement by judges." *Id*. at 2557.

This case presents a vagueness challenge to the similarly worded "residual clause" contained in 18 U.S.C. § 924(c), which defines the term "crime of violence" to include any felony "*that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*." 18 U.S.C. § 924(c)(3)(B) (emphasis added). As explained below, this clause employs a near-identical version of the two-part framework invalidated in *Johnson*; indeed, the clauses are so similar that courts and the government alike have frequently treated their corresponding bodies of case law

interchangeably. *See infra* pp. 16-17; *see also In re Hubbard*, 825 F.3d 225, 232 (4th Cir. 2016) (observing in a § 16(b) case that "[t]he provision also *applies almost the exact same vague standard*—'involves a substantial risk'—to the abstract ordinary case.") (emphasis added) (citation omitted).

   With the ACCA residual clause now invalidated, the question is whether the government can meaningfully distinguish the near-identical clause of § 924(c)(3)(B). For the reasons outlined below, it cannot.

### A.   § 924(c)(3)(B) suffers from the same flaws that led the Supreme Court to strike down the residual clause of the ACCA.

   The Supreme Court in *Johnson* explained that "[t]wo features of the residual clause conspire[d] to make it unconstitutionally vague," 135 S. Ct. at 2557—first, its so-called "ordinary case" methodology (which judged a violent felony not in terms of the defendant's own conduct in the case at hand, but instead in terms of how a hypothetical perpetrator might be expected carry it out in a judicially imagined "ordinary case"), and second, its open-ended "serious potential risk of physical injury" standard (which the Court found too vague to produce consistent results demanded by the rule of law). *See id.* at 2557-58.

   The first feature—the "ordinary case" methodology—required courts to evaluate a potential crime of violence in terms of how it could be expected to play out in a hypothetical "ordinary case," as opposed to how it played out in the case at hand. This framework stems from the ACCA's textual requirement that courts evaluate crimes of violence *categorically*—that is, by assessing the nature of the offense rather than the individual offender's conduct in committing it. *See id.* at 2557. With regard to the ACCA's force clause, the task was and remains a straightforward and objective one: courts simply look to the asserted offense's statutory elements

and examine whether it requires the use, attempted use, or threatened use of physical force. *See* 18 U.S.C. § 924(e)(2)(B)(i). But with regard to the now-invalid residual clause, the inquiry became unmoored from the elements of the offense, instead requiring courts to engage in the abstract task of imagining how the offense would likely play out when committed in an "ordinary case." *Johnson*, 135 S. Ct. at 2557. The *Johnson* Court concluded that this inquiry too often devolved into speculative guesswork and provided "no reliable way to choose between . . . competing accounts" of what constitutes such an "ordinary case." *Id*. at 2557-58 ("How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves? 'A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?'" (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (KOZINSKI, C.J., dissenting from denial of rehearing en banc))).[1]

Second, even if a court could discern an asserted predicate crime's "ordinary case," the ACCA then required it to puzzle over whether that ordinary case might implicate a "serious potential risk of physical injury"—a threshold found too vague to provide meaningful guidance and produce consistent results. *Johnson*, 135 S. Ct at 2558. The Court noted that "[i]t is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id*. It then concluded: "By combining indeterminacy

---

[1]     As the *Johnson* Court further explained, the ordinary case inquiry was so indeterminate that the Justices themselves reached differing conclusions under it. *See* 135 S. Ct. at 2558. In *James v. United States*, 550 U.S. 192 (2007), for example, the Court examined the offense of attempted burglary, but could not reach consensus on the likelihood of violent confrontation precisely because they could not agree on how to best conceptualize the "ordinary case" commission of the crime. The majority concluded that attempted burglary qualified as a violent felony under the statute based on its view that in an "ordinary case," "[a]n armed would-be burglar may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program. Or a homeowner . . . may give chase, and a violent encounter may ensue." *Id*. at 211. By contrast, the dissent concluded that a confrontation in the ordinary case "is likely to consist of nothing more than the occupant's yelling 'Who's there?' from his window, and the burglar's running away." *Id*. at 226 (SCALIA, J., dissenting).

