# Exhibit D

**Trial Transcript, April 18, 2015 [Dkt. No. 156], excerpted pages 2175-84
(Court's legal rulings concerning Jury Instruction 44)**

1                    P R O C E E D I N G S
2                 (Defendant present, Jury out.)
3          THE COURT:  So, Mr. Yamamoto, did you bring your
4    toothbrush?
5          MR. YAMAMOTO:  I apologize, Your Honor; I was in the
6    basement.  Am I going to jail?
7          THE COURT:  No, I don't think so.  And the reason for
8    it, I actually was rather pleased.  I did not think there were
9    many issues we had to address this morning, but we obviously have
10   a couple we do need to address.
11         Let me just tell you that I realized in the order I gave
12   you this morning, we misnumbered.  The last instruction is not 79;
13   it's 78.  I figured you'd figure that out.  So that's the final
14   charge to the jury.  We have made the changes the defense
15   requested, but I just wanted to make sure that you are not having
16   problems with that.
17         I just for the very last time want to ask counsel again
18   whether there was any objection to the verdict form because we
19   need to have those things ready to go, and I assume both
20   sides have looked carefully at that.
21         MR. KROMBERG:  No objection.
22         MR. YAMAMOTO:  No objection, Your Honor.
23         THE COURT:  All right.  And then again, depending upon
24   what happens with the jury, if the jury were to convict on one of
25   these counts that has a predicate crime of violence, for purposes

1   of the record, if we need to have the jury indicate in a
2   supplemental special verdict, we can send it to them at that
3   point.  It may not be necessary.  We'll have to see, all right?
4            MR. YAMAMOTO:  That's fine, Your Honor.
5            THE COURT:  Okay.  Then that is definitely set.
6            Now, Mr. Kromberg, I'm assuming you had no major
7   objections to the requested changes from the defense.
8            MR. KROMBERG:  I have gotten --
9            MR. YAMAMOTO:  I apologize, Your Honor.
10           MR. KROMBERG:  I got them a minute ago, Judge.
11           MR. YAMAMOTO:  I sent them last night.
12           THE COURT:  Oh, you didn't get them?  All right.  Well,
13  some of it's just stylistic.  I mean, let's go over this now.
14  I'll go over my order now and make sure we don't have a problem.
15  The "shall be guilty of a crime" substituted for "shall be
16  punished."
17           MR. KROMBERG:  No objection.
18           THE COURT:  All right, I figured you wouldn't on that.
19  And obviously, some of these instructions do come from my
20  instruction bank, and we'll clean up any cites -- I think there
21  may be more than just two that had it -- or any headings that
22  indicate government or defendant's proposed instruction.
23           In the defense objection No. 3, which was to instruction
24  44, that is, that we do have to distinguish because the law
25  distinguishes between a crime of violence and a, what I'm calling

1 a federal felony, and we do have a substantive issue there.
2 　　　　　Mr. Yamamoto has -- or the defense has raised a
3 legitimate concern about these predicate offenses. This is jury
4 instruction 44. And as I understand the defendant's objection, it
5 would be basically to the last six of those nine offenses; is that
6 right?
7 　　　　　MR. YAMAMOTO: That's correct, Your Honor. Yes.
8 　　　　　THE COURT: Yes. Now, it is interesting that I reread
9 this indictment for about the 50th time, and my experience with
10 the U.S. Attorney's Office and I think the way indictments are
11 supposed to be drafted is that normally if one is alleging a
12 conspiracy in violation of certain acts or a crime of violence,
13 you normally specify that in the charging language of the
14 indictment itself, and I can't recall whether that was a subject
15 of a motion for a bill of particulars.
16 　　　　　MR. KROMBERG: It was, Judge, and --
17 　　　　　THE COURT: All right.
18 　　　　　MR. KROMBERG: -- Mr. Yamamoto, I'm sure, would agree
19 that it was the subject of a bill of particulars, and that's where
20 these particular offenses came from, the bill of particulars.
21 　　　　　The Court may recall the government said in opposition
22 to one of the defense's motions that the Fourth Circuit has said
23 that you don't have to specify the underlying crime of violence
24 under 924(c) at all, but, okay, we're going to do it in a bill of
25 particulars, which we did.

