IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:04cr385 |
| v. | ) | |
| | ) | |
| ALI AL-TIMIMI | ) | |

OPPOSITION TO MOTION TO DISMISS

Timimi's motion should be denied because the reasoning of *Johnson v. United States*, 135 S.Ct. 2551 (2015), does not apply to the counts of Timimi's conviction. The statute defining the violations at issue, 18 U.S.C. § 924(c)(3), lacks the unconstitutional vagueness that the *Johnson* court found in 18 U.S.C. § 924(e)(2).

In *Johnson*, the Supreme Court held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act ("ACCA"), in 18 U.S.C. § 924(e)(2)(b)(ii), "violates the Constitution's guarantee of due process" because the ACCA's residual clause is unconstitutionally vague. 135 S. Ct. at 2563. Timimi, however, is not challenging an ACCA sentence. Instead, he seeks to extend *Johnson* to a new, readily distinguishable context - - Section 924(c)(3)(B).

In pertinent part, 18 U.S.C. § 924(c)(1)(A) provides for a mandatory consecutive term of imprisonment for "any person who, during and in relation to any ***crime of violence*** . . . , uses or carries a firearm" (emphasis added). Pursuant to 18 U.S.C. § 924(c)(3)(B), a "crime of

violence" is any felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Timimi's convictions for violations of Section 924(c)(1)(A) properly were predicated on the use of a firearm during and in relation to crimes of violence. Each of those violations properly is a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Timimi's petition fails on the merits because the "residual clause" definition of "crime of violence" in Section 924(c)(3)(B) is *not* "parallel" to the "residual clause" definition of that term in Section 924(e)(2)(B)(ii) (the ACCA), which *Johnson* declared to be unconstitutionally vague. The two provisions differ in their language, structure, and interpretive precedents. As discussed below, Section 924(c)(3)(B) does not have the combined set of factors that coalesced in *Johnson* to persuade the Court that the residual clause in the ACCA was unconstitutionally vague.

I.  The Supreme Court's Decision in *Johnson*

The ACCA provides for a mandatory minimum sentence of 15 years if a defendant violates 18 U.S.C. § 922(g) and has at least three prior convictions for either a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). The ACCA defines the prior crimes of conviction that qualify as a "violent felony" as any crime that:

> a.  has as an element the use, or attempted use, or threatened use of physical force against the person of another; or
>
> b.  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The second category of prior crimes that qualify as a "violent felony" may be referenced as a "residual" clause, because it encompasses any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

In *Johnson*, the Supreme Court held that the "residual" clause portion of Section 924(e)(2)(B)(ii), that defines a "violent felony" to include an offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another," violates the Due Process Clause because it is impermissibly vague on its face. *Johnson*, 135 S. Ct. at 2563. In *Johnson,* the Supreme Court overruled its earlier decisions in *James* v. *United States*, 550 U.S. 192 (2007), and *Sykes* v. *United States*, 564 U.S. 1 (2011), which had previously rejected the contention by dissenting justices that the residual clause was vague. *Johnson*, 135 S. Ct. at 2563.

II.  Section 924(c)(3)(B) Is Materially Different from the ACCA

While the definition of a "crime of violence" in Section 924(c)(3)(B) has similarities to the definition of a "violent felony" in the ACCA, the two sections differ in important ways. For ease of reference, they are here set forth next to each other:

| A "crime of violence" under § 924(c)(3)(B) is any felony offense that | A "violent felony" under § 924(e)(2)(B)(ii) is any felony crime that |
|---|---|
|  | "is burglary, arson, or extortion, involves use of explosives, or |
| "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" | otherwise involves conduct that presents a serious potential risk of physical injury to another" |

3

In *Johnson*, the Supreme Court reasoned that several factors in the ACCA's "residual" clause combined to render the provision vague, while recognizing that "[e]ach of the uncertainties in the residual clause may be tolerable in isolation." 135 S. Ct. at 2560. Notwithstanding the differences between Section 924(c)(3)(B) and the ACCA described above, the key factors in the ACCA identified in *Johnson* also are absent from Section 924(c)(3)(B).

