1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

SEIFULLAH CHAPMAN,           . Civil No. 1:16cv512
                          . Criminal No. 1:03cr296-6
    Defendant/Petitioner,  .
                          .
    vs.                      .
                          . Alexandria, Virginia
UNITED STATES OF AMERICA,   . May 27, 2016
                          . 9:35 a.m.
    Respondent.          .
                          .
. . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:


FOR THE DEFENDANT/PETITIONER:   GERALD T. ZERKIN, ESQ.
                                 2025 E. Main Street, Suite 108
                                 Richmond, VA 23223
                                   and
                                 NICOLE B. GODFREY, ESQ.
                                 LAURA L. ROVNER, ESQ.
                                 University of Denver
                                 Sturm College of Law
                                 Student Law Office
                                 2255 E. Evans Avenue, Suite 335
                                 Denver, CO 80208


FOR THE GOVERNMENT/RESPONDENT:  GORDON D. KROMBERG, AUSA
                                 JOHN GIBBS, AUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314


<u>ALSO PRESENT</u>:                SA KEITH BURNS


(Pages 1 - 17)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

3

1              P R O C E E D I N G S

2                      (Defendant not present.)

3              THE CLERK:  Criminal Case 03-296-6, United States of

4    America v. Seifullah Chapman.  Would counsel please note their

5    appearances for the record.

6              MR. KROMBERG:  Good morning, Your Honor.  Gordon

7    Kromberg and John Gibbs for the United States.  With us at

8    counsel's table is FBI Special Agent Keith Burns.

9              SA BURNS:  Good morning.

10             MR. GIBBS:  Good morning.

11             THE COURT:  Good morning.

12             Mr. Zerkin, good to see you again.

13             MR. ZERKIN:  Good morning, Your Honor.  I'm happy to

14   see you.

15             THE COURT:  It's a little bit like déjà vu all over

16   again, isn't it, with this cast of characters.

17             MR. ZERKIN:  I was saying I was having a little bit

18   of PTSD when I came up, but I'll survive it.

19             THE COURT:  All right.  Now, we got from the United

20   States, I believe it was yesterday, at least that's when I got

21   the chance to read it, the response to your emergency motion

22   for release of Mr. Chapman.  Why don't you -- can you stand?

23   Otherwise --

24             MR. ZERKIN:  Oh, yes, that's fine.

25             THE COURT:  All right.  That's fine.

13

1    then within that ordinary case inquiry, the Court has to look

2    at the imprecise nature of the risk involved, and both of those

3    things -- and that is what the court in *Welch* affirmed *Johnson*

4    holding, and both of those things are true of both ACCA and

5    924(c).

6              So I think that --

7              THE COURT:  Again, I'm not -- I don't want to preview

8    what might be my final decision, because I really have not

9    resolved this issue in my own mind, and I think looking at more

10   case law will be very helpful, but from a totally practical

11   standpoint, the 924(c) issue is very different from the ACCA

12   issue.

13             When you're using the ACCA, you're -- as a judge,

14   you're applying or deciding a sentencing issue, not a guilt

15   issue, and you have to look at a prior conviction that you were

16   not involved with in most cases.  You don't know any of the

17   true details about it.

18             With the 924(c), the predicate offense is very clear,

19   and as the government says, you know, you don't have to use

20   your imagination.  You know exactly what the elements of that

21   specific offense are, and in Mr. Chapman's case, they're very

22   specific, you know, the violation of the Neutrality Act, and

23   we've talked about this before in some of our other decisions

24   in this case.

25             So there's nothing speculative about what the

14

1    elements are for the crime of violence in this particular case.

2              MS. GODFREY:   Except for what the Fourth Circuit law

3    and the law governing 924(c) says is that you actually do have

4    to look at the speculative, ordinary case abstraction, and the

5    case law cross-references ACCA and 924(c) when interpreting

6    both residual clauses.   So --

7              THE COURT:   But how do you get around the language in

8    *Johnson* that -- the court in *Johnson* was, I mean, some of these

9    arguments were made to the *Johnson* court about, you know, the

10   spillover effect of this ruling and it might affect these other

11   statutes, and the Supreme Court seems to have said:   No, no,

12   no.   We're looking at this one narrow statute.   That's our

13   problem.

14             MS. GODFREY:   Right.   But what the court specifically

15   said in *Johnson* there was that the problem was related to the

16   ordinary case inquiry and this judge-made abstraction which

17   applies directly to 924(c).   I know that the court was also

18   addressing a whole other range of criminal statutes, but with

19   regard to 924(c), the case law has developed across the country

20   in federal courts and has overlapped so much with ACCA that

21   there's no way now to abstract it.   They have developed

22   together, and both require the Court to imagine the ordinary

23   case, and that is exactly what Justice Scalia identified as

24   being the problem in *Johnson*.

25             So, therefore, if it was a problem in ACCA, it must

15

1    necessarily be a problem in 924 --

2            THE COURT:  Well, it's a strong argument, it's an

3    interesting argument, but I don't have enough confidence yet as

4    to what the outcome of this is going to be.  There's not enough

5    guidance yet from the Courts of Appeals.  All the district

6    courts I'm aware of that have addressed this issue have not

7    accepted that argument.

8            Is there any district court at this point that has

9    now found that 924(c) --

10           MS. GODFREY:  The District of Maryland in the

11   *Edmundson* case.  I can get a cite for you.  I think it's cited

12   in our briefs, though.  And then there are some district courts

13   in --

14           THE COURT:  I should say in this district, you have

15   Judge Jackson, you have Judge Ellis, all the courts in this

16   district that have looked at it have not found it.

17           MS. GODFREY:  Well, except for what the government

18   says in the brief is that they held that, and they haven't held

19   that.  None of the four cases that the government refers to in

20   their brief have actually reached the issue.

21           What those cases found, in particular the *Hunter*

22   case, which the government cites at length, found was that

23   Mr. Hunter's crime fell on the force clause of 924, not the

24   residual clause.  So everything that the Eastern District of

25   Virginia has said about this has been in dicta.  No case has

16

1    expressly held whether or not *Johnson* extends to 924(c).

2            THE COURT:  All right.  Well, I'm not satisfied that

3    the evidence -- that the law is clear enough at this point to

4    grant the emergency relief.  Now, whether down the road -- and

5    it's not going to be that long a road -- we grant the habeas is

6    different.  Obviously, if we grant Mr. Chapman's habeas

7    petition, then the issue about whether there ought to be

8    consideration of releasing him pending an appeal would be

9    justified.  But on this record, I'm not satisfied that there's

10   a sufficient basis to grant the relief you're requesting, so at

11   this point, the emergency motion is denied.

12           And Mr. Kromberg will get his response in to the

13   Court as soon as he can, and then you'll have a chance for a

14   reply, and once the, once the habeas is fully briefed, we will

15   then consider a reargument, because I think the issue is too

16   important to be done just on the papers.

17           MR. KROMBERG:  Your Honor, when you say we should

18   file as soon as we can --

19           THE COURT:  Well, you have 60 days.

20           MR. KROMBERG:  Right.

21           THE COURT:  Yeah.

22           MR. KROMBERG:  So my plan was to wait and see what

23   develops and bring the Court up to date in case things develop,

24   because things are, as I said, are happening.  So I -- unless

25   the Court directs otherwise, my plan was to wait for the 60

17

1    days.

2             THE COURT:  That's fine.  I mean, you've got 60 days;

3    that's legitimate.  And both sides, however, are free to

4    continue alerting us if there's a change -- developing change

5    in the case law so that we can be looking at it.

6             Again, the Fourth Circuit does not lightly grant

7    successive petition requests, and they did in this case, so

8    that also is an indication that at some point, this issue is

9    going to have to get resolved head on, and it is coming to a,

10   you know, to that point.

11            All right?  Thank you.

12            MR. KROMBERG:  Thank you, Judge.

13                            (Which were all the proceedings

14                             had at this time.)

15

16                   CERTIFICATE OF THE REPORTER

17       I certify that the foregoing is a correct transcript of

18   the record of proceedings in the above-entitled matter.

19

20

21                              _____/s/_____

                                 Anneliese J. Thomson

22

23

24

25