**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:04-cr-385 (LMB) |
| ) | |
| ALI AL-TIMIMI, ) | |
| ) | |
| *Defendant*. ) | |

**AL-TIMIMI'S REPLY TO GOVERNMENT'S RESPONSE TO SHOW-CAUSE ORDER**

In light of the Supreme Court's decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *Johnson v. United States*, 135 S. Ct. 2551 (2015), defendant Dr. Ali Al-Timimi respectfully requests that this Court grant his renewed motion for acquittal on counts 7 and 8. After two defeats before the Supreme Court, the government continues to avoid reality, and the Court, in its refusal to accept the clear import of the Court on the question of necessary clarity and specificity of criminal elements under the United States Constitution. While hope may spring eternal for the government's continued relitigation of this issue, Dr. Al-Timimi has patiently waited years for the resolution that the Supreme Court's decisions in *Johnson* and *Dimaya* now clearly require.

**BACKGROUND**

In August 2015, the United States Court of Appeals for the Fourth Circuit remanded this case for additional proceedings concerning newly released evidence that was not turned over to the defense, in contradiction of prior representations of the government. That evidence included a so-called "Squad IT-3" document, which referenced hundreds of undisclosed documents and a

1

previously undisclosed investigation involving Dr. Al-Timimi and Anwar Aulaqi.[1]

Approximately one year later, the Fourth Circuit modified its remand order to allow Al-Timimi to also challenge the constitutionality of his § 924(c) convictions in light of the Supreme Court's intervening decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that a residual clause worded similarly to the one used to convict Al-Timimi was void for vagueness. Al-Timimi then filed a Renewed Motion for Acquittal on Counts 7 and 8 [Dkt. No. 432], which this Court later stayed pending the outcome of another Supreme Court case in *Sessions v. Dimaya* [Dkt. No. 439]—this one involving a residual clause worded *identically* to the one used to convict Al-Timimi. Dkt. No. 439.

This latest round of litigation finally led to the Supreme Court's decision in *Dimaya*. In that decision, Justice Elena Kagan wrote for the majority that the very same analysis that doomed the ACCA residual clause in *Johnson* also required invalidation of the residual clause portion of the "crime of violence" definition codified at 18 U.S.C. § 16(b)—a provision functionally identical to the § 924(c)(3)(B) clause that Al-Timimi challenges here.

In so ruling, the *Dimaya* Court expressly rejected the very same arguments that the government had made to this Court with respect to § 924(c)(3)(B). First, Dimaya rejected the government's attempt to distinguish § 16(b) from ACCA based on an alleged "temporal restriction." *Dimaya*, 138 S. Ct. at 1219 ("[N]ot a single one of this Court's ACCA decision

---

[1] Notably, the government raises Dr. Al-Timimi's alleged "association" with Aulaqi on page one of its response. The other remand issues deal with the failure to disclose documents that precisely touch on this alleged association and past investigations that resulted from it. The government continues to deny the obvious materiality of this undisclosed evidence of prior surveillance or investigations of Dr. Al-Timimi including any contacts or links to Aulaqi.

turned on conduct that might occur after a crime's commission . . . Every offense that could have fallen within ACCA's residual clause might equally fall within § 16(b)."); compare with Dkt. No. 437 ("Govt. Opp.") at 6-9. Second, the Court rejected the government's claim that § 16(b)'s risk-of-physical-force standard is materially narrower than ACCA's risk-of-physical-injury standard. *Dimaya*, 138 S. Ct. at 1220; compare with Govt. Opp. at 8-9. Third, Dimaya rejected the government's attempt to distinguish ACCA based on its list of exemplar crimes that preceded its residual clause. *Dimaya*, 138 S. Ct. at 1221 ("To say that ACCA's listed crimes failed to resolve the residual clause's vagueness is hardly to say they caused the problem. . . . Johnson found the residual clause's vagueness to reside in just 'two' of its features: the ordinary-case requirement and a fuzzy risk standard.") (citation omitted); compare with Govt. Opp. at 4-5. Finally, the Court was unmoved by the government's assertion that § 16(b) had not produced as many failed attempts at judicial construction as ACCA had. *Dimaya*, 138 S. Ct. at 1221-23 ("The Government would condemn us to repeat the past—to rerun the old ACCA tape, as though we remembered nothing from its first showing. . . . We abandoned that lunatic practice in Johnson and see no reason to start it again.") (citations omitted); compare with Govt. Opp. at 9-10. Accordingly, the defense's position is that because § 16(b) and § 924(c)(3)(B) are functionally identical, *see*, *e.g.*, *In re Hubbard*, 825 F.3d 225, 230 n.3 (4th Cir. 2016), *Dimaya* thereby resolves the pending motion in Al-Timimi's favor.

  The government now concedes here the legal point it has argued for years: It states that "[t]he government has previously argued that Section 924(c)(3)(B) also requires a categorical approach, under which courts must decide whether the requisite substantial risk of force inheres in the 'ordinary case' of the crime at issue. In light of the Supreme Court's decision in *Dimaya*, however, that interpretation of Section 924(c)(3)(B) raises serious constitutional questions." Dkt.

No. 442 ("Govt. Br.") at 12. Now, however, the government seeks to abandon the "categorical approach" it has spent years aggressively defending for a "non-categorical approach" that would evaluate crimes of violence in accordance with a fact-based evaluation of an accused offender's specific conduct. In this case, the government attempts to accomplish this by reframing the trial record in an effort to establish facts that the jury was not asked to evaluate.[2]

This Court has before it a number of fact-intensive evidentiary questions remanded by the Fourth Circuit. This is not one of them. After waiting years, first for the *Johnson* decision, and then the *Dimaya* decision, counts 7 and 8 fall squarely within what Justice Scalia called the "failed enterprise" of these residual clauses in the criminal code.

**I.    Al-Timimi's § 924(c) convictions depended solely upon its residual clause and cannot be sustained under its force clause**.

The government asks this Court to sustain the offenses asserted in Jury Instruction 44 as crimes of violence under the separate "force clause" of § 924(c)(3)(a), without reliance on the residual clause at all. As outlined below, and in Al-Timimi's opening brief, *see* Dkt. No. 433 at 7-9 & Ex. A, this argument has no merit.

Both parties agree that the force clause requires a categorical approach that focuses solely on the statutory elements of the asserted predicate offense. *See* Dkt. No. 442 ("Govt. Br.") at 11-12 (conceding application of the categorical approach to the force clause). To qualify as a crime of violence, at least one of its elements must *require* the actual, threatened, or attempted use of force against the person or property of another. 18 U.S.C. § 924(c)(3)(A); *see also United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015) (discussing categorical approach). Under this

---

[2]    The defense strongly disagrees with several of the factual assertions and characterizations that the government makes in its background section. But because these characterizations are not material to the instant motion, the defense does not attempt to litigate them here.

framework, "only the minimum criminal conduct necessary for conviction under a particular statute is relevant." *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006). Thus, any offense that can be committed *without* the actual, attempted, or threatened use of force does not meet the requirements of the force clause and must rely instead on the residual clause. *See id*. at 136 (conspiracy statute relies on the residual clause since its elements do not explicitly mention the "use, attempted use, or threatened use of force").

In his opening brief, Al-Timimi attached a statutory addendum that individually compares each offense listed in Jury Instruction 44 against the force clause of § 924(c)(3)(A). Dkt. No. 433, Ex. A. As that addendum clearly shows, each offense can be committed without the use, threatened use, or attempted use of force. *Id*. Accordingly, none is sustainable under the force clause.

The government has not responded to that analysis, but instead asks this Court to treat the crime of conspiracy as a force-clause offense by adopting an expansive and unprecedented construction of the term "threaten[]." Pointing to a secondary dictionary definition of "threaten" that includes the word "portends," Govt. Br. at 10, the government suggests that the "threatened use of force" need not be limited to offenses whose elements require an actual "threat" of force, but can instead be stretched to cover any offense that merely "portends" the use of force by making it "far more likely." *Id*. at 10-11. Operating under this standard, it claims that conspiracy can be properly regarded as a force-clause offense.

This construction lacks merit for several reasons. First and foremost, the Fourth Circuit has already held that conspiracy is not a crime of violence under the near-identical force clause of the ACCA. *See United States v. White*, 571 F.3d 365, 369 (4th Cir. 2009). Second, it would appear to make surplusage of the residual clause, since a force-clause construction that includes a

"portends the use of force" standard would seem to do all of (if not more than) the work of the substantial-risk-of-force standard. It would also seem to swallow at least three of the enumerated crimes of the ACCA—namely, burglary, arson, and the use of explosives. Third, far from correcting the vagueness problems of § 924(c), the government's proposed construction would create new ones, since it is unclear how it could be applied consistently without reference to some variation of the same ordinary-case framework already invalided in *Johnson* and *Dimaya*.

The government's only citation is of a Second Circuit decision concerning the Bail Reform Act in which a conspiracy offense's classification as a force-clause or residual-clause offense appears not to have been at issue and is mentioned only in passing. *See* Govt. Br. at 10-11 (citing *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991)). In any event, the Second Circuit's subsequent caselaw makes clear that conspiracy is a residual-clause offense for purposes of § 924(c). *Acosta*, 470 F.3d at 136 (2d Cir. 2006) (concluding that conspiracy statute "does not explicitly mention the 'use, attempted use or threatened use of physical force,'" and thus requires court to proceed to the residual clause).

Finally, as noted in Al-Timimi's opening brief, the record also does not indicate which of the nine asserted crimes of violence the jury chose to support the conviction, as the jury issued only a general verdict and was not specifically polled on Jury Instruction 44. *See* Dkt. No. 433, Ex. C. Thus, any such selective attempts by the government to rely on the force clause for only some of the offenses would depend on improper speculation about how the jury arrived at its decision behind the closed doors of the deliberation room. *See Floyd v. Laws*, 929 F.2d 1390, 1399 (9th Cir. 1991) ("[I]t is difficult for a reviewing court to divine what the intent of the jury might have been. In any event, the legal precedents cited here do not permit this court to indulge in speculation as to the jury's motives.")

**II.     The government is unable to avail itself of a savings construction to sustain the § 924(c) convictions against Al-Timimi.**

Turning to the heart of the government's argument, it next asks this Court to abandon the categorical approach altogether and instead give the residual clause an entirely new construction that would reassigned to the jury the task of determining crimes of violence via a fact-based evaluation of the specific conduct of the alleged offender. In so doing, the Justice Department makes a dramatic 180-degree shift from the position it held just months ago, when it rigorously defended the categorical approach before the Supreme Court in *Dimaya* and throughout the courts of appeals.[3]

But as outlined both here and in Al-Timimi's opening brief, Dkt. No. 433 at 18-20, the argument has no merit. Not only is the categorical approach mandated by the controlling precedent of the Supreme Court and Fourth Circuit, it is also compelled by § 924(c)'s text, structure, and legislative history. And properly so, as the government's proposed abandonment of it would simply create new constitutional defects under the Sixth Amendment. It would also create an awkward and arbitrary conduct-based exception to a single prong of a broader categorical statutory scheme, and would further frustrate Congress' intent to facilitate uniform and just application of the harsh mandatory minimums that the statute imposes.

Finally, even if precedent did permit the government's new savings construction (which it emphatically does not), the government could not avail itself of a conduct-based approach in this case because the jury made no conduct-based findings at trial.

---

[3]     In the Eighth Circuit, the Justice Department went so far as to file a petition for rehearing against a panel of the court for failing to apply the categorical approach to § 924(c)(3)(B), arguing that its "statutory text alone requires a categorical approach." *See* United States' Pet. for Panel Rehearing, Case No. 15-3486 (8th Cir. Sept. 9, 2016), at 7. The Eighth Circuit then a new per curiam opinion correcting the error. *United States v. Prickett ("Prickett II")*, 839 F.3d 697, 698 (8th Cir. 2016).

> **A.** **The government's proposed savings construction should not be adopted because it is foreclosed both by controlling precedent and the statute's relevant text**.

First and foremost, the government's argument fails because the categorical approach it seeks to jettison is compelled by the precedent of both the Supreme Court and Fourth Circuit. The Fourth Circuit has unambiguously held—post-*Johnson*—that the categorical ordinary-case framework is controlling within this jurisdiction with respect to both § 924(c)(3)(B) and § 16(b). *See, e.g.*, *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016) ("In determining whether an offense is a crime of violence under either clause [of § 924(c)(3)], we utilize the categorical approach, which focuses solely on the elements of the offense, rather than on the facts of the case.") (citing *Fuertes*, 805 F.3d at 498); *In re Hubbard*, 825 F.3d at 232 ("§ 16(b) presents both of the[] issues [that the Supreme Court considered in *Johnson*]. It invokes the ordinary case by referring, not to the facts of the case, but to the 'nature' of the offense. The provision also applies almost the exact same vague standard—'involves a substantial risk'—to the abstract ordinary case.") (citations omitted); *see also Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004).[4]

Moreover, this categorical framework is not a mere creation of the courts; it is commanded by the text of the statute, which requires that an asserted crime of violence be evaluated "by *its nature*," 18 U.S.C. § 924(c)(3)(B) (emphasis added), and not by the particular conduct of the individual offender in the case at hand. *See Leocal*, 543 U.S. at 7 (holding in a

---

[4] Moreover, at least five justices in *Dimaya* agreed that the text of § 16(b) compels the categorical approach. See *Dimaya*, 138 S. Ct. at 1216 (". . . the Government, joined by THE CHIEF JUSTICE, accepts that §16(b), as long interpreted, demands a categorical approach, rather than a case-specific one."). And although Justice Gorsuch's concurring opinion expressly declined to express an opinion on the matter without the benefit of the adversarial process, *see id.* at 1233, he also wrote that he was "not sure Justice Thomas's is the only available reading of the statute [the Court] [should] consider," suggesting alternative constructions that look to "whether the defendant's crime of conviction *always*" invokes a substantial risk of physical force. *Id.* (emphasis in original).

unanimous decision that the language "by its nature" in § 16(b) "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime."); *Dimaya*, 138 S. Ct. at 1217-18 ("If Congress had wanted judges to look into a felon's actual conduct, it presumably would have said so; other statutes, in other contexts, speak in just that way. The upshot of all this textual evidence is that §16's residual clause—like ACCA's, except still more plainly—has no plausible fact-based reading.") (plurality opinion) (citations and quotations omitted); *see also Taylor v. United States*, 495 U.S. 575, 582-89 (1990) (reviewing legislative history of ACCA and observing that "[e]ach of the proposed versions of the 1986 amendment carried forward this categorical approach, extending the range of predicate offenses to all crimes having certain common characteristics—the use or threatened use of force, or the risk that force would be used—regardless of how they were labeled by state law.")

The government's sole attempt to distinguish § 924(c)(3)(B) from § 16(b) is based on its observation that the former "is never applied to a *prior* conviction," whose facts may not be before the court. Govt. Br. at 17 (emphasis added). But this is a distinction without a difference, as the Fourth Circuit has already applied the categorical approach in precisely this context. In *United States v. Aragon*, 983 F.2d 1306 (4th Cir. 1993), the Fourth Circuit interpreted § 16(b) in connection with the Travel Act, 18 U.S.C. § 1952(a)(2), which, just like § 924(c), always deals with a contemporaneous "crime of violence" and never a prior conviction. Nevertheless, the Fourth Circuit still held that the categorical approach was compelled by the plain language of the statute. *Aragon*, 983, F.2d at 1312-13 ("Giving the term 'by its nature' its natural and plain meaning, § 16(b) directs the court to look to the generic nature of an offense in deciding whether the offense is a 'crime of violence.'").[5]

---

[5] *See also United States v. Piccolo*, 441 F.3d 1084, 1087 (9th Cir. 2006) ("Although the

An examination of the § 924's structure further confirms the implausibility of the government's proposed construction. The government agrees that the force clause requires a categorical interpretation, *see* Govt. Br. at 11-12; its conduct-specific construction is proposed *only* for evaluation of the residual clause. Thus, under the government's approach, the responsibility for evaluating a crime of violence would become awkwardly divided between the Court and the jury, depending on which clause or clauses are asserted. It would also require the jury to ponder legal terms—such as "by its nature"—that even the Supreme Court has been unable to agree upon, opening the door to disparate application of the statute's harsh mandatory minimums. It would apparently also create inconsistent standards for appellate review, since a force-clause determination of a crime of violence would be a legal determination reviewed de novo, while a residual-clause determination would amount to a jury finding reviewed for sufficiency of the evidence under Rule 29.

But there is no evidence that Congress intended to create this arbitrary conduct-based exception to only one prong of the statutory definition, particularly given its extensive use of the categorical approach elsewhere throughout the statutory scheme. For example, a categorical approach is employed by § 924(c)'s definition of "drug trafficking crime," which evaluates such crimes by looking not to the specific conduct of the accused offender, but only to whether the asserted offense is a felony punishable under the Controlled Substances Act and other enumerated federal drug laws. 18 U.S.C. § 924(c)(2). A categorical approach is also employed by 18 U.S.C. § 924(g)(1), which bans the possession of firearms by a person convicted of a state

---

categorical analysis is driven in part by a policy decision to avoid ad-hoc mini-trials regarding an individual's prior convictions during sentencing hearings, the absence of that particular problem did not preclude us from adopting the categorical approach.") (internal quotations and citations omitted).

misdemeanor offense that is capable of being punished by two or more years imprisonment—irrespective of the sentence the individual offender actually received. 18 U.S.C. §§ 924(g)(1) & 921(a)(20)(B).[6]

Finally, the government's attempt to rely on the constitutional avoidance canon fails as well. The avoidance canon guides a court faced with two plausible statutory constructions, one that raises constitutional concerns and another that does not, to select the plausible interpretation that does not raise constitutional concerns. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). But in this case, the government's proposed construction is neither plausible nor free of constitutional concerns. As the *Dimaya* plurality explained, the Supreme Court "adopted the categorical approach in part 'to avoid[ ] the Sixth Amendment concerns that would arise from sentencing courts making findings of fact that properly belong to juries.'" *Dimaya*, 138 S. Ct. at 1217 (*citing Descamps v. United States*, 570 U.S. 254, 267 (2013)). Justice Thomas's dissenting opinion—relied upon by the government here—avoided this issue on the grounds that *Dimaya* concerned a civil removal proceeding that had no accompanying right to jury trial. *See id*. at 1256 (Thomas., J., dissenting). This distinction is unavailable to the government in the criminal context of § 924(c).

---

[6] Indeed, the Justice Department strictly enforces this categorical approach of § 924(g)(1), without regard to the individual circumstances of the offender. *See Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013) (upholding federal firearms ban against man with 1968 conviction for common-law misdemeanor assault for his role in a fistfight as a 19-year-old Navy serviceman. Although he had received no jail time and went on to serve a tour in Vietnam, the government successfully argued that because the common-law offense for he was convicted had no statutory cap on its punishment range, it was technically "punishable" by more than two years under the categorical approach). Given this aggressive history of asserting the categorical approach, it should not be permitted to casually abandon it here for strategic purposes.

**B. In any event, the government's proposed savings construction would fail to sustain the convictions in this case.**

Finally, even if the government were to later persuade the Supreme Court to adopt the conduct-based approach of Justice Thomas's dissenting opinion for purposes of § 924(c)(3)(B), it could still not be applied in this case. As acknowledged by the government, Govt. Br. at 6, and further outlined by the defense in its opening brief, Dkt. No. 433 at 19-20, the jury in this case was not asked to find whether the *individual* actions of Hasan or Kwon (the principles to which Al-Timimi is accused of aiding and abetting) involved a substantial risk of physical force being used (indeed, this "substantial risk" language was not even included in the instruction, *see id.*, Ex. B), but only whether their actions furthered one of the nine offenses enumerated in Jury Instruction 44. Thus, even if the categorical approach to the residual clause were to be eliminated going forward, the fact remains that it was used at trial in this case.

The government suggests that this could be treated as harmless error, Govt. Br. at 7-9, but the very cases it cites demonstrate otherwise. Although the Fourth Circuit has held that "an erroneously omitted jury instruction may be deemed harmless error if the omitted element is supported by overwhelming evidence admitted at trial," *United States v. McFadden*, 823 F.3d 217, 224 (4th Cir. 2016), the burden is high and requires the reviewing court to conduct a thorough examination of the record. *Id*. If the reviewing court "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . .[,] it should not find the error harmless." *Id*. (*quoting Neder v. United States*, 527 U.S. 1, 19 (1999)).

Operating under this standard, the Fourth Circuit has rejected a harmless error argument where a "jury was not instructed that it must find unanimously that the defendant had participated in specific predicate violations before finding that he had participated in a 'continuing criminal enterprise.'" *McFadden*, 823 F.3d at 225 (*citing United States v. Brown*,

202 F.3d 691, 698 (4th Cir. 2000)). Because the jury was not required to "discuss[] . . . the specific factual details of each violation," the Fourth Circuit concluded that it was unable to discern whether the jurors had reached agreement on "just what the defendant did, or did not, do." *Brown*, 202 F.3d at 702.

Likewise, in this case, the jury was tasked only with determining whether Kwon and Hasan's actions at LET camp furthered one of the nine offenses listed in Jury Instruction 44—each of which can be committed without the use of force. *See* supra at 5; *see also* Dkt. No. 433, Ex. A. Just as in *Brown*, there is no reason to believe that the jurors even discussed (let alone reached unanimous consensus upon) the question of whether Kwon and Hasan's individual actions gave rise to a substantial risk of physical force being used.

And indeed, a jury would be unlikely to do so. As the trial record shows, Kwon and Hasan's use of machine guns was limited to training exercises at the LET camp they attended. *See, e.g.*, Dkt. No. 47 at 15 (superseding indictment); *see also United States v. Royer, et al.*, 1:03-cr-296-LMB (E.D. Va.), Dkt. Nos. 137 at ¶¶ 27, 33 (statement of facts by Kwon in support of plea agreement) & 127 at ¶¶ 6, 12 (statement of facts by Hasan in support of plea agreement). Neither did any fighting or entered a combat zone or testified to being in any situation in which fighting was imminent, and so a jury examining their *specific conduct* would be hard-pressed to find sufficient evidence that there was ever a substantial risk of physical force being used against the person or property of another.

## CONCLUSION

Defendant Ali Al-Timimi respectfully requests that the Court grant this motion, issue a judgment of acquittal with respect to his § 924(c) accomplice liability convictions under Counts 7 and 8 in light of the Supreme Court's intervening authority in *Johnson* and *Dimaya*, and adjust

13

his sentence accordingly.

        Respectfully submitted,

        _____/s/_____
        Thomas Michael Huff, Virginia Bar No. 73587
        Thomas M. Huff, Attorney-at-Law
        P.O. Box 2248
        Leesburg, VA 20177
        Telephone: 703.665.3756
        Facsimile: 571.354.8985
        thuff@law.gwu.edu

        Jonathan Turley (*pro hac vice*)
        The George Washington University Law School
        2000 H Street, NW
        Washington, D.C. 20052
        Telephone: (202) 994-7001
        Facsimile: (202) 508-6200
        jturley@law.gwu.edu

        Attorneys for Defendant Dr. Ali Al-Timimi

Dated: June 4, 2018

## CERTIFICATE OF SERVICE

I certify that on June 4, 2018, I will file the foregoing document on the CM/ECF system, which will then serve it by sending an electronic notification to:

AUSA Gordon D. Kromberg
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700 (telephone)
(703) 837.8242 (facsimile)
gordon.kromberg@usdoj.gov

                                                /s/
                                Thomas Michael Huff, Virginia Bar No. 73587
                                Thomas M. Huff, Attorney-at-Law
                                P.O. Box 2248
                                Leesburg, VA 20177
                                Telephone: 703.665.3756
                                Facsimile: 571.354.8985
                                thuff@law.gwu.edu