IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  1:04cr385 |
| | ) | |
| ALI AL-TIMIMI | ) | |

OPPOSITION TO RENEWED MOTION OF ACQUITTAL ON COUNT 1

Ali Timimi argues that his conviction on Count 1 should be vacated, because his actions

could not have involved a substantial risk of such physical force, when - - as this Court

previously found - - those of Masoud Khan did not.  Regardless of the merits of the Court's

finding regarding Khan, that finding does not help Timimi.  This is so because the risk of

physical force created by Timimi's offenses was not dependent on what Khan himself did.

To the contrary, the proper measurement of the risk of physical force involved with

Timimi's offenses must be based on the crimes that he *counseled* or *solicited* his followers to

commit.   The crimes that he counseled or solicited them to commit included waging war against

the United States in Afghanistan - - and that crime that inherently involved a substantial risk of

physical force being used against the person or property of another.

In Count 1, Timimi was indicted for aiding, abetting, counseling, and inducing others to

use firearms during and in relation to crimes of violence, as follows:

> Between on or about September 16, 2001, and continuing thereafter up to
> on or about May 2003, within Fairfax County in the Eastern District of
> Virginia and elsewhere, defendant ALI AL-TIMIMI did unlawfully and
> knowingly *aid, abet, counsel, and induce* Masoud Khan, Randall Royer,
> Yong Kwon, Muhammad Aatique, Khwaja Hasan, Donald Surratt, and

others known and unknown to the grand jury, to combine, conspire, confederate, and agree together and with others known and unknown to the grand jury to use, carry, possess, and discharge firearms during, in relation to, and in furtherance of crimes of violence for which he and they may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924(c), and did procure the commission of such offense.

(emphasis added).

Count 1 of the indictment specifically alleged that Timimi's actions violated both 18 U.S.C. § 924(n) *and* 18 U.S.C. § 2.  Section 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.  Thus, the risk of force analysis for Timimi's offenses properly is based not on whether Khan actually used force against the person or property of others, but on whether Timimi counseled or solicited Khan (and others) to do so.  This Timimi surely did.

Proof at Timimi's trial established that Timimi encouraged Khan, Royer, Kwon, Aatique, Hasan, Surratt, and others, to go to Afghanistan to fight against the American troops that Timimi expected soon to invade there.  Proof established that Timimi encouraged his followers to train with LET in order better to fight against U.S. troops in Afghanistan.  No proof, however, indicated that Timimi helped his followers to reach the LET camps.  To the contrary, helping them reach the LET camps was *Royer's* role.  In other words, proof did not establish that Timimi significantly "aided and abetted" them in doing so.

Instead, trial evidence established that Timimi's culpability was based on his soliciting his followers to fight the United States in Afghanistan, and his counseling them to do so.  That is

2

why he was convicted of soliciting treason as alleged in Count 2 (in violation of Sections 373 and 2381); counseling conspiracies to levy war against the United States and violate the Neutrality Act, as alleged in as alleged in Counts 3 and 6 (in violation of Sections 960, 2384, and 2); and inducing others to attempt to aid the Taliban, as alleged in Count 5 (in violation of 50 U.S.C. § 1705 and 18 U.S.C. § 2).[1] In sum, Timimi's convictions were based not so much on proof that he "aided and abetted" the charged crimes, or that he induced or procured their commission, but on proof that he *solicited* and *counseled* them.

The risk of physical force created by Timimi's solicitation to fight against the United States, as well as his counsel to support the Taliban by fighting on its behalf, should be measured by what he solicited and counseled his followers to do, rather than what they ultimately did. What he solicited and counseled his followers to do, was to fight against U.S. troops in Afghanistan. Trial evidence established that their failure to do so was not the result of any action of Timimi; instead, their failure was the result of LET's decision to withhold them from the fight in Afghanistan, after the Taliban's defense collapsed before their training was completed.[2]

After listening to Timimi's solicitation and counsel, Khan, Kwon, Hasan, and Aatique left the United States for Pakistan, with plans to fight in Afghanistan after obtaining training from LET. Royer and Surratt, among others, received the same solicitation and counsel, but did not

---

[1] Timimi also was convicted of attempting to contribute services to the Taliban himself, in violation of 50 U.S.C. § 1705, as charged in Count 4. Khan and Chapman each were convicted of conspiring to provide material support to LET, in violation of 18 U.S.C. § 2339A, but Timimi was not charged with soliciting, aiding, abetting, counseling, or inducing that offense.

[2] Aatique's situation was different, because he had second thoughts on the whole concept, and left the LET camps after a week.

go to fight. The fact that Royer and Surratt did not act in accordance with Timimi's counsel was irrelevant to the risk of violence caused by Timimi's solicitation and counsel. In fact, the failure of Khan, Kwon, and Hasan ever to reach Afghanistan to fight was no more relevant to the risk of violence caused by Timimi's solicitation and counsel, than was the failure of Royer and Surratt ever to decide to fight at all.

Indeed, the test for Section 924(c)(3)(B)is not whether the defendant's conduct caused physical harm, but whether his conduct created a substantial *risk* of harm. The fact that no one was ultimately harmed as a result of Timimi's offenses does not detract from the *risk* of harm his offenses created. Moreover, the *risk* of harm from his offenses must be measured in September 2001 - when he counseled and solicited his followers to fight - - and not in December 2001, when his most fervent followers gave up on the idea of doing so.

The inadequacy of Timimi's argument can be seen from a different perspective through the conviction of Ali Asad Chandia. Like Khan, Kwon, Hasan, and Aatique, Chandia also received Timimi's counsel to fight in Afghanistan. Unlike Khan, Kwon, Hasan, and Aatique, however, Chandia traveled to Pakistan to join LET by himself. As a result, the government was unable to prove much of what Chandia did while he was with LET. *See generally United States v. Chandia,* 675 F.3d 329 (4th Cir. 2012).

Like Royer and Hamdi, while at the LET camps, Chandia *might* have fired on Indian positions in Kashmir. Or, like Kwon, Hasan, Khan, and Aatique, he might not have done so; we simply have no evidence one way or another. The uncertainty of whether Chandia actually fired on Indian positions in Kashmir is irrelevant, however, to whether Timimi's counseling him to join LET involved a substantial risk of physical force. This is so because, when properly

4

measured at the time that Timimi provided the counsel and solicitation to go fight, that counsel and solicitation created the same risk of physical harm, regardless of what Chandia actually did while in Pakistan with LET.

If a drug kingpin orders the assassination of a rival, that order involves a substantial risk of physical force against the person or property of another, regardless of whether the hit ever is carried out.  If a gang leader directs his posse to rob a bank, that direction involves a substantial risk of such physical force, regardless of whether the bank ever is robbed.  If a bombmaker arranges for his conspirator to deliver a detonator to a truck containing a load of fertilizer, that arrangement involves a substantial risk of such physical force, regardless of whether the fertilizer ever is ignited.   In short, the proper measure of whether a criminal solicitation or counseling involves a substantial risk of physical force is the likelihood of violence occurring upon the listeners' receipt of the counsel, and not upon whether the listeners ultimately engage in the violent activity that was solicited and counseled.

In light of the violence that Timimi solicited and counseled, his crimes surely involved a substantial risk of physical force being used against the person or property of another.  The fact that Timimi's most avid followers ultimately failed to fight against U.S. forces in Afghanistan does not affect the substantiality of the risk created by Timimi's conduct months earlier, when he solicited and counseled them to fight.

Timimi also argues that his criminal actions could not have involved a substantial risk of physical harm to the person or property of another because he, himself, fired no weapon.  This Court previously determined that none of Khan's actions involved either Khan's actual use of force or a substantial risk that he would use force.  Nevertheless, the fact that Timimi himself

5

handled no weapons is irrelevant. That is so because, under traditional principles of co-conspirator liability, Timimi is liable for the actions of those he counseled. *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946). Accordingly, the absence of weapons handled by Timimi himself is irrelevant to any determination of the culpability attributed to him for the crimes that he solicited or counseled.

In reaching its conclusion that Khan's actions did not involve either the actual use of force or a substantial risk that he would use force, this Court relied on *United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015). This Court pointed to the statement in *Fuertes* that, under § 924(c)(3)(B), "the relevant inquiry is not whether there is a risk of <u>any</u> person using force in any way tangentially related to an on-going offense, but rather whether there is a substantial risk of the <u>defendant</u> doing so." *Khan,* slip op. at p.31, n.19 (emphasis in original).

*Fuertes* does not support Timimi's argument, because *Fuertes* was not a prosecution for a conspiracy to commit violence (much less a prosecution for the solicitation of violence or counseling violence). The language from *Fuertes* that ostensibly limits the risk to that caused by actions of the defendant himself simply does not apply to a conspiracy case. That is so because because, under traditional principles of co-conspirator liability, Timimi is liable for the actions of those he counseled. *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946). As the Fourth Circuit has written, "a conspiracy can itself be a separate crime of violence providing its own predicate for § 924(c)(1) liability." *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010).[3]

---

[3] Internal quotations and citations are omitted throughout this pleading.

6

"The Fourth Circuit recognizes the full breadth of the conspiracy doctrine described in *Pinkerton*." *United States v. Cummings*, 937 F.2d 941, 945 (4th Cir. 1991). "A defendant may be convicted of a § 924(c) charge on the basis of a coconspirator's use of a gun if the use was in furtherance of the conspiracy and was reasonably foreseeable to the defendant." *United States v. Wilson*, 135 F.3d 291, 305 (4th Cir. 1998).

In *United States v. Blackman*, 746 F.3d 137, 140–42 (4th Cir. 2014), the Fourth Circuit upheld a defendant's conviction under § 924(c) for brandishing a firearm during two robberies for which the defendant was not present.   The Fourth Circuit reasoned that the defendant was guilty under *Pinkerton* principles, since "the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy." *Id*. at 141–42.  For purposes of liability under § 924(c), the fact that the defendant was not present for each robbery was "irrelevant." *Id*. at 141.

Moreover, because conspiracy cases involve an agreement to achieve some unlawful goal, they raise special considerations when the goal of the conspiracy is itself violent.  Under Section 924(c)(3)(B), "a conspiracy is itself a crime of violence when its objectives are violent crimes." *Ayala*, 601 F.3d at 267.  This is because "[w]hen conspirators have formed a partnership in crime to achieve a violent objective . . . they have substantially increased the risk that their actions will result in serious physical harm to others." *Id*. (bracketed text and ellipsis in original).  Here, Timimi solicited and counseled his followers to conspire to engage in combat against the United States.  By counseling them to form "a partnership in crime to achieve a violent objective," they "substantially increased the risk that their actions [would] result in serious physical harm to others."

If a mob boss commands his crew to use machine guns to rob a bank, he cannot persuasively claim that his conduct did not involve a substantial risk of force simply because during the robbery, he, himself, remained outside the bank without a gun. Likewise, a gangster who orders a henchman to murder a rival cannot persuasively claim that his conduct did not involve a substantial risk of force simply because he, himself, did not lay a hand on the victim. Similarly, a terrorist who builds a bomb cannot persuasively claim that his conduct did not involve a substantial risk of force simply because he, himself, remained at home while someone else planted the bomb on a bus. In short, the language of *Fuertes* simply cannot apply to conspiracy cases, or to cases of the solicitation of violence.

For the foregoing reasons, Timimi's motion should be denied.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

_____/s_____

By:   Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

8

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of August 2018, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to all attorneys of record.


_____/s_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov