IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:04-cr-385 |
| | ) | |
| ALI AL-TIMIMI, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
ON *DAVIS v. UNITED STATES***

This Court has ordered the United States to file a memorandum expressing its views on

the merits of the defendant's post-verdict motions for judgments of acquittal on Counts 1, 7,

and 8 of the superseding indictment after the U.S. Supreme Court's decision in *United States v.*

*Davis*, 139 S. Ct. 2319 (2019), which held that the residual clause in 18 U.S.C. § 924(c)(3)(B) is

unconstitutionally vague.

For the reasons appearing below, the Court should deny the motions.

**Procedural Background**

A grand jury sitting in Alexandria, Virginia returned an indictment against the defendant

on September 23, 2004. (ECF No. 1.) Count 1 of the indictment charged the defendant with

inducing others to conspire to commit several offenses, including conspiring to use and carry

firearms during and in relation to crimes of violence as defined in 18 U.S.C. § 924(c). (ECF

No. 1 ad 5.) Counts 3 and 4 of the indictment charged the defendant with aiding and abetting the

use of firearms in connection to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c).

(ECF No. 1 at 12.)

The defendant then filed a motion for a bill of particulars seeking additional information

about which specific crimes of violence supported Counts 1, 3, and 4. (ECF No. 11.) In opposing the motion, the government explained that, under Fourth Circuit precedent, it did not have an obligation to list particular crimes of violence in the indictment. *See United States v. Randall*, 171 F.3d 195, 208 (4th Cir. 1999) ("Nor was the government required to specify a specific § 924(c) predicate offense in the § 924(c) charge in the indictment."). The government nonetheless identified nine predicate crimes of violence, each of which could support the charges. (ECF No. 23 at 6–7.)

A superseding indictment followed. (ECF No. 47.) As relevant here, it charged the defendant with three offenses predicated on "crimes of violence" under 18 U.S.C. § 924(c):

- Count 1 charged the defendant with inducing others to conspire to use firearms, in violation of 18 U.S.C. §§ 2 and 924(n).[1]

- Count 7 charged the defendant with inducing Yong Kwon to use a firearm—more specifically, a light machine gun—in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2(a) and 924(c).

- Count 8 charged the defendant with inducing Khwaja Hasan to use a firearm—more specifically, an AK-47-style automatic rifle—in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2(a) and 924(c).

Count 1 did not further identify by code citation the particular crimes of violence that the defendant allegedly induced others to conspire to commit. Counts 7 and 8 charged that the predicate crimes of violence "includ[ed] the conspiracy alleged in Count 1," but did not further limit the universe of potential crimes of violence supporting the charges. (ECF No. 47 at 15.) The superseding indictment also charged the defendant in Counts 9–10 with inducing others to carry explosives "during the commission of felonies which may be prosecuted in a court of the

---

[1] Throughout the trial proceedings, the parties referred to § 924(n), rather than § 924(o), as the statutory provision outlawing a conspiracy to use firearms in furtherance of crimes of violence. The citation error is not a basis for relief. *See* Fed. R. Crim. P. 7(c)(2).

United States," in violation of 18 U.S.C. §§ 2(a) and 844(h)(2).  (ECF No. 47 at 16.)

When the Court instructed the jury, it identified the same nine predicates that the government included in its opposition to the motion for a bill of particulars as the list of possible predicate offenses that could support Counts 1, 7, and 8 (as "crimes of violence") and Counts 9 and 10 (as "federal felonies").  These included:

A. Levying war against the United States and conspiring to do so, in violation of Title 18, United States Code, sections 2381 and 2384;

B. Attempting and conspiring to supply services to the Taliban, in violation of Title 50, United States Code, section 1705;

C. Beginning, providing for, preparing a means for, and taking part in military expeditions and enterprises to be carried on from the United States against the territory and dominion of foreign states, districts, and peoples with whom the United States was at peace—and conspiring to do so—in violation of Title 18, United States Code, sections 371 and 960;

D. Enlisting and entering oneself or another to go beyond the jurisdiction of the United States with intent to be enlisted and entered in the service of any foreign prince, state, colony, district, and people as a soldier—and conspiring to do so—in violation of Title 18, United States Code, sections 371 and 959;

E. Conspiring to commit at any place outside the United States acts that would constitute the offense of murder or maiming if committed in the special maritime and territorial jurisdiction of the United States, in violation of Title 18, United States Code, section 956(a);

F. Conspiring to damage or destroy specific property situated within a foreign country and belonging to a foreign government or to any political subdivision thereof with which the United States is at peace, and any railroad, canal, bridge, airport, airfield, and other public utility, public conveyance, and public structure and any religious, educational, and cultural property so situated, in violation of Title 18, United States Code, section 956(b);

G. Attempting and conspiring to provide material support and resources, knowing or intending that they are to be used in preparation for or in carrying out a violation of section 956 of Title 18, United States Code, in violation of Title 18, United States Code, section 2339A;

H. Attempting and conspiring to provide material support and resources to Al-Qaeda, in violation of Title 18, United States Code, section 2339B; and

I. Enlisting and engaging with intent to serve in armed hostility against the United States—and conspiring to do so—in violation of Title 18, United States Code, sections 371 and 2390.

(Trial Tr. 2318–19.)[2]  The Court further instructed the jury that it "may unanimously find more than one crime of violence or federal felony; however, to satisfy that element, the jury must unanimously find at least one such crime for each count."  (Trial Tr. 2320.)

The jury returned verdicts of guilty on all counts.  The Court did not use a special verdict form and did not otherwise ask the jury to specify which of the nine possible predicate crimes of violence and federal felonies it used to convict the defendant on Counts 1, 7, 8, 9, and 10.[3]  The defendant later filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, which this Court denied orally at sentencing.  (ECF Nos. 118, 131.)

On July 13, 2005, the Court imposed the following sentence on the defendant:

- 121 months' incarceration on Counts 1, 2, and 3 to be served concurrently;

- 120 months' incarceration on Counts 4 and 5, to be served concurrently with the sentences on Counts 1–3;

- 60 months' incarceration on Count 6, to be served concurrently with the sentences on Counts 1–5;

- 360 months' incarceration, to be served consecutively to the sentences on Counts 1–6, for the violation of § 924(c) charged in Count 7;

- Life imprisonment for the violation of § 924(c) charged in Count 8;

---

[2] The government has attached a copy of the Court's jury instructions as **Exhibits 1 and 2**.

[3] After the jury returned its verdict, the Court stated, "I think given the nature of the overall verdict, we don't need to ask the jury to make specific findings as to a specific act of violence." Not anticipating the present litigation, the government agreed.  So did defense counsel.  (Trial Tr. 2412, *available at* ECF No. 433-3.)

- 120 months' incarceration, to be served consecutively to the sentences on Counts 1–8, for the violation of § 844(h) charged in Count 9; and

- 240 months' incarceration, to be served consecutively to the sentences on Counts 1–9, for the violation of § 844(h) charged in Count 10.[4]

(ECF No. 132.)  To put it more succinctly, on top of his already-served sentence of 121 months, the defendant faces life imprisonment as a result of the two § 924(c) charges (Counts 7–8) and faces a consecutive sentence of 30 years for the two § 844(h) charges (Counts 9–10).

After a good deal of procedural back-and-forth, the defendant took an appeal to the Fourth Circuit in June 2014.  (*See* Case No. 14-4451.)  The defendant then asked the Fourth Circuit to remand his case back to this Court to pursue claims that the government had impermissibly withheld a document during discovery, and the Fourth Circuit granted his request.  (Case No. 14-4451, ECF Nos. 51, 56-1.)  In the interim, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), holding that the residual clause of the Armed Career Criminal Act was unconstitutionally vague.  The defendant then filed an unopposed motion to expand the remand order in light of *Johnson*.  More specifically, he requested "that the Court grant this motion and issue a supplemental remand order, vacating the district court's denial of his Rule 29 motions for acquittal with respect to Counts 7 and 8 of the indictment for further consideration in light of *Johnson* … and any additional intervening authority of this Court."  (Case No. 14-4451, ECF No. 70-1 at 10.)  The Fourth Circuit granted the request, thereby allowing this Court "to reconsider the [defendant's] section 924(c) convictions in light of *Johnson*."  (Case No. 14-4451, ECF No. 73-1.)

The defendant filed a motion for judgment of acquittal on Counts 7 and 8 in October

---

[4] The defendant was remanded at sentencing; he had not previously been in custody and the Court denied his motion for bond pending appeal.  (*See* Minute Entry for July 13, 2005.)

2016.  (ECF No. 432.)  He then filed a motion for judgment of acquittal on Count 1 in

August 2018.  (ECF No. 445.)  The Court ordered the government to show cause why the

defendant's motions should not be granted in view of *Johnson* and *Sessions v. Dimaya*, 138 S.

Ct. 1204 (2018), which also struck down a residual clause as unconstitutionally vague.  (ECF

No. 441.)  Briefing followed.  (ECF Nos. 442, 443, 446, 447, 449.)

After the Supreme Court issued its opinion in *Davis*, the Court again ordered the

government to show cause why the defendant's motions for judgment of acquittal ought not be

granted.  (ECF No. 453.)  The government hereby files its response.

## Argument

These motions fail because, even after *Davis*, Counts 1, 7, and 8 rest on at least one valid

predicate.

## I.     The Defendant Is Not Automatically Entitled to Judgments of Acquittal Even If *Davis* Invalidated One or More of the Predicates Underlying Counts 1, 7, and 8.

Under 18 U.S.C. § 924(c)(1)(A), it is a federal crime to use or carry a firearm during and

in relation to a crime of violence, or to possess a firearm in furtherance of a crime of violence.

The statute defines "crime of violence" as a federal offense that is a felony and—

> (A)     has as an element the use, attempted use, or threatened use of physical force
>         against the person or property of another, or

> (B)     that by its nature, involves a substantial risk that physical force against the
>         person or property of another may be used in the course of committing the
>         offense.

18 U.S.C. § 924(c)(3).  Subsection (A) is commonly referred to as the "force clause," whereas

subsection (B) is commonly referred to as the "residual clause."  *Davis* struck down the residual

clause as unconstitutional, meaning that the defendant's convictions on Counts 1, 7, and 8

remain valid only if they rest on valid force-clause predicates.[5]

In his briefing, the defendant argues that he is entitled to judgment of acquittal on Counts 1, 7, and 8 by virtue of two propositions. First, he claims that none of the nine possible predicate offenses on which the jury was instructed qualify as force-clause crimes. Second, he argues that even if one or more predicates *did qualify* as a force-clause crime, "the lack of a special verdict makes it impossible to know whether those particular offenses were the basis for the jury's decision" such that the Court should still enter judgments of acquittal. (ECF No. 433 at 8.)

The defendant's proffered approach conflates two different procedural mechanisms with radically different remedies. In a Rule 29 motion for judgment of acquittal, the only question is whether "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Defendants asserting insufficiency as a ground for acquittal "must overcome a heavy burden," as such findings "must 'be confined to cases where the prosecution's failure is clear.'" *United States v. Edlind*, 887 F.3d 166, 172 (4th Cir. 2018) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)). A trial court may only uphold the verdict if it is supported by substantial evidence when the evidence is viewed in the light most favorable to the government. *United States v. Burgos*, 94 F.3d 849, 862–63 (4th Cir. 1996). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010). In assessing sufficiency, "the government is entitled to all favorable reasonable

---

[5] Because this case remains on direct appeal (or, perhaps more accurately, is on limited remand from the direct appeal for reconsideration of post-trial Rule 29 motions), *Davis* applies retroactively. *See United States v. Mathur*, 685 F.3d 396, 402 (4th Cir. 2012) (citing *Davis v. United States*, 564 U.S. 229, 243 (2011)).

inferences from the evidence, notwithstanding that other reasonable inferences may be drawn." *United States v. Jaensch*, 678 F. Supp. 2d 421, 426–27 (E.D. Va. 2010); *accord United States v. Penniegraft*, 641 F.3d 566, 572 (4th Cir. 2011) ("If there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government, the court must affirm." (internal quotation marks omitted)).

The government agrees with the defendant to this extent: if the Court were to conclude that *none* of the nine possible predicates supporting the three challenged counts were force-clause crimes, then it would be appropriate to enter judgments of acquittal on those charges.[6] But the government disagrees with the defendant about what should happen if the Court were to conclude that at least one of the predicates *is* a valid force-clause crime. Contrary to the defendant, the correct next step would be for the Court to conduct a traditional sufficiency analysis to determine whether there is substantial evidence in the record from which the jury could have concluded that the defendant was liable for that predicate. At this stage, where the defendant has sought only relief under Rule 29, nothing more is required.

When the defendant alludes to the problem of indeterminacy—*i.e.*, the difficulty of determining *which* predicates the jury relied on if some predicates are valid and some are not— he is not describing a problem with the sufficiency of the evidence. *See Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) ("A reviewing court's limited determination on sufficiency review … does not rest on how the jury was instructed."). Instead, his claim properly turns on whether the Court erroneously instructed the jury that certain offenses are force-clause crimes

---

[6] The government could, of course, appeal such an order, given that it would be entered following the jury's across-the-board guilty verdicts and a guilty verdict can be reinstated without offending principles of double jeopardy. *See United States v. Terry*, 257 F.3d 366, 372 (4th Cir. 2001).

when they are not (a problem further compounded by the absence of a special verdict form). Under existing doctrine, the remedy for such a claim is not acquittal.

First, a defendant can file a motion under Rule 33 seeking a new trial based on erroneous jury instructions. *See* Fed. R. Crim. P. 33(a) (stating that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires"); *see also United States v. Serrano*, 856 F.3d 210, 212 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 975 (2018) (describing a case in which the district court granted a Rule 33 motion for a new trial after concluding that its jury instructions were erroneous). In any event, no such motion has been filed here.[7]

Alternatively, the defendant could return to the Fourth Circuit on direct appeal not having raised his claim of instructional error in the district court. The Fourth Circuit would then have to determine, on plain-error review, whether the "indeterminacy problem" was harmless or, alternatively, whether it was necessary to remand the case back to this Court for a new trial on Counts 1, 7, and 8.[8]

The Fourth Circuit's opinion in *United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012), *as amended* (Mar. 29, 2012), is a helpful touchstone. The Fourth Circuit there confronted a situation where the jury had been instructed under two different fraud theories, one that was impermissible following *Skilling v. United States*, 561 U.S. 358 (2010), and one that remained valid. Contrary to the defendant's argument, the Fourth Circuit did not simply vacate the convictions affected by this ambiguity. To be sure, the Fourth Circuit recognized that, under

---

[7] The grant of a motion for a new trial would be cross-appealable by the government under 18 U.S.C. § 3731, which permits the appeal of an order "granting a new trial after verdict or judgment."

[8] The government does not make any representations about whether or not it would elect to retry the defendant on Counts 1, 7, and 8 should such an eventuality come to pass.

*Yates v. United States*, 354 U.S. 298 (1957), "when a general verdict on a single criminal charge rests on alternative theories, one valid and the other invalid, the verdict must be set aside if it is 'impossible to tell which ground the jury selected.'" *Jefferson*, 674 F.3d at 361 (quoting *Yates*, 354 U.S. at 312). Even so, the Court stated that "a *Yates* alternative-theory error is subject to ordinary harmlessness review, and the relevant appellate inquiry is whether the error was harmless beyond a reasonable doubt." *Id.* Thus, *Jefferson* explained that "a reviewing court is not entitled to reverse a conviction that could rest on either a valid or invalid legal theory if the court can conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

The Fourth Circuit's approach in *Jefferson* also comports with its reasoning in another case, *United States v. Ford*, 703 F.3d 708 (4th Cir. 2013). *Ford* addressed the correct result when a change in the law renders a conviction invalid during the pendency of a direct appeal. (More specifically, *Ford* involved the effect of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), on whether certain North Carolina offenses qualified as predicates for purposes of 18 U.S.C. § 922(g)(1).) *Ford* adhered to precedent holding "that when a conviction is reversed because of a post-trial change in law, a second trial is permitted." *Id.* at 710. *Ford* also characterized the applicable doctrine as standing for the proposition "that where a reviewing court determines that the evidence presented at trial has been rendered insufficient only by a post-trial change in law, double jeopardy concerns do not preclude the government from retrying the defendant." *Id.* at 711. The Supreme Court's invalidation of § 924(c)(3)(B) during the pendency of the appeal here is directly analogous to the scenario confronting the Fourth Circuit in *Ford*.

Both *Jefferson* and *Ford* are consistent with how other circuits have grappled with the

problem of indeterminate predicate offenses. In *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015), for example, a jury convicted the defendant of aggravated identity theft based on two predicate offenses, an *invalid* one arising from the Computer Fraud and Abuse Act, and an *valid* one arising from a California statute. The Ninth Circuit explained that the identity theft conviction could be sustained "if it was not open to reasonable doubt that a reasonable jury would have convicted" the defendant based on the valid predicate. *Id.* at 788 (quoting *United States v. Pelisamen*, 641 F.3d 399, 406 (9th Cir. 2011)). The Ninth Circuit also pointed to *Johnson v. United States*, 520 U.S. 461 (1997), where the Supreme Court declined to vacate a conviction despite a jury charge that lacked a required materiality instruction because "the evidence supporting materiality was 'overwhelming.'" *Id.* at 470.

The Third Circuit confronted a similar problem in *United States v. John-Baptiste*, 747 F.3d 186 (3d Cir. 2014). The jury there convicted the defendant of a RICO conspiracy based on an indictment that alleged twelve predicate offenses. "The jury did not specify, nor was it asked to specify, which of the predicate acts it relied upon to convict on the RICO conspiracy charge." *Id.* at 207. After the Third Circuit invalidated four of the twelve predicates, however, the question arose whether the conviction on the RICO conspiracy count could stand. In addressing that question, the Third Circuit stated that "[i]t is well established that if a jury convicts the defendant on two or more of the predicate acts constituting a RICO violation, the conviction on the RICO count itself will withstand a challenge even if the jury acquitted the defendant on several counts charging other predicate acts," provided "there [was] sufficient evidence to prove that the defendant committed two or more predicate acts." *Id.* at 207–08.

In short, the defendant is not entitled to judgments of acquittal if *Davis* invalidated one or more (but not all) of the nine predicate offenses on which the jury was instructed. Instead, in the

government's view, there are now two questions properly before the Court. First, was at least one of the nine predicate offenses a valid force-clause crime? And second, was the evidence sufficient, drawing all inferences in the government's favor, for the jury to have concluded that the defendant was liable for that predicate?

Because the answer to both of those questions is "yes," no further relief is necessary.

## II. Count 1 Rests on Multiple Force-Clause Predicates

To begin, the government does not assert that any of the nine predicates that involved conspiracy offenses alone are valid force-clause crimes. *See United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (en banc) (holding that conspiracy to commit Hobbs Act robbery was not a force-clause crime). This leaves the following universe of predicates:

A. Levying war against the United States and conspiring to do so, in violation of Title 18, United States Code, sections 2381 and 2384;

B. Attempting and conspiring to supply services to the Taliban, in violation of Title 50, United States Code, section 1705;

C. Beginning, providing for, preparing a means for, and taking part in military expeditions and enterprises to be carried on from the United States against the territory and dominion of foreign states, districts, and peoples with whom the United States was at peace—and conspiring to do so—in violation of Title 18, United States Code, sections 371 and 960;

D. Enlisting and entering oneself or another to go beyond the jurisdiction of the United States with intent to be enlisted and entered in the service of any foreign prince, state, colony, district, and people as a soldier—and conspiring to do so—in violation of Title 18, United States Code, sections 371 and 959;

G. Attempting and conspiring to provide material support and resources, knowing or intending that they are to be used in preparation for or in carrying out a violation of section 956 of Title 18, United States Code, in violation of Title 18, United States Code, section 2339A;

H. Attempting and conspiring to provide material support and resources to Al-Qaeda, in violation of Title 18, United States Code, section 2339B; and

I.       Enlisting and engaging with intent to serve in armed hostility against the United States—and conspiring to do so—in violation of Title 18, United States Code, sections 371 and 2390.

In the government's view, Predicate C (contravening the Neutrality Act, in violation of 18 U.S.C. § 960), Predicate A (treason, in violation of 18 U.S.C. § 2381), and Predicate I (enlisting and engaging with intent to serve in armed hostility against the United States, in violation of 18 U.S.C. § 2390) remain valid force-clause crimes even after *Davis*.

### A.      A Violation of the Neutrality Act Is a Force-Clause Crime.

To begin, a violation of the Neutrality Act is a force-clause crime. Section 960 of Title 18 states:

> Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be [guilty of a crime].

The jury convicted the defendant on Count 6 of the indictment, which alleged that he induced others to conspire to violate this statute. When instructing the jury on Count 6, the Court did not elaborate on its meaning beyond quoting the statutory text. (Trial Tr. 2326–28.)

As an initial proposition, a "military or naval expedition or enterprise to be carried on … *against the territory or dominion*" of another state necessarily involves the use of force. So, too, do the various means of violating the statute. A person who "begins," "sets on foot," or "takes part in" a military expedition is, by definition, using force or threatening to use force against the object of the expedition.

The analysis with respect to the other statutory prongs is different. The defendant has argued, for example, that "furnishing the money for" a military expedition does not involve the use of force. (ECF No. 433-1 at 3.) He would presumably make the same argument about

"providing or preparing a means for" a military expedition. But someone who engages in such conduct is, by definition, aiding and abetting a military operation—and under federal principles of accomplice liability, one who aids and abets an offense "is punishable as a principal." 18 U.S.C. § 2(a). Accordingly, one who "prepares a means" for a military expedition is *himself guilty* of participating in that expedition. *See Gordillo Portocarrero v. United States*, No. 110-cr-661 (LMB), 2019 WL 181119, at *8 (E.D. Va. Jan. 11, 2019) (explaining that aiding and abetting is not a "separate offense but rather a theory of liability," such that a defendant is "unable to insulate himself from, and remains exposed to, the same criminal liability for having aided and abetted [a crime of violence] as" one who completes it).

In short, one cannot violate § 960 without either participating in a military expedition or aiding and abetting one. For this reason, a violation of the statute qualifies as a force-clause crime under § 924(c)(3)(A).

**B.      Levying War Against the United States Is a Force-Clause Crime.**

Levying war against the United States, in violation of 18 U.S.C. § 2381, is a force-clause crime. More specifically, 18 U.S.C. § 2381 states:

> Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States.

18 U.S.C. § 2381. Section 2381 thus codifies the Constitution's definition of treason. *See* U.S. Const., Art. III, § 3; *see also United States v. Rahman*, 189 F.3d 88, 111–14 (2d Cir. 1999) (summarizing much of the historical background).

The defendant has already waived any argument that § 2381 is not a force-clause crime, effectively making this conclusion the law of the case. Count 2 of the superseding indictment

charged the defendant with soliciting others to commit a crime of violence, thereby violating

18 U.S.C. § 373.  (The indictment charged that the particular crime of violence that the defendant

solicited was a violation of § 2381.)  But—crucially—§ 373 *does not have a residual clause*.

Instead, it covers *only* force-clause offenses:

> Whoever, with intent that another person engage in conduct constituting a felony *that has as an element the use, attempted use, or threatened use of physical force* against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be [guilty of an offense against the United States].

18 U.S.C. § 373(a).

The defendant never moved to dismiss Count 2 on the theory that a violation of § 2381

does not have "as an element the use, attempted use, or threatened use of physical force."

Moreover, the then-extant version of Federal Rule of Criminal Procedure 12(b)(3) "require[d]

the defendant to raise before trial 'a motion alleging a defect in the indictment or information,'

and Rule 12(e) provide[d] that, in the absence of 'good cause,' a defendant 'waive[d]' the

objection or defense if not timely raised."  *United States v. Burroughs*, 161 F. App'x 13, 14

(D.C. Cir. 2005).  The defendant has never made a good-cause showing regarding the

classification of § 2381 as a force-clause crime.  Nor has he sought to enlarge the remand from

the Fourth Circuit to challenge Count 2.  In short, the time to challenge the classification of

§ 2381 as a force-clause crime in this Court has passed.

Moreover, even if the Court were to examine the classification of § 2381 as a force-

clause crime on the merits, it has as an element the use or attempted use of force.  A defendant

can violate the statute in one of two ways:  by "levying war" against the United States or by

"adher[ing] to their enemies, giving them aid and comfort within the United States or

elsewhere."  "Levying war" clearly involves the use of force.  And while the defendant asserts

that "giving [enemies] aid and comfort" does not involve the use of force (*see* ECF No. 433-1 at 1), there are two reasons that the defendant's reading of the statute does not undermine the government's argument.

First, the best reading of the jury charge is that the Court instructed the jury that it could only convict the defendant for soliciting treason in relation to "levying war," not providing "aid and comfort." The Court did not explain the elements of § 2381 when it listed the nine possible predicate offenses that could support Counts 1, 7, 8, 9 and 10. Instead, it summarized the elements of § 2381 when it instructed the jury on Count 2. Here are the relevant instructions:

> Now, Count 2, which is in ordinary English described as the offense of solicitation of others **to levy war** against the United States, involves section 373 and section 2381 of the United States Criminal Code, which is Title 18.
>
> Section 373 provides in part that whoever, with intent that another person engage in conduct constituting a felony that has an element -- that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be [guilty of a crime].
>
> And section 2381 provides: Whoever owing allegiance to the United States **levies war** against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty [of a crime].
>
> The elements of the offense of soliciting others to levy war, in order to convict the defendant of the offense charged in Count 2, you must find beyond a reasonable doubt that the defendant first solicited, commanded, induced, or otherwise tried to persuade another person **to levy war** against the United States; and
>
> Two, that the defendant's actions strongly indicated that he intended the other person or persons to **levy war** against the United States, **that has as an element the use, attempted use, or threatened use of physical force** against the person or property of another in violation of the laws of the United States.

(Trial Tr. 2321–22 (emphasis added).)

The Court thus quoted the "aid and comfort" language only when it summarized the text

of the statute. By contrast, when the Court explained the elements of the crime charged in Count 2, it said that the government had an obligation to prove both solicitation "to levy war against the United States" (element one) and that "the defendant's actions strongly indicated that he intended the other person or persons to levy war against the United States" (element two). The Court thus told the jury that it *could only* convict the defendant on Count 2 if it found corroboration of his intent to induce others to "levy war." Likewise, when the Court described a violation of § 2381 as a possible predicate, it used only the "levying war" language. (Trial Tr. 2318.) Having been instructed this way, the jury simply could not have found that the defendant was liable for a violation of § 2381 based solely on soliciting others to provide "aid and comfort" to an enemy of the United States.

In any event, the statute is divisible. In order "[t]o determine whether the statute is 'divisible' [courts] must evaluate whether it 'list[s] elements in the alternative, and thereby define[s] multiple crimes.'" *Guevara-Solorzano v. Sessions*, 891 F.3d 125, 131 (4th Cir. 2018) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). The government is not aware of any case that directly addresses whether the two prongs of § 2381 constitute separate offenses. The practical reality, however, suggests that § 2381 is divisible into its two halves. As Justice Breyer explained in his dissent in *Mathis*, the real-world consequence of the means/elements distinction is that a jury must agree unanimously as to proof of every element, but need not agree as to various means of committing the crime. *See Mathis*, 136 S. Ct. at 2261 (Breyer, J., dissenting).

If it were correct that "levying war" and providing "aid and comfort" are simply different means of violating § 2381, then a jury could deadlock 6-6, with half believing that a defendant levied war against the United States and half believing that a defendant gave aid and comfort to

its enemies, and such a conviction would still be proper. But this possibility seems out-of-step with lived experience. These two concepts are so distinct that the most coherent way of conceptualizing them is as different offenses that require jury unanimity in order to sustain a conviction under the statute. This conception of treason as encompassing two different types of offense conduct also appears to comport with the historical understanding. *See United States v. Greiner*, 26 F. Cas. 36, 38 (E.D. Pa. 1861) (explaining that "the *two species of treason* mentioned in the constitution are described in it in language borrowed from that of the English statute of treasons" (emphasis added)). What's more, the defendant has not proffered any case stating that the prongs of § 2381 are means rather than elements. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (stating that, when applying the categorical approach, courts consider "realistic probabilities," not "theoretical" ones).

For these reasons, even if the Court were to conclude that the aid-and-comfort prong of § 2381 is not a force-clause offense, the statute is divisible and a conspiracy to violate § 2381's "levying war" prong can support the conviction on Count 1.

### C. Enlisting with Intent to Serve in Armed Hostility Against the United States Is a Force-Clause Crime.

A violation of 18 U.S.C. § 2390 is also a force-clause crime. An offense is a crime of violence if it "has as an element the use, *attempted use*, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A) (emphasis added). Federal law defines an attempt as "(1) culpable intent to commit the crime charged and (2) a substantial step towards completion of the crime." *United States v. Dozier*, 848 F.3d 180, 186 (4th Cir. 2017); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). A substantial step is a "direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." *Dozier*, 848 F.3d at 186. Applying this definition, an attempted use of force

is one in which a defendant specifically intends to use violent force and takes a substantial step toward completing that use. Where the government can demonstrate that a conviction categorically entails both components, that conviction is a crime of violence under § 924(c).

A violation of § 2390 meets this definition. The statute makes it unlawful "[t]o enlist[] or … engage[] within the United States or in any place subject to the jurisdiction thereof, with intent to serve in armed hostility against the United States." 18 U.S.C. § 2390. Under a plain-meaning approach, "armed hostilities" necessarily involve the use or threatened use of force. Furthermore, a defendant can only violate the statute with the specific intent "to serve in armed hostility against the United States." The statute therefore defines a crime that necessarily involves an attempted use of force—*i.e.*, the specific intent to engage in "armed hostilities," plus a substantial step in furtherance of that goal (enlisting or engaging for that purpose).

It is no barrier to this conclusion that the substantial step is not forceful or violent. Several circuits have already recognized that an attempted use of force requires no such activity. *See, e.g.*, *United States v. St. Hubert*, 909 F.3d 335, 353 (11th Cir. 2018); *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017), *cert. denied*, 139 S. Ct. 352 (2018). This Court's jurisprudence is in accord. *See Gordillo Portocarrero*, 2019 WL 181119, at *7 (stating that the "attempted use" of force is indistinguishable from "the use" of force).

Section 924(c)'s force clause treats the "use" and the "attempted use" of force as distinct concepts. § 924(e). Importing a requirement of actual force into "attempted use" would collapse that category into "use," contravening basic interpretive canons. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). That canon's strength only intensifies "when the term occupies so pivotal a place in the statutory

scheme" as the definitional force clause does here.  *E.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

For these reasons, a violation of § 2390, like a violation of §§ 960 and 2381, is also a force-clause crime.

**D.      Substantial Evidence at Trial Proved that the Defendant Induced Others To Conspire to Violate §§ 960, 2381, and 2390.**

The next question becomes whether the evidence at trial was sufficient under Rule 29 for the jury to have concluded that the defendant induced others to conspire to violate §§ 960, 2381, and 2390.  It was.  To begin, the jury in fact convicted the defendant of inducing others to conspire to violate these provisions, including by convicting on Count 3 (inducing a conspiracy to levy war against the United States), Count 5 (inducing others to aid the Taliban, in violation of 18 U.S.C. §§ 2 and 1705), and Count 6 (inducing a conspiracy to violate the Neutrality Act).  The jury's findings of guilt on these counts makes it clear that the defendant induced others to violate §§ 960, 2381, and 2390.[9]

The Court also provided this summary of the evidence regarding the defendant in a related case:

> Kwon testified that after September 11 he organized a meeting at the urging of Al–Timimi to address how Muslims could protect themselves, and invited only those brothers who had participated in paintball training and owned weapons.  Attendees at this September 16, 2001 meeting included Kwon, Al–Timimi, Royer, Aatique, Hasan, Caliph Basha, Gharbieh, Khan, and Abdur–Raheem…

_____

[9] The fact that the Court instructed the jury that either violating these provisions *or conspiring to do so* could serve as a valid predicate is not fatal to the government's argument. The Court instructed the jury that even where its instructions used conjunctive language, "[i]t was sufficient if the government prove[d] beyond a reasonable doubt that the defendant did any of the charged alternative acts."  (Trial Tr. 2305.)  Thus, for purposes of Rule 29, the only question is whether substantial evidence supports the conclusion that the jury could have found a substantive violation of §§ 960, 2381, and 2390.

*    *    *

At the beginning of the meeting, Al–Timimi told the attendees that the gathering was an "amana," meaning that it was a trust that should be kept secret. The secrecy was underscored by having the window blinds drawn and the phones disconnected from the wall…

At the meeting, Al–Timimi stated that the September 11 attacks were justified and that the end of time battle had begun. He said that America was at war with Islam, and that the attendees should leave the United States. The preferred option was to heed the call of Mullah Omar, leader of the Taliban, to participate in the defense of Muslims in Afghanistan and fight against United States troops that were expected to invade in pursuit of Al–Qaeda. As support for this proposition, Al–Timimi cited "fatwas," or religious rulings, that called on Muslims to defend Afghanistan against impending American military action. According to Hasan and Kwon, Khan asked to review the fatwa, and Al–Timimi gave it to him to read, but advised Khan to burn it after he had read it. The other option presented to the attendees was to make "hijrah," that is, to relocate their families to a Muslim country. Royer said that anyone who wanted to fight in Afghanistan would first need to participate in military training, that the LET camps in Pakistan were a good place to receive that training, and that Royer could facilitate their entry to the LET camps.

After the meeting, Khan, Kwon, Aatique, and Hasan agreed to go to LET for training. Aatique, Hasan, and Kwon admitted that each of them had the intent to receive training that would allow him to proceed to Afghanistan and fight on behalf of the Taliban and Mullah Omar against United States troops.

*United States v. Khan*, 309 F. Supp. 2d 789, 809–10 (E.D. Va. 2004). The evidence in this proceeding was substantially similar.

In addition, by urging others to fight with the Taliban against the United States, the defendant clearly induced others to conspire to violate § 2381. Indeed, the jury concluded as much by convicting the defendant on Count 2. With respect to violating § 2390, the Court has concluded in related proceeding that at "the September 16, 2001 meeting at Kwon's house, Khan agreed with Royer, Kwon, Aatique, and Hasan to enlist or engage in armed hostility, and that by joining together within the United States to plan a trip abroad, the four conspirators enlisted to serve against the United States." *Id.* at 819. The government has also compiled a list of citations

providing substantial evidence for the existence of force-clause crimes in the record. That compilation is attached hereto as **Exhibit 3**.

Because the evidence was sufficient for the jury to have concluded that the defendant was liable for inducing others to conspire to violate §§ 960, 2381, and 2390, and because these offenses are valid force-clause crimes, the defendant's motion for judgment of acquittal on Count 1 should be denied.

III. **Counts 7 and 8 Also Rest on Valid Force-Clause Predicates Supported by Substantial Evidence.**

Unlike Count 1, which involved a conspiracy to commit force-clause crimes, Counts 7 and 8 rest on the completed acts of two of the defendant's followers, Yong Kwon and Khwaja Hasan. The superseding indictment alleged that Kwon and Hasan each used firearms while at training camps run by Lashkar-e-Taiba, also known as "LET," in October and November of 2001. (ECF No. 47 at 2, 15.) By finding the defendant guilty on Counts 7 and 8, the jury clearly determined that Kwon and Hasan used firearms at the camps after having been induced to do so by the defendant. The key question is whether Kwon and Hasan did so in relation to a valid force-clause crime.

The evidence at trial indicates that they did. (*See* Gov't Ex 3.) The entire point of their visiting the LET camps to receive training was to then travel to Afghanistan to fight alongside the Taliban. In such circumstances, their use of firearms was in furtherance of their desire to serve in armed hostilities against the United States in violation of 18 U.S.C. § 2390. Because that statute is a force-clause crime, the defendant's convictions on Counts 7 and 8 should be

sustained.[10]

**IV.    Alternatively, if the Court Grants the Defendants' Motions, No Additional Relief Beyond an Amendment to the Judgment Is Necessary.**

The Court has also directed the government to state its opinion as to any remedy in the event of an acquittal on Counts 1, 7, or 8.  (ECF No. 453.)  Here, an acquittal on these counts requires nothing more than an amendment to the judgment.  The defendant's convictions on Counts 9 and 10 of the superseding indictment remain valid, leaving the defendant with a total sentence of 481 months' imprisonment on the remaining counts.  Nor has the defendant in any way challenged the validity of Counts 9 and 10.[11]

This is not, therefore, a case where granting the defendant's motions would result in his release from custody.

---

[10] The government does not argue that a violation of § 2381 can serve as a predicate offense for Counts 7 and 8.  Kwon and Hasan attempted to reach Afghanistan through Pakistan, but after training at LET camps were unable to cross the border.  They thus *attempted* to levy war against the United States by fighting alongside the Taliban—but § 2381 does not have an attempt prong. For that reason, government does not rely on it as a predicate for Counts 7 and 8.

[11] Even if the Court were to enter a judgment of acquittal on Count 1, Counts 9 and 10 would remain valid.  A violation of § 844(h) requires a predicate offense that is a federal felony. Here, although the superseding indictment identified Count 1 as a possible predicate offense for Counts 9 and 10, the Court did not so instruct the jury.  Instead, it instructed the jury that the group of nine offenses which could serve as predicate crimes of violence (for Counts 1, 7, and 8) was the same set of offenses that could serve as predicate federal felonies (for Counts 9 and 10). Because there is no doubt that all nine of the charged offenses remain felonies, Counts 9 and 10 are not in peril.

**Conclusion**

For the foregoing reasons, the Court should deny the defendant's motions for judgment of acquittal on Counts 1, 7, and 8.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____
Daniel T. Young
Gordon D. Kromberg
John T. Gibbs
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:   daniel.young@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on July 25, 2019, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.

By: _____ /s/ _____

Daniel T. Young
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office:   (757) 441-6331
Fax:      (757) 441-6689
E-mail:   daniel.young@usdoj.gov