**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

_____

UNITED STATES OF AMERICA,      )
                                         )
      *Plaintiff*,             )
                                         )
v.                                   )     Case No. 1:04-cr-385 (LMB)
                                       )
ALI AL-TIMIMI,               )
                                       )
      *Defendant*.         )
_____)

**AL-TIMIMI'S REPLY TO GOVERNMENT'S SUPPLEMENTAL MEMORANDUM ON
*UNITED STATES v. DAVIS***

      Dr. Ali Al-Timimi's convictions under Counts 1, 7, and 8 all depend on the residual clause that the Supreme Court has invalidated in *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). Although the government attempts three final arguments for sustaining certain predicates under the force clause, all are foreclosed by the categorical approach that governs that clause's interpretation, and in any event, none are supported by the record. As such, his convictions are unconstitutional, and he respectfully requests that the Court grant his motions and adjust his sentence as described in the attached proposed order.

      In addition, Al-Timimi is also prepared to show that the invalidation of the Count 1 conspiracy taints the *Pinkerton* theory that Counts 9 and 10 depend upon. Accordingly, he respectfully seeks leave to file and brief a motion for a new trial in the event of such acquittal as described in the separate motion he files today at Dkt. No. 460.

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... iii

BACKGROUND ................................................................................................... 1

ARGUMENT ........................................................................................................ 2

I.   Because *Davis* has invalidated § 924(c)'s residual clause, only force-clause offenses may now qualify as crimes of violence under the act ........................................... 2

II.  None of the government's three asserted predicates satisfy the force clause ..................... 2

    A.   All three predicates incorporate the crime of conspiracy, which the government concedes is not a force-clause offense ................................................. 3

    B.   In any event, none qualify as force-clause offenses even without reference to conspiracy. ........................................................................................ 6

        1.   The Neutrality Act is not a force-clause offense ........................................ 6

        2.   Treason is not a force-clause offense. ...................................................... 7

            a.   The treason statute can be violated without the use of force ........................................................................... 7

            b.   Defendant has not waived his right to challenge the government's attempt to premise its §§ 924(c) and (o) convictions on the treason statute .................................... 8

            c.   The categorical approach does not permit the government to exclude the "aid and comfort" prong from the treason statute ................................................................... 10

            d.   The crime of treason is not "divisible" into two different crimes ................................................................... 11

        3.   Section 2390 is not a force-clause offense ............................................... 13

III. The government cannot sustain Counts 1, 7, or 8 on indeterminacy grounds ................... 15

    A.   Because the government can no longer point to any valid predicate after *Davis*, there is no indeterminacy issue in this case ........................................ 15

B.      In any event, the Supreme Court's rule in *Yates* requires a conviction
        to be set aside where, as here, verdict indeterminacy results from a
        constitutional or statutory defect..........................................................................15

        1.      Any *Yates* error in this case would not be harmless ..................................17

                a.      The record does not support the use of the Section 2390
                        enlistment statute as a force-clause predicate for
                        Counts 1, 7, or 8 ..............................................................................17

                b.      The record does not support the use of the Neutrality Act
                        as a force-clause predicate for Counts 1, 7, or 8 ..........................19

                c.      The record does not support the use of the treason statute
                        as a force-clause predicate for Count 1 .........................................20

        2.      Should this Court sustain a predicate in a manner that results in
                an indeterminate verdict, Al-Timimi requests leave to seek a
                new trial as alternative relief .......................................................................21

IV.     Remedy ................................................................................................................21

CONCLUSION ............................................................................................................................24

## TABLE OF AUTHORITIES

### CASES

*BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*,
    881 F.3d 293 (4th Cir. 2018) .................................................................. 19

*Chapman v. United States*,
    326 F. Supp. 3d 228 (E.D. Va. 2018) .................................................... 18

*Class v. United States*,
    138 S. Ct. 798 (2018) ............................................................................. 9

*Descamps v. United States*,
    570 U.S. 254 (2013) ............................................................................. 11

*Ex parte Bollman*,
    8 U.S. (4 Cranch) 75 (1807) ..................................................... 8, 13, 21

*Griffin v. United States*,
    502 U.S. 46 (1991) .............................................................................. 16

*Hedgpeth v. Pulido*,
    555 U.S. 57 (2008) .............................................................................. 16

*Henderson v. United States*,
    568 U.S. 266 (2013) ............................................................................... 9

*Johnson v. United States*,
    520 U.S. 461 (1997) ............................................................................... 9

*Johnson v. United States*,
    559 U.S. 133 (2010) ............................................................................. 11

*Khan v. United States*,
    330 F. Supp. 3d 1076 (E.D. Va. 2018) ................................................ 18

*Mathis v. United States*,
    136 S. Ct. 2243 (2016) .................................................................. 11, 12

*Moncrieffe v. Holder*,
    133 S. Ct. 1678 (2011) ........................................................................ 11

*Neder v. United States*,
    527 U.S. 1 (1999) ................................................................................ 17

*Pinkerton v. United States*,
    328 U.S. 640 (1946) ............................................................................................ 5, 23

*Rosemond v. United States*,
    572 U.S. 65 (2014) ................................................................................................... 19

*Royer v. United States*,
    324 F. Supp. 3d 719 (E.D. Va. 2018) .................................................................... 18

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) .............................................................................................. 9

*United States v. David*,
    83 F.3d 638 (4th Cir. 1996) ....................................................................................... 9

*United States v. Davis*,
    139 S. Ct. 2319 (2019) .......................................................................................... 1, 2

*United States v. Dozier*,
    848 F.3d 180 (4th Cir. 2017) ................................................................................... 13

*United States v. Khan*,
    309 F. Supp. 2d 789 (E.D. Va. 2004) ................................................... 4, 14, 18, 20

*United States v. Khan*,
    461 F.3d 477 (4th Cir. 2006) ............................................................................ 4, 14

*United States v. McFadden*,
    823 F.3d 217 (4th Cir. 2016) ................................................................................... 17

*United States v. Resendiz-Ponce*,
    549 U.S. 102 (2007) ................................................................................................. 14

*United States v. Simms*,
    914 F.3d 229 (4th Cir. 2019) (en banc) .............................................................. 3, 14

*United States v. St. Hubert*,
    909 F.3d 335 (11th Cir. 2018) ................................................................................... 9

*United States v. Terrell*,
    731 F. Supp. 473 (S.D. Fla. 1989) ............................................................................ 7

*Yates v. United States*,
    354 U.S. 298 (1957) ................................................................................................. 16

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. CONST., ART. III, § 3 ................................................................................................ 7

18 U.S.C. § 371 ..................................................................................................... 3, 4, 5

18 U.S.C. § 373 ........................................................................................................ 8, 9

18 U.S.C. § 844(h)(2) ................................................................................................. 23

18 U.S.C. § 924(c) ............................................................................................... passim

18 U.S.C. § 924(o) ............................................................................................... passim

18 U.S.C. § 960 ................................................................................................... passim

18 U.S.C. § 2381 ............................................................................................. 2, 20, 21

18 U.S.C. § 2384 ..................................................................................................... 2, 4, 5

18 U.S.C. § 2390 ............................................................................................. 3, 13, 17

## OTHER AUTHORITIES

Fed. R. Crim. P. 12(b)(3) ........................................................................................ 8, 10

Fed. R. Crim. P. 52(b) ................................................................................................. 9

Model Penal Code § 5.01 ........................................................................................... 14

U.S. Dept. of Justice, USAM Criminal Resource Manual § 2483 ................................. 5

## BACKGROUND

1.        Before this Court are Al-Timimi's pending motions for acquittal on Count 1, 7, and 8.[1] On June 24, the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019) invalidated the "residual clause" portion of the "crime of violence" definition that underlies Al-Timimi's convictions on all three counts. The following day, this Court ordered the government to show cause as to why Al-Timimi's motions should not be granted in light of the Supreme Court's decision. Dkt. No. 453.

2.        The present dispute concerns *Davis*' impact on Jury Instruction No. 44, which provided the jury with nine predicates—labeled A through I—that it was permitted to select from at trial. *See* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2317-20. The defense's position, as argued in Al-Timimi's opening brief, is that all nine depend on the residual clause because none require the use, threatened use, or attempted use of force as an element. *See* Dkt. No. 433 at Ex. A (statutory addendum comparing each predicate against § 924(c)(3)). The government's opposition brief had taken the position that the crime of conspiracy could be sustained under the force clause based on an argument that conspiracy "portends"—and thus threatens—the use of force. *See* Dkt. No. 437 at 18-19; *see also* Dkt. No. 442 at 10-11 (response to 2018 *Dimaya* show-cause order).

3.        The government has now filed a response to this Court's show-cause order. Dkt. No. 455 ("Govt. Br."); Dkt. No. 456 (addendum). The government concedes that conspiracy is no longer a valid predicate, *see* Govt. Br. at 12, but instead asserts three others related to the Neutrality Act, the treason statute, and the enlistment statute of § 2390. Govt. Br. at 13-20. This

---

[1]        A complete procedural background to each motion can be found in Al-Timimi's opening briefs. *See* Dkt. No. 433 at 4-6 (Counts 7 and 8) and Dkt. No. 446 at 1-3 (Count 1).

reply follows.

**ARGUMENT**

**I.**     **Because *Davis* has invalidated § 924(c)'s residual clause, only force-clause offenses may now qualify as crime of violence under the act.**

The parties have no disagreement concerning *Davis*'s legal impact on 18 U.S.C. §§ 924(c) and (o)—the statutes on which Counts 1, 7, and 8 are based. Both statutes define the term "crime of violence" to be "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection A is commonly known as the "force clause" or "elements clause," whereas Subsection B comprises the "residual clause." *See*, *e.g.*, *Davis*, 139 S. Ct. at 2324. *Davis* invalidated the residual clause as unconstitutionally vague under the Due Process Clause. *Id*. at 2323-24; 2336; *see also* Govt. Br. at 1. As a result, only force-clause offenses may now qualify as "crimes of violence" under the act.

**II.**     **None of the government's three asserted predicates satisfy the force clause.**

The heart of the government's argument is that three of the predicates enumerated in Jury Instruction 44—Predicate C, Predicate A, and Predicate I—can be sustained as crimes of violence under the force clause instead of the now-invalid residual clause. Govt. Br. at 13. These predicates (each incorporating the crime of conspiracy) were read to the jury as follows:

> A.     Levying war against the United States *and conspiring do so*, in violation of Title 18, United States Code, sections 2381 and 2384; [ . . . ]
>
> C.     Beginning, providing for, preparing a means for, and taking part in military

2

expeditions and enterprises to be carried on from the United States against the territory and dominion of foreign states, districts, and peoples with whom the United States was at peace—*and conspiring to do so*—in violation of Title 18, United States Code, sections 371 and 960; [ . . . ]

I.      Enlisting and engaging with intent to serve in armed hostility against the United States—*and conspiring to do so*—in violation of Title 18, United States Code, sections 371 and 2390.

Trial Tr., April 18, 2005 [Dkt. No. 156] at 2318-19 (emphasis added). As detailed below, however, the government's argument fails. All three predicates relied on § 924(c)(3)'s residual clause and thus none remain viable in light of *Davis*.

### A.      All three predicates incorporate the crime of conspiracy, which the government concedes is not a force-clause offense.

The simplest and most straightforward reason that the government's theory breaks down is that all three predicates could be satisfied by the mere formation of a conspiracy—an offense that the government itself concedes depends on the residual clause. *See* Govt. Br. at 12; *see also United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019) (en banc). Because conspiracy does not require the use, threatened use, or attempted use of force, none are valid force-clause predicates.

Perhaps seeking to avoid this complication, the government's brief does not address it directly, but instead appears to simply conflate the overarching § 924(o) conspiracy charged in Count 1 with the individual conspiracy prongs associated with each predicate.[2] So with respect

---

[2]      Although the government does not address the issue while arguing its three asserted predicates under the force clause, it does mention it later when attempting to support those same predicates with evidence. *See* Govt. Br. at 20, n.9. Notably though, the position it takes is the same as the defense's: that each predicate's use of the word "and" serves to incorporate conspiracy into that predicate by allowing the jury to select from "any of the charged alternative acts." *Id.*; *see also* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2305-06 (jury instruction on conjunctive language). This would appear to concede that each predicate can be satisfied by the mere formation of a conspiracy.

to Predicate C, for example, the government conceptualizes Count 1 *solely* as a § 924(o) conspiracy to violate the Neutrality Act. It ignores the ability of the jury to have predicated the § 924(o) conspiracy on a separate § 371 conspiracy to violate the Neutrality Act—even though § 371 was plainly incorporated into Predicate C as read to the jury.

But the government is wrong to lump these conspiracies together because treating them as separate and distinct is precisely how it obtained the § 924(o) convictions of Seifullah Chapman and Masoud Khan—principals to the same § 924(o) conspiracy that Count 1 charges Al-Timimi with aiding and abetting. *See*, *e.g.*, Dkt. No. 47 at 4, ¶ 2 (superseding indictment naming Khan as a principal to Count 1). Notably, Khan and Chapman were both *acquitted* of charges that they committed direct violations of the Neutrality Act. *See United States v. Khan*, 309 F. Supp. 2d 789, 823-24 (E.D. Va. 2004). Instead, Chapman was convicted of a § 371 *conspiracy* to violate the Neutrality Act, *id*. at 818, and Khan of (among other things) a § 2384 conspiracy to commit treason. *Id*. at 820-21. The government then used these § 371 and § 2384 conspiracies as the predicates for their separate § 924(o) conspiracy conviction. *Id*. at 823.

As a result, Khan and Chapman's conviction for the § 924(o) conspiracy was predicated entirely on *other conspiracy offenses*, as the Fourth Circuit made clear in affirming Khan's conviction on appeal:

> Count Eleven alleged a conspiracy to use firearms in connection with a conspiracy to commit a crime of violence. Because one cannot 'conspire to conspire,' defendants argue, these Counts should be dismissed. We disagree. . . . . [T]he conspiracy to use or possess *a firearm represents a distinct offense with different objectives from the predicate conspiracy to violate the Neutrality Act or provide services to the Taliban*. Therefore, the underlying conspiracies may properly serve as predicates for the overarching conspiracies alleged. More fundamentally, the statutes in question expressly contemplate allowing one conspiracy to serve as the predicate offense for another conspiracy.

*United States v. Khan*, 461 F.3d 477, 492-93 (4th Cir. 2006) (emphasis added) (citations omitted). Although Al-Timimi was tried separately, the doctrinal theory is the same. The

government is in no position to ignore the § 371 and § 2384 conspiracy prongs of Predicates A, C, and I, when these conspiracy prongs were precisely what it relied upon to secure the § 924(o) convictions of the principals.

Moreover, the aggressive use of expansive (and at times unprecedented) theories of inchoate liability was a recurring theme in the government's prosecution of this case. Count 1, for example, did not even charge Al-Timimi with membership in the § 924(o) conspiracy at all, but only with aiding and abetting it. As this Court remarked during argument over jury instructions:

> . . . I think the issue is -- this is a tough case because it's almost a third level of culpability; that is, you've got the underlying offense, an inchoate offense such as conspiracy to do it, then you've got him one step further removed, aiding and abetting or soliciting or procuring the conspiracy. It certainly is a unique set of legal structure.

Trial Tr., April 18, 2015 [Dkt. No. 156] at 2180.[3] The government's use of conspiracies as predicates to other conspiracies further highlights the extent to which it pushed the boundaries of inchoate liability. Count 1 combined with Predicate C, for example, charges Al-Timimi with the crime of (1) aiding and abetting a (2) § 924(o) conspiracy to use firearms in relation to a (3) separate underlying § 371 conspiracy to (4) violate the Neutrality Act of § 960. Stretching the theory further still, the government then used this Count 1 conspiracy to invoke the *Pinkerton* doctrine throughout its post-trial briefs in support of Counts 7-10. *See, e.g.*, Dkt. No. 125 at 37-40 (government's 2005 post-trial brief, basing Counts 7-10 on *Pinkerton*); *see also* Dkt. No. 447 at 5-7. Having aggressively pursued these expansive theories of inchoate liability at trial, the government should not be permitted to retreat from them now.

---

[3]   *See also* U.S. Dept. of Justice, USAM Criminal Resource Manual § 2483, available at http://www.justice.gov/usam/criminal-resource-manual-2483-conspiracy-aid-and-abet ("The concept of aiding and abetting a conspiracy has not been widely adopted. . . . Even in the Seventh Circuit, the concept has been criticized.") (citations omitted).

**B.      In any event, none of the asserted predicates qualify as force-clause offenses even without reference to conspiracy.**

Because each of the government's asserted predicates incorporates the crime of conspiracy, none can serve as valid force-clause offenses and the government's theory fails. But regardless, the predicates cannot satisfy the force clause standing alone either. They are discussed below in the order that the government presents them in its brief.

### 1.      The Neutrality Act is not a force-clause offense.

The government first argues that 18 U.S.C. § 960 (commonly known as the "Neutrality Act") is a force-clause offense. The government is incorrect. Section 960 provides as follows:

> Whoever, within the United States, knowingly begins or sets on foot *or provides or prepares a means for or furnishes the money for*, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 960 (emphasis added). As the defense points out in its opening brief, *see* Dkt. No. 433, Ex. A, this statute can be violated without the use of force—namely, by providing money or preparatory assistance for such an enterprise without actually participating in it. Accordingly, it fails to meet the criteria of 18 U.S.C. § 924(c)(3)(A).

In response, the government suggests that a person who violates § 960 by furnishing money can be viewed as an accomplice who is aiding and abetting a force-clause offense committed by a principal. This too is incorrect. Under the statute's plain text, a person who furnishes money for an enterprise subject to the Neutrality Act is a principal—not an accomplice. And this is undoubtedly by design, as many Neutrality Act enterprises can be expected to be located outside the United States and thus comprised of persons not chargeable as principals under the Act.

6

As an example, an American who, from within the United States, funded a group of guerilla rebels in a friendly country would be in plain violation of the Neutrality Act. But he or she would be guilty as a *principal*, not an accomplice, as the foreign rebels themselves would be outside the purview of § 960.[4] Because this hypothetical defendant would be guilty of violating Section 960 without having used force against the person or property of another, Section 960 is not a force-clause offense.

### 2.     Treason is not a force-clause offense.

#### a.     The treason statute can be violated without the use of force.

The government next argues that treason is a force-clause offense. The crime of treason is the only crime defined in the United States Constitution[5] and is statutorily codified at Section 2381, which provides as follows:

> Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States.

18 U.S.C. § 2381.

As the defense observed in its opening brief, the treason statute is not a force-clause offense because it can be violated without the use, attempted use, or threatened use of force— namely, by giving aid or comfort to an enemy of the United States engaging in any fighting. *See*

---

[4]     *See United States v. Terrell*, 731 F. Supp. 473, 474-77 (S.D. Fla. 1989) (defendants charged with violating Neutrality Act for shipping weapons to Contra rebels in Nicaragua. Indictment was dismissed only on District Court's conclusion that Nicaragua was not a country "at peace" with the United States at the time of the charged act).

[5]     Article III, Section 3 provides that "Treason against the United States, shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort. No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open court."

Dkt. No. 433, Ex. A. Alternatively, under the jury instructions used at trial (which defined "levy war" as "to wage war or to carry on war," Trial Tr., April 18, 2005 [Dkt. No. 156] at 2323),[6] one might also commit treason by "carry[ing] on war" in a non-combat role that does not involve the use of force. *See also Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 126 (1807) ("It is not the intention of the court to say that no individual can be guilty of this crime who has not appeared in arms against his country. On the contrary, if war be actually levied, that is, if a body of men be actually assembled for the purpose of effecting by force a treasonable purpose, *all those who perform any part, however minute, or however remote from the scene of action*, and who are actually leagued in the general conspiracy, *are to be considered as traitors*.") (emphasis added).

Either scenario prevents the treason statute from qualifying as a force-clause offense, and thus ends the inquiry. Although the government responds with several novel arguments to the contrary, all are unavailing. They are discussed in turn.

### b.   Defendant has not waived his right to challenge the government's attempt to premise its §§ 924(c) and (o) convictions on the treason statute

The government's first argument is that the defense should not be permitted to challenge treason as a § 924(c) predicate it all, based on its claim that the defense did not challenge the government's use of treason as a predicate to the force clause of § 373—a separate statute used to charge Count 2. The government then characterizes the defense's Rule 29 motion as a challenge to a procedural defect in the indictment, which it claims Fed. R. Crim. P. 12(b)(3)

---

[6]   The defense objected to this definition at trial, asking instead for an instruction that defined "levying war" as requiring that "a body of men be actually assembled for the purpose of effecting by force a treasonable purpose" under *Bollman*, 8 U.S. (4 Cranch) at 126 ("[T]here must be an actual assembling of men for the treasonable purpose, to constitute a levying of war"). *See* Dkt. No. 96 at 2 (defendant's objections to government's proposed jury instructions); *see also* Trial Tr., April 13, 2005 [Dkt. No. 154] at 1816-18 & April 18, 2005 [Dkt. No. 156] at 2184-88 (argument over levy war instructions); Dkt. No. 118 at 52 (2005 post-trial motion).

required the defense to raise in a pre-trial motion. *See* Govt. Br. at 14-15. The government is incorrect.

As a starting point, §§ 373 and 924(c) are two different statutes; regardless of how the defense may have approached § 373 in a pre-*Davis* landscape,[7] the government cites no authority for imputing this alleged position to § 924(c). But more crucially, the government's characterization of the current Rule 29 motion is inaccurate: A conviction based on an unconstitutional predicate is not a mere procedural defect; it is a conviction that is invalid as a matter of law.[8] The Supreme Court has made clear that when a trial-court ruling becomes plainly erroneous on direct review due to intervening changes in the law, plain error applies under Rule 52(b). *Henderson v. United States*, 568 U.S. 266, 268-69 (2013); *see also Johnson v. United States*, 520 U.S. 461, 468 (1997); *United States v. David*, 83 F.3d 638, 645 (4th Cir. 1996) ("the purposes of the contemporaneous objection rule and considerations of sound judicial administration counsel in favor of plain error review where an objection at trial would have been indefensible because of existing law, but a supervening decision prior to appeal reverses that well-settled law, rendering defendant's claim clearly meritorious."). Moreover, even if the issue of an invalid predicate offense were subject to Rule 12(b)(3), the rule has since been amended to clarify that it applies only "if the basis for the motion is then reasonably available." Fed. R.

---

[7]    As Count 2 is not currently before the Court, the defense makes no representations or concessions concerning its right to address it on further review. As described above, the question of how to define treason to the jury for purposes of Count 2 was a matter of significant dispute between the parties, and the defense objected to the definition of "levy war" used at trial. *Supra* at 8, n.6.

[8]    As the Supreme Court recently held in *Class v. United States*, 138 S. Ct. 798, 802; 805-807 (2018), even a guilty plea does not waive a defendant's right to challenge the constitutionality of the statute of conviction. *See also United States v. St. Hubert*, 909 F.3d 335, 344 (11th Cir. 2018) (challenge to § 924(c) conviction under *Dimaya* is jurisdictional and cannot be waived).

Crim. P. 12(b)(3); *see also id*., Notes of Advisory Committee on 2104 amendments. No party could reasonably have anticipated *Davis*' impact on the residual clause at the time of Al-Timimi's trial in 2005.

The government is also in a particularly unfavorable position to argue that the defense is time-barred from challenging the government's assertion of treason as a predicate. The defense's opening brief, filed in 2016, analyzed and explained why each of the nine predicates—including treason—failed to satisfy the force clause. *See* Dkt. No. 433, Ex. A. The government's opposition brief did not answer the defense's arguments under the treason statute at all, but instead limited its force-clause arguments to conspiracy, based on an unsuccessful argument that a conspiracy might be conceptualized as "portend[ing]"—and thus threatening—the use of force. *See* Dkt. No. 437 at 18-19. Its assertion of treason as a force-clause offense is a new argument that it makes for the first time here. Thus, to the extent any party is making belated arguments, it is not the defense.

### c. The categorical approach does not permit the government to exclude the "aid and comfort" prong from the treason statute.

Next, the government argues that the jury instructions should be read as excluding the "aid and comfort" prong of the treason statute based on how they were delivered to the jury. *See* Govt. Br. at 16-17. The government suggests that because the jury instructions emphasized the "levy war" prong of the statute for purposes of defining Count 2, the "aid and comfort" prong should be excluded for purposes of evaluating the treason statute under Sections 924(c) and (o). Thus, according to the government, a statute that can be violated without the use of force can nonetheless be transformed into a force-clause offense by simply removing or deemphasizing any non-conforming prongs and instructing the jury with this partial version of the statute.

In so arguing, the government is advocating precisely what the categorical approach

prohibits: the transformation of an elements-based inquiry into a case-specific one. The question of whether a predicate qualifies as a "crime of violence" under § 924(c)(3) is a categorical determination that is made as a matter of law. An offense either is or is not a crime of violence; its statutory language cannot be customized to fit a particular case. *See*, e.g., *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2011) (observing that under the categorical approach, a court "must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized.") (*quoting Johnson v. United States*, 559 U.S. 133, 137 (2010)).

And in any event, the argument is ultimately moot. As noted above, even without reference to "aid and comfort," the government's argument fails because the jury instructions used at trial would allow one to "levy war" by "carry[ing] on war" in a non-combat role that does not involve the use of force, and so too would the Supreme Court's decision in *Bollman*. *See supra* at 7-8.

### d. The crime of treason is not "divisible" into two different crimes.

Finally, the government suggests that the treason statute be divided into two separate crimes—one that covers levying war and the other that covers the giving aid or comfort—by using the "divisibility" doctrine that the Supreme Court established in *Descamps v. United States*, 570 U.S. 254, 258 (2013) and *Mathis v. United States*, 136 S. Ct. 2243 (2016). As a starting point, that doctrine applies in the specialized context of the "modified categorical approach" and deals with the unique complexities associated with evaluating various *state* statutes against their generic federal analogues. *See Descamps*, 571 U.S. at 261-62; *Mathis*, 136 S. Ct. at 2248-49. A state burglary statute, for example, might define several forms of burglary, with each having distinct elements and punishment criteria. Accordingly, the divisibility doctrine allows a reviewing court to treat these as different crimes in evaluating whether they qualify as

generic burglary under statutes such as the Armed Career Criminal Act. But this specialized doctrine has no obvious applicability to § 924(c) and indeed the government cites no cases applying it in that context.

In any event, the doctrine would not help the government here. For a statute to be divisible, and thus define multiple crimes, each crime must have a distinct set of elements that the jury is required to reach unanimous agreement upon. *Mathis*, 136 S. Ct. at 2248-49 & 2256-57. Federal treason, by contrast, is one crime—indeed, it is the only crime specifically defined by the United States Constitution. Neither the Constitution nor the treason statute make any legal distinction between whether treason is committed by levying war against the United States or giving aid to others who are doing so; both means of commission are punishable by death and require the same essential elements (*i.e.*, a duty of loyalty to the United States, a treasonous act, and the testimony of two witnesses or a confession).

Contrary to the government's suggestion, the line between levying war and providing aid and comfort is not always a clear one, and there should be no reason to expect jury unanimity over the issue. For example, an American caught assisting an enemy on a battlefield may have been firing on American troops, or providing logistical aid or assistance, or both. Similarly, if a defendant is charged with participating in armed insurrection, there may be some dispute over whether his or her battlefield activity is better characterized as fighting or instead some form of non-combat assistance. But these distinctions should not be relevant for the purposes of the treason statute, and indeed the Constitution confirms that they are not. Irrespective of whether an American is caught directly attacking American troops or aiding an enemy's efforts to do the same, that person has committed treason and is subject to penalties that include death. Its defining characteristic is the breach of loyalty to one's country, regardless of whether that breach

takes form in a combat or non-combat role.

And regardless, this argument too is ultimately moot as applied to this case. As noted above, the jury instructions used at trial defined "levy war" to include "carry[ing] on war," which would allow one to levy war in a non-combat role, as would the Supreme Court's decision in *Bollman*. *See* supra at 7-8.

### 3. Section 2390 is not a force-clause offense.

Third and finally, the government argues that Section 2390 is a force-clause offense. The statute provides as follows:

> Whoever enlists or is engaged within the United States or in any place subject to the jurisdiction thereof, with intent to serve in armed hostility against the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 2390.

As the defense observes in its opening brief, Section 2390 is not a force-clause offense because it can be committed without the use, attempted use, or threatened use of force—namely, by enlisting with intent to serve in armed hostility and making basic preparations to do so, without taking any substantial steps toward participation in combat or otherwise reaching a point where fighting is imminent. *See* Dkt. No. 433, Ex. A.

In response, the government claims that Section 2390 can be sustained under the force clause because (according to the government) it requires the *attempted* use of force. In support, it points to the federal definition of attempt (based on the Model Penal Code) that requires "(1) culpable intent to commit the crime charged and (2) a substantial step toward completion of the crime." Govt. Br. at 18 (*citing United States v. Dozier*, 848 F.3d 180, 186 (4th Cir. 2017)). A substantial step, as the government observes, is a "direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal

purpose." *Dozier*, 848 F.3d at 186 (internal citations and quotations omitted); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) ("As was true at common law, the mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct.")

Crucially though—and left out of the government's analysis—is that a substantial step always requires "*more than mere preparation*." *Id.* (emphasis added); *see also* Model Penal Code § 5.01, Explanatory Note ("where the actor has not yet completed his own conduct, . . . the problem is to distinguish between acts of preparation and a criminal attempt."). This distinction between attempt and mere preparation is precisely what prevents the "attempt" prong of the force clause from swallowing other intent-oriented offenses such a conspiracy—a crime that both parties acknowledge is not a force-clause offense. *See, e.g.*, *Simms*, 914 F.3d at 233-34.

Operating under this standard, Section 2390 cannot be a force-clause offense because enlistment *does* encompass mere preparations; nothing in the statute's language purports to incorporate the attempted use of force as an element. As this Court held in *Khan* (one of the few cases to ever construe Section 2390), "[t]he plain language of the statute 'enlists or is engaged' is not limited to formal enrollment in an enemy military force, but can reach preparations within the United States for joining an enemy force overseas." *Khan*, 309 F. Supp. 2d at 819; aff'd, remanded, 461 F.3d 477 (4th Cir. 2006). And indeed, this interpretation is further corroborated by its maximum prison sentence of just three years—a punishment cap difficult to reconcile with the government's suggestion that it requires the actual attempted use of force against United States troops.

**III.     The government cannot sustain Counts 1, 7, or 8 on indeterminacy grounds.**

The jury in this case issued only a general verdict; neither party requested that it be specifically polled on Jury Instruction 44. *See* Trial Tr., April 26, 2005 [Dkt. No. 161] at 2412; (transcript also attached to Dkt. No. 433 as Ex. C). Accordingly, both parties now agree that the record does not indicate which of the nine asserted predicates the jury selected to support Counts 1, 7, and 8. *See* Dkt. No. 433 at 8-9 (Def. opening brief); *see also* Govt. Br. at 4.

As such, even assuming that the government could sustain one of its predicates under the force clause, it would have no way of demonstrating that this predicate was in fact one that the jury actually selected. As described below, verdict "indeterminacy" problems of this sort ordinarily require that the verdict be set aside. Although an exception exists under the harmless error doctrine, the government cannot meet its burden here.

**A.     Because the government is no longer able to point to *any* valid predicate after *Davis*, there is no indeterminacy issue in this case.**

As a starting point, the defense emphasizes its position that verdict indeterminacy only becomes relevant if the government can sustain at least one of its predicates under the force clause. As described above, the government's asserted predicates fail to do so because all incorporate the crime of conspiracy. Moreover, even standing alone, none require the use, attempted use, or threatened use of force. Accordingly, the defense's position is that it is unnecessary to conduct an "indeterminacy" analysis of this case at all. Only if the government is able to sustain at least one of its predicates does it become necessary for the analysis to proceed.

**B.     In any event, the Supreme Court's rule in *Yates* requires a conviction to be set aside where, as here, verdict indeterminacy rests on a constitutional or statutory defect.**

The government contends that if it can demonstrate that just one predicate is a crime of violence under the force clause, it can sustain the convictions on the evidence for purposes of

Rule 29. Govt. Br. 11-12. The government is incorrect.

The Supreme Court's rule in *Yates* "requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312 (1957); *see also Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) ("A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one."). *Yates* involved a group of defendants convicted under Section 2385 with conspiring to advocate the overthrow of the United States government; the jury had been instructed to convict if it found that they had conspired either to (1) advocate the overthrow of the United States by force, or (2) organize a group (in the form of the Communist Party) for the purpose of doing the same. *See id*. at 300-304. On appeal, however, the Supreme Court construed the "organize" prong of the statute to exclude the defendants' conduct. *Id*. at 310-11. As a result, the case was left with a verdict supportable on only one of the two possible grounds for conviction, with no way of ascertaining which one the jury had selected. *Id*. at 311-12. Under these circumstances, the Court concluded that the verdict was unsustainable and had to be set aside. *Id*. at 312.

The Supreme Court has described two limitations on *Yates*, neither of which applies here. First, the Court has clarified that the rule is limited to cases where, as here, the source of indeterminacy stems from a constitutional or statutory interpretation defect (as opposed to, for example, a mere evidentiary one). *See Griffin v. United States*, 502 U.S. 46, 58-59 (1991). Second, *Yates* is subject to ordinary harmless error analysis, *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008), which places on the government the burden of demonstrating beyond a reasonable doubt that verdict would have returned the same way absent the defective instruction. This it plainly cannot do.

### 1.    Any *Yates* error in this case would not be harmless.

To establish harmless error, "the government must show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. McFadden*, 823 F.3d 217, 224 (4th Cir. 2016) (internal quotations and citations omitted). The reviewing court must "conduct a thorough examination of the record, and if the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . . it should not find the error harmless." *Id.* (*citing Neder v. United States*, 527 U.S. 1, 19 (1999)).

The government is unable to make such a showing here. To the contrary, its theory for sustaining the verdict under the three predicates it now asserts is simply irreconcilable with both the record in this case and how the principals were charged and prosecuted.

### a.    The record does not support the use of the Section 2390 enlistment statute as a force-clause predicate for Counts 1, 7, or 8.

Even assuming for argument the government's claim that the enlistment statute requires the attempted use of force as an element (and thus incorporates a substantial step requirement that goes beyond mere preparation), the government would be unable to apply that theory here. Under this conception of enlistment, sustaining Count 1 would require the government to demonstrate beyond a reasonable doubt that, absent the now-defective instruction, the jury would have concluded that Al-Timimi (1) aided and abetted a (2) § 924(o) conspiracy to (3) use firearms in connection to a (4) violation of the § 2390 enlistment statute that necessarily involved an attempted use of force.

No evidence of any principal making any such attempted use of force exists here. To the contrary, Khan—a named principal to the § 924(o) conspiracy that Count 1 charges Al-Timimi with aiding and abetting, Dkt. No. 47 at 4, ¶2 (superseding indictment)—had his conspiracy

conviction vacated based on this Court's determination that his activities at LET camp were limited to training exercises, noting that "there is insufficient evidence in this record that these actions involved either Khan's actual use of force or a substantial risk that Khan would use force." *Khan v. United States*, 330 F. Supp. 3d 1076, 1098 (E.D. Va. 2018); see also *Chapman v. United States*, 326 F. Supp. 3d 228, 248 (E.D. Va. 2018) (same for charged coconspirator Chapman); *Royer v. United States*, 324 F. Supp. 3d 719, 742 (E.D. Va. 2018) (same for named coconspirator Royer).

Although Khan was convicted of conspiracy to violate Section 2390, *Khan*, 309 F. Supp. 2d at 819, that conviction was based on mere preparatory activities—which, again, are insufficient to meet the federal definition of attempt. There were no claimed instances of his attempting to use of force against the United States and indeed the government cites no evidence in Al-Timimi's record to suggest otherwise.

The same is true of Kwon and Hasan, principals to the § 924(c) offenses that Counts 7 and 8 charge Al-Timimi with aiding and abetting. Neither testified that they ever affirmatively attempted to use force against United States troops, and none of the government's asserted evidence suggests that they ever came close to doing so. *Accord Royer*, 324 F. Supp. 3d at 742 ("*Kwon's*, *Hasan's*, Aatique's, and Khan's § 371 violation involved the four men traveling to the LET camps in Pakistan and, while there, discharging various firearms in military training. There is no suggestion . . . to indicate that any of these co-conspirators traveled to the front lines or engaged in active fire. . . . *[N]one of the actions involved either one of these four men actually using force or a substantial risk that any of these four men would use force*.") (emphasis added) (citations omitted).

Finally, the defense notes that accomplice liability requires the government to prove the

accomplice's complete foreknowledge of every element of the underlying offense; thus, the government would need to show Al-Timimi's advance knowledge of each element. *See, e.g.*, *Rosemond v. United States*, 572 U.S. 65, 76-77 (2014); *see also BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 309 (4th Cir. 2018). But as outlined in the defense's reply brief, no trial witness testified to having had any communications with Al-Timimi about their use of any firearms at any time—much less their specific activities at LET camp. *See* Dkt. No. 449 at 6-8 (record citations). This is particularly notable, given that the principals had been training with firearms for almost two years prior to attending LET as part of an independent conspiracy that Al-Timimi was not involved with. *See id*. at 2-3 (record citations).

> **b.** **The record does not support the use of the Neutrality Act as a force-clause predicate for Count 1, 7, or 8.**

As outlined above, *supra* at 6-7, the Neutrality Act cannot be a force-clause offense because it can be violated by merely funding a hostile enterprise against a friendly nation without joining in its fighting; accordingly, it does not incorporate the use of force as an element. But even if it did, the government could not demonstrate that any principal violated the act. Under such a conception of the Neutrality Act, sustaining Count 1 would require the government to demonstrate beyond a reasonable doubt that, absent the now-defective instruction, the jury would have concluded that Al-Timimi (1) aided and abetted (2) a § 924(o) conspiracy to (3) use firearms in connection to (4) a violation of the Neutrality Act that necessarily required and involved the use of force.

As also noted above, however, Khan and Chapman—named principals to the § 924(o) conspiracy that Count 1 charges Al-Timimi with aiding and abetting—were both *acquitted* at trial of charges that they directly violated the Neutrality Act. *Khan*, 309 F. Supp. 2d at 824; *see also supra* at 4. Chapman's § 924(o) conviction was predicated in part on a separate § 371

*conspiracy* to violate the Neutrality Act, *see Khan*, 309 F. Supp. 2d at 823, but as both parties agree, conspiracy is not a force-clause offense.

With respect to Counts 7 and 8, the government's argument fails because it is undisputed that neither Kwon nor Hasan ever used force against a friendly nation, and indeed the government presents to evidence to that effect. See Dkt. No. 456 (government addendum brief presents no evidence of Kwon or Hasan using force in any capacity).

Finally, the government's case again also fails because it has presented no evidence of any of the principals ever discussing their firearms activities with Al-Timimi. *Supra* at 18-19.

### c.   The record does not support the use of the treason statute as a force-clause predicate for Count 1.

The government concedes that the treason statute cannot serve as a valid predicate for Counts 7 and 8 and thus asserts it only in support of Count 1. Govt. Br. at 23, n.10. As described above, *supra* at 7-8, the treason statute cannot be a force-clause offense because "levying war" and providing "aid and comfort" to the enemy can each be accomplished in a non-combat role that does not involve the use of force. But to the extent the government *could* establish that treason does require the use of force, sustaining Count 1 would require it to demonstrate beyond a reasonable doubt that, absent the now-defective instruction, the jury would have concluded that Al-Timimi (1) aided and abetted (2) a § 924(o) conspiracy to (3) use firearms in connection with (4) the commission of treason in a manner that requires the use of force.

But none of the principals are alleged to have committed treason at all, much less in a manner that involved the use of force. Although Khan was convicted as a principal to the § 924(o) conspiracy based in part on a separate § 2384 conviction for *conspiracy* to commit treason, *see Khan*, 309 F. Supp. 2d at 796, 820-21, 823, his conviction was *not* predicated on the separate § 2381 treason statute that the government attempts to assert here. Again, both parties

agree that conspiracy is not a force-clause offense.

Furthermore, as described above, the question of how to define the treason statute to the jury was a matter of significant dispute at trial. *Supra* at 8, n.6. The defense continues to maintain that Supreme Court requires the definition of "levying war" to include additional aggravating factors not present or instructed here—including the assembling of persons for a treasonable purpose. *See Bollman*, 8 U.S. (4 Cranch) at 126; *see also supra* at 8, n.6.

And finally, the government's case again fails because it has presented no evidence of any of the principals ever discussing their firearms activities with Al-Timimi. *Supra* at 18-19.

> **2.     Should this Court sustain a predicate in a manner that results in an indeterminate verdict, Al-Timimi requests leave to seek a new trial as alternative relief.**

In light of all of the foregoing, the defense's position is that the government is unable to sustain Counts 1, 7, or 8 on any of its asserted predicates—on either the law or the evidence—and therefore Al-Timimi's motions for acquittal should be granted. But in the event that this Court should sustain any predicate on the evidence in a manner that creates an indeterminate verdict on any count, the defense respectfully requests leave to move for new trial as an alternative form of relief.

## IV.    Remedy

This Court's show-cause order directs that "[t]he parties should address not only whether defendant is entitled to acquittal but also what the appropriate remedy would be in the event of such an acquittal." Dkt. No. 453. The defense responds as follows.

At trial, Al-Timimi was charged with and convicted of 10 counts. Counts 1-6 resulted in concurrent prison sentences ranging from 60 to 121 months, all of which have now been fully

served as indicated below. Counts 7-10 resulted in mandatory consecutive prison sentences ranging from 120 months to life, as also outlined below:

| Count | Sentence imposed | Status |
|---|---|---|
| **1**—Aiding/abetting a § 924(o) firearms conspiracy | 121 months | Sentence Complete |
| **2**—Soliciting others to levy war under § 373 | 121 months (concurrent) | Sentence Complete |
| **3**—Aiding/abetting a conspiracy to levy war under §2384 | 121 months (concurrent) | Sentence Complete |
| **4**—Attempting to contribute services to Taliban under 50 USC § 1705(b) | 120 months (concurrent) | Sentence Complete |
| **5**—Inducing others to aid the Taliban under 50 USC § 1705(b) | 120 months (concurrent) | Sentence Complete |
| **6**—Aiding/abetting a conspiracy to violate the Neutrality Act under § 371 | 60 months (concurrent) | Sentence Complete |
| **7**—Inducing others to use firearms under § 924(c) | 360 months (consecutive to counts 1-6) | Approximately 26 years left to serve |
| **8**—Inducing others to use firearms under § 924(c) | Life Imprisonment | (Life) |
| **9**—Inducing others to carry explosives under § 844(h)(2) | 120 months (consecutive to counts 1-8) | Full 10 years left to serve (to begin consecutive to above) |
| **10**—Inducing others to carry explosives under § 844(h)(2) | 240 months (consecutive to counts 1-9) | Full 20 years left to serve (to begin consecutive to above) |

*See* Dkt. No. 132 (Judgment) pp. 1-3 (also attached to Dkt. No. 433 as Ex. E).

With Al-Timimi's convictions under Counts 1, 7, and 8 no longer sustainable in light of *Davis*, he moves this Court to amend the Judgment accordingly by vacating the corresponding prison sentences as reflected in the attached proposed order. He also moves to have his sentences recalculated by the United States Probation Office to reflect good-behavior credit that previously went uncalculated due to the lifetime nature of his prison sentence.

Although Al-Timimi's time has been fully served on Counts 2-6, a judgment of acquittal in light of *Davis* would still leave prison time remaining on Counts 9 and 10. These counts

charged him as an accomplice to Kwon and Hasan's alleged carrying of an RPG weapon during training exercises at the LET camps they attended. *See* Dkt. No. 47 at 16 (superseding indictment). At trial, the jury was directed to evaluate whether principals Kwon and Hasan had carried explosives during the commission of a "felony" in violation of 18 U.S.C. § 844(h)(2) by reference to Jury Instruction No. 44—the same list of predicate crimes used in Counts 1, 7, and 8. *See* Dkt. No. 156 at 2319-20.

Section 844(h)(2) does not require a crime of violence, and thus has no residual clause issue. But as outlined in Al-Timimi's separate motion for leave that he files today, Dkt. No. 460, Counts 9 and 10 rely on a *Pinkerton* theory that in turn relies on the conspiracy charged in Count 1. Accordingly, the invalidation of Count 1 leaves the parties with no way of ascertaining the jury's verdict on Counts 9 and 10. As such, Al-Timimi seeks leave to file and brief a motion for new trial on Counts 9 and 10.

## CONCLUSION

WHEREFORE, Defendant Dr. Ali Al-Timimi respectfully requests that the Court grant his pending Rule 29 motions for acquittal on Counts 1, 7, and 8 in light of the Supreme Court's intervening authority in *Davis*, *Dimaya*, and *Johnson*, enter corresponding judgments of acquittal, adjust his sentence accordingly, and order any other relief this Court deems appropriate.

Respectfully submitted,

_____/s/_____

Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu

Jonathan Turley (*pro hac vice*)
The George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
(202) 994-7001 (telephone)
(202) 508-6200 (facsimile)
jturley@law.gwu.edu

Attorneys for Defendant Dr. Ali Al-Timimi

Dated: August 19, 2019

**CERTIFICATE OF SERVICE**

I certify that on August 19, 2019, I will file the foregoing document on the CM/ECF

system, which will then serve it by electronic notification on all parties of record.

/s/

Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu