IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|   |   |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　*Plaintiff*,<br><br>v.<br><br>ALI AL-TIMIMI,<br><br>　　*Defendant*. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:04-cr-385 (LMB)<br>)<br>)<br>)<br>)<br>) |

**UNOPPOSED MOTION FOR LEAVE TO FILE AND BRIEF A MOTION FOR NEW TRIAL ON COUNTS 9 AND 10**

On June 25, this Court ordered the United States to show cause as to why the defense's pending motions for acquittal on Counts 1, 7, and 8 should not be granted in light of the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), Dkt. No. 453, and further directed that "[t]he parties should address not only whether defendant is entitled to acquittal but also what the appropriate remedy would be in the event of such an acquittal." *Id*. Per that directive, the defense respectfully seeks leave to file and brief a motion for a new trial on Counts 9 and 10 in the event of such an acquittal. As summarized below, the defense is prepared to show that Counts 9 and 10 rely on a *Pinkerton* theory, which in turn relies on the conspiracy charged in Count 1 that has been rendered unsustainable in light of *Davis*. As such, there is no longer any way of ascertaining the jury's verdict on Counts 9 and 10 and a new trial is warranted in the interest of justice.

The parties have conferred, and the government does not oppose leave for the defense to raise the issue. In further support, the defense states as follows:

1.　　Al-Timimi's pending motions for acquittal on Counts 1, 7, and 8 of the

superseding indictment are all based on the residual clause of 18 U.S.C. § 924(c)(3)(B) that the Supreme Court has recently invalided in *Davis*. Count 1 charged Al-Timimi with aiding and abetting a firearms conspiracy that various principals—including Kwon, Hasan, Chapman, Khan, and Royer—were accused of forming in violation of 18 U.S.C. § 924(o). *See* Dkt. No. 47 at 4-9 (superseding indictment). Counts 7 and 8 charged Al-Timimi as an accomplice to various § 924(c) firearms crimes that principals Kwon and Hasan engaged in at the LET camps they attended in Pakistan. *Id*. at 15. Both men fired machine guns in training exercises there, for which each subsequently admitted guilt to discharging a machine gun in relation to a "crime of violence" in violation of § 924(c). *See id*. The government charged and convicted Al-Timimi as an accomplice to those crimes based on its broader allegation that his comments at a dinner induced them to attend LET.

2.  All three of these counts required the government to prove that the principals were involved in an underlying "crime of violence." To address this element, Jury Instruction No. 44 provided the jury with a list of nine potential crimes of violence and directed the jury to evaluate whether Kwon and Hasan's activities implicated any of them. *See* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2317-20. The jury was further instructed that it "must be unanimous as to which of the nine crimes was involved." *Id*. at 2319-20. As described in Al-Timimi's pending motions for acquittal, all nine of these enumerated crimes of violence relied on the § 924(c)(3)(B) residual clause that *Davis* has now invalidated.

3.  Counts 9 and 10—the subject of this motion—were based on a theory nearly identical to that of Counts 7 and 8, again charging Al-Timimi as an accomplice to certain criminal weapons activities that principals Kwon and Hasan engaged in at the LET camps they attended in Pakistan. Both men admitted to carrying an RPG weapon during training exercises,

for which each subsequently admitted guilt to the crime of carrying explosives during the commission of a "felony" in violation of 18 U.S.C. § 844(h)(2). See Dkt. No. 47 at 16. The government charged and convicted Al-Timimi as an accomplice to those crimes, again based on its broader allegation that his comments at the above-referenced dinner induced them to attend LET. The jury was directed to evaluate whether principals Kwon and Hasan had carried explosives during the commission of a "felony" by reference to Jury Instruction No. 44—the same list of predicate crimes used in Counts 1, 7, and 8. *See* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2319-20.

4. Counts 7-10 all relied on a *Pinkerton* theory rather than ordinary principals of accomplice liability. The Supreme Court's intervening opinion in *Rosemond v. United States*, 572 U.S. 65, 76-77 (2014) confirms that accomplice liability requires the government to prove the accomplice's complete foreknowledge of every element of the underlying offense.[1] But here, neither Kwon nor Hasan testified that they spoke with Al-Timimi about their use of any weapons at any time—much less their specific activities at LET camp. *See* Dkt. No. 449 at 6-8. Instead, the government has supported these counts under the *Pinkerton* doctrine, which permits a convicted conspiracy member to be held culpable for the substantive offenses of his or her co-conspirators if the jury concludes that they were reasonably foreseeable. *Pinkerton v. United*

---

[1] Moreover, when a defendant is charged with aiding and abetting a weapons-oriented offense, courts have required the government to prove that the accomplice knew to either a practical certainty or actual certainty that the weapon would be involved. *See United States v. Spinney*, 65 F.3d 231, 238-40 (1st Cir. 1995) (in § 924(c) case "the government must establish that the [accomplice] knew to a practical certainty that the principal would be using a gun. . . . a rubric that calls for proof verging on actual knowledge.") (internal citations and quotations omitted); *United States v. Donel*, 211 F. App'x 180, 181 (4th Cir. 2006) (same); *see also United States v. Greene*, No. 14-C-431, 2015 U.S. Dist. LEXIS 7871, at *4-5 (E.D. Wis. Jan. 23, 2015) (concluding that *Rosemond* elevates the *Spinney* standard from "practical certainty" to "actual knowledge," thus eliminating any lingering permissible theories of "constructive knowledge").

*States*, 328 U.S. 640, 647-48 (1946). To that end, the government successfully introduced a *Pinkerton* jury instruction at trial, *see* Trial Tr., April 18, 2005 [Dkt. No. 156] at 2298-99, and has consistently relied on the doctrine throughout its post-trial briefs. *See*, *e.g.*, Dkt. No. 125 at 37-40 (government's 2005 post-trial brief, basing its arguments in support of Counts 7-10 exclusively on *Pinkerton*); Dkt. No. 447 at 5-7 (government opposition to Al-Timimi's motion for acquittal on Count 1).

5. After the Supreme Court's decision in *Davis*, however, Count 1 has become unsustainable and thus no longer available to sustain the government's *Pinkerton* theory. Indeed, as the defense is prepared to demonstrate, it is a near certainty that the jury utilized Count 1 to establish *Pinkerton* liability under Counts 7-10. Not only was Count 1 the only weapons conspiracy charged, but it is also the only conspiracy that shares with Counts 7-10 a common reliance on Jury Instruction 44's list of predicate crimes. In addition, the superseding indictment specifically references Count 1 as a predicate crime for each of Counts 7-10. *See* Dkt. No. 47 at 15, ¶ 2 & 16, ¶ 2.

6. The government may instead seek to premise *Pinkerton* liability on an alternative conspiracy charged in Count 3 or Count 6. *See* Dkt. No. 47 at 11 and 14 (aiding and abetting seditious conspiracy, and aiding and abetting a conspiracy to violate the Neutrality Act). But there is no indication to believe that the jury reach its verdict in this manner, and no special verdict to back such a theory. To the contrary, neither of these charged conspiracy offenses incorporated the use of weapons as an element, and neither shared with Counts 7-10 a common reliance on Jury Instruction No. 44's list of predicate crimes. Moreover, Al-Timimi was not even charged with *joining* these two conspiracies (as required by *Pinkerton* to establish the requisite mens rea) but only with aiding and abetting them. *See* Dkt. No. 449 at 8-10 (defendant's reply

4

brief on Count 1, discussing *Pinkerton* standard); *see also* U.S. Dept. of Justice, USAM Criminal Resource Manual § 2483, available at http://www.justice.gov/usam/criminal-resource-manual-2483-conspiracy-aid-and-abet ("The concept of aiding and abetting a conspiracy has not been widely adopted.").

7. In addition to the *Pinkerton* problem, the defense also intends to show that the government's use of various firearms-related evidence becomes unduly prejudicial in the absence of the firearms counts and underlying firearms conspiracy.

8. A successful motion would also give this Court discretion to more fully address the sentencing profile of this case. After the verdict, this Court noted the "the second- to third-degree-removed nature of the [Al-Timimi's] activities" in allowing him to remain free on bond, Dkt. No. 161 at 2416, and at sentencing described the mandatory minimums imposed by Counts 7-10 as "very draconian." Dkt. No. 147 at 20. Moreover, the various principals appear to no longer be in federal custody at all, including Royer—whom the government has described as bearing primary responsibility for facilitating Kwon and Hasan's training activities at LET camps. *See* Gov't Opp. to Motion for Acquittal on Count 1 [Dkt. No. 447] at 2 ("No proof, however, indicated that Timimi helped his followers to reach the LET camps. To the contrary, helping them reach the LET camps was *Royer's* role. In other words, proof did not establish that Timimi significantly 'aided and abetted' them in doing so. . . . Timimi's convictions were based not so much on proof that he 'aided and abetted' the charged crimes, or that he induced or procured their commission, but on proof that he solicited and counseled them."). The defense respectfully submits that it would serve the interest of justice for Al-Timimi to have an opportunity on remand to seek similar relief in light of intervening Supreme Court authority.

9. Because this issue arises as a natural consequence of *Davis*'s impact on Al-

5

Timimi's challenge to Counts 1, 7, and 8, the defense submits that it is within the proper scope of the current remand. Alternatively, the defense submits that it also falls within the purview of Rule 33 on the grounds that the unforeseeable nature of *Davis* after trial qualifies as excusable neglect under Rule 45(b)(1)(B).

WHEREFORE, Defendant Ali Al-Timimi respectfully requests that the Court grant this motion for leave and permit Al-Timimi to file and brief a motion for a new trial on Counts 9 and 10 in light of *Davis*' impact on the *Pinkerton* theory on which they were based.

Respectfully submitted,

_____/s/_____
Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu

Jonathan Turley (*pro hac vice*)
The George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
(202) 994-7001 (telephone)
(202) 508-6200 (facsimile)
jturley@law.gwu.edu

Attorneys for Defendant Dr. Ali Al-Timimi

Dated: August 19, 2019

## CERTIFICATE OF SERVICE

    I certify that on August 19, 2019, I will file the foregoing document on the CM/ECF system, which will then serve it by sending an electronic notification on all parties of record.

                              /s/
                Thomas Michael Huff, Virginia Bar No. 73587
                Thomas M. Huff, Attorney-at-Law
                P.O. Box 2248
                Leesburg, VA 20177
                Telephone: 703.665.3756
                Facsimile: 571.354.8985
                thuff@law.gwu.edu