IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:04-cr-385 |
| | ) | |
| ALI AL-TIMIMI, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S REPLY IN FURTHER SUPPORT OF ITS
SUPPLEMENTAL MEMORANDUM ON *DAVIS V. UNITED STATES***

In response to the Court's order to show cause why it should not grant the defendant's

motions to vacate his convictions on Counts 1, 7, and 8 of the superseding indictment (ECF

No. 453), the government has filed a supplemental memorandum on the effect of *United States v.

Davis*, 139 S. Ct. 2319 (2019), on the present litigation.  (ECF No. 455.)  The defendant has also

filed his response.  (ECF No. 459).  The government files this reply in further support of its

supplemental memorandum.

**Argument**

**I.     The Government Has Not Conflated Invalid Conspiracy Predicates with Valid
Force-Clause Predicates.**

In its supplemental memorandum, the government explicitly stated that it was not relying

on conspiracy offenses to support the defendant's convictions on Counts 1, 7, and 8.  (ECF No.

455 at 12.)  Instead, the government identified three predicate offenses on which the Court

instructed the jury—contravening the Neutrality Act, in violation of 18 U.S.C. § 960; treason, in

violation of 18 U.S.C. § 2381; and enlisting and engaging with intent to serve in armed hostility

against the United States, in violation of 18 U.S.C. § 2390—and argued that each of those

offenses is a valid crime of violence under 18 U.S.C. § 924(c)(3)(A).  (*Id.* at 13–20.)  In

response, the defendant claims that the government is confusing invalid conspiracy predicates with valid substantive offenses.  It is not.

*First*, the Court's jury instructions do not require acquittal.  To be sure, the Court instructed the jury that committing these three offenses, or "conspiring to do so," could serve as a predicate for Counts 1, 7, and 8.  (*See* Trial Tr. 2318–19.)[1]  But the Court also told the jury that where its instructions used conjunctive language, "[i]t was sufficient if the government prove[d] beyond a reasonable doubt that the defendant did any of the charged alternative acts."  (Trial Tr. 2305.)  The government is thus not "seeking to avoid [a] complication" in the case, as the defendant claims.  (ECF No. 459 at 3.)  When a jury is instructed on two theories of liability, one proper and one improper, the solution is not simply to set aside the conviction.  *Skilling v. United States*, 561 U.S. 358, 414 n.46 (2010).  Instead, "for purposes of Rule 29, the only question is whether substantial evidence supports the conclusion that the jury could have found a *substantive* violation of §§ 960, 2381, and 2390."  (ECF No. 455 at 20 n.9 (emphasis added).)

The simultaneous charging of conspiracy and substantive predicates is, at most, an alternative-theory error under *Yates v. United States*, 354 U.S. 298 (1957), which is subject to harmless-error review on appeal.  *See Skilling*, 561 U.S. at 414.  If the Fourth Circuit ultimately were to agree with the defendant that any alternative-theory error created by *Davis*'s invalidation of § 924(c)'s residual clause is not harmless, the remedy should not be a judgment of acquittal but rather a new trial on the problematic counts.  *See, e.g.*, *United States v. Ellyson*, 326 F.3d 522, 533 (4th Cir. 2003) (remanding a case for re-trial in light of a *Yates* error where "[a]ny insufficiency in proof was caused by [a] subsequent change in the law . . . [and] not the government's failure to muster evidence"); *accord United States v. Ford*, 703 F.3d 708, 710

---

[1] The transcript of the Court's jury instructions appears at ECF Nos. 455-1 and 455-2.

(4th Cir. 2013).

The defendant nonetheless encourages the Court to conduct a harmlessness review of its own record in order to resolve the pending motions. The Court should decline the invitation.[2] In the first place, the standards governing such analyses are radically different. The Rule 29 standard is deferential, such that "[a] defendant bringing a sufficiency challenge must overcome a heavy burden, and reversal for insufficiency must be confined to cases where the prosecution's failure is clear." *United States v. Edlind*, 887 F.3d 166, 172 (4th Cir.), *cert. denied*, 139 S. Ct. 203 (2018) (internal citations and quotation marks omitted). By contrast, in the harmlessness context, "[t]he essential question is whether 'it [is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *United States v. Pratt*, 915 F.3d 266, 273 (4th Cir. 2019) (quoting *United States v. Garcia-Lagunas*, 835 F.3d 479, 488 (4th Cir. 2016)).

The defendant at times seems to toggle between these standards in attacking the strength of the government's evidence. For example, he repeatedly claims that the record lacks evidence that he "had any communications" about the use of firearms in LET camps. (ECF No. 459 at 19.) But, contrary to this claim, the record in fact establishes that he had extensive knowledge of LET's violent tactics generally and the use of weaponry at its training camps in particular. *See, e.g.*, **Attachment 1** (a compendium of relevant trial testimony); Gov't Exs. 1D25, 1D28, 1D44, 1D52 (LET bulletins detailing the organization's violent conduct). Moreover, the jury

---

[2] If the Court were reviewing the record in the context of a habeas petition under § 2255, a claim of instructional error would be reviewed for harmlessness to determine whether the error had a substantial and injurious effect. *See, e.g.*, *United States v. Smith*, 723 F.3d 510, 515–16 (4th Cir. 2013). In these circumstances, however, the Court is simply entertaining renewed motions for judgment of acquittal under Rule 29. Resolving those motions requires the Court only to assess the quantum of inculpatory evidence appearing in the record.

convicted the defendant of soliciting others to levy war against the United States (Count 2) and of inducing others to conspire to levy war (Count 3), to aid the Taliban (Count 5), and to conspire to violate the Neutrality Act (Count 6)—all based on the defendant's exhortations to others to engage in violent conduct abroad.  The record citations appearing in the government's attachments to its post-*Davis* memorandum (ECF Nos. 455-3 & 456-1) also make plain that the defendant's co-conspirators both agreed to commit force-clause crimes (Count 1) and were successful in doing so (Counts 7 and 8).  In any event, the harmlessness or non-harmlessness of any *Yates* error is better left for the Fourth Circuit to address when the case returns there.

*Second*, the defendant makes a series of arguments that sound in estoppel, but these are not persuasive.  To begin, the defendant claims that the government is advancing inconsistent positions in light of the fact that the defendants' convictions for § 924 offenses in *United States v. Khan*, 309 F. Supp. 2d 789 (E.D. Va. 2004), arose from conspiracy predicates.  But in *Khan*, the relevant predicates were explicitly charged in the superseding indictment and included only conspiracy offenses.  (*See* case no. 1:03-cr-296 (ECF No. 167).)  The relevant predicates here, by contrast, appeared in the government's opposition to the defendant's motion for a bill of particulars (ECF No. 23 at 6–7) and in the Court's jury instructions, and these nine predicates included *both* conspiracy *and* substantive offenses.  The two cases were thus charged under different theories of liability and are not the same for purposes of assessing any *Davis* errors.

The defendant also argues that the government "aggressively pursued . . . expansive theories of inchoate liability at trial" and is now seeking "to retreat from them."  (ECF No. 459 at 5.)  Not so.  The government's argument now, as previously articulated in its opposition to the defendant's post-trial motions over a decade ago, is that the defendant was *either* a co-conspirator of Hasan and Kwon (whose firearms-related conduct underlies Counts 7 and 8) or he

4

solicited them to engage in conspiracies under 18 U.S.C. § 2.  Either way, the doctrine of co-conspirator liability under *Pinkerton v. United States*, 328 U.S. 640 (1946), applies.[3]

Accordingly, "[t]he analysis is the same regardless of whether Timimi was a conspirator himself or merely an aider and abettor of the conspiracy."  (ECF No. 125 at 39.)  It is true that, in post-trial briefing, the government also stated that "the offenses underlying Timimi's § 924(c) convictions were conspiracies to levy war against the United States, aid the Taliban, and violate the Neutrality Act."  (*Id.* at 38.)  But, again, the post-*Davis* problems with such an argument lead, at most, to a *Yates* alternative-theory error.  Such an error is not, by itself, a sufficient reason to grant a motion under Rule 29.

In short, the key questions remain whether any of the nine predicates charged to the jury are force-clause crimes, and whether there is substantial evidence in the record to support those valid predicates.  Because the answer to both questions is "yes," the defendant's motions should be denied.

## II.    The Defendant Was Convicted on Counts 1, 7, and 8 Based on One or More Valid Force-Clause Predicates.

Next, the defendant argues that violations of the Neutrality Act, the modern treason statute, and the statute prohibiting enlistment with intent to serve in armed hostility against the United States are not force-clause crimes.  His arguments are unavailing.

---

[3] What's more, the government's post-trial briefing did not disclaim the simple argument that, notwithstanding *Pinkerton*, the defendant is liable on Counts 7 and 8 as an aider-and-abettor or a solicitor of Hasan's and Kwon's firearms offenses.  Indeed, the jury was instructed on such a theory.  (Trial Tr. 2334.)  To the extent that the defendant now argues that such a theory is impermissible under *Rosemond v. United States*, 572 U.S. 65 (2014) (*see* ECF No. 459 at 19), that claim does not appear to have been preserved at trial and would be reviewed on appeal for plain error.  Any assertion of *Rosemond* error now would exceed the scope of the Fourth Circuit's limited remand.

*First*, a violation of the Neutrality Act is a force-clause crime because it necessarily involves either aiding and abetting or participating in a military or naval expedition against an American ally.  The defendant does not argue that military expeditions do not inherently involve the use or threatened use of force.  Instead, he claims that one who, for example, "furnishes the money for" such an expedition, 18 U.S.C. § 960, is guilty as a principal, not as an aider and abettor.  But this confuses liability for the substantive offense with the dictates of the categorical approach as applied to § 924(c).  The relevant inquiry is whether the defendant is liable for an offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  Because aiders and abettors are "responsible for the acts of the principal as a matter of law," *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016), and because a military expedition necessarily involves the use or threatened use of force, aiding and abetting such an expedition by furnishing money necessarily makes a defendant liable for using or threatening that same force.  *See United States v. Dinkins*, 928 F.3d 349, 359 (4th Cir. 2019) (affirming application of the Armed Career Criminal Act's force clause under North Carolina's accessory-before-the-fact statute).  Thus, a defendant who furnishes money for a military expedition is both liable as a principal for a § 960 violation and liable as an aider and abettor for the use or threatened use of force that his crime entails, thereby triggering § 924(c).  There is no logical reason why it would be dispositive, for purposes of the categorical approach, that the relevant aiding-and-abetting language appears in the text of the Neutrality Act itself rather than in a standalone statute like 18 U.S.C. § 2.

*Second*, levying war against the United States, in violation of 18 U.S.C. § 2381, is a force-clause crime.  The defendant makes two counter-arguments, neither of which is persuasive. First, he argues that one can levy war non-violently by, for example, engaging "in a non-combat

6

role that does not involve the use force."  (ECF No. 459 at 8.)  But, as with the Neutrality Act, levying war by assisting others in their war-making efforts is to aid and abet those efforts.  Given that war necessarily involves the use or threatened use of force, a defendant should not be able to escape liability under § 924(c) because he wages war by proxy.

Second, the defendant argues that the two prongs of § 2381—levying war and "adher[ing] to [the country's] enemies, giving them aid and comfort"—are indivisible.  Here, he faces two different obstacles.  The first relates to claim preservation.  In response to the government's argument that the defendant waived any claim that a violation of § 2381 is a force-clause crime by failing to seek dismissal of Count 2, the defendant cites several cases for the proposition that such a forfeited claim should be reviewed on appeal for plain error.  (*See* ECF No. 459 at 9.)  This is true.  But, given the total paucity of authority on the divisibility of § 2381, the defendant cannot succeed on plain-error review for the simple reason that he cannot show that any divisibility error was plain.  *See, e.g.*, *United States v. Williams*, 931 F.3d 570, 574 (7th Cir. 2019) (where divisibility is "unclear," a defendant "would still lose on plain-error review because only a 'plain' error could justify reversal"); *United States v. Bain*, 874 F.3d 1, 31 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 1593 (2018) (stating that a divisibility argument could not succeed on plain-error review where "the statute's divisibility is unclear").

Additionally, the defendant asserts that "[f]ederal treason . . . is one crime" which can be committed by multiple means.  (ECF No. 459 at 12.)  This fails to account for the relevant historical evidence, which makes clear that "levying war" and giving "aid and comfort" to the country's enemies have long been understood to be separate offenses that, for present purposes, are better conceptualized as distinct elements.  *See Cramer v. United States*, 325 U.S. 1, 15–16, 17 n.22 (1945) (discussing the Treason Act of 1351, 25 Edw. III, Stat. 5, Ch. 2, and its several

7

different provisions); *id.* at 20 & n.26 (citing "eleven reported English cases antedating the Constitution . . . involving *distinct charges* of adherence to the King's enemies" (emphasis added)); *United States v. Greiner*, 26 F. Cas. 36, 38 (E.D. Pa. 1861) (explaining that "the two species of treason mentioned in the constitution are described in it in language borrowed from that of the English statute of treasons"); *cf.* Charles Warren, *What Is Giving Aid and Comfort to the Enemy?*, 27 Yale L.J. 331, 332–33 (1918) ("The two branches of treason, 'levying war,' and 'adhering to their enemies, giving them aid and comfort,'—are distinct, and do not embody synonymous actions."). This is to say nothing of the fact that the Court's jury instructions, as the government has argued, did not actually permit the jury to convict the defendant on an aid-and-comfort theory. (*See* ECF No. 455 at 16–17.)

*Third*, enlisting and engaging with intent to serve in armed hostility against the United States, in violation of 18 U.S.C. § 2390, is a force-clause crime. A violation of this statute necessarily entails an attempted use of force—*i.e.*, the specific intent to serve in armed hostility, coupled with a substantial step towards that goal (enlistment or engagement). The defendant disagrees, arguing that the statutory terms "enlist" and "engage" encompass mere preparation insufficient to constitute a substantial step under federal attempt law. In support of this assertion, he quotes the Court's opinion in *Khan*:

> As we held in considering motions to dismiss the indictment, the only armed hostility alleged against the United States occurred in Afghanistan. The plain language of the statute "enlists or is engaged" is not limited to formal enrollment in an enemy military force, but *can reach preparations* within the United States for joining an enemy force overseas. As to Khan, we find that at the September 16, 2001 meeting at Kwon's house, Khan agreed with Royer, Kwon, Aatique, and Hasan to enlist or engage in armed hostility, and that by joining together within the United States to plan a trip abroad, the four conspirators enlisted to serve against the United States.

*Khan*, 309 F. Supp. 2d at 819 (emphasis added).

8

The Fourth Circuit has explained that the distinction between "mere preparation" and a "substantial step" under federal attempt law "is inherently fact-intensive, and it is not always a clear one." *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003).  This is because "if preparation comes so near to the accomplishment of the crime that it becomes *probable* that the crime will be committed absent an outside intervening circumstance, the preparation may become an attempt. " *Id.*  There are therefore two responses to the defendant's argument.  First, when the Court stated in *Khan* that enlistment and engagement can encompass preparations to join an enemy force overseas, it was assessing the sufficiency of the evidence regarding a charge that the defendants *conspired* to violate § 2390.  This is an entirely different inquiry from whether the *Khan* defendants' conduct crossed the line from "mere preparation" to "substantial step" for purposes of federal attempt doctrine; indeed, there was no attempt issue in *Khan* at all. In context, therefore, *Khan* does not stand for the asserted proposition that a defendant can violate § 2390 by engaging in "mere preparation" as that phrase is used in the Model Penal Code and federal attempt law.

Second, the Fourth Circuit has expressly stated that "while words and discussions would usually be considered preparations for most crimes, a specific discussion could be so final in nature that it left little doubt that a crime was intended and would be committed," thus constituting a substantial step.  *Pratt*, 351 F.3d at 136.  This perfectly captures the import of the key meeting overseen by the defendant on September 16, 2001:

> At the meeting, Al–Timimi stated that the September 11 attacks were justified and that the end of time battle had begun.  He said that America was at war with Islam, and that the attendees should leave the United States.  The preferred option was to heed the call of Mullah Omar, leader of the Taliban, to participate in the defense of Muslims in Afghanistan and fight against United States troops that were expected to invade in pursuit of Al–Qaeda.  As support for this proposition, Al–Timimi cited "fatwas," or religious rulings, that called on Muslims to defend Afghanistan against impending American military action.  According to Hasan and Kwon, Khan asked

9

> to review the fatwa, and Al–Timimi gave it to him to read, but advised Khan to burn it after he had read it.  The other option presented to the attendees was to make "hijrah," that is, to relocate their families to a Muslim country.  Royer said that anyone who wanted to fight in Afghanistan would first need to participate in military training, that the LET camps in Pakistan were a good place to receive that training, and that Royer could facilitate their entry to the LET camps.

*Khan*, 309 F. Supp. 2d at 810 (exhibit citation omitted).  The discussion on September 16 was thus "so final in nature that it left little doubt that a crime was intended and would be committed."  *Pratt*, 351 F.3d at 136; s*ee also United States v. Muratovic*, 719 F.3d 809, 816 (7th Cir. 2013) (defendant's conduct exceeded mere preparation when, among other inculpatory acts, he "discussed with his co-conspirators disguises the team would wear during the robbery"); *United States v. Brown*, 604 F.2d 347, 350 (5th Cir. 1979) (defendant who "made a firm agreement . . .  for acquisition of the explosives needed to blow up [a] store" and sent others "to reconnoiter and inspect the building in preparation for its destruction" was guilty of an attempt).

Of course, *Davis* held that when Congress passed § 924(c), it intended that courts would interpret its crime-of-violence provision using the categorical approach rather than a conduct-specific one.  *Davis*, 139 S. Ct. at 2331.  Accordingly, the government's submission is that, for purposes of § 2390 and federal attempt doctrine, enlistment and engagement will always constitute a substantial step rather than mere preparation.  Seeking to join in armed hostilities against the United States is such a consequential act, and requires such a particularized specific intent, that doing so necessarily makes it probable that a use or threatened use of force will occur.  Under *Pratt*, this is sufficient for a violation of § 2390 to constitute an attempted use of force.

## III.    The Court Should Defer Action on the Defendant's Motion for Leave to Seek a New Trial on Counts 9 and 10.

Finally, the defendant has also sought the Court's leave to file a new motion attacking his

convictions on Counts 9 and 10 for violating 18 U.S.C. § 844(h).  This statute requires a predicate offense that is a federal felony, not a crime of violence.  Even so, the defendant argues that because Count 1 is no longer valid, the guilty verdicts on Counts 9 and 10 are also infirm.

The defendant is wrong.  While the government reserves its right to more fully oppose a future motion, it is important to state now that the defendant's request rests on a faulty premise. The crux of the defendant's argument is that, because Count 1 was "the only weapons conspiracy charged" (ECF No. 460 ¶ 5), the jury's verdicts on Counts 9 and 10 necessarily flowed from *Pinkerton* liability arising from Count 1.  But this is not so.  The Fourth Circuit has held that *Pinkerton* liability for § 924(c) offenses can arise from any conspiracy, so long as the use of firearms in furtherance of that conspiracy was reasonably foreseeable and in furtherance of the conspiracy.  *See, e.g.*, *United States v. Blackman*, 746 F.3d 137, 141 (4th Cir. 2014) (holding that the "evidence was plainly sufficient to support Blackman's conviction under *Pinkerton* for brandishing a firearm during and in relation to a crime of violence in violation of § 924(c)," where the relevant conspiracy was one to commit Hobbs Act robbery).  The defendant here was also convicted of inducing others to conspire to levy war against the United States (Count 3), inducing others to aid the Taliban (Count 5), and inducing others to conspire to violate the Neutrality Act (Count 6).  It is entirely consistent with the record that the use of firearms in support of these conspiracy offenses—entirely unaffected by *Davis*—was reasonably foreseeable to the defendant.

In any event, if the Court were to conclude that Count 1 remains valid, the defendant's motion to further challenge Counts 9 and 10 would become moot.  Accordingly, the government respectfully submits that the Court should defer action on the defendant's request until after it rules on the defendant's renewed motions for judgment of acquittal.

**Conclusion**

For the foregoing reasons, as well as those stated in the government's initial memorandum, the Court should deny the defendant's motions for judgment of acquittal on Counts 1, 7, and 8.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____

Daniel T. Young
Gordon D. Kromberg
John T. Gibbs
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:    daniel.young@usdoj.gov

12

## CERTIFICATE OF SERVICE

I certify that on August 26, 2019, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.


By:  _____/s/_____
                Daniel T. Young
                Assistant United States Attorney
                United States Attorney's Office
                101 West Main Street, Suite 8000
                Norfolk, Virginia 23510
                Office:   (757) 441-6331
                Fax:      (757) 441-6689
                E-mail:   daniel.young@usdoj.gov