IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Case No. 1:04-cr-385 (LMB) |
| ALI AL-TIMIMI, | ) ) ) | |
| *Defendant*. | ) ) | |

**AL-TIMIMI'S SURREPLY TO GOVERNMENT'S "REPLY IN FURTHER SUPPORT"
OF ITS SUPPLEMENTAL MEMORANDUM ON *DAVIS v. UNITED STATES***

In accordance with this Court's order of August 30 [Dkt. No. 463], Defendant Dr. Ali Al-Timimi respectfully submits the following response to the government's "reply in further support" [Dkt. No. 461] that it filed on August 26. As outlined below, the government's arguments are unavailing and Al-Timimi's pending motions for acquittal should be granted.

**I.   The categorical approach does not permit the government to excise the conspiracy prongs from the predicates it asserts.**

The government continues to assert three predicates—Predicate A, Predicate C, and Predicate I—that it suggests might satisfy the force clause of § 924(c)(3)(A). Although the defense has pointed out that all three could be satisfied by the mere formation of a conspiracy (an offense the government concedes is not a force-clause offense), the government responds that this is immaterial because its supplemental brief had "explicitly stated that it was not relying on" the conspiracy prongs in support of its case. Govt. Reply [Dkt. No. 461] at 1.

The defense fully understands that the government wishes—post-*Davis*—to excise the conspiracy prongs from each of the predicates it asserts. The question is whether the categorical

approach permits it to subdivide them in this manner. For the reasons outlined in the defense's opening brief, it does not.

The jury was instructed to choose among "*nine* enumerated crimes," Trial Tr., April 18, 2005 [Dkt. No. 156] at 2319-20 (individually labeled A through I, *id*. at 2318-19)—not the approximately 18 that would exist under the government's conception. Of these nine, all three that the government asserts here could be satisfied by the mere formation of a conspiracy. And as the Supreme Court has explained, a court applying the categorical approach "must presume that the conviction 'rested upon *nothing more than the least of the acts'* criminalized." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2011) (*quoting Johnson v. United States*, 559 U.S. 133, 137 (2010)) (emphasis added). Because conspiracy cannot satisfy the force clause, neither can Predicates A, C, or I.

Moreover, as previously noted, such conspiracy prongs were precisely what the government relied upon to secure the convictions of Chapman and Khan—principals to the same § 924(o) conspiracy that Count 1 charges Al-Timimi with aiding and abetting. *See* Def. Brief [Dkt. No. 459] at 3-5. Khan and Chapman were both *acquitted* of direct violations of the Neutrality Act (one of the predicates the government attempts to assert here); instead, their § 924(o) convictions were predicated entirely on other conspiracy offenses. *See id*. at 4.

In response, the government claims that the *Khan* case was different because (according to the government) it had asserted "*only* conspiracy offenses" as predicates. The government writes:

> the defendant claims that the government is advancing inconsistent positions in light of the fact that the defendants' convictions for § 924 offenses in *United States v. Khan*, 309 F. Supp. 2d 789 (E.D. Va. 2004), arose from conspiracy predicates. But in *Khan*, the relevant predicates were explicitly charged in the superseding indictment *and included only conspiracy offenses*. (See case no. 1:03-cr-296 (ECF No. 167).) The relevant predicates here, by contrast, appeared in the government's opposition to the defendant's

2

        motion for a bill of particulars (ECF No. 23 at 6–7) and in the Court's jury instructions, and these nine predicates included *both* conspiracy *and* substantive offenses. The two cases were thus charged under different theories of liability and are not the same for purposes of assessing any *Davis* errors.

Govt. Reply at 4 (emphasis added).

    But the government again appears to be simply mistaken. In actuality, the superseding indictment in *Khan* did *not* charge the relevant predicates—an omission that led multiple defendants to file motions for a bill of particulars, which the Court granted in relevant part. *See* Case No. 1:03-cr-296, Dkt. No. 333 (order). The government then filed a bill of particulars, which (contrary to the government's claim here) was *not* limited to "only conspiracy offenses," but in fact included virtually all of the same predicates that the government asserted against Al-Timimi. *See* Case No. 1:03-cr-296 (E.D. Va.), Dkt. No 336 (bill of particulars) (attached as **Exhibit A**) at 2-3 (listing §§ 960, 2390, 2384 as predicates to the overarching § 924(o) conspiracy charged in Count 11); *see also* 4-8 (listing multiple non-conspiracy offenses as predicates to various § 924(c) charges against Khan, Chapman, and others).

    In sum, the government is attempting to rest an accomplice liability case on predicates that no principal was convicted under, and that two §924(o) principals (Khan and Chapman) were actually *acquitted* of. Of course, Al-Timimi was tried separately from the *Khan* defendants and his case involves a separate record.[1] But the relevant point is doctrinal rather than evidentiary: the government is in no position to simply excise the conspiracy prongs from Predicates A, C, and I, when such conspiracy prongs were precisely what it relied upon to secure

---

[1] The defense respectfully disagrees with certain portions of the *Khan* opinion related to Al-Timimi, but any such disagreements are not before the Court. Nonetheless, because the government quoted the opinion at length in its supplemental memorandum, Dkt. No. 455 at 20-21, the defense is compelled to point out that it does not in fact support any of the predicates the government asserts.

the principals of the principals.

## II. In any event, none of the predicates are force-clause offenses when evaluated without reference to conspiracy.

The government next repeats its claims that the Neutrality Act, the treason statute, and the enlistment statute of § 2390 are force-clause offenses. The government's arguments are unavailing.

### A. The Neutrality Act is not a force-clause offense.

As previously observed, the Neutrality Act is not a force-clause offense because it can be violated without the use of force—namely, by providing money or preparatory assistance to a relevant foreign enterprise without actually participating in it. Def. Reply at 6-7. For example, an American who, from within the United States, funded a group of guerilla rebels in a friendly nation would be in violation of the Neutrality Act without implicating the force clause.

In response, the government suggests that this defendant could be viewed as aiding and abetting a force-clause offense under 18 U.S.C. § 2(a). But its argument rests on a loose conception of accomplice liability that is unmoored from Section 2. For a defendant to be charged as an accomplice, there must be a principal who commits the relevant offense. The hypothetical guerilla rebels would *not* be principals because they would be located outside the United States and thus outside the purview of the Neutrality Act. Thus, the "money" and "means" prongs of the Neutrality Act are not mere surplusage—the Act *must* treat persons who violate the Act under these prongs as principals because Section 2 would not otherwise cover them.

Moreover, even if the government's conception of the Neutrality Act were correct, the record would not support its use as a predicate in this case. *See* Def. Br. [Dkt. No. 459] at 19-20.

### B.     The treason statute is not a force-clause offense.

The defense discussed the treason statute extensively in its opening brief and rests primarily on the arguments made there. *See* Def. Br. 7-13. As previously observed, the government's assertion of treason as a predicate depends on a multitude of novel arguments, including *all* of the following:

- That treason requires the use of force—even though there exist multiple reported cases of treason convictions for non-violent conduct. *See*, *e.g.*, *Burgman v. United States*, 188 F.2d 637 (D.C. Cir. 1951) (affirming treason conviction for broadcasting Nazi propaganda during World War II); *Gillars v. United States*, 182 F.2d 962 (D.C. Cir. 1950) (same); *United States v. D'Aquino*, 192 F.2d 338 (9th Cir. 1951) (affirming treason conviction for broadcasting programs intended to undermine American military morale).

- That the Section 924(c)(3)(A) force clause incorporates the "divisibility" doctrine—even though that doctrine was created to address special complexities associated with the "modified categorical approach" (under statutes with enumerated predicates such as ACCA) and the government cites no cases applying it outside of that context. *Id*. at 11-12.

- That the treason statute is in fact "divisible" and defines two separate crimes (aid and comfort vs levying war)—even though both prongs have identical punishment criteria, have the same essential elements, can overlap factually, and are both characterized by breach of a duty of allegiance to the United States. *See* Def. Br. [Dkt. No. 459] at 12.

- That the "levy war" method of treason requires the use of force—even though the Supreme Court has stated that it does not. *See Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 126 (1807) ("It is not the intention of the court to say that no individual can be guilty of

5

this crime who has not appeared in arms against his country. On the contrary, *if war be actually levied*, that is, if a body of men be actually assembled for the purpose of effecting by force a treasonable purpose, *all those who perform any part, however minute, or however remote from the scene of action*, and who are actually leagued in the general conspiracy, *are to be considered as traitors*.") (emphasis added); *see also* Def. Br. [Dkt. No. 459] at 8. And indeed this has to be the case: If a defendant's guilt were instead dependent on the use of force then persons whose roles were too "minute [or] . . . remote from the scene of action" to be tied to a force-yielding principal could escape treason liability. But *Bollman* makes clear that force is not an element: all such persons are guilty of treason regardless of the government's ability to tie them to any such principal.

- That the government can establish, beyond a reasonable doubt, that the jury would have concluded that some principal was engaged in a § 924(o) conspiracy to commit § 2381 treason (as opposed to § 2384 seditious conspiracy) in a manner that necessarily involved the use of force—even though no principal was convicted under such a theory. *See* Def Br. [Dkt. No. 459] at 20-21.

For these and other reasons described in the defense's opening brief, the government's attempt to utilize the treason statute as a predicate fails.

### C. Section 2390 is not a force-clause offense.

Finally, the government repeats its argument that the Section 2390 enlistment statute is a force-clause offense based on its suggestion that the statute be read as requiring the attempted use of force against United States troops. But nothing in the statute's language purports to incorporate such a requirement. As this Court held in *Khan*, for example, "[t]he plain language of

6

the statute 'enlists or is engaged' is not limited to formal enrollment in an enemy military force, but can reach preparations within the United States for joining an enemy force overseas." 309 F. Supp. 2d at 819.[2] By contrast, the doctrine of attempt requires a "substantial step" that *always* requires more than "mere preparation." *See* Def. Br. at 14.

The government counters that the distinction between a "substantial step" and "preparation" is "inherently fact-intensive." This is indeed true, but the defense does not dispute that *some* forms of enlistment or engagement will involve a substantial step. The problem for the government is that the categorical approach is an *elements*-based inquiry, not a fact-based one. *See* Def. Br. at 10-11; *see also Descamps v. United States*, 570 U.S. 254, 266-67 (2013) (reversing Ninth Circuit for "turn[ing] an elements-based inquiry into an evidence-based one"). It is not enough for a statute to *sometimes* encompass force-clause conduct; it must *require* it as an element. Nothing in the statute's language purports to require the attempted use of force against the United States, and the fact that it is punishable by a maximum prison sentence of three years further confirms that it does not.

And again, even if the government's proposed construction of Section 2390 were correct, the record would not support its use as a predicate in this case. *See* Def. Br. at 17-19.

**III.    In the event of verdict indeterminacy, *Yates* requires the verdict to be set aside where, as here, the government is unable to demonstrate harmless-error.**

As the defense has noted, the Supreme Court's rule in *Yates* "requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312

---

[2] The government notes that *Khan* involved a conspiracy to violate Section 2390, rather than a direct violation. This is true, but the Court first had to construe Section 2390 (and in particular, its use of the terms "enlist" and "engage") in order to evaluate that conspiracy charge.

(1957); *see also Zant v. Stephens*, 462 U.S. 862, 881 (1983) ("a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground."). And although *Yates* is subject to ordinary harmless error analysis, *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008), this test places on the government the burden of demonstrating beyond a reasonable doubt that verdict would have returned the same way absent the defective instruction. *See* Def. Br. [Dkt. No. 459] at 15-17.

As previously outlined, the defense's position is that there is no indeterminacy issue in this case: none of the government's predicates are valid force-clause offenses, none are supported by the evidence (under the government's proposed construction of those statutes), and in any event, none can pass harmless error review. *See* Def. Br. at 15-21. But in the event that this Court should sustain any predicate in a manner that creates an indeterminate verdict, the defense respectfully requests seeks a new trial as an alternative form of relief.

**IV. The government's attempt to establish that Al-Timimi had foreknowledge of the principals use of weapons at LET camps relies on a loose form of constructive knowledge that fails the requirements of accomplice liability.**

As an exhibit to its new brief, the government includes a table of citations that purport to show that Al-Timimi had sufficient foreknowledge of Kwon and Hasan's use of weapons at LET to sustain a conviction for accomplice liability. Dkt. No. 461, Ex. A. In fact, the government appears to be relying on a loose theory of constructive knowledge that has been explicitly rejected—particularly after the Supreme Court's intervening opinion in *Rosemond v. United States*, 572 U.S. 65, 76-77 (2014) (holding that an accused accomplice must have complete foreknowledge of every element of the underlying offense).

When a defendant is charged with aiding and abetting a weapons offense, courts have

8

required the government to prove that the accomplice knew to either a practical certainty or actual certainty that the weapon would be involved. *See United States v. Spinney*, 65 F.3d 231, 238-40 (1st Cir. 1995) (under § 924(c) "the government must establish that the [accomplice] knew to a practical certainty that the principal would be using a gun. . . . a rubric that calls for proof verging on actual knowledge.") (internal citations and quotations omitted); *United States v. Donel*, 211 F. App'x 180, 181 (4th Cir. 2006) (same); *see also United States v. Greene*, No. 14-C-431, 2015 U.S. Dist. LEXIS 7871, at *4-5 (E.D. Wis. Jan. 23, 2015) (concluding that *Rosemond* elevates the *Spinney* standard from "practical certainty" to "actual knowledge," thus eliminating any lingering permissible theories of "constructive knowledge").

*Spinney*, for example, involved a defendant who was charged with aiding and abetting a 924(c) offense in connection with a bank robbery that he helped to mastermind. 65 F.3d at 239. Although the court accepted that Spinney "was on notice of the *likelihood* that a gun would be used" (emphasis added), a mere likelihood does not create the necessary foreknowledge to make one an accomplice:

> Here, Spinney did not even enter the bank, and there was no evidence that Kirvan had the weapon in his possession while he and Spinney were together before the robbery, let alone that it was visible or otherwise detectable at that juncture. Put bluntly, *even though Spinney may have spent much time with Kirvan devising the plan, and was on notice of the likelihood that a gun would be used in the course of the robbery*, there is simply no evidence to support a reasoned conclusion that Spinney was practically certain that Kirvan would be armed. *In sum, "likelihood" and "practical certainty" are not equivalent terms*. Applying the practical certainty rubric, we hold that the jury reached its verdict on the section 924(c) count without an adequate evidentiary foundation.

*Id*.; *see also Greene*, 2015 U.S. Dist. LEXIS 7871, at *4-5 (vacating § 924(c) accomplice liability conviction of a bank teller who helped to plan the bank's robbery where the government could demonstrate only "constructive" foreknowledge of the principals' use of a firearm).

In this case, the government's exhibit makes clear that it is relying on an even further

9

disconnected theory of constructive knowledge. The fact that Al-Timimi had heard, from various public sources, of people training with weapons at LET camps would not constitute foreknowledge that Kwon or Hasan would necessarily use any particular weapons in a camp they attended there—particularly when both testified that they never discussed their firearms activities with Al-Timimi in any manner at any time. *See* Dkt. No. 449 at 6-8 (record citations). In fact, it is unclear on the record whether Kwon and Hasan themselves had any particular foreknowledge of what their LET training would entail. Neither testified to having any advanced plan to train with RPG weapons—the subject of additional accomplice liability charges against Al-Timimi under Counts 9 and 10. Thus, the government's foreknowledge theory reveals not only another critical defect in Counts 7 and 8, but further supports Al-Timimi's motion for leave to seek a new trial on Counts 9 and 10.

### V.  The defense takes no position on whether this Court should defer action on its Motion for Leave to Seek a New Trial on Counts 9 and 10.

Finally, the government urges this Court to defer action on the defense's pending Motion for Leave to Seek a New Trial on Counts 9 and 10. The defense defers to this Court's discretion and takes no position on whether the motion should be held under advisement, but is compelled to briefly respond to two of the government's substantive points here.

*First*, the government's reliance on *United States v. Blackman*, 746 F.3d 137, 141 (4th Cir. 2014) is inapposite. *Blackman* merely states the rule of *Pinkerton*, the substance of which neither party disputes. In this case, by contrast, the invalidation of Count 1 would leave the government without a weapons conspiracy on which to rest its *Pinkerton* theory for Counts 9-10. Although the government claims that it could instead rely on one of the alternative conspiracies charged in Count 3 or Count 6, there is little reason to believe the jury reached its verdict in this manner, particularly in light of Count 1's extensive overlap with the weapons counts. *See* Motion

for Leave [Dkt. No. 460] at 4-5; *see also Zant*, 462 U.S. at 881 ("a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground.").

*Second*, Counts 3 and 6 (like Count 1) carefully avoided charging Al-Timimi with actual *membership* in the relevant conspiracies, but instead charged him only with aiding and abetting the members, via an unusual legal theory that permitted Al-Timimi to be convicted of a conspiracy he did not join. Regardless of the validity of that theory (which, as previously noted, the government's own internal practice manual urges its prosecutors to avoid), *Pinkerton* is a separate doctrine that expressly requires the act of joining a conspiracy agreement in order to establish the requisite mens rea. *See* Def. Reply in Support of Count 1 [Dkt. No. 449] at 9-10. Thus, the government's attempt to rest *Pinkerton* liability on Counts 3 or 6 would necessarily involve an impermissible broadening of the indictment (without the involvement of the grand jury) in order to encompass a critical *Pinkerton* element that is absent from its case.

## Conclusion

Defendant Ali Al-Timimi respectfully requests that the Court grant his motions and issue a judgment of acquittal with respect to his convictions under Counts 1, 7, and 8, and to grant his motion for leave to seek a new trial on Counts 9 and 10.

Dated: September 10, 2019            Respectfully submitted,

_____/s/_____
Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu

Jonathan Turley (*pro hac vice*)
The George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
(202) 994-7001 (telephone)
(202) 508-6200 (facsimile)
jturley@law.gwu.edu

Attorneys for Defendant Dr. Ali Al-Timimi

## CERTIFICATE OF SERVICE

I certify that on September 10, 2019, I will file the foregoing document on the CM/ECF system, which will then serve it by electronic notification on all parties of record.

                                         /s/
                           Thomas Michael Huff, Virginia Bar No. 73587
                           Thomas M. Huff, Attorney-at-Law
                           P.O. Box 2248
                           Leesburg, VA 20177
                           Telephone: 703.665.3756
                           Facsimile: 571.354.8985
                           thuff@law.gwu.edu