IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:04-cr-385 (LMB) |
| ) | |
| ALI AL-TIMIMI, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR RELEASE
PENDING APPEAL IN LIGHT OF COVID-19 EMERGENCY**

Pursuant to 18 U.S.C. § 3145(c) of the Bail Reform Act, Defendant Dr. Ali Al-Timimi respectfully submits this emergency motion for conditional release pending his appeal in light of the exceptional circumstances presented by the ongoing COVID-19 pandemic and the uniquely complex posture of this case that has now resulted in the interim completion of the prison sentences for the majority of the counts against him. The remaining Counts 7-10 are all the subject of pending motions with this Court that have at least a substantial likelihood of success in light of intervening Supreme Court authority.

Although Al-Timimi technically still faces a lifetime prison sentence (his motion to have it vacated under *Davis* is pending and this Court last summer ordered the government to show cause why it should not be granted), Section 3145(c) continues to permit this Court to order his conditional release pending appeal when warranted by "exceptional reasons." At least two sets of exceptional reasons exist here.

**First**, the ongoing COVID-19 pandemic has created dangerous conditions of incarceration that are particularly unsafe for Al-Timimi, whose underlying medical conditions

put him at high risk for severe illness or death under current CDC guidelines. Few would contest COVID-19's exceptional nature: The World Health Organization has designated it a global pandemic, the White House has declared it the subject of a national emergency, and the Attorney General has advised the transfer of numerous inmates to home confinement to decrease its risks to their health. As a result, several other Courts have already concluded that the ongoing pandemic meets the "exceptional reasons" criteria of § 3145(c) for issuing conditional release orders. *See United States v. Harris*, 2020 U.S. Dist. LEXIS 53632, *15-18 (D.D.C. March 27, 2020); *see also infra* at 10-11.

**Second**, because of the unusually complex posture of this case, Al-Timimi's time is now fully served on all but four counts—and all four are the subject of pending motions with this Court. As detailed below, these motions result from intervening Supreme Court authority and have at least a substantial likelihood of resulting in acquittal or a new trial—thus entitling Al-Timimi to immediate release. As such, it would be manifestly unjust for Al-Timimi to face the prospect of a death sentence in prison on charges for which he was entitled to reversal.

Moreover, there is nothing particularly remarkable about the relief that Al-Timimi seeks here. Al-Timimi previously remained free on bail throughout the duration of his trial, and even after conviction, based on this Court's findings that he was not a flight risk and that the legal issues were sufficiently complex to warrant his continued release. Al-Timimi scrupulously followed the terms of this Court's release order. Al-Timimi has family in the Washington metropolitan area with whom he can safely shelter in place and can submit to the same electronic monitoring he did while awaiting sentencing.

## BACKGROUND

1. At its core, this case centers on allegations that Dr. Ali Al-Timimi—a

computational biologist and prominent Muslim lecturer—made comments at a dinner shortly after 9/11 that the government claims helped inspire certain men in attendance to go forward with a plan to travel to a camp in Pakistan called Lashkar-e-Taiba (LET), a group the United States would later designate as a terrorist organization. Under assorted theories of inchoate liability, Al-Timimi was charged with and convicted of ten felonies. *See* Dkt. Nos. 41 (superseding indictment) & 107 (verdict). In a result that the Court described as "very draconian," Dkt. No. 147 at 20, he received a mandatory lifetime prison sentence. *See* Dkt. No. 132 (judgment form).

2. Although Al-Timimi's trial and sentencing occurred in 2005, his direct appeal remains pending due to a series of complex post-trial proceedings that have involved classified briefing and evidence.

3. Al-Timimi remained free on bail throughout the duration of his trial. Even after his conviction, he was permitted to remain free pending sentencing, based on this Court's finding that he was not a flight risk and that his case involved substantial legal issues. Trial Tr., April 26, 2005 [Dkt. No. 161] at 2416-19; *see also* 18 U.S.C § 3143(a)(2) (criteria for release pending sentencing).

4. After his sentencing hearing, however, his mandatory lifetime prison sentence subjected him to detention under the Bail Reform Act and he was remanded into custody on July 13, 2005. Trial Tr., July 13, 2005 [Dkt. No. 147] at 37; *see also* 18 U.S.C. §§ 3143(b)(2) & 3142(f)(1)(B).

5. Because Al-Timimi has been incarcerated since July 2005, his prison sentences are now fully served on Counts 1-6. The remaining Counts 7-10 are the subject of active motions before this Court based on intervening Supreme Court authority. *See* Dkt. Nos. 432 & 445

(seeking acquittal on Counts 1, 7, and 8 under intervening Supreme Court authority that has invalidated the residual clause on which they were premised) and Dkt. No. 460 (seeking leave to file a motion for new trial on Counts 9 and 10 due to their *Pinkerton* reliance on the Count-1 conspiracy plus additional intervening Supreme Court authority concerning accomplice liability). His incarceration status is summarized as follows:

| Count | Sentence imposed | Status |
|---|---|---|
| **1**—Aiding/abetting a § 924(o) firearms conspiracy | 121 months | Sentence Complete |
| **2**—Soliciting others to levy war under § 373 | 121 months (concurrent) | Sentence Complete |
| **3**—Aiding/abetting a conspiracy to levy war under §2384 | 121 months (concurrent) | Sentence Complete |
| **4**—Attempting to contribute services to Taliban under 50 U.S.C. § 1705(b) | 120 months (concurrent) | Sentence Complete |
| **5**—Inducing others to aid the Taliban under 50 U.S.C. § 1705(b) | 120 months (concurrent) | Sentence Complete |
| **6**—Aiding/abetting a conspiracy to violate the Neutrality Act under § 371 | 60 months (concurrent) | Sentence Complete |
| **7**—Inducing others to use firearms under § 924(c) | 360 months (consecutive to counts 1-6) | Approximately 25 years left to serve |
| **8**—Inducing others to use firearms under § 924(c) | Life Imprisonment | (Life) |
| **9**—Inducing others to carry explosives under § 844(h)(2) | 120 months (consecutive to counts 1-8) | Full 10 years left to serve (to begin consecutive to counts 1-8) |
| **10**—Inducing others to carry explosives under § 844(h)(2) | 240 months (consecutive to counts 1-9) | Full 20 years left to serve (to begin consecutive to counts 1-9) |

*See* Dkt. No. 132 (Judgment) pp. 1-3 (also attached to Dkt. No. 433 as Ex. E).[1]

      6.      Al-Timimi is currently housed at the USP Florence ADMAX prison in Florence, Colorado. The prison has a history of failing to address Al-Timimi's serious medical needs. As

---

[1] Al-Timimi's good behavior credit under 18 U.S.C. § 3624(b) has not yet been calculated and is not factored into these numbers.

4

recently as last summer, Al-Timimi suffered from a dental abscess that presented with high fever, swelling, and severe pain. The condition went untreated for weeks and required intervention from his attorneys to secure adequate medical care. *See* August 16, 2019 Letter to Warden, USP Florence (attached as Exhibit E). It is also the understanding of undersigned counsel that any medical transfer of an inmate from the ADMAX H-Unit requires special FBI approval that is not readily granted.

7. COVID-19 is an infectious disease caused by the spread of the novel human coronavirus SARS-CoV-2. *See* Chris Beyrer, MD, MPH,[2] *Declaration for Persons in Detention and Detention Staff* ("Beyrer Decl.") (attached as Exhibit A) ¶¶ 4-5. Acute cases may result in severe respiratory distress, pneumonia, organ failure, sepsis, and death. *Id*. ¶¶ 8-12. Following its emergence in late 2019, the disease rapidly propagated throughout the world and was designated a pandemic by the World Health Organization on March 11, 2020.[3] *Id*. ¶ 6. Two days later, the White House declared it the subject of a national emergency.[4] *Id*.

8. As of April 27, 2020, COVID-19 is responsible for nearly 1 million confirmed infections and over 55,000 deaths in the United States, with statistics being continually updated.[5]

---

[2] As a member of the National Academy of Medicine and an authority in infectious disease epidemiology, Dr. Beyrer has submitted declarations describing the impact of COVID-19 on incarcerated persons in several recent federal litigation matters, including *Harris*, 2020 U.S. Dist. LEXIS 53632 (D.D.C. March 27, 2020). Undersigned counsel has contacted Dr. Beyrer and received the attached declaration to use in this case as well. Dr. Beyrer has not treated Al-Timimi.

[3] *See also* World Health Organization, *COVID-19 Situation Report 51*, *available at*: https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf

[4] *See also* The White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, *available at*: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[5] *See* CSSE at John Hopkins University, *COVID-19 Dashboard*, *available at*: https://tinyurl.com/uwns6z5 (last visited April 27, 2020).

As part of a coordinated containment effort, the vast majority of states have issued emergency orders requiring non-essential businesses to close and persons to remain in their homes unless engaged in certain permissible activities.[6] Likewise, this Court has recently issued a General Order suspending "all non-critical and non-emergency in-person proceedings . . . through June 10, 2020," absent further order by the Chief Judge.[7]

9. Medical authorities have identified incarcerated persons as being particularly vulnerable to COVID-19. Beyrer Decl. ¶¶ 20-30. Although it is unclear how many inmates within the federal system have been tested for the virus, BOP currently reports that COVID-19 is responsible for 1,046 confirmed cases and 28 deaths among federal inmates, and 330 confirmed cases among BOP staff.[8] On March 26, the Attorney General issued a memorandum directing the Board of Prisons (BOP) to "transfer . . . inmates to home confinement where appropriate to decrease the risks to their health," taking into account (among other things) "the age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines."[9]

10. The CDC's published guidance for healthcare professionals advises that persons of any age with "moderate-to-severe asthma" and heart conditions are among those "at high risk for severe illness from COVID-19."[10] Dr. Beyrer— a professor of epidemiology and medicine at

---

[6] *See*, *e.g.*, Virginia Executive Order 55, *available at*: https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-55-Temporary-Stay-at-Home-Order-Due-to-Novel-Coronavirus-(COVID-19).pdf

[7] U.S. District Court for the Eastern District of Virginia, General Order No. 2020-12, *available at*: http://www.vaed.uscourts.gov/notices/Gen%20Order%202020-12%20Court%20Operations%20Updated%20Notices.pdf

[8] *See* BOP, *COVID-19 Cases*, *available at*: https://www.bop.gov/coronavirus/ (last visited April 27, 2020).

[9] Memorandum for Director of Bureau Prisons at 1, *available at*: https://www.justice.gov/file/1262731/download

[10] CDC, *Information for Healthcare Professionals: COVID-19 and Underlying Conditions*,

the John Hopkins Bloomberg School of Public Health—similarly warns that persons with hypertension and asthma, as well as those over the age of 50, face a greater risk of serious illness or death from COVID-19. Beyrer Decl. ¶¶ 13-14.

11.    Al-Timimi is 56 years old and has a lifelong history of moderate-to-severe asthma that is currently controlled with two prescription inhalers. *See* Declaration of Dr. Sahera Al-Timimi (attached as Exhibit B); *see also* Declaration of Thomas M. Huff (attached as Exhibit C). Al-Timimi has also been diagnosed with hypertension, for which he takes several prescribed medications. *Id.* As such, the CDC guidelines place him at high risk for severe illness should he contract COVID-19.

12.    Al-Timimi has family in the Washington metropolitan area with whom he can safely shelter in place. Sehara Al-Timimi Decl. ¶ 3. Al-Timimi was previously permitted to remain free pending his sentencing under electronic monitoring and other conditions that he scrupulously followed. *See* U.S. Probation Office, Status Report of July 8, 2005 (attached as Exhibit D) (confirming Al-Timimi's full compliance with conditions of release). On release, Al-Timimi would follow those same terms again now.

## ARGUMENT

**I.     18 U.S.C. § 3145(c) vests this Court with the ongoing authority to order Al-Timimi's release pending appeal for "exceptional reasons."**

The criteria under which a convicted defendant may be released from prison pending his or her appeal are governed by 18 U.S.C. §§ 3143(b) and 3145(c). Section 3143(b)(1) requires a finding that the defendant "is not likely to flee or pose a danger" to the community, that his or her appeal is not for purposes of delay, and that it raises a "substantial issue of law or fact" that is

---

available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html

7

likely to result in reversal or new trial. 18 U.S.C. § 3143(b). A "substantial question" is "a 'close' question or one that very well could be decided the other way. . . . Whether a question is 'substantial' must be determined on a case-by-case basis." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (citation omitted).

Al-Timimi has already satisfied these criteria once before when this Court allowed him to remain free after conviction pending his sentencing hearing. Noting that "Mr. Ali Timimi has not indicated in any respect that there's any likelihood of flight" and "has been here every day on time," this Court denied the government's request that he be taken into immediate custody and found that his case presented sufficiently substantial legal issues that warranted the continuation of his bond:

> MR. KROMBERG: Your Honor, I would note that the defendant is now facing a -- mandatory sentences of life plus 30 years plus whatever guideline sentence is, and the statute says that the Court shall order that he be detained under these circumstances.
>
> THE COURT: Unless the Court finds that there might be a reasonable basis for some revocation -- or some reversal of the jury's verdict. I think the legal issues in this case are sufficiently dense that I'm going to give the defendant the benefit of the doubt, and I'm going to let him remain out on bond.

Trial Tr., April 26, 2005 [Dkt. No. 161] at 2416-19. After sentencing, however, the mandatory lifetime prison sentence associated with Counts 7 and 8 rendered him ineligible for continued release under the additional criteria of § 3143(b)(2) and his bond was revoked. *See* 18 U.S.C. §§ 3143(b)(2) & 3142(f)(1)(B) (excluding persons convicted of an offense for which the maximum sentence is life imprisonment). As a result, he was remanded into custody on July 13, 2005.

Independent of § 3143(b), however, a separate statute—18 U.S.C. § 3145(c)—gives Al-Timimi another avenue for conditional release if he can make a heightened showing that such release would be warranted by "exceptional reasons." That statute provides:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the

8

>conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). Al-Timimi satisfies this criteria: Although he is subject to detention under section 3143(b)(2) based on his current lifetime prison sentence, he meets the conditions of (b)(1) as outlined above because he has raised substantial questions of law in motions that are actively pending before this Court. And the Fourth Circuit has confirmed that the power to order relief under § 3145(c) is available to Circuit Court and District Court judges alike. *United States v. Goforth*, 546 F.3d 712, 714-15 (4th Cir. 2008).

"Exceptional reasons" are generally defined by circumstances that are "clearly out of the ordinary, uncommon, or rare," *see United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007) (citation omitted), and may be found when "there is a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) (citations and quotation omitted). The test is "necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as exceptional." *Id.* (citation omitted). Finally, the "appropriate[ness]" of a person's detention "means 'suitable or proper in the circumstances' and connotes a sense of practical decency." *United States v. Harris*, 2020 U.S. Dist. LEXIS 53632, *16 (D.D.C. March 27, 2020) (*quoting* Oxford English Dictionary Online, (March 2020)).

Examples of exceptional circumstances have frequently included medical issues and health concerns. *See*, *e.g.*, *Harris*, 2020 U.S. Dist. LEXIS 53632, at *15-18 (conditional release ordered because of ongoing COVID-19 pandemic); *United States v. Morales*, No. 1:16 CR 97-2, 2016 U.S. Dist. LEXIS 154768, at *7 (W.D.N.C. Nov. 7, 2016) (conditional release permitted where defendant was pregnant); *United States v. Kaquatosh*, 252 F. Supp. 2d 775, 779-80 (E.D.

9

Wis. 2003) (conditional release for reasons that included substance abuse treatment).

      **II.**      **Exceptional circumstances here warrant Al-Timimi's conditional release pending appeal.**

Operating under this framework, there are at least two sets of exceptional circumstances that warrant Al-Timimi's conditional release in this case—first, the ongoing COVID-19 pandemic and his underlying health conditions that put him at high risk of developing severe illness, and second, the substantial likelihood of unjust confinement given Al-Timimi's pending legal challenges to Counts 7-10. They are discussed in turn.

      **A.**      **The exceptional circumstances of the COVID-19 pandemic warrant conditional release for Al-Timimi, whose underlying health conditions place him at high risk for severe illness under CDC guidelines.**

As outlined above, *supra* at 5, the COVID-19 pandemic is a global emergency of historic proportions that poses a severe threat to the medically vulnerable and an unprecedented challenge to all branches and levels of government. At present, the virus is responsible for nearly 1 million confirmed infections and over 55,000 deaths in the United States. *Id*. Its exigencies are particularly acute for the incarcerated. *Id*. at 6. Although it is unclear how many federal inmates have been tested for infection, the BOP currently reports nearly 1,400 confirmed cases among inmates and staff and 28 inmate deaths. *Id*. Moreover, because of its frequent spread by persons who are asymptomatic, the virus is capable of quickly invading a prison community before its presence has been detected. *See* Beyrer Decl. ¶ 18. As a result, the Attorney General has directed the BOP to transfer inmates to home confinement where feasible—specifically referencing CDC guidelines for high-risk persons. *Supra* at 6.

Operating against this backdrop, multiple federal courts have already concluded that the COVID-19 pandemic meets the "exceptional reasons" standard of § 3145(c) and accordingly ordered the conditional release of inmates otherwise subject to confinement under the Bail

10

Reform Act—particularly those with underlying health conditions. *See United States v. French*, No. 1:12-cr-00160-JAW, 2020 U.S. Dist. LEXIS 56155, at *29 (D. Me. Mar. 31, 2020) (granting § 3145(c) release of defendant in light of COVID-19 given his asthma condition and the Court's observation that his appeal presented a substantial question of law); *Harris*, 2020 U.S. Dist. LEXIS 53632, at *15-18 (granting § 3145(c) release of inmate even with no apparent underlying health issues); *United States v. McKenzie*, 2020 U.S. Dist. LEXIS 55503, at *9 (S.D.N.Y. Mar. 30, 2020) (granting § 3145(c) release of inmate of who suffers from asthma in light of COVID-19); *United States v. Witter*, No. 19-Cr-568 (SHS), 2020 U.S. Dist. LEXIS 53189, at *1-6 (S.D.N.Y. Mar. 26, 2020) (same for 57-year-old inmate who suffers from hypertension for which he takes medication); *United States v. Lopez*, No. 19-CR-116 (KMW) (JLC), 2020 U.S. Dist. LEXIS 59957, at *5-7 (S.D.N.Y. Apr. 6, 2020) (same for inmate with history of asthma and kidney disease); *United States v. McDuffie*, No. 19-CR-212 (VEC), 2020 U.S. Dist. LEXIS 59594, at *3-4, 10-12 (S.D.N.Y. Apr. 3, 2020) (same for inmate who "suffers from rheumatoid arthritis[], high blood pressure, and cardiac issues, all of which increase his risk of contracting COVID-19 and of experiencing complications from any such infection.").

Al-Timimi meets these same criteria. As outlined above, Al-Timimi is 56 years old and has a lifelong history of moderate-to-severe asthma that is controlled with two prescription inhalers. *Supra* at 7. He also suffers from hypertension for which he takes several prescription medications. *Id*. In short, he is precisely the sort of person whom the CDC, and authorities such as Dr. Beyrer, warn is at high risk of grave illness should he contract COVID-19. These warnings are further corroborated by media case reports of other asthma patients developing severe COVID-19 disease and requiring intubation or other advanced life support.[11]

---

[11]   For example, David Lat, a legal journalist and former AUSA, developed severe COVID-

Moreover, the USP ADMAX prison where Al-Timimi is housed has a previous history of failing to address his serious medical needs, even necessitating the intervention of his attorneys to secure appropriate care. *See supra* at 4-5; s*ee also* Beyrer Decl. ¶ 29 (noting that "detention facilities typically lack the necessary medical facilities to isolate or treat persons infected with COVID-19."). Thus, as a practical matter, Al-Timimi is likely to face serious challenges caring for himself if he becomes infected. It is also the understanding of undersigned counsel that any medical transfer from the USP ADMAX H-Unit requires special FBI approval that is not readily granted.

To be sure, not every defendant's case will warrant the same relief. Courts have properly denied § 3145(c) motions relating to COVID-19 for defendants who lack underlying health conditions, present flight risks, or pose a danger of violence to the community. *See*, *e.g.*, *United States v. Armstead*, 2020 U.S. Dist. LEXIS 62911, at *6-7 (D.D.C., April 10, 2020) (§ 3145(c) relief denied to defendant convicted of sex trafficking by force); *United States v. Hawkins*, No. 5:19-cr-87, 2020 U.S. Dist. LEXIS 64111, at *4-5 (N.D. Ohio Apr. 13, 2020) (same for inmate who did not allege a relevant underlying condition and who remained a flight risk and danger to community based on history of violent crime). But in this case, Al-Timimi has previously satisfied the Court that he was not a flight risk and that his case raised substantial legal issues that warranted his release pending sentencing. Those same determinations, combined with his medical conditions that place him at high risk of severe illness from COVID-19, warrant his release pending appeal under the criteria of § 3145(c).

---

19 disease that required him to be intubated on a ventilator for six days, despite being an otherwise healthy 44-year-old male. Notably, Mr. Lat's sole reported underlying health condition was asthma. *See* David Lat, *I spent six days on a ventilator with covid-19. It saved me, but my life is not the same.*, THE WASHINGTON POST, April 9, 2020, *available at*: https://www.washingtonpost.com/opinions/2020/04/09/my-near-death-experience-ventilator/

### B. Because Al-Timimi's pending challenges to Counts 7-10 have a substantial likelihood of success, there is a high risk of unjust confinement absent relief from this Court.

The exceptional circumstances of the COVID-19 pandemic and the risks it poses to Al-Timimi's health are made more acute by the fact that his time is now fully served on Counts 1-6. The only counts remaining (*i.e.*, Counts 7-10) are the subject of active motions with this Court that have at least a substantial likelihood of success in light of intervening Supreme Court authority. As such, it would be particularly unjust for Al-Timimi to continue to remain incarcerated on counts for which he is entitled to reversal. His ongoing legal challenges to these remaining counts are described below.

**Counts 1, 7, and 8** are the subject of pending motions for acquittal based on intervening Supreme Court authority. *See* Dkt. No. 432 (Counts 7 and 8) & Dkt. No. 445 (Count 1). As outlined in Al-Timimi's most recent supporting brief, *see* Dkt. No. 459, the Supreme Court's decision last summer in *United States v. Davis*, 139 S. Ct. 2319 (2019) has rendered these counts unsustainable by invalidating the "residual clause" of 18 U.S.C. § 924(c)(3)(B) on which they were premised. *Id*. at 2336. This Court has already ordered the government to show cause as to why Al-Timimi's motions should not be granted, Dkt. No. 453, and several related defendants have already seen their § 924(c) & (o) convictions vacated under motions substantially similar to Al-Timimi's. *See Royer v. United States*, 324 F. Supp. 3d 719, 742 (E.D. Va. 2018); *Khan v. United States*, 330 F. Supp. 3d 1076, 1098 (E.D. Va. 2018); *Chapman v. United States*, 326 F. Supp. 3d 228, 248 (E.D. Va. 2018). Thus, Al-Timimi's challenges have a substantial likelihood of success as well.

Notably, the mandatory lifetime prison sentence that Al-Timimi received under Counts 7 and 8 is the only factor necessitating his resort to § 3145(c) relief at all. *See* 18 U.S.C. §§

13

3143(b)(2) and 3142(f)(1)(B). Otherwise, he would be eligible to seek release under the less stringent standard of 18 U.S.C. § 3143(b)(1), which does not require a heightened showing of "exceptional reasons." As the Second Circuit has observed, these are precisely the sorts of circumstances that warrant § 3145(c) relief:

> We are confronted here with a most unusual factual and legal situation, one that fully justifies the exercise of discretion by the district court. The statute of conviction requires proof of violence, and the existence *vel non* of that element is said to present a substantial question on appeal. *It is that very violence that mandates detention under the provisions of the Bail Reform Act. The element of the crime called into question on appeal is the element of the bail statute that bars release.* Because this is so, DiSomma will have been confined unjustly if he prevails on appeal. In this case, prevailing on appeal may well result in dismissal of the indictment, since failure of evidence of violence is the kind of factual insufficiency that warrants dismissal.
>
> Since DiSomma poses no risk of flight and no danger to the community and has presented a substantial question on appeal, violence is the only bail criterion at issue. It is clear that had DiSomma been convicted of a non-violent crime, he would have been released by the trial judge because he fulfilled the requirements of section 3143(b)(1).

*United States v. DiSomma*, 951 F.2d 494, 497-98 (2d Cir. 1991) (emphasis added) (affirming release of defendant pending appeal). The same is true here: Al-Timimi's lifetime prison sentence under Counts 7 and 8 is the very element that prevents his release under the more lenient standards of the ordinary bail statute. Because this is so, he will have been confined unjustly if he prevails either before this Court or on appeal. Thus, because Al-Timimi has "presented a substantial question" of reversal in a series of pending motions, he too should be entitled to the same relief.

**Counts 9 and 10** are the subject of a separate pending motion for leave to seek a new trial. Dkt. No. 460. As detailed in that motion, Counts 9 and 10 depend on a *Pinkerton* theory, which in turn relies on the conspiracy charged in Count 1 that has been rendered unsustainable under Davis. *See id*. at 2-5; *see also United States v. Rosas-Fuentes*, 970 F.2d 1379, 1383 (5th Cir. 1992) ("We also agree that [defendant's] conviction for possession could rest only upon his

14

participation in the conspiracy under the *Pinkerton* rule. A reversal of the conspiracy conviction causes the possession conviction to fall."). As further outlined in his motion, there is yet another intervening Supreme Court decision, *Rosemond v. United States*, 572 U.S. 65, 76-77 (2014), that prevents the government from attempting in the alternative to rest Counts 9 and 10 on ordinary (*i.e.*, non-*Pinkerton*) theories of accomplice liability. *See* Dkt. No. 460 at 3-4 & n.1. In short, if Al-Timimi's pending challenges to Counts 1, 7, and 8 succeed, there is a substantial likelihood that his challenges to Counts 9 and 10 will succeed as well—thus entitling him to immediate release.

Moreover, several other intervening developments further bolster his likelihood of success, either here or on future appeal. For example:

- **Newly released evidence**: Al-Timimi has a separate active motion before this Court concerning newly released evidence, which has been pending since 2015. Dkt. Nos. 409-10. Supporting briefs have been submitted through this Court's designated Classified Information Security Officer according to protocol. Notably, the document at the center of this motion has been recently declassified and the defense has been provided with a new version that contains fewer redactions. Counsel intend to file an updated brief after further consultation with their client.

- **Intervening First Amendment developments**: In the years since Al-Timimi's conviction, the Supreme Court has recognized—though not yet defined the contours of—a solicitation doctrine to its First Amendment jurisprudence. *See United States v. Williams*, 553 U.S. 285, 297 (2008); *see also* Brief for Professor Eugene Volokh as Amicus Curiae, *United States v. Sineneng-Smith*, Case No. 19-67, pp. 3-7, available at: https://www.supremecourt.gov/DocketPDF/19/19-67/124856/20191209115753057_19-

67acVolokh.pdf (summarizing solicitation doctrine and noting that *Williams* "distinguished specific advocacy—for instance, of a crime involving a specific item of contraband, a specific victim, or a specific tangible reward—and abstract advocacy."). Al-Timimi's pending appeal presents a substantial First Amendment question over whether his alleged advocacy—in which he is accused of advising others to make "hijra" (leave the country) and be with the mujahideen anywhere in the world—would meet the high specificity threshold required for criminal solicitation.

- **Novel theories of inchoate liability**: As this Court may recall, the government's conspiracy case against Al-Timimi made use of an unusual legal theory that charged him not with actual *membership* in the charged conspiracy, but instead with aiding and abetting it. *See*, *e.g.*, Superseding Indictment [Dkt. No. 47] at 4 (charging Al-Timimi with aiding and abetting a § 924 firearms conspiracy). At trial, this Court described the theory as presenting "a tough case because it's almost a third level of culpability," Trial Tr., April 18, 2005 [Dkt. No. 156], at 2180, observing that "[i]t certainly is a unique set of legal structure." *Id*. And indeed, an entry in the Justice Department's own internal practice manual advises prosecutors to avoid such a theory. *See* U.S. DEPT. OF JUSTICE, USAM CRIMINAL RESOURCE MANUAL § 2483, available at http://www.justice.gov/usam/criminal-resource-manual-2483-conspiracy-aid-and-abet ("The concept of aiding and abetting a conspiracy has not been widely adopted. A number of district courts have rejected the concept.") (citations omitted) (last visited April 27, 2020).

Counts 7-10 directly depend on this novel conception of conspiracy because they in turn rely on a *Pinkerton* theory. As such, Al-Timimi's pending appeal presents yet

16

another substantial legal argument that, if successful, would entitle him to immediate release.

Of course, it is not necessary for these questions to be resolved now. Rather, the principal aim of the present motion is to protect Al-Timimi from serving unwarranted time, at significant risk to his life, on counts that intervening legal developments have cast serious doubt on.

### III.     Remedy.

As described above, there is nothing remarkable about the relief that Al-Timimi seeks here. Al-Timimi previously remained free on bond pending his sentencing hearing, and scrupulously followed the conditions of his release order. *See* Ex. D (U.S. Probation Office status report, summarizing this Court's release orders and confirming Al-Timimi's "full compliance"). Al-Timimi would continue to do so again now.

The defendant's mother—a retired university professor and mental health specialist—is willing to be his third-party custodian and has agreed that he may stay confined in a dedicated bedroom in her apartment in Northwest Washington, DC. Declaration of Dr. Sahera Al-Timimi ¶ 3 (attached as Exhibit B). A proposed order is attached to the motion at Dkt. No. 465-1.

## CONCLUSION

Al-Timimi's motion for conditional release pending appeal should be granted. Al-Timimi is not a flight risk and has underlying health conditions that render him particularly vulnerable to grave illness from COVID-19. Moreover, the only counts still keeping him imprisoned at all are the subject of pending motions that have at least a substantial likelihood of success under intervening Supreme Court authority. As such, this relief is necessary to guard against the substantial prospect of unjust confinement at the height of an unprecedented pandemic that poses grave risks to the incarcerated and medically vulnerable.


Dated: April 27, 2020                       Respectfully submitted,

                                            _____/s/_____
                                            Thomas Michael Huff, Virginia Bar No. 73587
                                            Thomas M. Huff, Attorney-at-Law
                                            P.O. Box 2248
                                            Leesburg, VA 20177
                                            Telephone: 703.665.3756
                                            Facsimile: 571.354.8985
                                            thuff@law.gwu.edu

                                            Jonathan Turley (*pro hac vice*)
                                            The George Washington University Law School
                                            2000 H Street, NW
                                            Washington, D.C. 20052
                                            (202) 994-7001 (telephone)
                                            (202) 508-6200 (facsimile)
                                            jturley@law.gwu.edu

                                            Attorneys for Defendant Dr. Ali Al-Timimi

## CERTIFICATE OF SERVICE

I certify that on April 27, 2020, I will file the foregoing document on the CM/ECF system, which will then serve it by electronic notification on all parties of record. This Court's designated Classified Information Security Officer has confirmed that the present memorandum may be filed on the public docket.

                                                                 /s/_____
                                          Thomas Michael Huff, Virginia Bar No. 73587
                                          Thomas M. Huff, Attorney-at-Law
                                          P.O. Box 2248
                                          Leesburg, VA 20177
                                          Telephone: 703.665.3756
                                          Facsimile: 571.354.8985
                                          thuff@law.gwu.edu