

**U.S. Department of Justice**

Criminal Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C.  20530*

<u>LIMITED OFFICIAL USE</u>   April 24, 2020

**<u>MEMORANDUM</u>**

TO:             M.D. Carvajal
                Director
                Federal Bureau of Prisons

FROM:           Jennifer A.H. Hodge
                Deputy Assistant Attorney General

SUBJECT:        Extension of Special Administrative Measures Pursuant
                to 28 C.F.R. § 501.3 for Federal Bureau of Prisons Inmate
                Ali Al-Timimi

## <u>SUMMARY</u>

The current Special Administrative Measures (SAM) for Federal Bureau of Prisons (BOP) inmate Ali Al-Timimi expire on April 29, 2020.  The United States Attorney for the Eastern District of Virginia (USA/EDVA) and the Federal Bureau of Investigation (FBI) request that the SAM be renewed.  Al-Timimi was convicted of various terrorism-related crimes in connection with his encouraging of young men to engage in jihad and aid the Taliban.  Based upon the information provided by the USA/EDVA and the FBI, pursuant to 28 C.F.R. § 501.3, there continues to be a substantial risk that Al-Timimi's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons.  Therefore, I am requesting that you continue to implement the SAM to restrict Al-Timimi's access to the mail, the telephone, visitors, other inmates, and the media.  The SAM will commence immediately upon expiration of the prior SAM authorization period and will be in effect for a period of one year, subject to my further direction.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 2

**<u>CONCLUSION</u>**

Based upon information provided to me of Al-Timimi's proclivity for violence, I find that there is a substantial risk that his communications or contacts with persons could result in death

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 3

or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons.  Accordingly, I request that you continue to implement the SAM set forth below in order to restrict Al-Timimi's access to the mail, the telephone, visitors, other inmates, and the media.

1.  **General Provisions**

    a.  **Adherence to Usual United States Marshals Service (USMS), Bureau of Prisons (BOP), and Detention Facility (DF) Policy Requirements -** In addition to the below-listed SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc.  If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM are more restrictive than usual USMS/BOP/DF policies, then the SAM shall control.  If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

    b.  **Interim SAM Modification Authority -** During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

        i.   Does not create a more restrictive SAM;

        ii.  Is not in conflict with the request of the USA/EDVA, FBI, or USMS/BOP/DF, or applicable regulations; and

        iii. Is not objected to by the USA/EDVA, FBI, or USMS/BOP/DF.

    c.  **Inmate Communications Prohibitions -** The inmate is limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else except as outlined and allowed by this document, that could reasonably foreseeably result in the inmate communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting the inmate's ability to communicate (send or receive) threatening or other terrorism-related information.

        The USMS/BOP/DF may permit the inmate to communicate with other SAM inmates orally only during certain predesignated times, the place and duration to be set by the USMS/BOP/DF.  The inmate shall not have any physical contact with other inmates during this predesignated time and all such predesignated

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 4

> sessions may be monitored and/or recorded.  Upon request of the FBI, a copy of
> the recordings will be provided by the USMS/BOP/DF to the FBI to be analyzed
> for indications that the inmate is attempting to pass messages soliciting or
> encouraging acts of terrorism, violence, or other crimes.

2. **Attorney-Client Provisions**

a. **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document -** The
inmate's attorney (or counsel) -- individually by each if more than one -- must
sign an affirmation acknowledging receipt of the SAM restrictions document.  By
signing the affirmation, the attorney acknowledges his or her awareness and
understanding of the SAM provisions and his or her agreement to abide by these
provisions, particularly those that relate to contact between the inmate and his
attorney and the attorney's staff.  The signing of the affirmation does not serve as
an endorsement of the SAM or the conditions of confinement, and does not serve
to attest to any of the factors set forth in the conclusions supporting the SAM.
However, in signing the affirmation, the inmate's attorney, and precleared staff[2]
acknowledge the restriction that they will not forward third-party messages to or
from the inmate.

   i. The USA/EDVA shall present, or forward, the attorney affirmation of
   receipt of the SAM restrictions document to the inmate's attorney.

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and
documented by the USA/EDVA, and who has received and acknowledged receipt of the SAM
restrictions document.  As used in this document, "attorney" also refers to more than one
attorney where the inmate is represented by two or more attorneys, and the provisions of this
document shall be fully applicable to each such attorney in his or her individual capacity.

[2] "Precleared," when used with regard to an attorney's staff, or "precleared staff
member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's
attorney with the inmate's post-sentencing proceedings, who has submitted to a background
check by the FBI and USA/EDVA, who has successfully been cleared by the FBI and
USA/EDVA, and who has received a copy of the inmate's SAM and has agreed as evidenced by
his or her signature to adhere to the SAM restrictions and requirements.  As used in this
document, "staff member" also refers to more than one staff member, and the provisions of this
document shall be fully applicable to each such staff member in his or her individual capacity.  A
"paralegal" will also be governed by any additional DF rules and regulations concerning
paralegals.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 5

ii.     After initiation of the SAM and prior to the inmate's attorney being permitted to have attorney-client privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/EDVA.

iii.    The USA/EDVA shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C. and the USMS/BOP/DF.

b.      **Attorney-Client Privileged Visits -** Attorney-client privileged visits may be contact or non-contact, at the discretion of the USMS/BOP/DF.

c.      **Attorney May Disseminate Inmate Conversations -** The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of preparing the inmate's post-sentencing proceedings -- and not for any other reason -- on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

d.      **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client -** The inmate's attorney's precleared paralegal(s) may meet with the inmate without the need for the inmate's attorney to be present.  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

e.      **Simultaneous Multiple Legal Visitors -** The inmate may have multiple legal visitors provided that at least one of the multiple legal visitors is the inmate's attorney or precleared paralegal.  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.  An investigator or interpreter/translator may not meet alone with the inmate.

f.      **Legally Privileged Telephone Calls -** The following rules refer to all legally privileged telephone calls or communications:

i.      **Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls -** The inmate's attorney's precleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call as well.

ii.     **Inmate's Initiation of Legally Privileged Telephone Calls -** Inmate-initiated telephone communications with his attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 6

handed over to the inmate only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is the inmate's attorney.  This privilege is contingent upon the following additional restrictions:

(1)     The inmate's attorney will not allow any non-precleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

(2)     The inmate's attorney must instruct his or her staff that:

      (a)     The inmate's attorney and precleared staff are the only persons allowed to engage in communications with the inmate.

      (b)     The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's calls, or any other communications, to third parties.

(3)     No telephone call/communication, or portion thereof, except as specifically authorized by this document:

      (a)     Is to be overheard by a third party.[3]

      (b)     Will be patched through, or in any manner forwarded or transmitted, to a third party.

      (c)     Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.c. above.

---

[3] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties.  This section does not allow monitoring of attorney-client privileged communications.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 7

(d)     Shall be in any manner recorded or preserved.[4]  The inmate's attorney may make written notes of attorney-client privileged communications.

(4)     If the USMS/BOP/DF, FBI or USA/EDVA determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

g.     **Documents Provided by Attorney to Inmate -** During a visit, the inmate's attorney may provide the inmate with, or review with the inmate, documents related to his post-sentencing proceedings, and/or material prepared by the inmate's attorney related to such proceedings, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared interpreter/translator.  Any documents not related to the inmate's post-sentencing proceedings must be sent to the inmate via general correspondence and will be subject to the mail provisions of subparagraphs 2.h. and 3.g.  Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

i.     None of the materials provided may include inflammatory materials, materials inciting violence, military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/EDVA and FBI.

ii.     The USA/EDVA may authorize additional documents to be presented to the inmate.  If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document may be obtained from the USA/EDVA without the need to formally seek approval for an amendment to the SAM.

---

[4] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities. This section does not allow monitoring of attorney-client privileged communications.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 8

h.  **Legal Mail**[5] **-** The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail (legal or otherwise), or any portion of its contents, to third parties, except when disclosure of the contents is necessary for the sole purpose of providing necessary legal services related to the inmate's post-sentencing proceedings −− and not for any other reason.

In signing the SAM acknowledgment document, the inmate's attorney and precleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that the attorney and his or her staff are strictly prohibited from forwarding third-party mail to or from the inmate.

3.  **Inmate's Non-legal Contacts**

a.  **Non-legally Privileged Telephone Contacts -**

i.  The inmate is only authorized to have non-legally privileged telephone calls with his immediate family members.[6]

ii.  The quantity and duration of the inmate's non-legally privileged telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one call per month.

b.  **Rules for Telephone Calls -** For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

i.  Is to be overheard by a third party.

ii.  Is to be patched through, or in any manner forwarded or transmitted, to a third party.

iii.  Shall be divulged in any manner to a third party.

---

[5] "Legal mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

[6] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF- or FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 9

    iv.    Shall be in any manner recorded or preserved.[7]

All telephone calls shall be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is available to contemporaneously monitor the telephone call.  Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

c.    **Telephone SAM Restriction Notifications -** For all non-legally privileged telephone calls to the inmate's immediate family member(s):

    i.    The USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

    ii.    The USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the SAM restrictions.  The USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

    iii.    The USMS/BOP/DF shall document each such telephone notification.

d.    **Family Call Monitoring -** All calls with the inmate's immediate family member(s) shall be:

    i.    Contemporaneously monitored by the FBI.

    ii.    Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

    iii.    A copy of each inmate/immediate family member telephone call recording shall be provided to the FBI by the USMS/BOP/DF.  These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.    **Improper Communications -** If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a

---

[7] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 10

discussion of illegal activity, the soliciting of or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by the USMS/BOP/DF.  If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f.     **Non-legal Visits -**

   i.     **Limited Visitors -** The inmate shall be permitted to visit only with his immediate family members.  The visitor's identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI in advance.

   ii.    **English Requirement -** All communications during non-legal inmate visits will be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is readily available to contemporaneously monitor the communication/visit.  Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

   iii.   **Visit Criteria -** All non-legal visits shall be:

      (1)    Contemporaneously monitored by the USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

      (2)    Permitted only with a minimum of fourteen (14) calendar days' advance written notice to the USMS/BOP/DF facility where the inmate is housed.

      (3)    Without any physical contact.  All such meetings shall be non-contact to protect against harm to visitors or staff.

      (4)    Limited to one adult visitor at a time.  However, the FBI-verified children of the inmate may visit with a pre-approved adult visitor.

g.     **Non-legal Mail** - Non-legal mail is any mail not clearly and properly addressed to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing).  In addition to non-legal mail from the inmate's attorney, as discussed in

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

subparagraph 2.h., non-legal mail is only authorized with the inmate's immediate family, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, or other federal law enforcement entities, and Judicial Watch.

i.    **General correspondence with limitations** - Correspondence is only authorized with immediate family members and Judicial Watch.  The volume and frequency of outgoing general correspondence with immediate family members may be limited to three pieces of paper (not larger than 8½" x 11"), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF.  The identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI.

ii.   **General correspondence without limitations** - There is no volume or frequency limitation on correspondence to/from U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order, or discipline of the institution, the public, or national security may be jeopardized.

iii.  All non-legal mail shall be -

(1)   **Copied -** Shall be copied (including the surface of the envelope) by the warden, or his or her designee, of the facility in which the inmate is housed.

(2)   **Forwarded -** Shall be forwarded, in copy form, to the location designated by the FBI.

(3)   **Analyzed -** After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail shall be forwarded to the USMS/BOP/DF for delivery to the inmate (incoming), or directly to the addressee (outgoing).

iv.   The federal government shall forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 12

(1)     A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

(2)     A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

(3)     A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

v.     **Mail Seizure -** If outgoing/incoming mail is determined by the USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action.  The inmate shall be notified in writing of the seizure of any mail.

4.     <u>**Communication With News Media**</u>

The inmate shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media in person; by telephone; by furnishing a recorded message; through the mail, his attorney, or a third party; or otherwise.

5.     <u>**Religious Visitation**</u>

a.     The inmate shall not be allowed to engage in group prayer with other inmates.

b.     If a USMS/BOP/DF- and/or FBI-approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6.     <u>**No Communal Cells and No Communication Between Cells**</u>

a.     The inmate shall not be allowed to share a cell with another inmate.

b.     The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 13

making statements audible to other inmates or by sending notes to other inmates, except as permitted in Section 1.c., above.

7. **Cellblock Procedures**

 a. The inmate shall be kept separated from other inmates as much as possible while in the cellblock area.

 b. The inmate shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8. **Access to Mass Communications**

To prevent the inmate from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, the inmate's access to materials of mass communication is restricted as follows:

 a. **Publications/Newspapers -**

  i. The inmate may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order or discipline of the institution; or the protection of the public. This determination is to be made by the USMS/BOP/DF, in consultation with the USA/EDVA. The inmate may correspond with the publishing company regarding technical aspects of the publication, i.e., availability of particular volumes, billing questions, etc. The review of this correspondence will be in accordance with section 8(a)(iii), below.

  ii. Sections of any publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to, classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to the inmate.

  iii. If restricted by the USMS/BOP/DF rules, access to a publication will be denied. If acceptable, upon delivery, the USMS/BOP/DF will review the publication and make the initial determination. If the FBI's expertise is required, the publication will be forwarded to the FBI for review. The USMS/BOP/DF will also forward the publication to the FBI if translations

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

are needed to make that determination.  (In these cases, the FBI shall respond to the USMS/BOP/DF within fourteen (14) business days.)  The inmate shall then have access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

iv.    In order to avoid passing messages/information from inmate to inmate, the inmate shall be allowed to share institutionally purchased publications/newspapers with other SAM inmates only after each publication/newspaper is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Publications/newspapers individually purchased by the inmate may not be shared with any other inmate.

b.    **Television and Radio** - The inmate is authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

c.    **Termination or Limitation** - If the USMS/BOP/DF determines that mass communications are being used as a vehicle to send messages to the inmate relating to the furtherance of terrorist or criminal activities, the inmate's access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

9.    **Access to Books**

The inmate may have access to all books that do not facilitate criminal activity or present a substantial threat to national security or the security, discipline, or good order of the institution.  This initial determination is to be made by the USMS/BOP/DF and, if the USMS/BOP/DF determines that the FBI's expertise is required, the book(s) will be forwarded to the FBI for review.  In conducting its analysis, the FBI will determine whether the book advocates or promotes acts of terrorism or violence and/or whether access to the book by this particular inmate would pose a substantial threat to national security.

In order to avoid passing messages/information from inmate to inmate, the inmate shall be allowed to share institutionally purchased books with other SAM inmates only after each book is physically screened by staff to ensure that messages cannot be passed between the SAM inmates.  Books individually purchased by the inmate may not be shared with any other inmate.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi

Page 15

10.      **Transfer of Custody**

In the event that the inmate is transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for this inmate shall continue in effect, without need for any additional DOJ authorization.

**CONCLUSION**

The SAM set forth herein, especially as they relate to attorney-client privileged communications and family contact, are reasonably necessary to prevent the inmate from committing, soliciting, or conspiring to engage in additional criminal activity.  Moreover, these measures are the least restrictive that can be tolerated in light of the ability of this inmate to aid, knowingly or inadvertently, in plans that create a substantial risk that the inmate's communications or contacts with persons could result in death or serious bodily injury to persons.

With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to co-conspirators to arrange terrorist or criminal activities.

With respect to mail privileges, the SAM are necessary to prevent the inmate from receiving or passing along critically timed messages.  Accordingly, I have weighed the inmate's interest in the timely receipt and/or submission of mail, with the possible danger the contents of the mail may pose to others.  I have determined that delaying mail delivery to allow authorized personnel to examine a copy of the mail is the least restrictive means available to ensure that the mail is not being used to deliver requests for, or to assist in, violent threats, and/or criminal acts against government witnesses or others.

To the extent that the use of an interpreter/translator is necessary, the government has the right to ensure that the interpreter/translator given access to the inmate is worthy of trust.

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if the inmate advocates terrorist, criminal, and/or violent offenses, or if he makes statements designed to incite such acts.  Based upon the inmate's past behavior, I believe that it would be unwise to wait until after the inmate solicits or attempts to arrange a violent or terrorist act to justify such media restrictions.

The SAM's limitations on access to mass communications are reasonably necessary to prevent the inmate from receiving and acting upon critically timed messages.  Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio.  I believe that limiting and/or delaying media access may interrupt communication

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.3
Inmate - Al-Timimi                                                           Page 16

patterns the inmate may develop with the outside world, and ensure that the media is not used to communicate information that furthers terrorist, violent, and/or criminal activities.

**SAM CONTACT INFORMATION**

Any questions that you or your staff may have about this memorandum or the SAM directed herein should be directed to the Office of Enforcement Operations, Criminal Division, U.S. Department of Justice, 1301 New York Avenue, N.W., JCK Building, Room 1200, Washington, D.C. 20530-0001; telephone (202) ███████; and facsimile (202) ███████.

LIMITED OFFICIAL USE