IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 1:04-cr-385 |
| ALI AL-TIMIMI, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Publicly Filed Supplemental Response in Opposition to
Defendant's Emergency Motion for Bail Pending Appeal**

The Court convened a telephonic conference regarding the defendant's emergency

motion for bail pending appeal under 18 U.S.C. § 3145(c) (ECF No. 465) on June 11, 2020.  In

order to grant the defendant's motion, the Court must, among other requirements, find "by clear

and convincing evidence that the person is not likely to flee or pose a danger to the safety of any

other person or the community if released."  18 U.S.C. § 3143(b)(1)(A).  During the conference,

the Court noted that the government's initial filing in opposition to the motion (ECF No. 473)

did not argue that the defendant was a danger to the community.  The government confirmed that

it had not initially raised the dangerousness issue, but it explained that certain facts predating the

imposition of Special Administrative Measures ("SAMs") on the defendant in 2010 (*see* ECF

No. 473-2) could bear on the Court's analysis and that the government would provide such

information if requested.

The Court directed the government to provide additional information relating to the

SAMs, as well as the defendant's history of incarceration with the Bureau of Prisons ("BOP),

including any history of disciplinary infractions and the reasons underlying the defendant's

transfer to ADX Florence.  In response, the government states as follows.

## I.      The Factual Backdrop Preceding Imposition of SAMs on the Defendant

1.      The Court sentenced the defendant on July 13, 2005.  (ECF No. 132.)  The defendant filed a notice of appeal on July 15, 2005.  (ECF No. 133.)

2.      On April 25, 2006, the Fourth Circuit granted the defendant's motion to remand the case for limited purposes.  (No. 05-4761, ECF No. 74.)

3.      From August 1, 2006, through October 27, 2014, the defendant was released on federal writ from BOP custody.  He was incarcerated throughout this period.  (*See infra* ¶ 12.) To the best of the government's knowledge, the defendant was housed in jail facilities during this period in the event his presence was required for any remand-related proceedings.

4.      SAMs were imposed on the defendant in 2010 and have remained in place ever since.  In addition to this pleading, the government will move to file additional information, under seal and in partially redacted form, which details events that occurred before the SAMs were imposed.  Sealing is necessary to protect the identity of one or more persons who have provided information to the government.  *See United States v. Doe*, — F.3d —, No. 19-6152, 2020 WL 3263893, at *7 (4th Cir. June 17, 2020) ("[W]e have no difficulty concluding that protecting cooperators from harm is a compelling interest that can justify sealing.").

5.      While the government's initial opposition to the defendant's bail motion discussed the imposition of SAMs in the context of an argument as to why the defendant was at minimal risk of contracting COVID-19 while incarcerated, the government notes that SAMs necessarily bear on dangerousness.  Under 28 C.F.R. § 501.3(a), "[u]pon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury."  SAMs "may be implemented … [when] there is a substantial

risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons." *Id.*

6.      The government acknowledges that the information to be provided under seal was not included in its initial opposition to the defendant's motion.  Once a judgment has been entered, however, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c) (discussing the burden of proof applicable to a motion under 18 U.S.C. § 3143); *accord, e.g.*, *United States v. Attia*, No. 19-cr-193 (PWG), 2020 WL 2615725, at *2 (D. Md. May 22, 2020) ("The defendant bears the burden to overcome the presumption of detention contained in the statute with clear and convincing evidence that she is neither a danger to the community nor a flight risk.").  Here, the defendant has not proffered affirmative evidence indicating that someone convicted of offenses as serious as his—including soliciting treason against the United States and inducing others to carry firearms and explosives in furtherance of that object—is no longer a danger.

7.      In addition, the government did not initially focus on the issue of dangerousness because the government believed (and continues to believe) that (i) the defendant has not shown a substantial question of law or fact exists with respect to his continuing incarceration pursuant to his two convictions under 18 U.S.C. § 844(h), which carry a combined 30-year sentence to be served consecutively to his sentences on all other counts; (ii) the defendant is not in a high-risk category for developing a severe illness from COVID-19, as defined by the Centers for Disease Control and as outlined in the under-seal declaration of Susan Conroy; and (iii) the defendant has

not shown that "exceptional reasons" exist justifying bail in light of the total absence of confirmed cases of COVID-19 at FCC Florence.[1]

8.      The government also takes extremely seriously the goal of protecting persons who provide information to assist in federal law enforcement efforts.  The government did not initially focus on the issue of dangerousness in part to avoid collateral litigation that might reveal the identity of such persons in this case.

9.      The information to be provided under seal, as well as the disciplinary infraction detailed below, further undermine the defendant's ability to prove that he is not a danger.

## II.      Information Regarding the Defendant's History in BOP

10.     During the telephonic conference on June 11, the Court also directed the government to provide additional information about the defendant's history of incarceration with the BOP, a summary of any disciplinary infractions while incarcerated, and an explanation for his transfer to ADX Florence.

11.     The government has obtained a declaration from Kimberly Gempler, who is the Unit Manager and the Acting Complex Case Manager Coordinator with the Bureau of Prisons at FCC Florence.  The Gempler declaration is attached as **Exhibit 1**.  It summarizes the defendant's history of incarceration with BOP and provides the relevant background regarding his transfer to ADX Florence.  Attachments 1–4, 6, and 8 to the Gempler Declaration are included in this public filing.  The government will separately move to file Attachments 5 and 7 to the Gempler Declaration under seal.

---

[1] The defendant has been incarcerated since July 13, 2005.  Even setting aside his two § 924(c) convictions, he has a total sentence of 481 months.  (ECF No. 433-5.)  Assuming the maximum of 15 percent off for good-time credit, that sentence would be active until approximately July 13, 2039.

12.     The defendant's history of BOP incarceration has proceeded as follows (Gempler

Decl. ¶¶ 5–9):

### The Defendant's Placements within BOP

| Start Date | End Date | Facility |
|---|---|---|
| Aug. 3, 2005 | Aug. 26, 2005 | Under the supervision of Residential Reentry Coordinator in Raleigh, North Carolina |
| Aug. 26, 2005 | Aug. 29, 2005 | FCI Petersburg, Virginia |
| Aug. 29, 2005 | Sept. 29, 2005 | USP Atlanta |
| Sept. 29, 2005 | Feb. 1, 2006 | USP Big Sandy, Kentucky |
| Feb. 1, 2006 | Feb. 13, 2006 | USP Atlanta |
| Feb. 13, 2006 | Feb. 28, 2006 | FTC Oklahoma City |
| Feb. 28, 2006 | Aug. 1, 2006 | USP Hazelton, West Virginia |
| Aug. 1, 2006 | Oct. 27, 2014 | Released on federal writ due to remand (including time in the Alexandria City Jail and Northern Neck Regional Jail) |
| Oct. 27, 2014 | Apr. 13, 2015 | USP Hazelton, West Virginia |
| Apr. 13, 2015 | Apr. 14, 2015 | Federal Transfer Center (FTC) Oklahoma City |
| Apr. 14, 2015 | Present | ADX Florence |

13.     With respect to disciplinary infractions, on May 2, 2019, the defendant received

disciplinary sanctions for an incident involving disruptive conduct on December 26, 2018.

(Gempler Decl. ¶ 10.)  More specifically, he told a staff member that he would "beat [another

inmate's] ass if I am ever near him."  Due to the misconduct, the defendant was sanctioned with

the loss of 27 days of good-conduct time and fined $20.  The government is unaware of any

additional disciplinary infractions during the defendant's period of incarceration.

14.     The Court also requested information regarding the defendant's placement in

ADX Florence.  After his return to BOP custody in October 2014, BOP referred him to ADX

Florence as the result of the SAMs imposed on him.  A notice and hearing occurred in January

2015.  In February 2015, BOP issued its decision to place the defendant at ADX Florence.
(Gempler Decl. ¶¶ 11–14.)

### III.   Government's Request for Additional Conditions if Bail Is Granted

15.     The government's position is that the defendant's motion for bail pending appeal is without merit and that it should be denied.

16.     In the event that the Court grants the defendant's motion and he is ultimately released, however, the Court will also need to address appropriate bond conditions.  Under 18 U.S.C. § 3145(c), the Court may permit release on bail under an exceptional-reasons rationale subject to "appropriate conditions."  In the proposed order attached to his bail motion (ECF No. 465-1), the defendant has already offered the following conditions:

- That the defendant be ordered to reside at the home of his mother, Dr. Sehara Al-Timimi;

- That the defendant be placed on home detention, with electronic monitoring or global positioning satellite (GPS) tracking;

- That the defendant may not leave his residence for any reason except to meet with legal counsel, meet with a probation officer, appear for court hearings, or attend religious services on Fridays.  Any departure must be approved by the U.S. Probation Office; and

- That the U.S. Probation Office will immediately alert the designated officials at the FBI if the defendant violates the above restrictions on his travel.

17.     In addition to the foregoing, the government requests that the Court, should it grant bail over the government's opposition, impose the following conditions:

- That defendant shall not possess any internet capable device without prior permission from the Probation Office and any such device must be monitored continuously;

- That defendant shall not have any online communications in any language other than English unless otherwise approved;

- That defendant shall not possess, view, access or otherwise view material that reflects extremist or terroristic views;

6

- That defendant shall not possess a passport issued by any country or possess any other travel documentations and cannot leave the United States without the express permission of this Court; and

- That defendant shall not communicate with (i) any known extremist; (ii) any of the other defendants prosecuted as a result of conduct originating at the Dar al Arqam Islamic Center; (iii) any of the witnesses who testified at the defendant's trial; (iv) any of the jurors at the defendant's trial; and (v) any cooperating witnesses whose identity is revealed during this bail litigation.

18.     Conditions similar to those delineated above were imposed in relation to supervised release in *United States v. Lindh*, No. 1:02-cr-37 (TSE), ECF No. 341, and the government asserts that they are appropriate here as well.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:     _____/s/_____

Daniel T. Young
John T. Gibbs
Gordon D. Kromberg
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:  (703) 299-3700
Fax:     (703) 299-3980
Email:   daniel.young@usdoj.gov
         john.gibbs@usdoj.gov
         gordon.kromberg@usdoj.gov

**Certificate of Service**

I certify that on June 18, 2020, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.


By:  _____/s/_____

Daniel T. Young
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:   daniel.young@usdoj.gov