**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 1:04-cr-385 (LMB) |
| | ) |
| ALI AL-TIMIMI, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

**DEFENDANT'S PUBLICLY FILED REPLY TO THE GOVERNMENT'S
SUPPLEMENTAL FILINGS REGARDING AL-TIMIMI'S MOTION FOR
CONDITIONAL RELEASE**

On June 18, the government made a series of public and sealed supplemental filings concerning Al-Timimi's *Emergency Motion for Conditional Release Pending Appeal* [Dkt. No. 465]. *See* Dkt. Nos. 482-484. The defense respectfully submits this publicly filed reply to the government's public brief, and files a separate pleading under seal to address the government's sealed filings.

In short, the government's new filings present no compelling reason to disturb this Court's 2005 finding that Al-Timimi is not likely to flee or pose a danger to the community. As described below and further elaborated on in a separate under-seal pleading, all of the government's arguments to the contrary are either implausible or otherwise unavailing. Moreover, newly obtained ADX medical records and updated medical guidance from the CDC further establish that he is at heightened risk for severe illness from COVID-19 and thus further weaken the government's case against emergency relief.

### I. The government presents no compelling reason for disturbing this Court's 2005 finding that Al-Timimi is not likely to flee or pose a danger to any other person in the community.

As both parties acknowledge, 18 U.S.C. § 3143(b)(1)(A) allows for a defendant's conditional release pending appeal if (among other things) there is a finding "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id*. This Court has made that finding once already when it allowed Al-Timimi to remain free after conviction pending his sentencing hearing in 2005. As this Court noted from the bench:

> THE COURT: I recognize that the -- under normal circumstances, convictions for these types of offenses would result in bond being revoked, but Mr. Ali Timimi has not indicated in any respect that there's any likelihood of flight. As I said, he's known that he was under investigation for serious charges for some time. He has not absconded, and he has been here every day on time.
>
> Although the underlying crimes are crimes of violence, again, the second- to third-degree-removed nature of the defendant's activities here is such that I'm not going to revoke his bond at this point. So the government's request is denied.

Trial Tr., April 26, 2005 [Dkt. No. 161] at 2416; *cf*. 18 U.S.C. § 3143(a)(2)(B) (imposing the same requirement for post-trial release pending sentencing). At the time of Al-Timimi's conviction, he had just completed a doctorate in computation biology, had recently been employed as an assistant professor at George Mason University, had no prior criminal history, and no history of violence in any context.

The government offers two potential arguments for altering that finding now, but neither is availing. The first depends on materials that the government has filed under seal, and the second (which is more implied than asserted) is based on a disciplinary infraction that Al-Timimi was charged with in 2018. This public brief discusses the later issue, while a separate under-seal pleading responds to the former.

In Al-Timimi's fifteen years of incarceration, he has had only one disciplinary sanction—a 2018 infraction for disruptive conduct over a comment that he is alleged to have made to a correctional officer about another ADX inmate who had recently threatened Al-Timimi by pointing at him and making a slashing gesture across his throat. It is the understanding of undersigned counsel that this other inmate—whose background and identity are more thoroughly discussed under seal, *see* Second Huff Decl. (attached as **Exhibit A**) (filed under seal), ¶¶ 14-18—has a history of threatening other inmates and staff in a similar manner, and is being imprisoned at ADX for a particularly gruesome crime. *See id.*, ¶ 16.

Approximately one week after this inmate's threatening gesture, Al-Timimi was told by a correctional officer that this same inmate was to be moved into Al-Timimi's Phase 3 unit at ADX, which would put them in direct and unsupervised contact with each other. Al-Timimi told the correctional officer about the inmate's threat and stated that there would be a problem if her were moved into the group. Al-Timimi denies threatening this inmate, as further described in a contemporaneous letter that Attorney Jonathan Turley wrote to the Warden. *See* January 31, 2019 Letter to Warden, USP Florence (attached as **Exhibit B**). Al-Timimi was ultimately sanctioned for "disruptive conduct"—but not for making a threat. Al-Timimi has had no other disciplinary history in his 15 years of incarceration.

II. **New medical evidence further supports Al-Timimi's emergency motion**

    A. **Updated CDC guidelines reveal that Al-Timimi has yet another risk factor for severe illness from COVID-19 relating to his current body mass index.**

On June 25, 2020, the CDC issued updated guidance on COVID-19 risk factors for persons of any age. Among other things, the CDC warns that persons with a "body mass index [BMI] of 30 or higher" are at increased of severe illness from COVID-19. *See* CDC, *Coronavirus Disease 2019, People of Any Age with Underlying Medical Conditions*, *available*

*at*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

As further detailed under seal, Al-Timimi's medical records show that his body mass index exceeds the CDC threshold of 30. *See* Second Huff Decl., ¶¶ 11-13. As such, Al-Timimi now has yet another risk factor for severe COVID-19 illness under the updated CDC guidelines.

**B.     Newly obtained ADX medical records appear to contradict Dr. Conroy's declaration to this Court that Al-Timimi's hypertension is "stable and responding to medication."**

In support of Al-Timimi's emergency motion, the defense pointed to a multitude of health conditions that put Al-Timimi at high risk of grave illness should he contract COVID-19—including his advanced hypertension for which he takes four different medications. Al-Timimi has further submitted two declarations from Dr. Chris Beyrer—a professor of epidemiology at the John Hopkins Bloomberg School of Public Health and an elected member of the National Academy of Medicine—who has advised that "Mr. Al-Timimi's recent uncontrolled hypertension alone puts him at great risk for a severe outcome [from COVID-19]," Second Beyrer Decl. [Dkt. No. 477, Ex. A], ¶ 5, while noting several additional factors that further add to his risk. *Id*.

In response, ADX physician Dr. Susan Conroy has denied that Al-Timimi is at higher risk for severe illness from COVID-19 and described his hypertension in a declaration to this Court as follows:

> Inmate Al-Timimi's hypertension is currently stable and is responding to medication. A review of his records reveals that his hypertension was previously relatively uncontrolled. However, his medications were changed on March 11, 2020, and weekly blood pressure monitoring since then has revealed a positive response to the medications. Inmate Al-Timimi's hypertension is being monitored and his medications will be adjusted as clinically indicated.

Declaration of Susan Conroy ("Conroy Decl."), ¶ 11 (under seal). Dr. Conroy also reports that

4

she is Al-Timimi's "primary care physician" at ADX. *Id.*, ¶ 5.

But as further detailed under seal, newly obtained ADX medical records appear to squarely contradict Dr. Conroy's characterization of Al-Timimi's hypertension. *See* Second Huff Decl., ¶¶ 4-9. Not only has Al-Timimi's blood pressure remained inappropriately high both before and after his recent medication adjustment, *id.*, ¶¶ 8-9, but ADX appears to have simply discontinued his blood pressure screenings altogether as of May 7. *Id.* Moreover, as best as undersigned counsel can discover, Dr. Conroy has never seen or examined Al-Timimi. *See id.*, ¶.

### III. Defendant's response to the government's request for additional conditions of release.

The government's supplemental response also requests, for the first time, five new conditions for release in addition to the ones that this Court imposed in 2005. See Govt. Suppl. Resp. [Dkt. No. 482] at 6-8. The defense's general position is that this Court's 2005 conditional release order was well balanced; the government offers no specific arguments for its modification. The defense further responds to the proposed conditions as follows:

- *That defendant shall not possess any internet capable device without prior permission from the Probation Office and any such device must be monitored continuously*

This condition was not imposed in 2005, and the government does not explain why it should be added now. To the extent the Court deems it appropriate, the defense requests that Al-Timimi be permitted to communicate with his attorneys by unmonitored email.

- *That defendant shall not have any online communications in any language other than English unless otherwise approved.*

The defense defers to the discretion of this Court.

- *That defendant shall not possess, view, access or otherwise view material that reflects extremist or terroristic views.*

The defense objects to the term "extremist" as unduly vague. For example, ADX has several

5

times denied Al-Timimi access to scholarly books by mainstream authors on the purported grounds that they contain "extremist" views. The defense otherwise defers to this Court's discretion, but further notes that the government has previously executed search warrants on Al-Timimi's home, and he has no record of possessing materials related to terrorism.

- *That defendant shall not possess a passport issued by any country or possess any other travel documentations and cannot leave the United States without the express permission of this Court.*

The defense has no objection. Al-Timimi has been incarcerated for 15 years and does not have an active passport. The defense believes that this condition is superfluous in light of the home confinement conditions that have already been proposed.

- *That defendant shall not communicate with (i) any known extremist; (ii) any of the other defendants prosecuted as a result of conduct originating at the Dar al Arqam Islamic Center; (iii) any of the witnesses who testified at the defendant's trial; (iv) any of the jurors at the defendant's trial; and (v) any cooperating witnesses whose identity is revealed during this bail litigation.*

The defense again objects to the term "extremist" as unduly vague. The defense otherwise defers to the discretion of the Court.

## CONCLUSION

WHEREFORE Al-Timimi's emergency motion for conditional release pending his appeal should be granted.

Dated: July 6, 2020  Respectfully submitted,

/s/
Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu

Jonathan Turley (*pro hac vice*)
The George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
(202) 994-7001 (telephone)
(202) 508-6200 (facsimile)
jturley@law.gwu.edu

Attorneys for Defendant Dr. Ali Al-Timimi

## CERTIFICATE OF SERVICE

I certify that on July 6, 2020, I will file the foregoing document on the CM/ECF system, which will then serve it by electronic notification on all parties of record.

>                        /s/_____
> Thomas Michael Huff, Virginia Bar No. 73587
> Thomas M. Huff, Attorney-at-Law
> P.O. Box 2248
> Leesburg, VA 20177
> Telephone: 703.665.3756
> Facsimile: 571.354.8985
> thuff@law.gwu.edu