# Exhibit B



**WASHINGTON
UNIVERSITY
LAW SCHOOL**
WASHINGTON DC

JONATHAN TURLEY

J.B. AND MAURICE C. SHAPIRO PROFESSOR
OF PUBLIC INTEREST LAW

January 31, 2019

Andre Matevousian
Warden
United States Penitentiary MAX
P.O. Box 8500
Florence, CO 81226-8500

Re: Change in the confinement status of Dr. Ali Al-Timimi (48054-083)

Dear Warden Matevousian:

    I am writing as legal counsel for Dr. Ali Al-Timimi concerning a recent incident at your facility that resulted in my client's confinement status being suddenly demoted from Phase III to Phase I. Because I believe that a serious miscommunication has occurred, I respectfully request your review of this matter and, if you agree with these concerns, your intervention to correct Dr. Al-Timimi's record and restore his Phase III status at the facility.

    My understanding is that the recent change in Dr. Al-Timimi's confinement status stems from an incident on January 7 in which Unit Manager Tuttoilmondo accused him of threatening another inmate. Although I believe that Dr. Al-Timimi may have written to you about the incident already, I would like to address my own serious concerns as legal counsel over how the alleged incident transpired and was addressed.

    It is my understanding that on or around December 22, 2018, a prisoner with a history of disciplinary issues threatened Dr. Al-Timimi by pointing at him and drawing his finger across his neck to suggest that he would slit Dr. Al-Timimi's throat. Dr. Al-Timimi—who is 55 years old with no history of violence—became concerned for his safety and confronted the inmate about his intentions. Dr. Al-Timimi hoped that this would be the end of the incident, but four days later on December 26, Unit Manager Tuttoilmondo informed him that this other inmate would be transferred into his group. Dr. Al-Timimi advised her of the inmate's recent threat against him and expressed concern that there might be trouble. Dr. Al-Timimi believed that communicating these concerns to the Unit Manager was an appropriate and necessary means of ensuring his safety and preserving order in the prison facility.

    For reasons that we have been unable to understand, however, Unit Manager Tuttoilmondo seems to have written up Dr. Al-Timimi's statement as a threat against the other inmate. This resulted in his immediate demotion to Phase I confinement conditions that are typically reserved for some of the most dangerous inmates in the federal prison system—all without any apparent adjudication of his case.

    By all accounts, Dr. Al-Timimi has been a model inmate with no history of violence at any time in his life. At the time of his arrest, Al-Timimi was 40 years old, a

prominent Muslim lecturer, had no criminal history, was completing a doctorate in computation biology, and was employed in cancer research. Throughout his trial, the district court permitted him to remain free on bail (without any form of electronic monitoring), and he scrupulously followed the terms of his bond. Even after his conviction, the district court permitted Al-Timimi to remain free on bond for an additional three months pending sentencing, and in fact specifically recommended against the imposition of any SAM order at all. Moreover, Al-Timimi is in the middle of a complex appellate and remand proceeding that has now spanned nearly 14 years; as such, it is absolutely crucial that he maintain regular access to his attorneys.

It has now been weeks since the change in Dr. Al-Timimi's confinement status and, despite the apparent existence of a tape recording of the conversation with Ms. Tuttoilmondo, there has been no adjudication of this alleged conduct—conduct that would be entirely inconsistent with his long record at the Bureau of Prisons. I am particularly concerned that Ms. Tuttoilmondo took it upon herself to place a letter in the record of Dr. Al-Timimi and reportedly wrote to the FBI before any adjudication of the matter. As I am sure you understand, Dr. Al-Timimi has worked hard to maintain his excellent record and to secure the privileges of Phase III inmates. He simply wants to work on his appeal while maintaining a good record with the BOP. The actions taken against him seems both premature and gratuitous in nature.

I would appreciate your attention to this very serious matter. I realize that your time is quite limited in overseeing a large facility, but the actions taken against my client seem arbitrary and capricious without any evidence or adjudication supporting the original allegation.

Once again, thank you for your time and consideration of this matter.

Respectfully,

Jonathan Turley