IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 1:04-cr-385 (LMB) |
| ALI AL-TIMIMI, | ) | |
| *Defendant*. | ) | |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S RENEWED MOTIONS FOR ACQUITTAL**

Defendant Dr. Ali Al-Timimi respectfully submits notice that the Supreme Court has decided *United States v. Taylor*, 596 U.S. ___ (June 21, 2022), which is directly relevant to Al-Timimi's pending motions for acquittal on Counts 1, 7, and 8 before this Court. *See* Dkt. Nos. 432 & 445. A copy of the slip opinion is attached as **Exhibit A**.

In a 7-2 opinion written by Justice Gorsuch, the *Taylor* Court held that the offense of attempted Hobbs Act robbery is not a "crime of violence" for purposes of 18 U.S.C. § 924(c) because it fails to satisfy the plain text of the "elements clause" of § 924(c)(3)(A). Slip op. at 13-14. Explaining that "the only relevant question [under the elements clause] is whether the federal felony at issue *always* requires . . . the use, attempted use, or threatened use of force," *id*. at 3 (emphasis added), the Court straightforwardly dispensed with attempted Hobbs Act robbery as a viable predicate by describing hypothetical examples by which it could be committed without meeting these elements—for example, by attempted threats alone. *Id*. at 5-6. In so doing, the Court went on to expressly reject an argument by the government that sought to conflate the

1

doctrinal elements of attempt law generally with the distinct "attempted use of force" prong of Section 924(c)'s elements clause. *Id*. at 4-5.

This latter argument is identical to what the government advanced in its post-*Davis* briefing to assert the § 2390 enlistment statute as a predicate here. In short, the government asked this Court to read into § 2390 an attempt element, which the government then—just as in *Taylor*—sought to equate with the "attempted use of force" prong of the elements clause:

> [A]n attempted use of force is one in which a defendant specifically intends to use violent force and takes a substantial step toward completing that use. Where the government can demonstrate that a conviction categorically entails both components, that conviction is a crime of violence under § 924(c).

Dkt. No. 455 at 18-19. But as *Taylor* observes, these "intent" and "substantial step" elements of attempt law are entirely distinct from the "attempted use of force" prong of the elements clause; the only relevant question for purposes of Section 924(c) is whether the asserted predicate absolutely requires the government to prove the use, attempted use, or threatened use of force:

> Yes, to secure a conviction [for attempted Hobbs Act robbery] the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.

Slip op. at 4-5. Thus, even if § 2390 could be read as encompassing the doctrinal elements of attempt (a proposition that the defense rejects for reasons described in its briefing at Dkt. No. 459 at 13-14), it would still not be a crime of violence because it could be committed without reference to force—for example, by making basic preparations to serve in armed hostility without taking any steps toward participation in combat. *See United States v. Khan*, 309 F. Supp. 2d 789, 819 (E.D. Va. 2004); aff'd, remanded, 461 F.3d 477 (4th Cir. 2006).

The *Taylor* decision also casts additional doubt on arguments that the government advanced before this Court in asserting treason as an elements-clause offense. Treason is

statutorily defined as "lev[ying] war against [the United States] or adher[ing] to their enemies, giving them aid and comfort." 18 U.S.C. § 2381. Although it is undisputed that providing aid and comfort does not require the use of force (and thus fails to satisfy the elements clause), the government has asked this Court to invoke a "divisibility doctrine" to split the treason statute into two separate crimes—one involving levying war and the other involving providing aid and comfort. Dkt. No. 455 at 17-18. According to the government, "levying war" and providing "aid and comfort" are not merely different means of committing treason—but are instead two different crimes—and thus *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) places the burden on the defense to establish otherwise with direct caselaw. Dkt. No. 455 at 18.

      But *Taylor* concluded that *Duenas-Alvarez* is inapposite to Section 924(c) cases because it involved a provision of federal law that required courts to make judgments about *state* statutes. Slip op. at 12. As such, it raised special federalism concerns not at issue here. *Id*. This conclusion also aligns with the defense's broader argument that the divisibility doctrine has no applicability to Section 924(c) and the treason statute at all, given that it was created by the Supreme Court to address the unique complexities associated with evaluating various state statutes against their generic federal analogues under ACCA. *See* Dkt. No. 459 at 11-12; *see also Mathis v. United States*, 579 U.S. 500, 504-05 (2016) (explaining that a divisible state statute can "create two different offenses, one more serious than the other.").

      Notably, the *Taylor* Court, in responding to a solo dissent by Justice Alito, reaffirmed that when a robbery statute "merely lists alternative ways a defendant may [commit the offense], a jury need unanimously conclude only that the defendant used one of the listed means; it need not agree on which one." Slip op. at 13, n.3. This logic applies equally to the treason statute—particularly given that the "levying war" and "aid and comfort" prongs have identical

3

punishment criteria, have the same essential elements (a breach of loyalty to the United States, a treasonous act, and the testimony of two witnesses or a confession), and can easily overlap factually. For example, an American caught assisting a seditious enemy on a battlefield may have been firing on American forces ("levying war"), or providing logistical aid or material assistance (providing "aid and comfort"), or both—and a jury may well be tasked with evaluating conflicting evidence on these points. As *Taylor* suggests, the jury need only be unanimous that the defendant used one of these means of committing treason; it need not agree on which one. *See* Dkt. No. 459 at 12-13. As such, divisibility is inapposite and would frustrate the statute's natural operation.

 Finally, *Taylor*'s holding also shows why this dispute over divisibility is ultimately moot. Even if the treason statute did define two different crimes with independent elements, the "levy war" prong would not a crime of violence because it too can be committed without satisfying the elements clause. As *Taylor* confirms, the sole focus is whether the predicate offense absolutely requires—in every case—the use, attempted use, or threatened use of force. Slip op. at 3. And the Supreme Court has expressly stated that "levying war" does not. *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 126 (1807) ("It is not the intention of the court to say that no individual can be guilty of this crime who has not appeared in arms against his country. On the contrary, if war be actually levied, that is, if a body of men be actually assembled for the purpose of effecting by force a treasonable purpose, *all those who perform any part, however minute, or however remote from the scene of action, and who are actually leagued in the general conspiracy, are to be considered as traitors*.") (emphasis added). Because one can levy war in a non-combat role that does not involve force, it is not an elements clause offense for purposes of Section 924(c). The government's response—an effort to import into the elements clause a loose conception of

4

accomplice liability, see Dkt. No. 461 at 7—is unavailing and reminiscent of its unsuccessful effort in *Taylor* to import general principles of attempt law into the "attempted use of force" prong of the elements clause.[1] *See supra* at 1-2.

\* \* \*

In sum, the Court's 7-2 opinion sends a clear signal that the elements clause should be interpreted according to its plain meaning; it should not be expanded to replicate the work of its neighboring residual clause that was invalidated in *Davis*:

> [I]f the government's view of the elements clause caught on, it would only wind up effectively replicating the work formerly performed by the residual clause, collapsing the distinction between them, and perhaps inviting similar constitutional questions along the way. It's an outcome that would (again) defy our usual rules of statutory interpretation . . . because we do not lightly assume Congress adopts two separate clauses in the same law to perform the same work.

Slip op. at 10. Because the government's post-*Davis* arguments would ultimately do just that, they are unavailing and Al-Timimi's motions for acquittal on Counts 1, 7, and 8 should be granted. Thereafter, he also respectfully asks this Court to grant his pending motion for leave to seek a new trial on Counts 9 and 10, Dkt. No. 460, so that he may brief the full motion.

---

[1] Indeed, this effort fails for practical reasons as well, as accomplice liability requires a principal. If a defendant's guilt for levying war were in fact dependent on the use of force, then persons whose roles were solo in nature or too "minute [or] . . . remote from the scene of action," *Bollman*, 8 U.S. (4 Cranch) at 126, to be tied to a force-yielding principal could escape treason liability. But because *Bollman* makes clear that force is not an element, all such persons are guilty of treason—irrespective of the government's ability to tie them to any principal. *Id*.

5

Dated: June 23, 2022                    Respectfully submitted,

                                        _____/s/_____
                                        Thomas Michael Huff, Virginia Bar No. 73587
                                        Thomas M. Huff, Attorney-at-Law
                                        P.O. Box 2248
                                        Leesburg, VA 20177
                                        Telephone: 703.665.3756
                                        Facsimile: 571.354.8985
                                        thuff@law.gwu.edu

                                        Jonathan Turley (*pro hac vice*)
                                        The George Washington University Law School
                                        2000 H Street, NW
                                        Washington, D.C. 20052
                                        (202) 994-7001 (telephone)
                                        (202) 508-6200 (facsimile)
                                        jturley@law.gwu.edu

                                        Attorneys for Defendant Dr. Ali Al-Timimi

## CERTIFICATE OF SERVICE

I certify that on June 23, 2022, I will file the foregoing document on the CM/ECF system, which will then serve it by electronic notification on all parties of record.

/s/
Thomas Michael Huff, Virginia Bar No. 73587
Thomas M. Huff, Attorney-at-Law
P.O. Box 2248
Leesburg, VA 20177
Telephone: 703.665.3756
Facsimile: 571.354.8985
thuff@law.gwu.edu