about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

As confirmed by the Fourth Circuit, § 924(c)(3)(B) contains precisely the same two flaws. Like the ACCA, § 924(c)'s residual clause requires courts to consider not the defendant's own conduct, but rather that of a hypothetical perpetrator's "possible conduct under the elements of the offense" as imagined "in the ordinary case." *See United States v. Naughton*, No. 13-4816, 2015 U.S. App. LEXIS 15592, at *18 (4th Cir. Sept. 2, 2015) (emphasis added) (citing *United States v. Fuertes*, 805 F.3d 485, 500-501, 500 n.6 (4th Cir. 2015)). Second, like the ACCA, § 924(c) offers no guidance for determining when an "ordinary case" has met the equally indeterminate standard of whether there is a "substantial risk" that force will be used. *See* § 924(c)(3)(B); *see also In re Hubbard*, 825 F.3d at 232-33 (observing of § 16(b): "The provision also applies almost the exact same vague standard—'involves a substantial risk'—to the abstract ordinary case.") (citations omitted). Thus, the same two defects that rendered the ACCA's residual clause void for vagueness are equally present in that of § 924(c)(3)(B) and mandate the identical result.

### B.   The ACCA residual clause cannot be distinguished on the basis of its four enumerated offenses.

The government is likely to argue that *Johnson* can be distinguished on the grounds that the ACCA residual clause it invalidated additionally "force[d] courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives." *Johnson*, 135 S.Ct. at 2558. While these enumerated crimes are indeed absent from § 924(c), the *Johnson* opinion and its progeny make clear that this was not

one of the "two features" that "conspire[d]" to make the ACCA clause unconstitutionally vague.

*See Johnson*, 135 S. Ct. at 2557; *Welch*, 136 S. Ct. at 1261-62 (summarizing *Johnson*'s holding

in terms of the ACCA's two-part categorical approach, while making no mention of its four

enumerated crimes), and most[2]—though not all[3]—of the courts of appeals that have considered

the issue are in accord. Regardless, any attempt to distinguish the clauses on this basis fails for

two primary reasons.

    First, the absence of any enumerated offenses does not make § 924(c)(3)(B) more clear.

If anything, it provides courts with even less guidance about the sort of risk, and level of risk,

---

[2]      *See Shuti v. Lynch*, 828 F.3d 440, 448 (6th Cir. 2016) ("[T]he existence of a prefatory 'list of examples,' though surely confusing, was not determinative of the Court's vagueness analysis."); *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) ("The government overreads this part of the Court's analysis. . . . The list [of enumerated offenses] itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague."); *Dimaya v. Lynch*, 803 F.3d 1110, 1118 (9th Cir. 2015) ("*Johnson* . . . made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses."), cert. granted, No. 15-1498, 2016 U.S. LEXIS 4461 (U.S. Sept. 29, 2016) (No. 15-1498); *Golicov v. Lynch*, No. 16-9530, 2016 U.S. App. LEXIS 17121, at *19 (10th Cir. Sep. 19, 2016) ("As for the fact that the risk standard employed in § 16(b) contains no list of enumerated crimes, we agree with the Sixth, Seventh and Ninth Circuits that this does not serve to meaningfully distinguish § 16(b) from the ACCA's residual clause because the enumeration of specific crimes in the ACCA's residual clause was not one of the '[t]wo features of the residual clause'—i.e., the determination of the ordinary case and the risk assessment of that ordinary case—that 'conspire[d],' in the Supreme Court's view, 'to make it unconstitutionally vague.') (citations omitted); *see also In re Hubbard*, 825 F.3d at 233 (noting in dictum that "[o]nly one of the problems with ACCA's residual clause is absent from § 16(b): the enumerated list of offenses. But while the *Johnson* Court noted that the list made the residual clause more vague rather than less so, its reliance on that issue was limited.") (citations omitted).

[3]      *See United States v. Gonzalez-Longoria*, No. 15-40041, 2016 U.S. App. LEXIS 14460, at *12-14 (5th Cir. Aug. 5, 2016) (en banc) (distinguishing and upholding § 16(b) based in part on its lack of enumerated offenses); *United States v. Hill*, No. 14-3872-cr, 2016 U.S. App. LEXIS 14118, at *28-31 (2d Cir. Aug. 3, 2016) (same with respect to § 924(c)(3)(B)); *United States v. Taylor*, 814 F.3d 340, 377 (6th Cir. 2016) (same); *but see also Shuti*, 828 F.3d at 450-51 (6th Cir. 2016) (finding §16(b) void for vagueness, distinguishing *Taylor* in part because it was decided pre-*Welch*) ("[T]he government's reading of *Taylor* has been undercut by the Supreme Court's intervening decision in *Welch*. As the Court made clear this term, the ACCA's vagueness 'rests in large part on its operation under the categorical approach.' *Welch*, 136 S. Ct. at 1262. That residual clause did not fail for the reasons latched onto by the government.")

that the statute is intended to cover. *Johnson* observed that because "[c]ommon sense has not even produced a consistent conception of the degree of risk posed by each of the four enumerated crimes," there could be "no reason to expect it to fare any better with respect to thousands of unenumerated crimes." 135 S. Ct. at 2559. Certainly then, a statute that fails to list any enumerated crimes at all cannot be expected to fare any better. *See In re Hubbard*, 825 F.3d at 233 ("[P]erhaps paradoxically, it is largely the enumerated offenses in the ACCA which caused that residual clause's greater breadth. As such, our reasons for rejecting the list of enumerated offenses as a sufficient point of distinction apply equally here.") (citation omitted); *see also Dimaya v. Lynch*, 803 F.3d 1110, 1118 n.13 (9th Cir. 2015) ("[The enumerated offenses] provide at least some guidance as to the sort of offenses Congress intended for the provision to cover. Section 16(b), by contrast, provide[s] no such guidance at all.").

Second, *Johnson* made clear that it was the "nature of the inquiry"—rather than the enumerated offenses—that rendered the statute void for vagueness. 135 S. Ct. at 2560. While the majority questioned the residual clause in part because it contained "a confusing list of examples," it immediately followed this by stating that *"[m]ore importantly . . . [t]he residual clause . . . require[d] application of the 'serious potential risk' standard to an idealized ordinary case of the crime." Id.* at 2561 (emphasis added). *Johnson*'s rationale was not grounded in the enumerated offenses—rather, it was primarily troubled by the two parts of its categorical framework, which combined an "indeterminacy about how to measure the risk posed by a [particular] crime" with an "indeterminacy about how much risk it takes for the crime to qualify as a violent felony." *Id.* at 2558 (emphasis added).

Indeed, the government's reliance on the ACCA residual clause's enumerated offenses as a supposedly dispositive feature of *Johnson*'s holding has been further undermined by the

14

Supreme Court's subsequent opinion in *Welch*, 136 S. Ct. at 1257. *Welch* held that *Johnson*

represented a substantive (as opposed to procedural) new rule of constitutional law, thus

allowing prisoners to assert it on collateral review in the form of habeas petitions. *Id*. at 1265.

But in summarizing *Johnson*'s holding, the *Welch* Court did not even mention the ACCA's list

of enumerated offenses. Instead, the Court explained that "[t]he vagueness of the residual clause

rest[ed] in large part on its operation under the categorical approach," which in turn "required

courts to assess the hypothetical risk posed by an abstract generic version of the offense," *id*. at

1262. Because § 924(c)(3)(B) requires these same two analyses grounded in indeterminacy, it

too "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *See*

*Johnson*, 135 S. Ct. at 2558.


> **C.    The ACCA residual clause cannot be distinguished as materially more
>           narrow than § 924(c)(3)(B).**

The government is also likely to argue that the ACCA residual clause and § 924(c)(3)(B)

can be distinguished on the grounds that their respective "risk" prongs use slightly different

wording. Both require a categorical "ordinary case" framework, but the ACCA clause asks

whether the offense "involves conduct that presents a serious potential risk of physical injury to

another," whereas the § 924(c)(3)(B) clause asks whether the offense "by its nature, involves a

substantial risk that physical force against the person or property of another may be used in the

course of committing the offense." Some courts—though not the Fourth Circuit—have held that

§ 924(c)(3)(B)'s "substantial risk of physical force against the person or property of another"

standard is materially narrower than the "serious potential risk of physical injury" standard at

issue in ACCA.[4] But these arguments should not carry merit here.

As a starting point, the Fourth Circuit has already expressed notable skepticism for this argument, describing the "substantial risk [of] physical force" standard at issue here as "almost the exact same vague standard" as the "serious potential risk of physical injury" standard invalidated in *Johnson. See In re Hubbard*, 825 F.3d at 232 (4th Cir. 2016).[5] And for good reason: the risk of force generally implies the risk of injury, and vice versa; it is difficult to imagine hypothetical crimes of violence that would pass muster under the ACCA's risk-of-injury standard but not 924(c)'s risk-of-physical-force standard. *See Gonzalez-Longoria*, 2016 U.S. App. LEXIS 14460 at *11 (JOLLY, J., dissenting) ("[V]irtually every criminal act that satisfies the § 16(b) test could also satisfy the [ACCA] residual clause's test; any distinction between the two statutes on this ground is of indeterminate ultimate consequence to § 16(b)'s unconstitutionality under *Johnson*.").[6]

Perhaps for this reason, the federal courts have frequently treated the residual clauses of ACCA, § 924(c)(3)(B), and § 16(b) as near-functional equivalents. Prior to *Johnson*, for

---

[4]     *See United States v. Hill*, No. 14-3872-cr, 2016 U.S. App. LEXIS 14118, at *34-36 (2d Cir. Aug. 3, 2016); *Taylor*, 814 F.3d at 375-76 (6th Cir. 2016); *Gonzalez-Longoria*, No. 15-40041, 2016 U.S. App. LEXIS 14460, at *10 (5th Cir. Aug. 5, 2016).

[5]     *See also Vivas-Ceja*, 808 F.3d at 722 (concluding of § 16(b) that "[t]his language, though not identical to the [ACCA] residual clause, is materially the same" and that "[a]ny difference between the[] two phrases is superficial.") (citing *Jimenez-Gonzalez v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) and *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015)); *Dimaya*, 803 F.3d at 1114 ("both the [§ 16(b) residual clause] provision at issue here and ACCA's residual clause are subject to the same mode of analysis."); *Shuti*, 828 F.3d at 448 (distinguishing *Taylor* and concluding of § 16(b): "We are hard pressed to accept [the government's] textual distinctions. Even though the INA refers to the risk that 'force may be used,' rather than the risk that potential 'injury might occur,' *Johnson* is equally applicable. The reason is simple: a marginally narrower abstraction is an abstraction all the same.").

[6]     One might think to posit a hypothetical offense involving behavior that is merely reckless, such as driving a motor vehicle under the influence of alcohol, but such crimes have generally failed to qualify as crimes of violence under either the ACCA or § 924(c). *See Begay v. United States*, 553 U. S. 137 (2008) (holding in a pre-*Johnson* case that drunk driving was not a violent felony under the ACCA).

example, the Supreme Court regularly cited its decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004)—a § 16(b) case—when discussing ACCA residual clause cases. *E.g.*, *James v. United States*, 550 U.S. 192, 216, 219, 224 (2007) (pointing to *Leocal* three times as an example of a crime subject to the risk-based analysis) (SCALIA, J., dissenting); *Begay*, 553 U.S. at 143 & 145 (2008) (citing *Leocal* three times in a discussion of risk-based analysis). In fact, the Solicitor General's own brief in *Johnson* acknowledged that the residual clause formulation found in both § 924(c) and § 16(b) "requires a court to identify the ordinary case of the commission of the offense," which makes it "equally susceptible to petitioner's central objection to the [ACCA] residual clause." Brief for the United States of America at 44, Johnson v. United States, 135 S. Ct. 2551 (2015) (No. 13-7120), 2015 U.S. S. Ct. Briefs LEXIS 1110 at *17. Thus as recently as last year, the government itself took the position that the same flaws at issue in ACCA cases affect the outcome of residual clause cases under § 16(b) and § 924(c).

But finally and most importantly, even if one were to stipulate to the government's argument that § 924(c)(3)(B)'s risk standard is marginally narrower than the ACCA's, such a distinction would not suffice to save the statute from a vagueness challenge. The question *Johnson* was concerned with was not whether the ACCA was too broad, but rather whether it was too *vague*—that is, whether it failed the Due Process Clause's requirement that it provide fair notice to defendants and prevent inconsistent application by judges. *Johnson*, 135 S. Ct. at 2556-57; see also *In re Hubbard*, 825 F.3d at 233 (noting that "this distinction between the ACCA residual clause and § 16(b), as presented by the government, goes more to the breadth of the two clauses than their vagueness."). [7] Given that the *Johnson* Court found the ACCA to fail

---

[7]     Indeed, there is no necessary correlation between a statute's breadth and its degree of ambiguity. A broadly written criminal statute can be drafted with language that is nonetheless unambiguous, just as a narrowly written one can be drafted with language that is impermissibly

both of these tests and suffer from "hopeless indeterminacy," *id.* at 2558, it seems highly unlikely that its defects could be cured by simply replacing its risk-of-injury standard with a risk-of-force one. *See Golicov v. Lynch*, No. 16-9530, 2016 U.S. App. LEXIS 17121, at *19 (10th Cir. Sep. 19, 2016) ("[E]ven if we assume that the standard employed in § 16(b) is 'marginally narrower' than the standard employed in the ACCA's residual clause, the fact remains that they are both 'abstraction[s] all the same.' . . . In other words, neither phrase offers courts meaningful guidance to assess the risk posed by the hypothetical offense.") (citations and footnote omitted).

Because the Supreme Court and even the government have recognized that the same features that led the *Johnson* Court to strike down the ACCA residual clause are also present in the language of § 924(c) and § 16(b), this Court should find that the residual clause of § 924(c)(3)(B) is also void for vagueness.

### D.     The § 924(c)(3)(B) residual clause cannot be saved by abandoning its categorical "ordinary case" framework, which is mandated by both its text and the controlling case law of the Fourth Circuit.

Two courts of appeals—the Sixth and the Eighth Circuits—appear to have upheld the residual clause of § 924(c)(3)(B) by jettisoning the categorical ordinary-case approach to its interpretation altogether.[8] But such arguments are unavailable to the government in this case for at least three reasons.

---

vague.

[8]     *See Shuti*, 828 F. 3d at 449 (6th Cir.) ("Unlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding. This makes all the difference."); *United States v. Prickett*, 830 F.3d 760, 761 (8th Cir. 2016) ("The ACCA's residual clause operated on a judicially imagined 'ordinary case' of a crime, whereas § 924(c)(3)(B)'s residual clause operates on 'real-world facts.' . . . The district court [in *Prickett*] did not apply § 924(c)(3)(B)'s standard to an idealized ordinary case of the crime.") (internal quotations and citations omitted).

First and foremost, the Fourth Circuit has unambiguously held—post-*Johnson*—that the categorical ordinary-case framework is controlling within this jurisdiction with respect to both § 924(c)(3)(B) and § 16(b). *See*, *e.g.*, *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016) ("In determining whether an offense is a crime of violence under either clause [of § 924(c)(3)], we utilize the categorical approach, which focuses solely on the elements of the offense, rather than on the facts of the case.") (citing *Fuertes*, 805 F.3d at 498); *In re Hubbard*, 825 F.3d at 232 ("§ 16(b) presents both of the[] issues [that the Supreme Court considered in *Johnson*]. It invokes the ordinary case by referring, not to the facts of the case, but to the 'nature' of the offense. The provision also applies almost the exact same vague standard—'involves a substantial risk'—to the abstract ordinary case.") (citations omitted); see also *Leocal*, 543 U.S. at 7 (2004) (explaining of § 16(b): "This language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime.")

Second, this categorical framework is not a mere creation of the courts; it is commanded by the text of the statute, which requires that an asserted crime of violence be evaluated "by *its nature*," 18 U.S.C. § 924(c)(3)(B) (emphasis added), and not by the particular conduct of the individual offender in the case at hand. *See United States v. Aragon*, 983 F.2d 1306, 1312 (4th Cir. 1993); *see also In re Hubbard*, 825 F.3d at 232; *Johnson*, 135 S. Ct. at 2557 & 2562.

Third, the Sixth and Eighth Circuits' approach misconstrues the statute's delineation of questions of law and fact. Whether a particular offense qualifies as a § 924(c) "crime of violence" under the residual clause is not a factual inquiry for a jury, but a legal determination for the courts. This is why in Al-Timimi's trial, for example, it was this Court that ruled on which underlying crimes of violence to include within Jury Instruction 44, based on its *legal* determination that they met the requirements of § 924(c)(3). *See* Trial Tr., April 18, 2005 [Dkt.

No. 156], at 2181-83 (attached as Ex. D) (Court quotes § 924(c)(3) in making legal rulings on the crimes of violence to be included in Jury Instruction 44).

To be sure, the jury in this case was charged with finding as a factual matter whether the principals had furthered at least one of those crimes of violence, *see id*. at 2317-20 (Jury Instruction 44) (attached as Ex. B), but it was *not* charged with deciding whether the individual offenses in the jury instruction met the substantial risk-of-force standard of § 924(c)(3)(B). The latter was a pure legal determination made by this Court in the form of its jury instruction. *See id*. at 2317 ("Instruction 44 is going to define for you various offenses that constitute crimes of violence . . . . The following offenses constitute crimes of violence for purposes of Count 1 of the indictment as well as for Counts 7 and 8 of the indictment . . . . And now I'm listing these."); *see also id*. at 2319-20 ("To find this element, the jury must be unanimous as to which of the nine enumerated crimes was involved. And the nine enumerated crimes *are the ones that you have listed there in Instruction 44*.") (emphasis added).

Thus, even if the Fourth Circuit or Supreme Court were to hypothetically reverse course and eliminate the categorical approach to assessing crimes of violence under § 924(c) going forward, the fact remains that it was used at trial in this case. The jury below was not charged with deciding whether Hasan and Kwon's *individual* actions involved a substantial risk of physical force (indeed, this "substantial risk" language was not even included in the instruction), but only whether their actions furthered one of the nine offenses enumerated in Jury Instruction 44. Accordingly, even if the Sixth and Eighth Circuits' approach were adopted by a higher court, that approach could not be used to sustain Al-Timimi's convictions under Counts 7 and 8 in this case.

**III.     Because § 924(c)(3)(B) is void for vagueness, Al-Timimi's convictions under Counts 7 and 8 should be vacated and his sentence adjusted accordingly.**

At trial, Al-Timimi was charged with and convicted of 10 counts. Counts 1-6 resulted in concurrent prison sentences ranging from 60 to 121 months, all of which have now been fully served as indicated below. Counts 7-10 resulted in mandatory consecutive prison sentences ranging from 120 months to life, as also outlined below:

| Count | Sentence imposed | Status |
|---|---|---|
| **1**—Aiding/abetting a § 924(o) firearms conspiracy | 121 months | Sentence Complete |
| **2**—Soliciting others to levy war under § 373 | 121 months (concurrent) | Sentence Complete |
| **3**—Aiding/abetting a conspiracy to levy war under §2384 | 121 months (concurrent) | Sentence Complete |
| **4**—Attempting to contribute services to Taliban under 50 USC § 1705(b) | 120 months (concurrent) | Sentence Complete |
| **5**—Inducing others to aid the Taliban under 50 USC § 1705(b) | 120 months (concurrent) | Sentence Complete |
| **6**—Aiding/abetting a conspiracy to violate the Neutrality Act under § 371 | 60 months (concurrent) | Sentence Complete |
| **7**—Inducing others to use firearms under § 924(c) | 360 months (consecutive to counts 1-6) | Approximately 29 years left to serve |
| **8**—Inducing others to use firearms under § 924(c) | Life Imprisonment | (Life) |
| **9**—Inducing others to carry explosives under § 844(h)(2) | 120 months (consecutive to counts 1-8) | Full 10 years left to serve (to begin consecutive to above) |
| **10**—Inducing others to carry explosives under § 844(h)(2) | 240 months (consecutive to counts 1-9) | Full 20 years left to serve (to begin consecutive to above) |

*See* Dkt. No. 132 (Judgment) pp. 1-3 (attached as Ex. E).

Because Al-Timimi's convictions under Counts 7 and 8 are no longer sustainable in light of *Johnson*, he moves this Court to amend the Judgment accordingly by vacating the corresponding prison sentences as reflected in the attached proposed order. As such, his sentence under Count 9 should be amended to run consecutive only to Counts 1-6, and his sentence under

Count 10 to run consecutive only to Counts 1-6 and 9.

**IV.    Although the Supreme Court has recently granted certiorari to decide the constitutionality of § 16(b), a decision by this Court on the § 924(c)(3)(B) clause at issue here would serve the interests of justice and the courts.**

As noted above, the Supreme Court recently granted certiorari in *Lynch v. Dimaya*, No. 15-1498, 2016 U.S. LEXIS 4461 (U.S. Sept. 29, 2016), to consider the issue of whether the § 16(b) residual clause is unconstitutional in light of *Johnson*. *Dimaya* does not directly involve the § 924(c)(3)(B) residual clause at issue here, but the two clauses are worded identically, and the Fourth Circuit appears to treat them interchangeably. *See In re Hubbard*, 825 F.3d at 232, n.4 ("We note that the circuits are divided as to whether § 16(b) and § 924(c)(3)(B) are unconstitutionally vague under *Johnson*.").[9] However, *Dimaya* is not likely to be decided by the Supreme Court until next year, and so the defense respectfully submits that a decision by this Court in the interim would serve the interests of justice and the courts.

First, a final judgment by this Court under § 924(c) that incorporates *Johnson* would contribute to the process of percolation that assists other federal courts in clarifying the differing legal arguments and interests at stake—particularly within this jurisdiction, where the Fourth Circuit has yet to decide the issue for this circuit. And second, the defense respectfully submits that a decision now would also serve the courts by potentially narrowing and clarifying the parties' disputes before any further appeal—particularly given the nine asserted crimes of violence at issue in Jury Instruction 44.

---

[9]     As indicated above however, one court of appeals—the Sixth Circuit—has actually issued opposite holdings with respect to the two clauses, though this appears to be due at least in part to the Supreme Court's intervening decision in *Welch*. *See supra* p. 13, n.3 (comparing *Taylor*, 814 F.3d at 377 with *Shuti*, 828 F.3d at 450-51).

## CONCLUSION

WHEREFORE, Defendant Ali Al-Timimi respectfully requests that the Court grant this motion, issue a judgment of acquittal with respect to his § 924(c) accomplice liability convictions under Counts 7 and 8 in light of the Supreme Court's intervening authority in *Johnson* and *Welch*, and adjust his sentence accordingly.

<div style="margin-left:40%">

Respectfully submitted,

_____/s/_____
Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu

Jonathan Turley (*pro hac vice*)
The George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
Telephone: (202) 994-7001
Facsimile: (202) 508-6200
jturley@law.gwu.edu

Attorneys for Defendant Dr. Ali Al-Timimi

</div>

Dated: October 25, 2016

### CERTIFICATE OF SERVICE

I certify that on October 25, 2016, I will file the foregoing document on the CM/ECF

system, which will then serve it by sending an electronic notification to:

AUSA Gordon D. Kromberg
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700 (telephone)
(703) 837.8242 (facsimile)
gordon.kromberg@usdoj.gov

_____/s/_____
Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu

24