1          THE COURT:  Do you recall getting that bill of
2  particulars?
3          MR. YAMAMOTO:  Yes, Your Honor, but again, even though
4  we have a bill of particulars, some of these offenses really
5  were -- had no evidence with respect to what they were.
6          THE COURT:  Well --
7          MR. YAMAMOTO:  Particularly e, which charges an offense
8  of murder or maiming.  There's no allegation, there's no testimony
9  that anybody was contemplating murder, murdering or maiming
10 anybody.  Same with the other five counts.  There's no testimony
11 or evidence with respect to any of those matters.
12         THE COURT:  I would -- e and f, I think, are a little
13 problematic.
14         MR. KROMBERG:  Can I respond to that, Judge?
15         THE COURT:  Well, f in particular, because the statute
16 itself says "specific property," so if it were the Red Fort, I
17 could see that, but, I mean, the word "specific" means specific.
18         MR. KROMBERG:  But it also says "and any railroad,
19 canal, bridge, airport, airfield and other public utility, public
20 conveyance, and public structure, and any religious, educational,
21 and cultural property."  Not -- it doesn't have to be specific.
22         Yes, it has to be specific for the first clause, but
23 after that, that's why if you blow up a bridge or you blow up a
24 bus like Laskar-e-Taiba says it does routinely in the Taiba
25 Bulletins, that's 956(b), which by the way was the predicate in

1  the last year's trial for how Hammad and Khan and Chapman got
2  convicted of the 2339(a) material support to terrorists predicated
3  on a 956(b), which was exactly this.
4        The 956(a), Judge, is the defendants were conspiring to
5  go someplace to kill people they were not lawfully authorized to
6  kill.  If they had ever followed through on their intention to
7  kill Indian soldiers, that would have been murder because they
8  were not lawful combatants if they were with Laskar-e-Taiba.  If
9  they were trying to kill an Indian soldier, they were -- that was
10 an act that would have been a murder had it been committed in the
11 United States.
12       THE COURT:  All right.  Well, as long as these nine
13 specific offenses were provided to the defense in the bill of
14 particulars, then the argument that, you know, it's unfair for the
15 defendant to have to mount his defense in surprise really doesn't
16 apply, and the government is, I think, correct that if one draws
17 inferences as broadly as possible, and one can do that, that these
18 specific acts are within the scope of -- I mean, when one conducts
19 armed -- if one is involved in armed conflict, then there is a
20 likelihood of people being maimed or killed, and there is also the
21 possibility of buildings and bridges being destroyed.
22       So I'm going to go ahead and leave these nine object
23 offenses in.
24       MR. YAMAMOTO:  Your Honor, just one last point I'd make
25 is that he's charged with aiding and abetting, not with being an

active member of the conspiracy. I think there's a difference in that situation.

THE COURT: Well, I don't. I mean, I think the issue is -- this is a tough case because it's almost a third level of culpability; that is, you've got the underlying offense, an inchoate offense such as conspiracy to do it, then you've got him one step further removed, aiding and abetting or soliciting or procuring the conspiracy. It certainly is a unique set of legal structure.

But, you know, at this point, I'm going to let it go forward. So I'm going to use the nine that are there only because, as I said, you had notice of them. Had they not been included in the bill of particulars, with all due respect to any appellate law on that issue, I think it would just be patently in a case like this unfair to have to wage a defense against it, but since you knew what they were, that's adequate notice.

MR. YAMAMOTO: Well, Your Honor, the government could have raised lots of other things. Again, there was no evidence with respect to these. I understand the Court's ruling.

THE COURT: All right. All right. So that took care of, I think, the issue then on 44. So we're going to let the instruction, the proposed instruction 44 go forward as it was in your packet.

MR. YAMAMOTO: Fine, Your Honor.

THE COURT: All right?

1  MR. YAMAMOTO: Is the Court going to make a distinction
2 in there between --
3  THE COURT: I did. If you didn't get it, I indicated
4 there for purposes of Count 1 as well as for Counts 7 and 8 of the
5 indictment, it also constitutes felonies which may be prosecuted
6 in a court of the United States for purposes of Counts 9 and 10.
7  Now, your argument -- your secondary argument on 44 is
8 that some of these nine, you argue, do not qualify as a crime of
9 violence. I mean, all nine of these are federal felonies.
10  MR. YAMAMOTO: Correct. There's no question of that.
11  THE COURT: Which ones do you claim would not constitute
12 a crime of violence and why?
13  MR. YAMAMOTO: Your Honor, we would contend -- I just
14 lost it --
15  THE COURT: Well, the statute -- doesn't the book,
16 924(c) define crimes of violence?
17  MR. YAMAMOTO: It does, Your Honor, in some respects,
18 but -- I can't find my 44.
19  MR. KROMBERG: Here.
20  THE COURT: Where's the definitional section of this
21 again?
22  MR. YAMAMOTO: I don't think it's defined. The only
23 place they talk about crime of violence that I've found that helps
24 us is in 924, and there the only thing that, that they talk about
25 that really is different than a robbery or carrying a gun would be

1  escape. Other than that, like in item d, enlisting oneself isn't
2  a crime of violence per se.
3       THE COURT: Well, now wait a minute, though. The
4  crime -- if I'm looking at this correctly, 924 --
5       MR. YAMAMOTO: (C) and (n).
6       THE COURT: Well, (c)(3) defines, "For purposes of this
7  subsection, the term 'crime of violence' means an offense that is
8  a felony and has as an element the use, attempted use, or
9  threatened use of physical force against the person or property of
10 another, or that by its nature, involves a substantial risk that
11 physical force against the person or property of another may be
12 used in the course of committing the offense."
13      I would think all nine of these would certainly meet
14 that definition.
15      MR. YAMAMOTO: I would contend, Your Honor, that, for
16 instance, in d, enlisting and entering a foreign service, doesn't
17 in and of itself mean that you're going to be carrying a weapon or
18 shooting anybody. You could be doing some other thing.
19      Same with g and h and i. In attempting to provide
20 material support, the providing of the material support is not a
21 crime of violence. The other people may be committing a crime of
22 violence, but the individual is not committing a crime of
23 violence.
24      Same with h, attempting or conspiring to provide
25 material support, and in i. I is more problematic.

1 THE COURT: I think what we'll do is we'll take care of
2 this problem if the jury convicts, we will send a special verdict
3 form to see what of these offenses they were unanimous about, and
4 then we can argue -- you have a better record for arguing whether
5 or not it was a genuine crime of violence as to those three counts
6 where that's required.
7 MR. KROMBERG: Your Honor, I might remind the Court
8 these issues were briefed voluminously last year, and very similar
9 issues came up in the John Walker Lindh case, whether support to
10 the Taliban was a crime of violence, and the Court ruled in last
11 year's case that the material support to the Taliban was a crime
12 of violence.
13 The only charge that was not -- that Mr. Yamamoto brings
14 up now that was not an issue last year was, I think, 2390,
15 enlisting and engaging with intent to serve -- no, not -- I'm
16 sorry, what was the other one you said? G is material support,
17 and that's the one that was -- that the Court, this Court ruled on
18 last year. H this Court ruled on last year.
19 THE COURT: Well, in any case, I think the easier thing
20 is let's see what the jury does because these are -- the case is
21 complicated enough. It may simplify -- as I say, if the jury
22 acquits, we don't have to address the issue. If they convict,
23 then we can find out exactly what they did, all right?
24 MR. YAMAMOTO: Fine, Your Honor.
25 THE COURT: So 44 is going to go in just as given to

1   you-all in the original stack.
2           I think 45 is a clearer and better statement of the
3   difference between the two.  And the government did not include
4   this instruction, but I am sure the law supports it.
5           MR. KROMBERG:  I don't have any problem with it, Judge.
6           THE COURT:  All right, fine.  But I'm going to use the
7   defendant's proposed substituted instruction for 45.  So I'm using
8   yours, Mr. Yamamoto.
9           MR. YAMAMOTO:  Thank you, Your Honor.
10          THE COURT:  All right?  All right.
11          Now, the next issue where I think there is a significant
12  dispute is the definition of "to levy war."  I'm a little
13  concerned about using language from 1809, although there doesn't
14  appear to be a lot of case law.  I did take a look at Black's, and
15  Black's says, "levying war," and their quote is, "In criminal law,
16  the assembling of a body of men" -- I would change that to
17  "people" -- "for the purpose of effecting by force a treasonable
18  object; and all who perform any part, however minute, or however
19  remote from the scene of action, and who are leagued in the
20  general conspiracy, are considered as engaged in levying war,
21  within the meaning of the constitution."
22          Now, that's from, you know, a standard legal dictionary.
23  But I'd like to hear the government on that because the defense is
24  asking for a somewhat different instruction from the one you-all
25  tendered.