      A.      The Enumerated Offenses In ACCA Are Absent.

First, Section 924(c)(3)(B) does not have the structure of Section 924(e)(2)(B)(ii), which contains a list of enumerated crimes and an "otherwise" provision that introduces a residual clause. *Johnson* found that the differences among the enumerated crimes and lack of clarity on the degree of risk each posed magnified the vagueness concerns in assessing levels of risk under the residual clause. 135 S. Ct. at 2557-58.

The enumerated list in Section 924(e)(2)(B)(ii) had troubled members of the Court since *James*. *See*, *e.g.*, *James*, 550 U.S. at 215-16, 230 n.7 (Scalia, J., joined by Stevens and Ginsburg, J.J., dissenting) (stating that comparing a predicate offense with its closest analog among enumerated offenses is an unhelpful test if the analog is not obvious, because the listed offenses have little in common). The Supreme Court also struggled with the enumerated list in *Begay v. United States*, where even the majority was concerned that "the examples are . . . far from clear with respect to the degree of risk each poses." 553 U.S. 137, 143 (2008).

The continuing confusion over how to interpret the list in conjunction with the residual clause ultimately convinced the *Johnson* Court of ACCA's vagueness. Indeed, the interpretive difficulties posed by the list of enumerated crimes pervaded the Court's analysis. For example, the Court attributed part of the "uncertainty about how much risk it takes for a crime to qualify"

to the residual clause's structure, which "forces courts to interpret 'serious potential risk' in light of the four enumerated crimes - - burglary, arson, extortion, and crimes involving the use of explosives" - - even though the degree of risk posed by those four enumerated crimes is "far from clear." *Johnson*, 135 S. Ct. at 2558.

The Court again referred to the enumerated crimes in explaining why its decisions in *Begay* and *Sykes* did "not succeed in bringing clarity to the meaning of the residual clause." *Id.* at 2559 (*Begay*'s test, which turned on similarity of crime to the enumerated offenses, failed because "the enumerated crimes are not much more similar to one another in kind than in degree of risk posed"); *id.* ("common sense" used in *Sykes* was not reliable criterion because "[c]ommon sense has not even produced a consistent conception of the degree of risk posed by each of the four enumerated crimes"). And, critically, the Court distinguished other statutes requiring risk-based assessments in part because they do *not* "link[] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. Section 924(c)(3)(B), like the statutes the Court distinguished in *Johnson*, contains no "confusing list" to cloud its analysis.

In short, the presence of the enumerated list of offenses in the ACCA was a determinative factor in *Johnson*. *Johnson* found that the differences among the enumerated crimes and lack of clarity on the degree of risk each posed magnified the vagueness concerns in assessing levels of risk under the residual clause in Section 924(e)(2)(B)(ii). 135 S. Ct. at 2557-58. In contrast, Section 924(c)(3)(B) makes no reference to any enumerated crimes. Accordingly, a court considering whether a particular offense is covered by Section 924(c)(3)(B) is not required to evaluate the risk of particular conduct in light of any enumerated crimes.

B.   Section 924(c)(3)(B) Is Materially Narrower Than the ACCA

Another uncertainty about the ACCA that the Supreme Court identified in *Johnson* - - but that is absent from § 924(c)(3)(B) - - is the necessity for courts to go "beyond evaluating the chances that the physical acts that make up the crime injure someone" and to evaluate the risk for injury even "after" completion of the offense. *Id.* at 2557; *see also id.* at 2559 (noting that "remote" physical injury could qualify under ACCA, but that the clause does not indicate "how remote is too remote").  After all, the ACCA purported to encompass any felony offense that "involves conduct that presents a serious potential risk of physical injury to another" *regardless* of whether the physical injury is necessarily caused by the underlying crime.  The Supreme Court explained that the analysis required by the ACCA into whether a crime "involves conduct" that presents too much risk of injury goes beyond the offense elements. *Id.* at 2557.

"The inclusion of burglary and extortion among the enumerated offenses," the Supreme Court further explained, confirmed that courts assessing risk had to go "beyond evaluating the chances that the physical acts that make up the crime will injure someone." *Id.*  That was so because a risk of injury could arise in a burglary *after* the breaking and entering had occurred, and an extortionist might become violent *after* making his demand. *Id.*  The consideration of post-offense conduct was therefore part of the indeterminate "wide-ranging inquiry" necessitated by the ACCA. *Id.*

In contrast, Section 924(c)(3) addresses that issue by requiring that force must be used "in the course of committing the offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (interpreting the identical language in 18 U.S.C. § 16).  This means that the assessment is confined to the risks that arise during the commission of the offense. *See id.* at 7 (to determine whether an offense is

a crime of violence, a court must "look to the elements and the nature of the offense of conviction).

Under *Leocal*, an aggravated felony for purposes of § 16(b) - - and, by extension, a "crime of violence" for purposes of § 924(c)(3)(B) - -  is limited to "offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal*, 543 U.S. at 10.  In *Leocal*, the Supreme Court specified that § 16(b) includes only "violent, active" crimes.  *Id.* at 11.  To qualify as a predicate offense under this framework, the offense must proscribe conduct that (1) naturally involves a disregard of a substantial risk of force against another, and (2) the risk of force must arise during the course of committing (3) an active, violent offense.  *Id.* at 10-11.[1] The risk of force during commission of the offense significantly narrows § 16(b) (and, by extension, Section 924(c)(3)(B)).

Under § 924(c)(3)(B) (and § 16(b)), a court does not, as in ACCA, consider risks that arise only after the physical acts constituting the crime have been completed.  The court asks whether the offense elements would "naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."  *Leocal*, 543 U.S. at 11.  The analysis is non-speculative and is consistent with *Johnson*.  If the risk of the use of force is naturally present in the elements of the offense, it qualifies as a crime of violence under § 924(c)(3)(B) (or § 16(b)).  This alleviates the concern that *Johnson* had about the far ranging inquiry into conduct going beyond the offense elements required by the ACCA.

---

[1] In fact, the federal public defender's brief in *Johnson* agreed that "[t]hese requirements are meaningfully different than the ACCA's residual clause and make § 16(b) narrower." *See* Supp. Reply Br. for the Petitioner, *Johnson* v. *United States*, 2015 WL 1641122, at *15.

Indeed, in *Leocal*, the Supreme Court contrasted the wider scope of USSG § 4B1.2 - - which is essentially identical to that of the ACCA - - with the narrower scope of § 16(b) - - which is essentially identical to Section 924(c)(3)(B):

> The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. . . . The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. ***Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used") with United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov.2003) (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, inter alia, "conduct that presents a serious potential risk of physical injury to another."*)

*Leocal*, 543 U.S. at 10 & n. 7 (emphasis added). *See United States* v. *Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009) ("the Supreme Court has found that the definition of a crime of violence under § 16(b) [that is essentially identical to Section 924(c)(3)(B)] is narrower than that in USSG § 4B1.2 [that is essentially identical to that of the ACCA]"). [2]

In short, the textual difference recognized by the Supreme Court in *Leocal,* between Section 16(b) - - that is identical to Section 924(c)(3)(B) - - and the Guideline provision that is identical to the ACCA, undercuts Timimi's argument. After all, for an offense to qualify as a Section 16(b) crime of violence, the risk of force must arise in the course of committing the crime and not merely as a possible result. The provision's focus on the use of force during an offense, rather than on the potential risk and effects of the offense, limits its reach and avoids the

---

[2] Although the comparison was actually made between 18 U.S.C. § 16 and Section 4B1.2 of the Sentencing Guidelines, the court noted that the language of the former is essentially identical to that of Section 924(c)(3)(B), and the language of the latter is essentially identical to that of Section 924(e)(2)(B). *Serafin*, 562 F.3d at 1108-09.

kind of speculation about extra-offense conduct that *Johnson* denounced. *Johnson,* 135 S. Ct. at 2557, 2559. Accordingly - - and unlike the ACCA - - Section 924(c)(3)(B) does not go beyond "the physical acts that make up the crime." *Johnson*, 135 S. Ct. 2557.

### C. The Court Has Not "Repeatedly" Failed To Construe § 924(c)(3)(B)

In *Johnson*, the Supreme Court stressed that its conclusion that the ACCA was unconstitutionally vague was based on the unsuccessful nature of its repeated attempts to craft a "principled and objective standard" for that statute. *Johnson,* 135 S. Ct. at 2558-60. Indeed, *Johnson* was the Supreme Court's "fifth [case] about the meaning of the [ACCA] residual clause." *Id.* at 2559. *See Sykes*, 131 S. Ct. at 2287 (Scalia, J., dissenting) (stating that the Court's repeated failure in addressing ACCA is "[w]hat sets ACCA apart" and "confirms" its vagueness). *Johnson* expressed the Supreme Court's clear frustration that its attempts to delineate the reach of Section 924(e)(2)(B) had been a "failed enterprise." *Johnson*, 135 S. Ct. at 2560. The same is simply not true with respect to Section 924(c)(3)(B).

Section 924(c)(3)(B) has not generated any comparable confusion in either Supreme Court or lower court cases. Unlike Section 924(e)(2)(B), the Supreme Court has rendered only one significant decision regarding Section 924(c)(3)(B) or its cognate, 18 U.S.C. §16. That decision occurred over ten years ago and caused no controversy among the justices. *Leocal*, 543 U.S. at 1. In *Leocal,* a unanimous Court expressed no uncertainty and had no difficulty in adopting an interpretive framework that identified one offense (burglary) as the "classic example" of a Section 16(b) qualifying offense, and another (DUI) that was not. *Leocal*, 543 U.S. at 10. The Supreme Court's analysis (which was joined by Justice Scalia, the author of

*Johnson* and the principal critic of ACCA's vagueness leading up to *Johnson*) belies a claim that Section 924(c)(3)(B) is too uncertain to be readily applied and to permit evenhanded application.

    D. <u>Conviction Under Section 924(c) But Not the ACCA Requires a Firearm</u>

  A conviction under Section 924(c) requires not only that a crime of violence be committed, but also that the crime of violence be committed while using or carrying a firearm in furtherance of the offense. The requirement that a firearm be intrinsically related to the crime of violence further distinguishes Section 924(c)(3)(B) from the ACCA. Unlike the ACCA, Section 924(c)(3)(B) does not identify predicate convictions for the purpose of a recidivist enhancement. Rather, a "crime of violence" under Section 924(c)(3)(B), if perpetrated with a sufficient nexus to a firearm, is a new offense. That narrows the type of offenses that might serve as predicate offenses to ones that could be committed with a sufficient nexus to a firearm.

  Moreover, evaluating the underlying facts of a prior state court conviction from years ago for purposes of the ACCA may be an uncertain undertaking. In contrast, the Court well knows the circumstances of a Section 924(c) violation that was litigated before it. *See, e.g., United States v. Tsarnaev*, 2016 WL 184389 (D.Mass. Jan. 15, 2016), at 13 n.21 ("Section 924(c) operates necessarily in an 'as-applied' context" so that "consulting the specific allegations of the indictment is unavoidable").

    E. <u>The Court Intended that *Johnson* Be Limited to Section 924(e)(2)(B)</u>

  Finally, the language of Section 924(c)(3)(B) is identical to many other federal statutes. *See*, *e.g.*, 18 U.S.C. § 16(b); 18 U.S.C. § 3142(f)(1)(A) and (g)(1) (bail statute); 18 U.S.C. § 521(d)(3)(C) (enhanced sentence for criminal gang members); 18 U.S.C. § 3663A(c)(1)(A) (mandatory restitution); 18 U.S.C. § 5032 (juvenile transfer statute). Yet, *Johnson* explicitly

10

noted that its decision "does not call into question . . . the remainder of the Act's definition of a violent felony." 135 S. Ct. at 2563. In *Johnson*, the Supreme Court expressly noted that striking ACCA's residual clause would have little effect on other risk-based statutes. *Johnson*, 135 S. Ct. at 2561. In light of the Supreme Court's language in *Johnson,* there is no basis to conclude that such decision requires the striking down of Section 924(c)(3) as unconstitutionally vague.

    III.    <u>Post-Johnson Consideration of Vagueness Challenges to Section 924(c)</u>

        A.    <u>Appellate Courts Unanimously Reject *Johnson* Challenges to  § 924(c)</u>

The residual clause found in Section 924(c)(3)(B) has been the subject of multiple vagueness challenges following *Johnson*. To date, no federal court of appeals has held that *Johnson* invalidates § 924(c)(3)(B) - - and three have held that it does not. *United States v. Prickett*, __F.3d__, 2016 WL 5799691 (8th Cir. Sept. 12, 2016) (per curiam); *United States v. Hill*, 832 F.3d 135, 145–50 (2d Cir. 2016); *United States v. Taylor*, 814 F.3d 340, 375–76 (6th Cir. 2016). These courts reasoned that § 924(c)(3)(B) is distinguishable from the ACCA's residual clause because, among other considerations, (i) § 924(c)(3)(B) does not include the confusing list of enumerated offenses present in the ACCA; (ii) § 924(c)(3)(B)'s text does not encompass risks after the offense elements are satisfied; and (iii) § 924(c)(3)(B) does not have the ACCA's "fraught" history of interpretative failures that caused confusion and long-term, pervasive disagreements among federal courts.[3]

---

[3] The Fourth Circuit has not yet directly considered the constitutionality of Section 924(c)(3)(B) in light of *Johnson*. However, in a post-*Johnson* decision, the Fourth Circuit was faced with the question of whether sex trafficking by force, fraud, or coercion was categorically a crime of violence under § 924(c)(3). Citing constitutional avoidance, the Fourth Circuit declined to reach the question. *United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015). Notably, however, the court stated that the Supreme Court did not have the occasion to consider

To date, at least five district judges in the Eastern District of Virginia have reached the same result, and none has ruled to the contrary. Judge Jackson denied a vagueness challenge to Section 924(c)(3)(B) based on an argument identical to the one made here by Timimi. *United States v. Hunter*, 2015 WL 6443084 (E.D. Va. October 22, 2015). Judge Jackson first noted that such a vagueness challenge is disfavored. Ultimately, he concluded that he could not find that the Supreme Court in *Johnson* intended to invalidate the residual clause of § 924(c):

> The Court first states for the record what has been clear in this Circuit and across our federal courts for time immemorial: facial challenges are disfavored. . . . A facial challenge "to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." . . . Our reticence to hear and decide facial challenges flows logically from the "fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. . .
>
> The Court cannot find on the record before it or on the law of this Circuit that the Supreme Court in *Johnson* intend to invalidate the residual clause of § 924(c). The residual clause of the ACCA had faced significantly more confusion in the lower courts, was a much broader clause than § 924(c), and required courts to analyze conduct outside of that conduct required for the charged offense.

*Hunter*, 2015 WL 6443084 (internal citations omitted).

Just last month, Judge Smith ruled "the court declines to extend *Johnson* to hold that the definition of "crime of violence" in § 924(c)(3) is unconstitutionally vague, particularly since the Supreme Court has not addressed this issue." *Tyndall v. United States,* 2016 WL 5842938 *2 (E.D. Va. Oct. 4, 2016). While Judges Ellis, Lauk, and O'Grady did not decide the issue, all

---

Section 924(c)(3)(B), and although the residual clause at issue in *Johnson* was "similarly worded," it is "not identically so." *Id*.

three indicated that they likely would rule the same way as Judge Jackson and Judge Smith. *See United States v. McDaniels*, 147 F.Supp.3d 427, 436-37 (E.D. Va. Nov. 23, 2015) (Ellis, J.) (declining to reach the question, but noting that "the Residual Clause of § 924(c)(3)(B) would likely not fail as unconstitutionally vague as it is distinguishable from the ACCA Residual Clause at issue in *Johnson*"); *United States v. Walker*, No. 15-cr-49, 2016 WL 153088, at *9 (E.D. Va. Jan. 12, 2016) (Lauk, J.) (same); *United States v. Ramirez-Mejia*, 2016 WL 743400 (Feb. 23, 2016) (O'Grady, J.) (citing *McDaniels* and *Walker*).

Timimi's challenge to Section 924(c) is further undercut by the Supreme Court's post-*Johnson* denial of *certiorari* for challenges to § 924(c)(3)(B), rather than at least granting, vacating, and remanding in light of *Johnson*. *See, e.g., Santana v. United States*, 136 S. Ct. 2007 (2016). Although the Supreme Court's rulings granting, vacating, and remanding in light of a new Supreme Court opinion are not determinations on the merits and merely reflect a possible effect from a new Supreme Court ruling, *see, e.g.*, *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001), the Supreme Court has not granted, vacated, and remanded in Section 924(c) cases in light of *Johnson*.

Indeed, the Supreme Court has repeatedly emphasized that the ruling in *Johnson* should not be understood to raise doubts about (much less *invalidate*) other laws using similar risk-based language. "The Court's analysis in *Johnson* thus cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*.'" *Welch v. United States*, 136 S. Ct. 1257, 1262 (quoting *Johnson*, 135 S. Ct. at 2561).

B.      Section 924(c) is Distinguishable From Section 16(b)

The decisions upon which Timimi would rely, *Golicov v. Lynch*, 2016 WL 4988012 (10th Cir. Sep. 19, 2016); *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015), and *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), did not consider the constitutionality of Section 924(c).  Instead, they considered 18 U.S.C. § 16(b) - - as applied through the immigration laws - - and found that section unconstitutionally vague by reason of *Johnson*.  As found by the Fifth Circuit, sitting *en banc*, those decisions were decidedly wrongly. *United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (*en banc*).

The government petitioned the Supreme Court for *certiorari* in *Dimaya,* and the Supreme Court granted that petition.  Examination of that petition reflects persuasive reasons to reject the argument that Timimi makes now, and we expect the government's position in *Dimaya* to prevail. [4]  First, the Ninth Circuit "greatly underestimates—or misunderstands—the significance of the list of enumerated offenses in the ACCA's residual clause" in the Supreme Court's decision to hold the ACCA's residual clause invalid.  *Hill*, 832 F.3d at 149.  Second, the cases invalidating § 16(b) "either ignore or minimize the other textual distinctions between the residual clause [of the ACCA] and the language of § 16(b)."  *Id*.  Third, "each case dismisses the significance of the Supreme Court's fraught precedent interpreting the ACCA's residual clause." *Id*.  In sum, *Shuti*, *Vivas-Ceja*, and *Dimaya* "extend" *Johnson* "in a way flatly inconsistent with that decision's own articulation of the limitations of its holding."  *Id*. at 149–50.

---

[4]  A copy of that petition, as well as the government's reply to the brief filed in opposition to that petition, are attached as exhibits to this pleading.

In *Dimaya*, the Supreme Court will address whether *Johnson* extends to invalidate 18 U.S.C. § 16(b) when applied in a civil immigration proceeding. The respondent in *Dimaya* disputes the Solicitor General's argument that vagueness doctrine may apply differently in civil immigration proceedings than in a criminal case. Nevertheless, if the Supreme Court agrees with the government's position, the ruling in *Dimaya* may not resolve *Johnson*'s application to Section 16(b) in the criminal context, much less any application to Section 924(c)(3)(B).

Similarly, even if the defendant wins in *Dimaya*, that still would not necessarily resolve Timimi's motion. 18 U.S.C. § 924(c)(3)(B) and 18 U.S.C. § 16(b) are distinguishable because the former creates a separate crime only when the predicate offense is perpetrated with a sufficient nexus to a firearm, but the latter does not. In its petition for a writ of *certiorari*, the government noted that, despite the similarity of the language in § 924(c)(3)(B) and § 16(b), "Section 924(c) contains a structural feature that distinguishes it from Section 16(b) . . . : Section 924(c) requires that the defendant committed the offense with a specified nexus to a firearm." 2016 WL 3254180 at *27 n.5. Of course, if the Supreme Court upholds Section 16(b) and does not rely on vagueness doctrine applying differently in immigration cases, then the narrower provision in § 924(c)(3)(B) would necessarily be valid.[5]

---

[5] The Supreme Court also granted *certiorari* to consider whether *Johnson* extends to the sentencing guidelines and is retroactive in that context. *Beckles v. United States*, 136 S.Ct. 2510 (2016). That the Supreme Court granted *cert* in *Beckles* rather than issue a summary reversal undercuts any suggestion that the Supreme Court itself has already decided the extension of *Johnson* into new areas of law.

IV.     Timimi May Not Make a Facial Challenge to Section 924(c)(3)(B)

Outside of the First Amendment context, a person whose conduct is clearly proscribed by a statute cannot complain that the law is vague as applied to the conduct of others. While *Johnson* held that a statute may be facially vague even though "some conduct clearly falls within the provision's grasp," 135 S. Ct. at 2561, it did not hold that any possibility of a vague application requires finding a statute void for vagueness. Rather, it concluded that the ACCA residual clause was void for vagueness because of its inherent inability to produce "evenhanded, predictable, or consistent" applications." *Id*. at 2563. The provision was, the Court found, "a judicial morass that defies systemic solution, a black hole of confusion and uncertainty that frustrates any effort to import some sense of order and direction." *Id*. at 2562.

But "there are statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain." *Smith v. Goguen*, 415 U.S. 566, 577-78 (1974). For those statutes, the general rule is that a vagueness challenge is not available to one who violates the "hard core" of the statute. *Id*. Facial vagueness challenges should therefore be reserved for a statute that "simply has no core," "in the sense that no standard of conduct is specified at all." *Id*. That is not the case with respect to Section 924(c)(3), where the Supreme Court has already identified offenses that clearly fall within the identical provision at 18 U.S.C. § 16. *See Leocal*, 543 U.S. at 10 (burglary).

Unlike with respect to the ACCA's residual clause, there clearly is a "core conduct'" covered by § 924(c)(3). For example, in *Leocal*, the Supreme Court described burglary as a "classic example" of a crime that satisfies the statutory language [of the identical 18 U.S.C. § 16] "*not* because the offense can be committed in a generally reckless way or because someone may

16

be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime." *Id*. (emphasis in original). Accordingly, Section 924(c)(3) is constitutional both on its face and, for the reasons stated above, as applied to Timimi's convictions.

Acts of Congress enjoy a strong presumption of validity. *United States* v. *National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). A court's duty is to construe, rather than to condemn, a statute. *See Skilling* v. *United States*, 561 U.S. 358, 403 (2010). In *Johnson*, the Supreme Court was convinced by "[n]ine years' experience," and by multiple prior decisions, that the ACCA's residual clause was not susceptible to principled construction. *Johnson*, 135 S. Ct. at 2560. Section 924(c)(3)(B) does not, however, possess the "'sum'" of factors that led the *Johnson* Court to its conclusion. *Id.* Accordingly, there is no reason for this Court to construe the definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(B)) as not susceptible to principled construction; as a result, Timimi is not entitled to raise a facial challenge to Section 924(c)(3)(B) when it clearly was not vague as applied to his own conduct.

We previously noted that, in *Leocal*, the Supreme Court expressed no uncertainty about the validity of 18 U.S.C. § 16 (and, by analogy, 18 U.S.C. § 924(c)(3)(B)). In circumstances when Supreme Court precedent (such as *Leocal*) has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions (arguably, as in *Johnson*), courts should follow the line of cases which directly controls (here, *Leocal*), leaving to the Supreme Court the prerogative of overturning its own decisions. *Agostini v. Felton*, 521 U.S. 203, 237 (1997). "Thus, lower courts should not conclude that the Supreme Court's more recent cases have, by

implication, overruled [its] earlier precedent." *United States v. Danielczyk*, 683 F.3d 611, 615 (4th Cir. 2012) (internal quotations omitted).

## VI. Timimi's Crimes of Violence Are Also Encompassed by Section 924(c)(3)(A)

Notwithstanding *Johnson*'s inapplicability to the residual clause of Section 924(c)(3)(B), the crimes of violence at issue in Timimi's convictions also are encompassed by Section 924(c)(3)(A). After all, one definition of "threaten" is "to give signs or warning of," or "to portend." *Webster's Ninth New Collegiate Dictionary* 1229 (1991). When two or more people share the specific intent to (a) levy war on the United States (18 U.S.C. §§ 2381 and 2384); enlist with a foreign force as a soldier or sailor (18 U.S.C. § 959); enlist to serve with armed hostility against the United States (18 U.S.C. § 2390); commit murder outside the United States (18 U.S.C. § 956(a)); destroy property outside the United States (18 U.S.C. § 956(b)); embark on a military expedition against another country (18 U.S.C. § 960); and/or assist in a terrorist act (18 U.S.C. § 2339A) or aid a foreign terrorist group (18 U.S.C. § 2339B and 50 U.S.C. § 1705); that agreement, without more, "portends" the use of force, because the existence of the conspiracy makes the occurrence of the conspiracy's object far more likely. As a result, each of the crimes of violence at issue in Timimi's case convictions included - - *as an element* - - the threatened use of force, and thereby qualifies as "crime of violence" under the "force" clause. *See United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) ("DiSomma's crime of conviction,

conspiracy to commit robbery, is a crime of violence because one of its elements is actual or threatened use of force").[6]

This construction is entirely consistent with Congress's intent in defining a "crime of violence." Courts have long recognized that conspiracies to commit substantive offenses pose as great, or greater, dangers to society as the substantive offenses themselves. After all, "collective criminal agreement— partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality." *Iannelli v. United States*, 420 U.S. 770, 778 (1975).

## Conclusion

For the above reasons, Timimi's motion should be denied.

                                        Respectfully submitted,

                                        Dana J. Boente
                                        United States Attorney

                                        _____/s_____
                                        Gordon D. Kromberg
                                        Assistant United States Attorney
                                        Virginia Bar No. 33676
                                        Assistant United States Attorney
                                        Attorney for the United States
                                        2100 Jamieson Avenue
                                        Alexandria, VA  22314
                                        (703) 299-3700
                                        (703) 837.8242 (fax)
                                        gordon.kromberg@usdoj.gov

---

[6] Timimi cannot now fault the Court's failure to obtain a special verdict to clarify the predicates found by the jury, because he twice waived any right to such a form.  Transcript of Trial, April 18, 2005, at p. 2183; April 26, 2005, at p. 2412.

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all attorneys of record.

_____/s_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov